# EXHIBIT 2

INTERNATIONAL CENTRE FOR
SETTLEMENT OF INVESTMENT DISPUTES

**OPTIMA VENTURES LLC AND OPTIMA 55 PUBLIC SQUARE LLC,**

*Claimants,*

**v.**

**UNITED STATES OF AMERICA,**

*Respondent.*

ICSID CASE NO. ARB/_____

---

**NOTICE OF ARBITRATION**

---

**Counsel for Claimants**

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 S. Biscayne Blvd, Suite 1300
Miami, FL 33131

**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd.
Suite 5500 Miami, Florida 33131

-and-

**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019

**February 22, 2021**

1

# TABLE OF CONTENTS

I.      INTRODUCTION AND FACTUAL BACKGROUND

II.     PARTIES

III.    JURISDICTION

    A.      Claimants' Investment in Commercial Real Estate in Ohio Constitutes an Investment under the U.S. Ukraine-BIT

    B.      Under the U.S.-Ukraine BIT, the Investment in 55 Public Square was Owned and Controlled by Ukrainian Nationals

    C.      Under the U.S.-Ukraine BIT, Claimants Are An Investment of Nationals of Ukraine and Shall Be Treated as Nationals of Ukraine

IV.     THE UNITED STATES BREACHED ITS OBLIGATIONS UNDER THE U.S.-UKRAINE BIT

    A.      The U.S.-Ukraine BIT Prohibits Unlawful Expropriation

    B.      The U.S.-Ukraine BIT Requires Fair and Equitable Treatment

    C.      The U.S.-Ukraine BIT Provides Exceptions Only For "Measures Necessary for the Maintenance of Public Order," "International Peace or Security," or "Essential Security Interests"

    D.      The U.S.-Ukraine BIT Reserves Full Protections of Domestic Law and International Legal Obligations

    E.      The United States Violated Customary International Law and the Requirement of Fair and Equitable Treatment

    F.      In Addition to Violating Customary International Law's Minimum Standards, The United States is Violating Its Own Doctrine of "Prescriptive Comity"

    G.      The United States Is Further Violating Its Own Doctrine of "Adjudicatory Comity"

    H.      The United States Has Unlawfully Expropriated Ukrainian Investments

    I.      The United States is Wrong on the Merits

V.      DAMAGES

    A.      Customary International Law Requires Full Reparation for Damages Resulting From The Breach Of An International Obligation

    B.      Claimants' Initial Assessment of Damages

    C.      Claimants are Entitled to Arbitration Costs and Expenses

VI.     AGREEMENT TO ARBITRATE

VII.    REQUIRED COPIES AND LODGING FEE

VIII.   THE CLAIMANTS' REQUEST FOR RELIEF

## I.     INTRODUCTION AND FACTUAL BACKGROUND

### A.     The United States' Forfeiture Actions

Optima Ventures, LLC ("Optima Ventures" or "Claimant") and Optima 55 Public Square, LLC ("Optima 55 Public Square" or "Claimant") (collectively "Claimants") request the institution of arbitration proceedings against the United States of America (the "United States" or "U.S.") under the Convention on the Settlement of Investment Disputes (the "ICSID Convention") and the ICSID Rules of Procedure for Arbitration Proceedings ("ICSID Arbitration Rules").

This Notice of Arbitration (the "Notice") is submitted pursuant to Article VI of the Treaty Between the United States of America and Ukraine Concerning the Encouragement and Reciprocal Protection of Investment (the "U.S.-Ukraine BIT"),[1] which was signed on March 4, 1994 and entered into force on November 16, 1996.[2]

The United States of America (the "United States" or "U.S.") has engaged in breaches of the obligation of fair and equitable treatment and expropriation with respect to Ukrainian nationals Ihor Kolomoisky and Gennadiy Boholiubov's investments in commercial real estate in Cleveland, Ohio. Specifically, on August 6, 2020, the United States filed complaints for civil forfeiture in the Southern District of Florida, which alleged that a 22-story office building located at 55 Public Square, Cleveland, Ohio was "acquired . . . using funds misappropriated from PrivatBank" in Ukraine and claimed that the property was traceable to specified unlawful activity arising out of Ukrainian conduct.[3] On December 22, 2020, Claimants notified the

---

[1]   U.S.-Ukraine BIT (attached as Exhibit 1).

[2]   U.S. State Department, *United States Bilateral Investment Treaties*, https://www.state.gov/investment-affairs/bilateral-investment-treaties-and-related-agreements/united-states-bilateral-investment-treaties/ (last visited 2 February 2021) (attached as Exhibit 2).

[3] *United States v. Real Property Located at 7505 and 7171 Forest Lane, Dallas, Texas 75230*, Case No. 20-cv-23278-MGC (S.D. Fla. 2020), ECF#1, Verified

United States that a contract to sell the 55 Public Square property had been executed. One week later, on December 30, 2020, the United States filed a complaint for civil forfeiture against 55 Public Square, which asserts that the United States may forfeit all of Claimants' interests in 55 Public Square. The United States thereafter inserted itself into the sale arrangements, and the United States conditioned the sale of the property upon the deposit of the net sale proceeds into the account of the United States Marshals Service. 55 Public Square eventually sold on February 12, 2021. The United States has prohibited the use of funds derived from 55 Public Square's sale to pay building employees and legal counsel. The funds derived from the sale are currently on deposit with the United States Marshals Service.

### B.    Ukrainian Nationals' Investments in 55 Public Square

Kolomoisky and Boholiubov are well-known Ukrainian business magnates. Until December 2016, Kolomoisky and Boholiubov owned and controlled PrivatBank, the largest commercial bank in Ukraine. Kolomoisky and Boholiubov also held large ownership interests in a number of industries, including holdings in the oil and gas and ferroalloy industries.

Beginning in or around the year 2008, Kolomoisky and Boholiubov began investing in the United States alongside their partners, Mordechai Korf and Uriel Laber. Kolomoisky and Boholiubov had previously transacted business in Ukraine with United States citizens Korf and Laber. Kolomoisky and Boholiubov, along with Korf and Laber, entered into an agreement whereby Korf and Laber would hold a 33.33% interest (16.665% Laber, 16.665% Korf) in certain investments in the United

---

Complaint of 6 August 2020, at ¶ 86(c)(i); *United States v. All Right to and Interest in PNC Corporate Plaza Holdings LLC Held, Controlled, or Acquired, Directly or Indirectly, by Optima CBD Investments LLC and/or CBD 500 LLC*, ECF#1, Verified Complaint of 6 August 2020, at ¶ 89(c)(i).

4

States, with Kolomoisky and Boholiubov owning the remaining majority 66.67% (33.335% Kolomoisky, 33.335% Boholiubov).

Kolomoisky and Boholiubov invested in the United States through Optima Ventures, a Delaware limited liability company. The ultimate beneficial ownership of Optima Ventures is as set forth above: 16.665% Laber; 16.665% Korf; 33.335% Kolomoisky; 33.335% Boholiubov. Although Korf and Laber oversee the day-to-day operation of the investments in the United States, Kolomoisky and Boholiubov facilitated the investment of the capital and hold a 66.67% interest, including voting interest. Kolomoisky and Boholiubov can dissolve Optima Ventures by supermajority vote as well as remove Korf as manager for cause.

In 2008, Kolomoisky and Boholiubov facilitated the provision of capital for the purchase of 55 Public Square in Cleveland, Ohio. 55 Public Square is owned by Claimant Optima 55 Public Square, a Delaware limited liability company whose sole purpose is ownership of 55 Public Square. Optima 55 Public Square is a wholly owned subsidiary of Optima Ventures. Optima Ventures has a 100% membership interest in Optima 55 Public Square. Optima 55 Public Square's profits and losses are allocated to Optima Ventures. Distributions from Optima 55 Public Square are to be made to Optima Ventures. 55 Public Square sold on February 12, 2021 and the net proceeds of $587,365.74 are on deposit with the U.S. Marshals.

Claimants Optima Ventures and Optima 55 Public Square have duly authorized the submission of these claims to arbitration pursuant to Article VI of the U.S.-Ukraine BIT.[4]

## C.    The Nationalization of PrivatBank

---

[4]    *See* Power of Attorney Issued by Optima 55 Public Square LLC and Optima Ventures, LLC to Black, Srebnick, Kornspan & Stumpf, P.A., Roche Cyrulnik Freedman LLP, and Kasowitz Benson Torres LLP (attached as Exhibit 3).

In 2014, following the invasion of Ukraine by Russia, Kolomoisky entered Ukrainian politics. In 2014, Kolomoisky was appointed Governor of Dnipropetrovsk Oblast. Eventually, as has been widely reported in the international press, Kolomoisky and the former President of Ukraine, Petro Poroshenko, had a falling out. On March 25, 2015, Poroshenko signed a decree dismissing Kolomoisky from his position as Governor of Dnipropetrovsk Oblast. In December 2016, at a time when Poroshenko was still in power, Kolomoisky and Boholiubov's ownership of PrivatBank was nationalized by the Ukrainian government. At least one Ukrainian court has held that the nationalization of PrivatBank was illegal.

According to the United States, Kolomoisky and Boholiubov "used their control of PrivatBank to steal billions of dollars of the bank's funds" and PrivatBank had to be "bail[ed] out" with "$5.5 billion in order to stave off economic crisis for the whole country." The United States alleges that "Kolomoisky and Boholiubov's conduct violated numerous provisions of the Ukrainian Criminal Code." Indeed, the lynchpin of each and every allegation of wrongdoing set forth in the United States' Verified Complaint ("Compl.") is purported wrongdoing that occurred in Ukraine, at the direction of two Ukrainian nationals who reside in Ukraine, and to the detriment of a Ukrainian bank located in Ukraine. Nevertheless, to date, the Ukrainian Prosecutor's Office has made no criminal allegations against Kolomoisky or Boholiubov, neither of whom have been charged with any crimes in Ukraine. Kolomoisky, in fact, continues to reside in Ukraine, where he remains one of the country's foremost business magnates. At risk of repetition, although the United States claims it is entitled to expropriate investments based on claims that Kolomoisky and Boholiubov caused  "$5.5 billion" in losses to the Ukrainian government and a potential "economic crisis for the whole country," purportedly constituting violation of "numerous provisions of the Ukrainian Criminal Code," Ukraine itself has not brought any criminal charges against Kolomoisky and

Boholiubov, and the propriety of the nationalization of PrivatBank continues to be litigated to this day.[5]

Article 62 of the Ukrainian Constitution provides that "a person shall be deemed innocent of committing a crime and shall not be subjected to a criminal punishment unless his/her guilt has been proven through a legal procedure and established by a court verdict of guilty." Marchukov Aff. ¶ 14 (attached as Exhibit 4).  The Ukrainian Constitution further provides the Ukrainian Prosecutor's Office is exclusively empowered to initiate criminal charges.  *Id.* ¶ 17.  Ukrainian civil and commercial courts therefore uniformly hold that they lack authority to conclude or find that conduct violates the Criminal Code of Ukraine in the absence of criminal charges filed by the Ukrainian Prosecutor's Office and a finding of violations of the Criminal Code of the Ukraine by  a Ukrainian criminal court.  *Id.* ¶ 25.

The United States is improperly attempting to deprive Ukrainian investors of their investments in the United States, based on the United States' unilateral interpretation of Ukrainian criminal law, as applied to conduct occurring in the territory of Ukraine. In doing so, the United States has exceeded the reasonable limits

---

[5] Recently, certain of the Ukrainian borrowers accused by the United States of committing Ukrainian crimes -- in Ukraine, against a Ukrainian bank -- have initiated litigations in Ukraine against PrivatBank seeking judgments that, contrary to PrivatBank's allegations in its various litigations (and the United States' allegations here), the purportedly fraudulent loans were in fact entirely legitimate and consistent with Ukrainian law (the "Related Actions"). *See generally* Decision, *Joint Stock Co. Nikopol Ferroalloy Plant v. Joint Stock Co. Comm. Bank PrivatBank*, No. 910/13313/20 (Kyiv. Econ. Ct. Jan. 22, 2021); Decision, *Joint Stock Co. Nikopol Ferroalloy Plant v. Joint Stock Co. Comm. Bank PrivatBank*, No. 910/14224/20 (Kyiv. Econ. Ct. Jan. 22, 2021) (hereinafter "NZF Decision"). Those cases are proceeding through the Ukrainian judicial system, and Ukrainian courts are now issuing decisions directly refuting PrivatBank's allegations – allegations that the United States has parroted in the Complaint. *See id.*

of prescriptive jurisdiction, violated the requirement of fair and equitable treatment, and unlawfully expropriated Ukrainian investments.

## II.        PARTIES

1. Optima Ventures is a Delaware limited liability company that is ultimately beneficially owned by Ihor Kolomoisky (a Ukrainian citizen holding 33.35% beneficial ownership), Gennadiy Boholiubov (a Ukrainian citizen holding 33.35% beneficial ownership), Mordechai Korf (a U.S. citizen holding 16.665% beneficial ownership) and Uriel Laber (a U.S. citizen holding 16.665% beneficial ownership). Optima 55 Public Square is a Delaware limited liability company and wholly owned subsidiary of Optima Ventures, whose sole equity member is Optima Ventures.

2. All correspondence and notices relating to this case should be addressed to:[6]

Howard M. Srebnick
Robert T. Dunlap

Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Blvd., Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
Fax: (305) 371-6322
Email: HSrebnick@RoyBlack.com
        RDunlap@RoyBlack.com

Velvel (Devin) Freedman

Roche Cyrulnik Freedman LLP
200 S. Biscayne Blvd., Suite 5500
Miami, FL 33131
Email: vel@rcfllp.com

Marc E. Kasowitz
Mark P. Ressler
Sarmad M. Khojasteh

---

[6] *See* Power of Attorney Issued by Optima 55 Public Square LLC and Optima Ventures, LLC to Black, Srebnick, Kornspan & Stumpf, P.A., Roche Cyrulnik Freedman LLP, and Kasowitz Benson Torres LLP (attached as Exhibit 3).

Joshua N. Paul

Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Email: MKasowitz@kasowitz.com
MRessler@kasowitz.com
SKhojasteh@kasowitz.com
JPaul@kasowitz.com

3. The United States is a party to the U.S.-Ukraine BIT. All future correspondence and notices relating to this arbitration should be addressed to the following addresses:

Nicole C. Thornton, Chief of Investment Arbitration: thorntonnc@state.gov
Lisa J. Grosh, Assistant Legal Adviser: groshlj@state.gov
John D. Daley, Deputy Assistant Legal Adviser: daleyjd@state.gov
John I. Blanck, Attorney-Adviser: blanckji@state.gov
Nathaniel E. Jedrey, Attorney-Adviser: jedreyne@state.gov
Andrew R. Rakestraw, Attorney-Adviser: rakestrawar@state.gov
Margaret E.B. Sedgewick, Attorney-Adviser: sedgewickmeb@state.gov

United States Department of State
Washington, D.C. 20520

## III.   JURISDICTION

### A. Claimants' Investment in Commercial Real Estate in Ohio Constitutes an Investment under the U.S. Ukraine-BIT

4. Article I(1)(a) of the U.S.-Ukraine BIT defines "investment" to mean the following:

every kind of investment in the territory of one Party owned or controlled directly or indirectly by nationals or companies of the other Party, such as equity, debt, and service and investment contracts; and includes:

9

(i) tangible and intangible property, including rights, such as mortgages, liens and pledges;

(ii) a company or shares of stock or other interests in a company or interests in the assets thereof;

(iii) a claim to money or a claim to performance having economic value, and associated with an investment;

(iv) intellectual property which includes, inter alia, rights relating to:

literary and artistic works, including sound recordings, inventions in all fields of human endeavor, industrial designs, semiconductor mask works, trade secrets, know-how, and confidential business information, and trademarks, service marks, and trade names; and

(v) any right conferred by law or contract, and any licenses and permits pursuant to law

5.   The Letter of Submittal addressed to U.S. President William J. Clinton by Secretary of State Warren Christopher recognizes that:

The Treaty's definition of investment is broad, recognizing that investment can take a wide variety of forms. . . . The definition provides a non-exclusive list of assets, claims and rights that constitute investment. These include both tangible and intangible property, interests in a company or its assets, "a claim to money or performance having economic value, and associated with an investment," intellectual property rights, and any rights conferred by law or contract (such as government-issued licenses and permits). The requirement that a "claim to money" be associated with an investment excludes claims arising solely from trade transactions, such as a transaction involving only a cross-border sale of goods, from being considered investments covered by the Treaty.

6.   Claimants' investment in commercial real estate in Cleveland, Ohio constitutes an "investment" as defined by Article I(1)(a) of the U.S.-Ukraine BIT. Claimant Optima Ventures is allocated all profits and losses from Optima 55 Public

Square's ownership of the 55 Public Square and controls the distribution of funds derived from 55 Public Square.

**B. Pursuant to the U.S.-Ukraine BIT, 55 Public Square was Owned and Controlled by Ukrainian Nationals**

7.      As set forth in Article I(1)(a), "'investment' means every kind of investment in the territory of one Party owned or controlled directly or indirectly by nationals or companies of the other Party[.]"

8.      Pursuant to Article I(1)(c), "' national,' of a Party means a natural person who is a national of a Party under its applicable law[.]"

9.      Pursuant to Article VI(8):

> For purposes of [this] arbitration . . ., any company legally constituted under the applicable laws and regulations of a Party or a political subdivision thereof but that, immediately before the occurrence of the event or events giving rise to the dispute, was an investment of nationals or companies of the other Party, shall be treated as a national or company of such other Party in accordance with Article 25(2)(b) of the ICSID Convention.

10.     The Letter of Submittal addressed to President Clinton by Secretary of State Christopher recognizes that:

> The Treaty's definition of investment is broad, recognizing that investment can take a wide variety of forms. It covers investments that are owned or controlled by nationals or companies of one of the Treaty partners in the territory of the other. Investments can be made either directly or indirectly through one or more subsidiaries, including those of third countries. Control is not specifically defined in the Treaty. Ownership of over 50 percent of the voting stock of a company would normally convey control, but in many cases the requirement could be satisfied by less than that proportion.

11.     As set forth above, Optima Ventures is a Delaware limited liability company ultimately beneficially owned by Ihor Kolomoisky (a Ukrainian citizen holding 33.35% beneficial ownership, including voting interests), Gennadiy Boholiubov (a

Ukrainian citizen holding 33.35% beneficial ownership, including voting interests), Mordechai Korf (a U.S. citizen holding 16.665% beneficial ownership, including voting interests) and Uriel Laber (a U.S. citizen holding 16.665% beneficial ownership, including voting interests). Optima 55 Public Square is a wholly owned subsidiary of Optima Ventures whose sole equity member is Optima Ventures.

12.     Kolomoisky and Boholiubov facilitated the provision of the capital used by Optima Ventures to invest in the 55 Public Square property in Ohio. Given that Kolomoisky and Boholiubov are the majority (66.7%) owners of Optima Ventures and facilitated the provision of the capital used to purchase the Ohio property, Optima Ventures' investment in the Ohio property is "controlled directly or indirectly" by Ukrainian nationals. As stated by the Secretary of State in the Letter of Transmittal, "Ownership of over 50 percent of the voting stock of a company would normally convey control, but in many cases the requirement could be satisfied by less than that proportion." That 55 Public Square is an investment owned and controlled by Ukrainian nationals is more than adequately satisfied by Kolomoisky and Boholiubov's ultimate 66.7% ownership and voting interests.

### C. Under the U.S.-Ukraine BIT, Claimants Are An Investment of Nationals of Ukraine and Shall Be Treated as Nationals of Ukraine

13.     Pursuant to Article VI(8) of the U.S.-Ukraine BIT :

> For purposes of [this] arbitration . . ., any company legally constituted under the applicable laws and regulations of a Party or a political subdivision thereof but that, immediately before the occurrence of the event or events giving rise to the dispute, was an investment of nationals or companies of the other Party, shall be treated as a national or company of such other Party in accordance with Article 25(2)(b) of the ICSID Convention.

14.     As set forth in Article I(1)(a), investment, in turn, "means every kind of investment in the territory of one Party owned or controlled directly or indirectly by nationals or companies of the other Party[.]"

15.    The Letter of Submittal addressed to President Clinton by Secretary of State
Christopher recognizes that:

> The Treaty's definition of investment is broad, recognizing that
> investment can take a wide variety of forms. It covers investments that
> are owned or controlled by nationals or companies of one of the Treaty
> partners in the territory of the other. Investments can be made either
> directly or indirectly through one or more subsidiaries, including those
> of third countries. Control is not specifically defined in the Treaty.
> Ownership of over 50 percent of the voting stock of a company would
> normally convey control, but in many cases the requirement could be
> satisfied by less than that proportion.

16.    As set forth above, Optima Ventures is a Delaware limited liability company
ultimately beneficially owned by Ihor Kolomoisky (a Ukrainian citizen holding
33.35% beneficial ownership, including voting interests), Gennadiy Boholiubov (a
Ukrainian citizen holding 33.35% beneficial ownership, including voting interests),
Mordechai Korf (a U.S. citizen holding 16.665% beneficial ownership, including
voting interests) and Uriel Laber (a U.S. citizen holding 16.665% beneficial
ownership, including voting interests). Optima 55 Public Square is a wholly owned
subsidiary of Optima Ventures whose sole equity member is Optima Ventures.

17.    Kolomoisky and Boholiubov facilitated the provision of the capital used by
Optima Ventures to invest in the Ohio property. Given that Kolomoisky and
Boholiubov are the majority (66.7%) owners of Optima Ventures and facilitated the
provision of the capital, Optima Ventures and Optima 55 Public Square are
Ukrainian "investments" pursuant to the U.S.-Ukraine BIT. As stated by the
Secretary of State in the Letter of Transmittal, "Ownership of over 50 percent of the
voting stock of a company would normally convey control, but in many cases the
requirement could be satisfied by less than that proportion." [7]

---

[7] *Raymond Charles Eyre and Montrose Developments (Private) Limited v.
Democratic Socialist Republic of Sri Lanka* (ICSID Case No. ARB/16/25), Award,

18.     Because Optima Ventures and Optima 55 Public Square are Ukrainian investments pursuant to the U.S.-Ukraine BIT, pursuant to Article VI(8), Optima Ventures and Optima 55 Public Square "shall be treated as [] national[s]" of Ukraine "in accordance with Article 25(2)(b) of the ICSID Convention."

## IV.   THE UNITED STATES BREACHED ITS OBLIGATIONS UNDER THE U.S.-UKRAINE BIT

### A. The U.S.-Ukraine BIT Prohibits Unlawful Expropriation

19.     Pursuant to Article III(1) of the U.S.-Ukraine BIT:

> Investments shall not be expropriated or nationalized either directly or indirectly through measures tantamount to expropriation or nationalization ("expropriation") except: for public purpose; in a nondiscriminatory manner; upon payment of prompt, adequate and effective compensation; and in accordance with due process of law and the general principles of treatment provided for in Article II(2). Compensation shall be equivalent to the fair market value of the expropriated investment immediately before the expropriatory action was taken or became known, whichever is earlier; be calculated in a

---

5 March 2020, para. 266 ("To recognize indirect foreign control of such a locally incorporated company, through indirect as well as direct share ownership, is in line with both ICSID jurisprudence and commercial reality. In modern international economic relations, chains of closely-held companies are frequently used, without preventing the majority shareholder at the top of a chain from asserting control of or making claims on behalf of a foreign company lower in the chain."); C.F. Amerasinghe, Jurisdiction Ratione Personae Under the Convention On the Settlement of Investment Disputes Between States and Nationals of Other States, 1975-1975 Brit. Y.B. Int'l L. 227, 264-265 ("[T]he concept of 'control' is broad and flexible . . . [T]he question is . . . whether the nationality chosen represents an exercise of a reasonable amount of control to warrant its choice on the basis of a reasonable criterion."). "Where both foreign and host State nationals exercise a degree of control, . . . in order to find 'foreign' control, '[t]he combined control of nationals of Contracting States other than the host State should, at least, outweigh the combined control  of nationals of non-Contracting States and of the host State.'" *United Utilities (Tallinn) B.V. and Aktsiaselts Tallinna Vesi v. Republic of Estonia*, ICSID Case No. ARB/14/24, 21 June 2019, Award, para. 374.

freely usable currency on the basis of the prevailing market rate of exchange at that time; be paid without delay; include interest at a commercially reasonable rate, such as LIBOR plus an appropriate margin, from the date of expropriation; be fully realizable; and be freely transferable.

20.     With respect to Article III(1), the Letter of Submittal addressed to President Clinton by Secretary of State Christopher recognizes that:

Paragraph 1 describes the general rights of investors and obligations of the Parties with respect to expropriation and nationalization. These rights also apply to direct or indirect state measures "tantamount to expropriation or nationalization," and thus apply to "creeping expropriations" that result in a substantial deprivation of the benefit of an investment without taking of the title to the investment.

Paragraph 1 further bars all expropriations or nationalizations except those that are for a public purpose, carried out in a non-discriminatory manner; subject to prompt, adequate, and effective compensation" [sic]; subject to due process; and accorded the treatment provided in the standards of Article II (3). (These standards guarantee fair and equitable treatment and prohibit the arbitrary and discriminatory impairment of investment in its broadest sense.)

### B. The U.S.-Ukraine BIT Requires Fair and Equitable Treatment

21.     Article II(3)(a)-(b) of the U.S. Ukraine BIT provides that:

3. (a) Investment shall at all times be accorded fair and equitable treatment, shall enjoy full protection and security and shall in no case be accorded treatment less than that required by international law.

(b) Neither Party shall in any way impair by arbitrary or discriminatory measures the management, operation, maintenance, use, enjoyment, acquisition, expansion, or disposal of investments. For purposes of dispute resolution under Article 3 VI and VII, a measure may be arbitrary or discriminatory notwithstanding the fact that a Party has had or has exercised the opportunity to review such measure in the courts or administrative tribunals of a Party.

22.     With respect to Article II(3), the Letter of Submittal addressed to President Clinton by Secretary of State Christopher recognizes that:

> Paragraph 3 guarantees that investment shall be granted "fair and equitable" treatment. It also prohibits Parties from impairing through arbitrary or discriminatory means, the management, operation, maintenance, use, enjoyment, acquisition, expansion or disposal of investment. This paragraph sets out a minimum standard of treatment based on customary international law

### C. The U.S.-Ukraine BIT Provides Exceptions Only For "Measures Necessary for the Maintenance of Public Order," "International Peace or Security," or "Essential Security Interests"

23.     Pursuant to Article IX of the U.S.-Ukraine BIT:

> This Treaty shall not preclude the application by either Party of measures necessary for the maintenance of public order, the fulfillment of its obligations with respect to the maintenance or restoration of international peace or security, or the protection of its own essential security interests.

24.     With respect to Article IX, the Letter of Submittal addressed to President Clinton by Secretary of State Christopher recognizes that:

> Paragraph 1 of Article IX reserves the right of a Party to take measures for the maintenance of public order and the fulfillment of its obligations with respect to international peace and security, as well as those measures it regards as necessary for the protection of its own essential security interests. These provisions are common in international investment agreements.

### D. The U.S.-Ukraine BIT Reserves Full Protections of Domestic Law and International Legal Obligations

25.     In addition, Article VIII of the U.S. Ukraine BIT provides that:

> This Treaty shall not derogate from:
> (a) laws and regulations, administrative practices or procedures, or administrative or adjudicatory decisions of either Party;
> (b) international legal obligations; or

(c) obligations assumed by either Party, including those contained in an investment agreement or an investment authorization, that entitle investments or associated activities to treatment more favorable than that accorded by this Treaty in like situations.

26.    With respect to Article VIII, the Letter of Submittal addressed to President Clinton by Secretary of State Christopher recognizes that:

Article VIII clarifies that the Treaty is meant only to establish a floor for the treatment of foreign investment. An investor may be entitled to more favorable treatment through domestic legislation, other international legal obligations, or a specific obligation assumed by a Party with respect to that investor. This provision ensures that the Treaty will not be interpreted to derogate from any entitlement to such more favorable treatment.

### E. The United States Violated Customary International Law and the Requirement of Fair and Equitable Treatment

27.    In order to establish a violation of Article II(3)(a), there must be "an action or omission by the State which violates a certain threshold of propriety, causing harm to the investor, and with a causal link between action or omission and harm."[8] Affording an investment "treatment less than that required by international law" constitutes a violation of Article II(3)(a).[9]

28.    "'[T]he law of nations,' or customary international law, includes limitations on a nation's exercise of its jurisdiction to prescribe."[10] "[C]ustomary international law provides the general default rules on prescriptive jurisdiction."[11] The exercise of prescriptive jurisdiction is proper "when a genuine connection exists between the

---

[8] *Bosh International, Inc and B&P Ltd Foreign Investments Enterprise v. Ukraine*, ICSID Case No. ARB/08/11, Award, 25 October 2012, para 212.

[9] U.S.-Ukraine BIT, Art II(3)(a).

[10] *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 815 (1993) (Scalia, J., dissenting).

[11] Restatement (Fourth) of Foreign Relations Law § 407 (2018).

state seeking to regulate and the persons, property, or conduct being regulated."[12] "This usually takes the form of a specific connection between the state and the subject being regulated, such as the conduct occurring on the state's territory or being committed by or against its nationals."[13]

29.     Although there are a number of "specific bases of jurisdiction," the bases for prescriptive jurisdiction "reflect a broader principle requiring a genuine or sufficiently close connection to justify or make reasonable the exercise of prescriptive jurisdiction."[14]

30.      "Many commentators have posited the existence of [] a broader principle."[15] For example:

> Although it is usual to consider the exercise of jurisdiction under one or other of more or less widely accepted categories, this is more a matter of convenience than of substance. There is, however, some tendency now to regard these various categories as parts of a single broad principle according to which the right to exercise jurisdiction depends on there being between the subject matter and the state exercising jurisdiction a sufficiently close connection to justify that state in

---

[12] Restatement (Fourth) of Foreign Relations Law § 407 (2018).

[13] Restatement (Fourth) of Foreign Relations Law § 407 (2018).

[14] Restatement (Fourth) of Foreign Relations Law § 407 (2018). *See* Int'l Law Comm'n, Report to the General Assembly, Annex V, [2006] 2(2) Y.B. Int'l L. Comm'n 231 U.N. Doc. A/61/10 ¶ 10 (2006) (Report prepared by the ILC Secretariat) ("The common element underlying the various principles . . . is the valid interest of the State in asserting its jurisdiction in such a case on the basis of a sufficient connection to the persons, property or acts concerned."); James Crawford, Brownlie's Principles of Public International Law 457 (8th ed. 2012) ("If there is a cardinal principle emerging, it is that of genuine connection between the subject-matter of jurisdiction and the territorial base or reasonable interest of the state in question.").

[15] Restatement (Fourth) of Foreign Relations Law at § 407.

regulating the matter and perhaps also to override any competing rights of other states.[16]

31.     The United States is attempting to regulate the propriety of conduct occurring in Ukraine – the management of a Ukrainian bank in the territory of Ukraine – and has expropriated Ukrainian investors' investment in 55 Public Square based on the United States' own interpretation and application of Ukrainian criminal law to Ukrainian conduct.

32.     The United States' interference with and expropriation of the Ukrainian investors' investments, based on the United States' unilateral interpretation and application of Ukrainian law to conduct occurring in the territory of Ukraine is not a reasonable exercise of prescriptive jurisdiction under any circumstances. Such interference and expropriation is particularly improper given that no Ukrainian prosecutor or law enforcement agency initiated any proceedings related to the conduct the United States is attempting to regulate. The alleged conduct at PrivatBank did not occur in the United States, was not committed by or against United States nationals, does not implicate losses occurring in the United States, and does not reasonably implicate the United States' fundamental state interests.

33.     The United States' exercise of prescriptive jurisdiction in this circumstance is also contrary to the competing rights of Ukraine.

34.     Article 62 of the Constitution of Ukraine, dated 28 June 1996, (the "Ukrainian Constitution"), provides as follows:

> Article 62. A person shall be deemed innocent of committing a crime and shall not be subjected to a criminal punishment unless his/her guilt

---

[16] 1 Robert Jennings & Arthur Watts, Oppenheim's International Law 457-458 (9th ed. 1992); *see also* F.A. Mann, The Doctrine of International Jurisdiction Revisited After Twenty Years, 186 Recueil des Cours 9, 29 (1984); Harold G. Maier, Jurisdictional Rules in Customary International Law, in Extraterritorial Jurisdiction in Theory and Practice 65, 90 (Karl M. Meesen ed., 1996).

has been proven through a legal procedure and established by a court verdict of guilty.[17]

35.     This constitutional provision mandates that, *inter alia*, the determination that a crime has been committed by a certain person requires (1) adherence to a procedure, as prescribed by Ukrainian law, for investigating and proving the alleged crime; and (2) that the power to determine that the crime has been committed and that a certain person is guilty of that crime is vested ultimately and exclusively with the Ukrainian criminal court, which must issue its determination in the form of a court verdict of guilty.

36.     The respective procedure and powers of Ukrainian authorities in conducting criminal proceedings are set out in the Criminal Procedure Code of Ukraine, dated 13 April 2012 (the "CrPCU").

37.     Ukrainian law provides a pivotal role for the Ukrainian Prosecutor's Office in criminal proceedings in Ukraine. The Ukrainian Prosecutor's Office has overarching control over the investigation and, once the criminal proceeding reaches a stage that a suspect can be determined, the respective notice of suspicion either must be issued directly by the prosecutor, or must be approved by the prosecutor.[18] Furthermore, once the pretrial investigation is completed, it is exclusively the prosecutor who is empowered to submit the charging (accusation) documents to the court,[19] from which moment a suspect becomes an accused.[20]

38.     Importantly, under Article 5 of the Law of Ukraine "On Prosecutor's Office," dated 14 October 2014, "functions of the prosecutor's office of Ukraine shall be exercised exclusively by the prosecutors. Delegation of the functions of prosecutor's

---

[17] Article 62(1) of the Ukrainian Constitution
[18] Marchukov Aff. ¶ 18 n.7 (citing Article 277(1) of the CrPCU, **Exhibit DM-3**).
[19] *Id.* at ¶ 18 n.8 (citing Article 110(4) of the CrPCU, **Exhibit DM-3**).
[20] *Id.* at ¶ 18 n.9 (citing Article 42(2) of the CrPCU, **Exhibit DM-3**).

office, as well as their appropriation by other authorities or officials shall be prohibited."[21]

39.     Accordingly, the Ukrainian Prosecutor's Office has exclusive authority to charge a crime under the Criminal Code of Ukraine. Ukrainian law prohibits exercising this power by any other authority.

40.     During the trial stage of a criminal proceeding, the Prosecutor's Office is exclusively empowered to prosecute the case before the Ukrainian criminal court. Again, such power is expressly set out in the Ukrainian Constitution[22]. The court, in turn, has the exclusive power to establish and declare whether a crime has been committed and whether an individual charged with that crime by the Prosecutor's Office is guilty of that crime. This is derived from the aforementioned Article 62 of the Ukrainian Constitution, which requires that a fact that a certain person has committed a crime must be established by a court verdict of guilty (*see* paragraph 28 above), as well as from Article 124 of the Ukrainian Constitution providing that only courts are entitled to administer justice in Ukraine[23], and that no one else can exercise the functions of the court.[24]

41.     Neither Ihor Kolomoisky nor Gennadiy Boholiubov (nor, for that matter, anyone else) have been charged with the violations of the Criminal Code of Ukraine asserted by the United States in the Complaint, and no Ukrainian court has

---

[21] *Id.* at ¶ 19 n.10 (citing Article 5 of the Law of Ukraine "On Prosecutor's Office", **Exhibit DM-4**).

[22] *Id.* at ¶ 21 n.11 (citing Article 131-1(1) of the Ukrainian Constitution, **Exhibit DM-2**; Article 2(1)(1) of the Law of Ukraine "On Prosecutor's Office", **Exhibit DM-4**).

[23] *Id.* at ¶ 21 n.12 (citing Article 124(1) of the Ukrainian Constitution, **Exhibit DM-2**).

[24] Marchukov Aff. ¶ 21 n.13 (citing Article 124(2) of the Ukrainian Constitution, **Exhibit DM-2**).

determined those crimes even occurred at all, much less that they were committed by a certain person or persons.

42.    Pursuant to the aforementioned Article 62 of the Ukrainian Constitution (*see* paragraph 34 above), a person is deemed innocent of committing a crime unless and until the opposite has been duly proven through a legal procedure and established by the court verdict of guilty. The said provision refers to a judgment of the criminal court (court verdict of guilty), and it is only this court that can establish – as a result of the Ukrainian criminal proceeding (pretrial investigation followed by court trial) – that the crime has occurred, and that a certain person has committed a crime. Without such a decision of the Ukrainian criminal court, any finding in the context of a civil claim that a person has committed a crime would be contrary to this constitutional entitlement.

43.    "It is a well-established position of the Ukrainian courts that civil and commercial courts cannot establish violation of the criminal laws on their own and, therefore, cannot invoke any such violation unless it has been confirmed and determined in and pursuant to the respective judgment of the Ukrainian criminal court."[25]

44.    One reason that the Ukrainian civil and commercial courts refuse to establish any violation of Ukrainian criminal laws on their own is because Ukrainian criminal law (substantive and procedural) should be viewed as a closed, self-contained system. As a matter of Ukrainian law, criminal substantive law and criminal

---

[25] Marchukov Aff. ¶ 25 n.11 (citing Article 262(11) of the Civil Procedure Code of Ukraine **Exhibit DM-5**; Article 246(11) of the Commercial Procedure Code of Ukraine, **Exhibit DM-6**); *See also id.* ¶ 27, n.17 (citing Judgement of the Supreme Court dated 12 December 2018 in case No. 481/40/16-II (https://reyestr.court.gov.ua/Review/78750654), **Exhibit DM-10**; Judgement of the Supreme Court dated 5 June 2019 in case No. 727/8388/17 (https://reyestr.court.gov.ua/Review/82703170), **Exhibit DM-11**).

procedural law do not exist without each other: rather, they necessarily complement and give life to each other (the latter "serves" the former).

45.      As a result, no person can be found in breach of the provisions of the Criminal Code of Ukraine without a criminal investigation by Ukrainian law-enforcement authorities followed by a trial of the Ukrainian criminal court. During the criminal proceeding, the respective person is entitled to defend himself or herself exercising the rights granted to him or her by the Ukrainian Constitution and by the CrPCU. Kolomoisky and Boholiubov would exercise those rights if they were charged with the violations of the Criminal Code of Ukraine asserted by the United States. But, as noted above, Ukraine has brought no such charges.

46.      To conclude, under Ukrainian law, all citizens have a right to be deemed to have not committed any alleged crime unless and until the opposite has been duly declared, determined and established by the Ukrainian criminal court. Ukrainian civil and commercial courts consistently and adamantly hold that they cannot establish on their own a violation of the Criminal Code of Ukraine and that the same cannot be established otherwise than by the Ukrainian criminal courts.

47.      Because the courts in a civil case in Ukraine cannot declare that a violation of the Criminal Code of Ukraine has occurred, absent a finding of guilty in a criminal case, it is unreasonable for the United States to seize and deprive Ukrainian investors of their investments, based on the United States' unilateral and improper interpretation and application of Ukrainian law to conduct occurring in Ukraine.

48.      "It is trite to say that criminal law and procedure are a most obvious and undisputed part of a State's sovereignty."[26] While normally deference to State sovereignty would counsel against an arbitration tribunal interfering with the United

---

[26] *Hydro S.r.l. and others v. Republic of Albania*, ICSID Case No. ARB/15/28, Order on Provisional Measures of 3 March 2016, para. 3.16.

States' application of its law and procedure, this is the rare case in which the United States is seeking to regulate in a civil case alleged criminal conduct occurring in another State's territory, and, in doing so, seeking to interpret and apply another State's criminal law and procedure, thereby depriving another State's investors of their investments. Because the other State (Ukraine) has not itself brought criminal charges (let alone obtained a conviction), and because Ukrainian criminal law and procedure require a criminal conviction before a civil court can declare that a crime has occurred (or impose liability for criminal conduct), the United States' attempted expansion of prescriptive jurisdiction to deprive the Ukrainian investors of their investments is unreasonable. The United States is effectively seeking to substitute itself for the Ukrainian Prosecutor's Office and thereby intrude upon the "criminal law and procedure" of Ukraine, which is a "most obvious and undisputed part of a State's sovereignty."[27]

49.     "[I]nterfere[nce] with a foreign nation's ability to regulate its own commercial affairs" is only reasonable to "redress domestic . . . injury caused by foreign . . . conduct."[28] "[I]t is not reasonable to apply American laws to foreign conduct insofar as that conduct causes independent foreign harm that alone gives rise to a plaintiff's claim."[29] In the latter circumstance, "[t]he risk of interference [with foreign sovereignty] is the same, but the justification for the interference seems insubstantial."[30]

50.     The United States' conduct both violates customary international law's "limitations on a nation's exercise of its jurisdiction to prescribe,"[31] and unlawfully

---

[27] *Hydro S.r.l. and others v. Republic of Albania*, ICSID Case No. ARB/15/28, Order on Provisional Measures of 3 March 2016, para. 3.16.

[28] *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 156 (2004).

[29] *Hoffmann-La Roche*, 542 U.S. at 156.

[30] *Hoffmann-La Roche*, 542 U.S. at 156.

[31] *Hartford*, 509 U.S. at 815.

interferes with Ukrainian sovereignty and jurisdiction to enforce its own laws, in accordance with its own procedures and Constitutional requirements, within its own territory. Because the United States' conduct violates customary international law, the United States has violated Article II(3)(a)-(b) of the U.S.-Ukraine BIT.

### F. The United States' Conduct Violates the Doctrine of "Prescriptive Comity"

51.     Pursuant to Article VIII of the U.S.-Ukraine BIT, the Treaty is meant only to establish a floor for the treatment of foreign investment. An investor may be entitled to more favorable treatment through domestic law. This provision ensures that the U.S-Ukraine BIT will not be interpreted to limit entitlement to such more favorable treatment.

52.     "In interpreting the geographic scope of federal law, courts [in the United States] seek to avoid unreasonable interference with the sovereign authority of other states."[32] "This principle of interpretation accounts for the legitimate sovereign interests of other nations and helps the potentially conflicting laws of different nations work in harmony."[33] "The Supreme Court has described reasonableness as a principle of 'prescriptive comity.'"[34]

53.     "[N]othing would be more convenient in the promiscuous intercourse and practice of mankind, than that what was valid by the laws of one place, should be rendered of no effect elsewhere, by a diversity of law[.]"[35] "'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere

---

[32] Restatement (Fourth) of Foreign Relations Law § 405 (2018).
[33] Restatement (Fourth) of Foreign Relations Law § 405 (2018).
[34] Restatement (Fourth) of Foreign Relations Law § 405 (2018) (citing *Hoffmann-La Roche*, 542 U.S. at 165).
[35] *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 (1987).

courtesy and good will, upon the other."[36] "But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."[37]

54.     Under the principle of prescriptive comity, "interfere[nce] with a foreign nation's ability to regulate its own commercial affairs" is only reasonable to "redress domestic . . . injury caused by foreign . . . conduct."[38] "[I]t is not reasonable to apply American laws to foreign conduct insofar as that conduct causes independent foreign harm that alone gives rise to a plaintiff's claim."[39]

55.     Moreover, "[a]n act of congress ought never to be construed to violate the law of nations if any other possible construction remains."[40] The United States "construe[s] statutes to avoid unreasonable interference with other nations' sovereign authority where possible."[41]

56.     Under Ukrainian law, there can be no civil liability for violations of the Criminal Code of Ukraine, absent a preexisting finding of guilty in a Ukrainian criminal court. Ukrainian civil and commercial courts consistently and adamantly hold that they cannot establish on their own a violation of the Criminal Code of Ukraine and that the same cannot be established otherwise than by the Ukrainian criminal courts.

57.     The forfeiture and money laundering statutes referenced by the United States in support of the seizure and expropriation of the Ukrainian investors' investments

---

[36] *Societe Nationale*, 482 U.S at 544.
[37] *Societe Nationale*, 482 U.S at 544.
[38] *Hoffmann-La Roche*, 542 U.S. at 156.
[39] *Hoffmann-La Roche*, 542 U.S. at 156.
[40] *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 814-15 (1993).
[41] *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2107 n.9 (2016).

effectively require two elements: (1) the receipt of criminally derived property or transactions "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds"; and (2) that the funds at issue are in fact traceable to "specified unlawful activity." *See* 18 U.S.C. §§ 1956-57. In other words, for there to be a forfeiture under U.S. law, there must be underlying criminal activity.

58.    The "specified unlawful activit[ies]" cited by the United States in support of the expropriation of the Ukrainian investments are 18 U.S.C. § 1956(c)(7)(B)(iii) and 18 U.S.C. §§ 2314-2315.

59.    The "specified unlawful activity" set forth in 18 U.S.C. § 1956(c)(7)(B)(iii) is

an offense against a foreign nation involving-- . . . (iii) fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978))

60.    As set forth above, 18 U.S.C. § 1956(c)(7)(B)(iii) requires an underlying "offense against a foreign nation," *i.e.*, a criminal fraud against a foreign bank, pursuant to the criminal laws of the foreign country.[42]

61.    Likewise, 18 U.S.C. §§ 2314-2315 applies to the transfer or receipt of stolen monies "knowing the same to have been stolen, converted or taken by fraud." The United States has alleged that 55 Public Square is forfeitable pursuant to 18 U.S.C. §§ 2314-2315 because it is "traceable to an international conspiracy to launder money embezzled and fraudulently obtained from PrivatBank."[43] The United States further alleges that "Kolomoisky and Boholiubov's embezzlement and fraud, and the actions they took at PrivatBank to further their scheme, violated" the Criminal

---

[42] *See United States v. Real Prop. Known as Unit 5B of Onyx Chelsea Condo*., No. 10 CIV. 5390 KBF, 2012 WL 1883371, at *3 (S.D.N.Y. May 21, 2012) ("Congress clearly intended Section 1956(c)(7) to prohibit the laundering in this country of proceeds of 'foreign crimes' committed entirely abroad.").
[43] ECF#1, ¶ 1.

Code of Ukraine.[44] In sum, the United States seeks to forfeit and expropriate 55 Public Square based on alleged violations of 18 U.S.C. §§ 2314-2315. Those violations of U.S. law, however, necessarily are alleged to arise solely because they stem from and depend on alleged violations of Ukrainian criminal law that have not been charged, let alone proven, by Ukrainian authorities.

62.     As noted, Ukrainian civil and commercial courts uniformly hold that – in the absence of criminal charges filed by the Ukrainian Prosecutor's Office and a finding of violations of the Criminal Code of the Ukraine by a Ukrainian criminal court – they lack authority to conclude, determine or find that conduct violates the Criminal Code of Ukraine. It necessarily follows that under the United States' doctrine of "prescriptive comity," the specified unlawful activity set forth in 18 U.S.C. §§ 2314-2315 and 18 U.S.C. § 1956(c)(7)(B)(iii) should not and cannot be interpreted to apply to the alleged conduct occurring in Ukraine until a Ukrainian prosecutor proves as much in a Ukrainian criminal court, pursuant to the applicable procedures and Constitutional requirements central to Ukrainian law.[45] This interpretation accords with the United States' principle of "prescriptive comity" by providing due respect for the laws and constitution of Ukraine, as well as Ukraine's jurisdiction to prescribe and enforce its laws within its own territory.

## G. The United States Is Further Violating Its Own Doctrine of "Adjudicatory Comity"

63.     The United States commenced its Ukraine-centric dispute in a domestic forum in disregard for the Related Actions that have been pending in Ukraine.  This further violated the doctrine of "adjudicatory" international comity, which requires

---

[44] ECF#1, ¶ 73.

[45] *See RJR Nabisco*, 136 S. Ct. at 2107 n.9 (the courts of the United States "construe[] statutes to avoid unreasonable interference with other nations' sovereign authority where possible.").

deference to parallel foreign proceedings, where the foreign sovereign has stronger interests than the United States, where the foreign forum is fairer and more convenient, and where deference would promote judicial efficiency.[46] Ukraine has an overriding interest in prosecuting, proving and regulating allegedly criminal conduct in its own borders, pursuant to and in accordance with its own procedures and Constitutional requirements.[47]

64.     More fundamentally, to permit the United States to pursue claims that require U.S. courts to determine the legality of conduct in the Ukraine runs contrary to the United States' interests in respecting Ukraine's judicial process, Ukraine's criminal procedures, Ukraine's sovereign rights of Ukraine, and Ukraine's Constitution, which provides that only Ukrainian criminal courts may determine and establish that a crime has been committed under Ukrainian law.[48] In the absence of such ruling by a Ukrainian criminal court, any finding in a U.S. court concerning the legality of conduct in the Ukraine would invade Ukraine's sovereignty and its longstanding Constitutional principles.   Nevertheless, the United States – unable to refer to a single criminal investigation or charge levied against a single person or defendant in Ukraine concerning the management of PrivatBank – relies on its own interpretation and application of Ukrainian criminal law to conduct occurring in Ukraine, for which Ukraine itself has not brought any such charges.

---

[46]   *See Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1519 (11th Cir. 1994) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)) (relative convenience of foreign over domestic forum weighs in favor of deferring to concurrent foreign proceedings).

[47]   *See In re Maxwell Communications Corp.*, 93 F.3d 1036, 1051 (2d Cir. 1996) (deferring to foreign proceedings, where foreign country "has a much closer connection to these disputes than does the United States").

[48]   *See Mujica v. AirScan Inc.*, 771 F.3d 580, 615 (9th Cir. 2014) ("the strength of the U.S. government's interest in respecting Colombia's judicial process" weighs in favor of comity).

29

## H. The United States Has Unlawfully Expropriated Ukrainian Investments

65.    Pursuant to the U.S.-Ukraine BIT, the United States is obligated to provide "prompt, adequate and effective compensation"[49] for the expropriation of 55 Public Square.

66.    The United States cannot find exception in a "measure[] necessary for the maintenance of public order, the fulfillment of [the State's] obligations with respect to the maintenance or restoration of international peace or security, or the protection of its own essential security interests."[50]

67.    The expropriation of the Ukrainian investors' investments, based upon purported misappropriations and losses occurring within the territory of Ukraine, is not "necessary for the maintenance of public order"[51] in the United States, but rather seeks to regulate conduct occurring in the territory of Ukraine.[52]

68.    "[I]nterfere[nce] with a foreign nation's ability to regulate its own commercial affairs" is only reasonable to "redress domestic . . . injury caused by foreign . . . conduct."[53] "[I]t is not reasonable to apply American laws to foreign conduct insofar as that conduct causes independent foreign harm that alone gives rise to a plaintiff's claim."[54]

---

[49] U.S.-Ukraine BIT, Art. III(1)

[50] U.S.-Ukraine BIT, Art. IX

[51] U.S.-Ukraine BIT, Art. IX

[52] *See* International Law Commission's (ILC) Draft Articles on State Responsibility, Art. 25 ("Necessity may not be invoked by the State as a ground for precluding the wrongfulness of an act not in conformity with an international obligation of that State unless the act: (a) Is the only way for the State to safeguard an essential interest against a grave and imminent peril; (b) Does not seriously impair an essential interest of the State or States towards which the obligation exists, or of the international community as a whole.")

[53] *Hoffmann-La Roche*, 542 U.S. at 156.

[54] *Hoffmann-La Roche*, 542 U.S. at 156.

69.    The United States' expropriation not only seeks to redress an alleged foreign injury, it intrudes upon the competing rights of Ukraine. Ukrainian law precludes imposition of civil liability for alleged violations of the Criminal Code of Ukraine, prior to a criminal conviction in a Ukrainian court.

70.    Even if the United States is able to craft a tenuous "public purpose" argument for the expropriation, compensation is still required.[55] "If public purpose automatically immunizes the measure from being found to be expropriatory, then there would never be a compensable taking for a public purpose."[56] "[T]he purpose for which the property was taken 'does not alter the legal character of the taking for which adequate compensation must be paid.' "[57] The legal element in question is whether the act is expropriatory or not. "[58]

71.    The conditioning of a sale on the transfer of the proceeds to the custody of the United States Marshals Service constitutes expropriation because "[a] transfer to a

---

[55] *International Law Commission, Draft Articles on State Responsibility*, Commentary (2) to Article 25 ("[T]he plea for necessity arises where there is an irreconcilable conflict between an essential interest on the one hand and an obligation of the state invoking necessity on the other. These special features mean that necessity will only rarely be available to excuse nonperformance of an obligation and that it is subject to strict limitations to safeguard against possible abuse.").

[56] *Compañía de Aguas del Aconquija S.A. and Vivendi Universal S.A. v. Argentine Republic*, ICSID Case No. ARB/97/3 (formerly *Compañía de Aguas del Aconquija, S.A. and Compagnie Générale des Eaux v. Argentine Republic*), Award of 20 August 2007, at ¶ 7.5.21.

[57] *Compañía de Aguas del Aconquija S.A. and Vivendi Universal S.A. v. Argentine Republic*, ICSID Case No. ARB/97/3, Award of 20 August 2007, at ¶ 7.5.21 (citing *Compañía del Desarrollo de Santa Elena, S.A. v. The Republic of Costa Rica* (ICSID Case No. ARB/96/1), Award of 17 February 2000, 15 ICISD REV – FILJ 169 (2000), at ¶ 71)).

[58] *Compañía de Aguas del Aconquija S.A. and Vivendi Universal S.A. v. Argentine Republic*, ICSID Case No. ARB/97/3, Award of 20 August 2007, at ¶ 7.5.21.

third party may amount to an expropriation attributable to the State if the judicial process was instigated by the State."[59]

72.     Moreover, the utilization of the United States judicial system by the United States executive branch (the Department of Justice) to encumber and transfer Ukrainian investments to the United States government, based upon alleged criminal conduct and losses within the territory of Ukraine, constitutes unlawful expropriation. In doing so, the United States also exceeds the limits of prescriptive jurisdiction and the principle of prescriptive comity.

73.     Even "judicial decisions that permit the actions or inactions of other branches of the State and which deprive the investor of its property or property rights, can still amount to expropriation."[60] "While denial of justice could in some case result in expropriation, it does not follow that judicial expropriation could only occur if there is denial of justice."[61] "[T]he general rights of investors and obligations of the Parties with respect to expropriation and nationalization . . . . also apply to direct or indirect state measures 'tantamount to expropriation or nationalization,; and thus apply to 'creeping expropriations' that result in a substantial deprivation of the benefit of an investment without taking of the title to the investment." Letter of Submittal addressed to President Clinton by Secretary of State Christopher

74.     As set forth in paragraphs 27 through 50 *supra*, the United States' interference and expropriation violates customary international law's "limitations on a nation's

[59] *Rumeli Telekom A.S. and Telsim Mobil Telekomunikasyon Hizmetleri A.S. v. Republic of Kazakhstan*, ICSID Case No. ARB/05/16, 25 March 2010 Award, at ¶ 704.

[60] *Standard Chartered Bank (Hong Kong) Limited v. United Republic of Tanzania*, ICSID Case No. ARB/15/41, at 2 November 2012 Award, at ¶ 297.

[61] *Standard Chartered Bank (Hong Kong) Limited v. United Republic of Tanzania*, ICSID Case No. ARB/15/41, at 2 November 2012 Award, at ¶ 297.

exercise of its jurisdiction to prescribe,"[62] and unlawfully interferes with Ukrainian sovereignty and intrudes upon Ukrainian jurisdiction to prescribe within its own territory.

75.    Because the interference and expropriation was not "necessary for the maintenance of public order"[63] in the United States, and because "[i]nterfere[nce] with a foreign nation's ability to regulate its own commercial affairs" is only reasonable to "redress domestic . . . injury caused by foreign . . . conduct,"[64] the United States is not exempted from its obligation to provide prompt, adequate and effective compensation   for the expropriation of 55 Public Square. "[P]rompt, adequate and effective compensation" is required pursuant to Article III(1).

## I. The United States is Wrong on the Merits

76.    In addition to the violations set forth above, the United States is simply wrong on the merits: there was no underlying impropriety in Ukraine, and, in any event, 33.33% owners Mordechai Korf and Uriel Laber are innocent owners.  Indeed, the sole conduct alleged in the United States is the after-the-fact use of the allegedly unlawful proceeds to purchase real estate in Ohio.  None of the downstream conduct would be unlawful but for the allegations of wrongdoing in Ukraine.

77.    Because the United States is wrong on the merits, the expropriation cannot constitute a "measure[] necessary for the maintenance of public order" pursuant to Article IX of the U.S.-Ukraine BIT, and there is no exception to the requirement for "payment of prompt, adequate and effective compensation" pursuant to Article III of the U.S.-Ukraine BIT. Moreover, because the United States is wrong on the

---

[62] *Hartford*, 509 U.S. at 815
[63] U.S.-Ukraine BIT, Art. IX
[64] *Hoffmann-La Roche*, 542 U.S. at 156.

merits, the expropriation is "arbitrary" as set forth in Article II(3)(2) of the U.S.-Ukraine BIT.

## V.   DAMAGES

### A.   Customary International Law Requires Full Reparation For Damages Resulting From The Breach Of An International Obligation

78.   The customary international law standard for compensation is best enunciated in the *Chorzów Factory* case, *i.e.*, the "full reparation" standard for compensation.[65] In *Chorzów Factory*, the Permanent Court of International Justice stated that:

> The essential principle contained in the actual notion of an illegal act . . .] is that reparation must, as far as possible, wipe out all the consequences of the illegal act and reestablish the situation which would, in all probability, have existed if that act had not been committed.[66]

---

[65] *See, e.g., Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB(AF)/12/5, Award, 22 August 2016, ¶ 640 ("[t]he compensation provided for in Article VII only covers cases of expropriation. In all other breaches, absent any specific Treaty language, damages must be calculated in accordance with the rules of international law. The relevant principle was originally formulated in the seminal judgement of the Permanent Court of International Justice in the *Chorzów* case: reparation must wipe-out the consequences of the breach and re-establish the situation as it is likely to have been absent the breach. This well-established principle complements those found in the ILC Articles, and particularly in Article 31, to make full reparation for injury caused as a consequence of a violation of international law.").

[66] *Case Concerning The Factory at Chorzów (Germany v. Poland)*, Decision on the Merits, 13 September 1928, PCIJ Rep. Series A. – No. 17, p. 47; *see Compañia de Aguas del Aconquija S.A. and Vivendi Universal S.A. v. Argentine Republic*, ICSID Case No. ARB/97/3, Award, 20 August 2007, ¶ 8.2.7. ("[b]ased on these principles, and absent limiting terms in the relevant treaty, it is generally accepted today that, regardless of the type of investment, and regardless of the nature of the illegitimate measure, the level of damages awarded in international investment arbitration is supposed to be sufficient to compensate the affected party fully and to eliminate the consequences of the state's action.").

79.     The "full reparation" principle is also codified in the International Law Commission Articles (the "ILC Articles"). ILC Article 31 states that "[t]he responsible State is under an obligation to make full reparation for the injury caused by the internationally wrongful act."[67] ILC Article 34 ("Forms of reparation") further requires "[f]ull reparation for the injury caused by the internationally wrongful act shall take the form of restitution, compensation and satisfaction, either singly or in combination[.]"[68] "The compensation shall cover any financially assessable damage including loss of profits insofar as it is established."[69]

80.     The customary international law standard applies to all host State treaty breaches.[70] The purpose of an award of damages is to place the Claimants in the same position in which they would have been if the State had not violated the treaty.

### B.     Claimants' Initial Assessment of Damages

81.     Claimants currently estimate direct damages to be in excess of USD $587,365.74, which amount includes the net proceeds of the sale of 55 Public Square.

82.      Claimants reserves their right to quantify and modify their claims at an appropriate stage of these proceedings.

### C.     Claimants are Entitled to Arbitration Costs and Expenses

---

[67] Int'l. Law Commission's Arts. on the Responsibility of States for Internationally Wrongful Acts, Art. 31.

[68] Int'l. Law Commission's Arts. on the Responsibility of States for Internationally Wrongful Acts,  Art. 34.

[69] Int'l. Law Commission's Arts. on the Responsibility of States for Internationally Wrongful Acts,  Art. 36(2).

[70] *See Joseph Charles Lemire v. Ukrain*e, ICSID Case No. ARB/06/18, Award, 28 March 2011, ¶ 149.

83.     The principle of full reparation requires that Claimants be made whole for the costs of the arbitration, including legal and expert fees, and all other arbitration fees and expenses.

84.     Article 61(2) of the ICSID Convention provides:

> In the case of arbitration proceedings the Tribunal shall, except as the parties otherwise agree, assess the expenses incurred by the parties in connection with the proceedings, and shall decide how and by whom those expenses, the fees and expenses of the members of the Tribunal and the charges for the use of the facilities of the Centre shall be paid. Such decision shall form part of the award.

## VI.   AGREEMENT TO ARBITRATE

85.     The U.S.-Ukraine BIT sets out certain requirements and suggestions before an arbitration can commence. First, "the parties to the dispute should initially seek a resolution through consultation and negotiation."[71] Second, the U.S.-Ukraine BIT requires "that six months have elapsed from the date on which the dispute arose" prior to "consent[ing] in writing to the submission of the dispute for settlement by binding arbitration."[72]

86.     The dispute arose on August 6, 2020 when the United States identified 55 Public Square in a sworn filing as traceable to money laundering and derivative of a crime, thereby significantly circumscribing the investment's utility. That point was called into focus when the United States filed its forfeiture compliant on December 30, 2020, barely a week after being informed of the prospect of a sale by Claimants. As of February 6, 2021, "[s]ix months . . . have elapsed from the date on which the dispute arose."

---

[71] U.S.-Ukraine, Art VI(2).
[72] U.S.-Ukraine, Art VI(3).

87.    On January 19, 2021, Claimants provided the United States with notice of
their intention to arbitrate in their Verified Claims filed in the United States District
Court for the Southern District of Florida. Therein, Claimants stated:

> Claimant reserves any and all defenses and objections, including as to
> this Court's jurisdiction over the subject of this action, including that
> such claims should be submitted to arbitration pursuant to the Treaty
> Between the United States of America and Ukraine Concerning the
> Encouragement and Reciprocal Protection of Investment, dated March
> 4, 1994.

88.    Claimants provided further notice of their intention to arbitrate in email
correspondence dated October 6, 2020 and October 21, 2020. Specifically, on
October 6, 2020, Claimants sent an email to the United States which alleged, *inter
alia*, unlawful "expropriation or nationalization" and violations of the "fair and
equitable" treatment standard, stating:

> We write on behalf of Optima Ventures, LLC ("Optima Ventures")
> pursuant to the Treaty Between the United States of America and
> Ukraine Concerning the Encouragement and Reciprocal Protection of
> Investment (the "U.S.-Ukraine BIT").
>
> . . .
>
> Based on its allegations and legal theories, the United States obtained
> an *ex parte* restraining order preventing Mordechai Korf, Uriel Laber,
> Ihor Kolomoisky, and Gennaidy Boholiubov from directly or
> indirectly, transferring, selling, assigning, pledging, distributing,
> encumbering, attaching or disposing of in any manner, causing to be
> transferred, sold, assigned, pledged, distributed, encumbered, attached
> or disposed of in any manner; or taking, or causing to be taken any
> action that would have the effect of depreciating, damaging, or in any
> way diminishing the value of Optima Ventures' investment in a certain
> property located in Dallas, Texas.
>
> The United States also previewed in its complaint an intention to apply
> this sort of legal theory and *ex parte* mechanism to numerous other
> properties in which Optima Ventures has invested.

> Please advise as to whether the United States agrees that its requested relief (and the *ex parte* relief already obtained in Case Number 1:20-cv-23278-MGC) fall within the scope of the U.S.-Ukraine BIT such that this dispute is capable of submission to dispute resolution pursuant to Article VI of the U.S.-Ukraine BIT.
>
> . . .
>
> In the event that we reach an impasse, we reserve our right to proceed to submit the matter to arbitration.[73]

89.     Claimants have consistently refused to submit their claims for breaches of the U.S.-Ukraine BIT either to the courts or administrative tribunals of the United States or to any other applicable dispute settlement procedure, repeatedly stating that Claimants reserve their right at the appropriate time under the treaty to commence arbitration and to move to compel arbitration.

90.     By virtue of submitting this Notice of Arbitration, Claimants hereby consent to arbitration in accordance with the procedures set forth in Article VI of the U.S.-Ukraine BIT.

91.     The United States has consented to arbitration by virtue of Article VI of the U.S.-Ukraine BIT, which provides, *inter alia*, that:

> 4. Each Party hereby consents to the submission of any investment dispute for settlement by binding arbitration in accordance with the choice specified in the written consent of the national or company under paragraph 3. Such consent, together with the written consent of the national or company when given under paragraph 3 shall satisfy the requirement for:
>
> (a) written consent of the parties to the dispute for purposes of Chapter II of the ICSID Convention (Jurisdiction of the Center) and for purposes of the Additional Facility Rules; and

---

[73] October 6, 2020, Email from R. Dunlap to Department of Justice.

(b) an "agreement in writing," for purposes of Article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, June 10, 1958 ("New York Convention")

92.     Finally, Claimants have attempted to consult to resolve the present dispute with the United States. These consultations were unsuccessful. The United States maintains that, "None of the measures referenced . . . constitute violations of the U.S.-Ukraine BIT."[74]

## VII.   REQUIRED COPIES AND LODGING FEE

93.     In accordance with Rule 4 of the Institution Rules and the July 1, 2020 Schedule of Fees, this Notice of Arbitration is accompanied by five additional signed copies and a non-refundable fee of twenty-five thousand dollars (US $25,000.00).

## VIII.   THE CLAIMANTS' REQUEST FOR RELIEF

94.     Based on the foregoing, and reserving Claimants' right under the ICSID Arbitration Rules to amend this Notice of Arbitration and assert additional claims as permitted by the ICSID Convention and the ICSID, Claimants respectfully request that the Arbitral Tribunal to be constituted in this case:

(1)     DECLARE that the United States has breached its obligations acquired under the U.S.-Ukraine BIT;

(2)     ORDER the United States to pay Claimants compensation for damage caused to it of up to approximately $587,365.74;

(3)     ORDER the United States to pay interest on all amounts awarded, at a commercially reasonable rate or such other rate determined by applicable law, from date of award until full payment of the award;

---

[74] October 27, 2020, Email from Department of Justice to H. Srebnick.

(4)     ORDER the United States to pay Claimants' arbitration costs, including the costs of ICSID, the Arbitral Tribunal, and the legal and other costs incurred by Claimants in an amount to be determined by the Tribunal; and

(5)     AWARD such other and further relief as the Tribunal may deem appropriate.

Respectfully submitted,
Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Blvd., Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
Fax: (305) 371-6322

By:     _____

Howard M. Srebnick
Robert T. Dunlap
HSrebnick@RoyBlack.com
RDunlap@RoyBlack.com

*Attorneys for Claimants Optima Ventures, LLC and Optima 55 Public Square, LLC*

Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

Marc E. Kasowitz
Mark P. Ressler
Ronald R. Rossi
Sarmad M. Khojasteh
Joshua Paul
MKasowitz@kasowitz.com
MRessler@kasowitz.com

40

RRossi@kasowitz.com
SKhojasteh@kasowitz.com
JPaul@kasowitz.com

*Attorneys for Claimants Optima Ventures,
LLC and Optima 55 Public Square, LLC*

Roche Cyrulnik Freedman LLP
200 S. Biscayne Blvd.
Suite 5500
Miami, Florida 33131
Telephone: (305) 851-5997

Velvel (Devin) Freedman
vel@rcfllp.com
*Attorneys for Claimants Optima Ventures,
LLC and Optima 55 Public Square, LLC*

# EXHIBIT 1

Click here for the Trade Guide

## Ukraine Bilateral Investment Treaty

Signed March 4, 1994; Entered into Force November 16, 1996

103D CONGRESS 2D Session

SENATE TREATY Doc. 103-37

INVESTMENT TREATY WITH UKRAINE

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

TREATY BETWEEN THE UNITED STATES OF AMERICA AND UKRAINE CONCERNING THE ENCOURAGEMENT AND RECIPROCAL PROTECTION OF INVESTMENT, WITH ANNEX, AND RELATED EXCHANGE OF LETTERS, DONE AT WASHINGTON ON MARCH 4, 1994

September 27, 1994 --Convention was read the first time and, together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

79-118 Washington : 1994

LETTER OF TRANSMITTAL

THE WHITE HOUSE, September 27, 1994.

To the Senate of the United States:

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty Between the United States of America and Ukraine Concerning the Encouragement and Reciprocal Protection of Investment, with Annex and related exchange of letters, done at Washington on March 4, 1994. Also transmitted for the information of the Senate is the report of the Department of State with respect to this Treaty.

This bilateral investment Treaty with Ukraine is the seventh such Treaty between the United States and a newly independent state of the former Soviet Union. This Treaty will protect U.S. investors and assist Ukraine in its efforts to develop its economy by creating conditions more favorable for U.S. private investment and thus strengthening the development of the private sector.

The Treaty is fully consistent with U.S. policy toward international and domestic investment. A specific tenet of U.S. policy, reflected in this Treaty, is that U.S. investment abroad and foreign investment in the United States should receive national treatment. Under this Treaty, the Parties also agree to international law standards for expropriation and compensation for expropriation; free transfer of funds associated with investment; freedom of investments from performance requirements; fair, equitable and most-favored-nation treatment; and the investor or investment's freedom to choose to resolve disputes with the host government through international arbitration.

I recommend that the Senate consider this Treaty as soon as possible, and give its advice and consent to ratification of the Treaty, with Annex, and related exchange of letters at an early date.

WILLIAM J. CLINTON.

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,

Washington, September 7,1994.

The PRESIDENT,

The White House.

THE PRESIDENT: I have the honor to submit to you the Treaty between the United States of America and Ukraine Concerning the Encouragement and Reciprocal Protection of Investment, with a related exchange of letters, signed at Washington on March 4, 1994. I recommend that this Treaty and exchange of letters be transmitted to the Senate for its advice and consent to ratification.

The bilateral investment treaty (BIT) with Ukraine was the seventh such treaty between the United States and a newly independent state of the former Soviet Union. The United States had previously concluded BITs with Russia, Armenia, Belarus Kazakhstan Kyrgyzstan, and Moldova; and has subsequently signed a treaty with Georgia. The Treaty is based on the view that an open investment policy contributes to economic growth. The Treaty will assist Ukraine in its efforts to develop its economy by creating conditions more favorable for U.S. private investment and thus strengthening the development of the private sector. It is U.S. policy, however, to ad-vise potential treaty partners during BIT negotiations that conclusion of a BIT does not necessarily result in immediate increases in private U.S. investment flows.

To date, nineteen BITs are in force for the United States--with Bangladesh, Bulgaria, Cameroon, the Congo, the Czech Republic, Egypt, Grenada, Kazakhstan, Kyrgyzstan, Morocco, Panama, Poland, Romania, Senegal, Slovakia, Sri Lanka, Tunisia, Turkey, and Zaire. In addition to the Treaty with Ukraine, the United States has signed, but not yet brought into force, BITs with Argentina, Armenia, Belarus, the Congo, Ecuador, Estonia, Georgia, Haiti, Jamaica, Moldova, and Russia.

The Office of the United States Trade Representative and the Department of State jointly led this BIT negotiation, with assistance from the Departments of Commerce and Treasury and the Overseas Private Investment Corporation.

THE U.S.-UKRAINE TREATY

The Treaty with Ukraine is based on the 1992 U.S. prototype BIT, and achieves all of the prototype's objectives, which are:

--All forms of U.S. investment in the territory of Ukraine are covered.

--Investments receive the better of national treatment or most-favored-nation (MFN) treatment both on establishment and thereafter, subject to certain specified exceptions.

--performance requirements may not be imposed upon or enforced against investments.

--Expropriation can occur only in accordance with international law standards; that is, for a public purpose; in a nondiscriminatory manner, in accordance with due process of law, and upon payment of prompt, adequate, and effective compensation.

--The unrestricted transfer, in a freely usable currency, of funds related to a covered investment is guaranteed.

--Investment disputes with the host government may be brought by investors, or by their subsidiaries, to binding international arbitration as an alternative to domestic courts.

The U.S.-Ukraine Treaty differs from the prototype in some respects. It eliminates Article VIII of the 1992 prototype text which had excluded from the dispute settlement provisions of the BIT those disputes arising under the export credit, guarantee or insurance programs of the Export-Import Bank of the United States, as well as those arising under any other such official programs pursuant to which the Parties agreed to other means of settling disputes. The Export-Import Bank, the Overseas Private Investment Corporation and other relevant government. agencies indicated prior to this negotiation that they saw no need to maintain such a provision.

The U.S.-Ukraine Treaty also differs from the prototype in that it includes provisions at Article I, paragraph 1 (f) and (g), and Article Il, paragraph 2, which clarify and extend the requirements of the Treaty with respect to state enterprises, and Article II, paragraph 11, which clarifies that investors should receive the better of national or MFN treatment with respect to activities associated with their investment. This new language is discussed in further detail in the article-by-article analysis of the Treaty below.

In addition, a related exchange of letters designates an office within Ukraine to assist U.S. nationals and companies. These elements are further described below.

The following is an article-by-article analysis of the provisions of the Treaty.

Preamble

The Preamble states the goals of the Treaty. The Treaty is premised on the view that an open investment policy leads to economic growth. These goals include economic cooperation, increased flow of capital, a stable framework for investment, development of respect for internationally-recognized worker rights, and maximum efficiency in the use of economic resources. While the Preamble does not impose binding obligations, its statement of goals may serve to assist in the interpretation of the Treaty.

Article I (Definitions)

Article I sets out definitions for terms used throughout the Treaty. As a general matter, they are designed to be broad and inclusive in nature.

Investment

The Treaty's definition of investment is broad, recognizing that investment can take a wide variety of forms. It covers investments that are owned or controlled by nationals or companies of one of the Treaty partners in the territory of the other. Investments can be made either directly or indirectly through one or more subsidiaries, including those of third countries. Control is not specifically defined in the Treaty. Ownership of over 50 percent of the voting stock of a company would normally convey control, but in many cases the requirement could be satisfied by less than that proportion.

The definition provides a non-exclusive list of assets, claims and rights that constitute investment. These include both tangible and intangible property, interests in a company or its assets, "a claim to money or performance having economic value, and associated with an investment," intellectual property rights, and any rights conferred by law or contract (such as government-issued licenses and permits). The requirement that a "claim to money" be associated with an investment excludes claims arising solely from trade transactions, such as a transaction involving only a cross-border sale of goods, from being considered investments covered by the Treaty.

Under paragraph 2 of Article I, either country may deny the benefits of the Treaty to investments by companies established in the other that are owned or controlled by nationals of a third country if (1) the company is a mere shell, without substantial business activities in the home country, or (2) the third country is one with which the denying Party does not maintain normal economic relations. For example, at this time the United States does not maintain normal economic relations with, inter alia, Cuba or Libya.

Paragraph 3 confirms that any alteration in the form in which an asset is invested or reinvested shall not affect its character as investment. For example, a change in the corporate form of an investment will not deprive it of protection under the Treaty.

Company

The definition of "company" is broad in order to cover virtually any type of legal entity, including any corporation, company, association, or other entity that is organized under the laws and regulations of a Party. The definition also ensures that companies of the Party that establish investments in the territory of the other Party have their investments covered by the Treaty, even if the parent company is ultimately owned by non-Party nationals, although the other Party may deny the benefits of the Treaty in the limited circumstances set forth in Article I, paragraph 2. Likewise, a company of a third country that is owned or controlled by nationals or company of a Party will also be covered. The definition also cover charitable and non-profit entities, as well as entities that are owned or controlled by the state.

National

The Treaty defines "national" as a natural person who is a national of a Party under its own laws. Under U.S. law, the term "national" is broader than the term "citizen;" for example, a native of American Samoa is a national of the United States, but not a citizen.

Return

"Return" is defined as "an amount derived from or associated with an investment." The Treaty provides a non-exclusive list of examples, including: profits; dividends; interest; capital gains; royalty payments, management, technical assistance or other fees; and returns in kind. The scope of this definition provides breadth to the Treaty's transfer provisions in Article IV.

Associated activities

The Treaty recognizes that the operation of an investment requires protections extending beyond the investment to numerous related activities. This definition provides an illustrative list of such investor activities, including operating a business facility, borrowing money, disposing of property, issuing stock and purchasing foreign exchange for imports. These activities are covered by Article II, paragraph 1, which guarantees the better of national or MFN treatment for investments and associated activities.

State enterprise

"State enterprise" is defined as an enterprise owned, or controlled through ownership interests, by a Party.

Delegation

"Delegation" is defined to include a legislative grant, government order, directive or other act which transfers governmental authority to a state enterprise or authorizes a state enterprise to exercise such authority.

The definitions of "state enterprise" and "delegation" are included to clarify the scope of the obligations of Article II, paragraph 2, which provides that any governmental authority delegated to a state enterprise by a Party must be exercised in a manner consistent with the Party's obligations under the Treaty.

Article Il (Treatment)

Article II contains the Treaty's major obligations with respect to the treatment of investment.

Paragraph I generally ensures the better of MFN or national treatment in both the entry and post-entry phases of investment. It thus prohibits both the screening of proposed foreign investment on the basis of nationality and discriminatory measures once the investment has been made, subject to specific exceptions provided for in a separate Annex. The United States and Ukraine have both reserved certain exceptions in the Annex to the Treaty, the provisions of which are discussed in the section entitled "Annex."

Paragraph 2 is designed to ensure that a Party cannot utilize state-owned or controlled enterprises to circumvent its obligations under the Treaty. To this end, it requires each Party to observe its treaty obligations even when it chooses, for administrative or other reasons, to assign some portion of its authority to a state enterprise, such as the power to expropriate, grant licenses, approve commercial transactions, or impose quotas, fees or other charges. Paragraph 2 also supports competitive equality for investments by requiring that a Party ensure that state enterprises accord the better of national or MFN treatment in the sale of its goods or services in the Party's territory.

Paragraph 3 guarantees that investment shall be granted "fair and equitable" treatment. It also prohibits Parties from impairing through arbitrary or discriminatory means, the management, operation, maintenance, use, enjoyment, acquisition, expansion or disposal of investment. This paragraph sets out a minimum standard of treatment based on customary international law.

In paragraph 3(c), each Party pledges to respect any obligations it may have entered into with respect to investments. Thus, in dispute settlement under Articles VI or VII, a Party would be foreclosed from arguing, on the basis of sovereignty, that it may unilaterally ignore its obligations to such investments.

Paragraph 4 allows, subject to each Party's immigration laws and regulations, the entry of each Party's nationals into the territory of the other for purposes linked to investment and involving the commitment of a "substantial amount of capital." This paragraph serves to render nationals of a BIT partner eligible for treaty-investor visas under U.S. immigration law and guarantees similar treatment for U.S. investors.

Paragraph 5 guarantees companies the right to engage top managerial personnel of their choice, regardless of nationality.

Under paragraph 6, neither Party may impose performance requirements such as those conditioning investment on the export of goods produced or the local purchase of goods or services. Such requirements are major burdens on investors.

Paragraph 7 provides that each Party must provide effective means of asserting rights and claims with respect to investment, investment agreements and any investment authorizations. Under paragraph 8, each Party must make publicly available all laws, administrative practices and adjudicatory procedures pertaining to or affecting investments,

Paragraph 9 recognizes that under the U.S. federal system States of the United States may, in some instances, treat out-of-State residents and corporations in a different manner than they treat in-State residents and corporations. The Treaty provides that the national treatment commitment, with respect to the States, means treatment no less favorable than that provided to U.S. out-of-State residents and corporations.

Paragraph 10 limits the Article's MFN obligation by providing that it will not apply to advantages accorded by either Party to third countries by virtue of a Party's membership in a free trade area or customs union or a future multilateral agreement under the auspices of the General Agreement on Tariffs and Trade (GATT). The free trade area exception in this Treaty is analogous to the exception provided for with respect to trade in the GATT.

Paragraph 11 is designed to avoid problems that U.S. businesses may face in emerging market economies. This provision spells out that nationals and companies of either Party receive the better of national or MFN treatment with respect to a detailed list of activities associated with their investments.

Article III (Expropriation)

Article III incorporates into the Treaty the international law standards for expropriation and compensation.

Paragraph 1 describes the general rights of investors and obligations of the Parties with respect to expropriation and nationalization. These rights also apply to direct or indirect state measures "tantamount to expropriation or nationalization," and thus apply to "creeping expropriations" that result in a substantial deprivation of the benefit of an investment without taking of the title to the investment.

Paragraph 1 further bars all expropriations or nationalizations except those that are for a public purpose, carried out in a non-discriminatory manner; subject to prompt, adequate, and effective compensation"; subject to due process; and accorded the treatment provided in the standards of Article II (3). (These standards guarantee fair and equitable treatment and prohibit the arbitrary and discriminatory impairment of investment in its broadest sense.)

The second sentence of paragraph 1 clarifies the meaning of "prompt, adequate, and effective compensation." Compensation must be equivalent to the fair market value of the expropriated investment immediately before the expropriatory action was taken or became known (whichever is earlier); be paid without delay; include interest at a commercially reasonable rate from the date of expropriation; be fully realizable; be freely transferable; and be calculated in a freely usable currency on the basis of the prevailing market rate of ex change.

Paragraph 2 entitles an investor claiming that an expropriation has occurred to prompt judicial or administrative review of the claim in the host country, including a determination of whether the expropriation and any compensation conform to international law.

Paragraph 3 entitles investors to the better of national or MFN treatment with respect to losses related to war or civil disturbances, but, unlike paragraph 1, does not specify an absolute obligation to pay compensation for such losses.

Article IV (Transfers)

Article IV protects investors from certain government exchange controls limiting current account and capital account transfers.

In paragraph 1, the Parties agree to permit "transfers related to an investment to be made freely and without delay into and out of its territory." Paragraph I also provides a non-exclusive list of transfers that must be allowed, including returns (as defined in Article I); payments made in compensation for expropriation (as defined in Article III); payments arising out of an investment dispute; payments made under a contract, including the amortization of principal and interest payments on a loan; proceeds from the liquidation or sale of all or part of an investment; and additional contributions to capital for the maintenance or development of an investment.

Paragraph 2 provides that transfers are to be made in a "freely usable currency" at the prevailing market rate of exchange on the date of transfer with respect to spot transactions in the currency to be transferred. "Freely usable" is a standard of the International Monetary Fund; at present there are five such "freely usable" currencies: the U.S. dollar, Japanese yen, German mark, French franc and British pound sterling.

Paragraph 3 recognizes that notwithstanding these guarantees, Parties may maintain certain laws or obligations that could affect transfers with respect to investments. It provides that the Parties may require reports of currency transfers and impose income tax by such means as a withholding tax on dividends. It also recognizes that Parties may protect the rights of creditors and ensure the satisfaction of judgments in adjudicatory proceedings through the laws, even if such measures interfere with transfers. Such laws must be applied in an equitable, nondiscriminatory and good faith manner.

Article V (State-State consultations)

Article V provides for prompt consultation between the Parties at either Party's request, on any matter relating to the interpretation or application of the Treaty.

Article VI (State-investor dispute resolution)

Article VI sets forth several means by which disputes between investor and the host country may be settled.

Article VI procedures apply to an "investment dispute," a term which covers any dispute arising out of or relating to an investment authorization, an agreement between the investor and host government, or to rights granted by the Treaty with respect to an investment.

When a dispute arises Article VI paragraph 2, provides that disputants should initially seek to resolve the dispute by consultation and negotiation, which may include non-binding third party procedures. Should such consultations fail, paragraphs 2 and 3 set forth the investor's range of choices of dispute settlement. Paragraph 2 permits the investor to make an exclusive and irrevocable choice to: (1) Employ one of the several arbitration procedures outlined in the Treaty; (2) submit the dispute to procedures previously agreed upon by the investor and the host country government for an investment agreement or otherwise; or (3) submit the dispute to the local courts or administrative tribunals of the host country.

Under paragraph 3, if the investor has not submitted the dispute under the procedures in paragraph 2 and six months have elapsed from the date the dispute arose, the investor may consent of submission of the dispute for binding arbitration by either the International Centre for the Settlement of Investment Disputes (ICSID)(if the host country has Joined the Centre--otherwise the ICSID Additional Facility is available) or ad hoc arbitration using the arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL). Paragraph 3 also recognizes that, by mutual agreement, the parties to the dispute may choose another arbitral institution or set of arbitral rules.

Paragraph 4 contains the consent of the United States and Ukraine to the submission of investment disputes for binding arbitration in accordance with the choice of the investor.

Paragraph 5 provides that a non-ICSID arbitration shall take place in a country that is a party to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. This requirement enhances the ability of investors to enforce their arbitral awards. In addition, paragraph 6 includes a separate commitment by each Party to enforce arbitral awards rendered pursuant to Article VI procedures.

Paragraph 7 provides that in any dispute settlement procedure, a Party may not invoke as a defense, counterclaim, set-off or in any other manner the fact that the company or national has received or will be reimbursed for the same damages under an insurance or guarantee contract.

Paragraph 8 is included in the Treaty to ensure that ICSID arbitration will be available for investors making investments in the form of companies created under the laws of the Party with which there is a dispute.

Article VII (State-State arbitration)

Article VII provides for binding arbitration of disputes between the United States and Ukraine that are not resolved through consultations or other diplomatic channels. The article constitutes each Party's prior consent to arbitration. It provides for the selection of arbitrators, establishes time limits for submissions, and requires the Parties to bear the costs equally unless otherwise directed by the Tribunal.

Article VIII (Preservation of rights)

Article VIII clarifies that the Treaty is meant only to establish a floor for the treatment of foreign investment. An investor may be entitled to more favorable treatment through domestic legislation, other international legal obligations, or a specific obligation assumed by a Party with respect to that

investor. This provision ensures that the Treaty will not be interpreted to derogate from any entitlement to such more favorable treatment.

Article IX (Measures not precluded)

Paragraph 1 of Article IX reserves the right of a Party to take measures for the maintenance of public order and the fulfillment of its obligations with respect to international peace and security, as well as those measures it regards as necessary for the protection of its own essential security interests. These provisions are common in international investment agreements.

The maintenance of public order would include measures taken pursuant to a Party's police powers to ensure public health and safety. International obligations with respect to peace and security would include, for example, obligations arising out of Chapter VII of the United Nations Charter. Measures permitted by the provision on the protection of a Party's essential security interests would include security-related actions taken in a time of war or national emergency; actions not arising from a state of war or national emergency must have a clear and direct relationship to the essential security interest of the Party involved.

The second paragraph allows a Party to promulgate special formalities in connection with the establishment of investment, provided that the formalities do not impair the substance of any Treaty rights. Such formalities would include, for example, U.S. reporting requirements for certain inward investment.

Article X (Tax policies)

Paragraph 1 exhorts both countries to provide fair and equitable treatment to investors with respect to tax policies. However, matters are generally excluded from the coverage of the Treaty based on the assumption that tax matters are properly covered by bilateral tax treaties.

The Treaty, and particularly the dispute settlement provisions do apply to tax matters in three areas, to the extent they are not subject to the dispute settlement provisions of a tax treaty, or if so subject, have been raised under a tax treaty dispute settlement procedures and are not resolved in a reasonable period of time.

Pursuant to paragraph 2, the three areas where the Treaty could apply to tax matters are expropriation (Article III), transfers (Article IV) and the observance and enforcement of terms of an investment agreement or authorization (Article VI(1) (a) or (b)). These three areas are important for investors, and two of the three--expropriatory taxation and tax provisions contained in an investment agreement or authorization---are not typically addressed by tax treaties.

Article XI (Application to political subdivisions)

Article XI makes clear that the obligations of the Treaty are applicable to all political subdivisions of the Parties, such as provincial, state and local governments.

Article XII (Entry into force, duration and termination)

The Treaty enters into force thirty days after exchange of instruments of ratification and continues in force for a period of ten years. From the date of its entry into force, the Treaty applies to existing and future investments. After the ten-year term, the Treaty will continue in force unless terminated by either Party upon one year's notice. If the Treaty is terminated, all existing investments would continue to be protected under the Treaty for ten years thereafter.

Annex

U.S. bilateral investment treaties allow for sectoral exceptions from national and MFN treatment. The US. exceptions are designed to protect governmental regulatory interests and to accommodate the derogations from national treatment and, in some cases, MFN treatment in existing federal law.

The U.S. portion of the Annex contains a list of sectors and matters in which, for legal and historical reasons, the federal government or the States may not necessarily treat investments of nationals or companies of the other Party as they do U.S. investments or investments from a third country. The U.S. exceptions from national treatment are: air transportation; ocean and coast shipping; banking; insurance; government grants; government insurance and loan programs; energy and power production; custom house brokers; ownership of real property; ownership and operation of broadcast or common carrier radio and television stations; ownership of shares in the Communications Satellite Corporation; the provision of common carrier telephone and telegraph services; the provision of

submarine cable services; use of land and natural resources; mining on the public domain; maritime and maritime-related services; and primary dealership in U.S. government securities.

Ownership of real property, mining on the public domain, maritime and maritime-related services and primary dealership in U.S. government securities are excluded from MFN as well as national treatment commitments. The last three sectors are exempted by the United States from MFN treatment obligations because of U.S. laws that require reciprocity. Enforcement of reciprocity provisions could deny both national and MFN treatment.

The listing of a sector does not necessarily signify that domestic laws have entirely reserved it for nationals. Future restrictions or limitations on foreign investment are only permitted in the sectors listed; must be made on an MFN basis, unless otherwise specified in the Annex; and must be appropriately notified. Any additional restrictions or limitations which a Party may adopt with respect to listed sectors may not affect existing investments.

Ukraine's exceptions to national treatment are: production of equipment used exclusively for nuclear power plants; maritime transportation, including ocean and coastal shipping; air transportation; nuclear electric energy generation; privatization of those educational, sports, medical and scientific facilities financed by the national budget; mining of salt; mining and processing of rare earth, uranium and other radioactive elements; ownership and operation of television and radio broadcasting stations; and ownership of land. These exceptions were based on provisions of investment measures currently in force or under active consideration by the Government of Ukraine. Ukraine has not reserved any sectoral exceptions to MFN treatment in the Annex.

Exchange of letters

In an exchange of letters at the time the Treaty was signed, Ukraine explicitly designates the Administration for Investment Cooperation of the Ministry of Foreign Economic Relations of Ukraine and the Department of Foreign Investments and Credits in the Ministry of Economy of Ukraine to assist U.S. nationals and companies in obtaining the full benefits of the Treaty.

The other U.S. Government agencies which negotiated the Treaty join me in recommending that it be transmitted to the Senate at an early date.

Respectfully submitted,

WARREN CHRISTOPHER

TREATY BETWEEN THE UNITED STATES OF AMERICA AND

UKRAINE

CONCERNING THE ENCOURAGEMENT

AND RECIPROCAL PROTECTION OF INVESTMENT

The United States of America and the Ukraine (hereinafter the "Parties");

Desiring to promote greater economic cooperation between them, with respect to investment by nationals and companies of one Party in the territory of the other Party;

Recognizing that agreement upon the treatment to be accorded such investment will stimulate the flow of private capital and the economic development of the Parties;

Agreeing that fair and equitable treatment of investment is desirable in order to maintain a stable framework for investment and maximum effective utilization of economic resources;

Recognizing that the development of economic and business ties can contribute to the well-being of workers in both Parties and promote respect for internationally recognized worker rights; and

Having resolved to conclude a Treaty concerning the encouragement and reciprocal protection of investment;

Have agreed as follows:

ARTICLE I

1. For the purposes of this Treaty,

(a) "investment" means every kind of investment in the territory of one Party owned or controlled directly or indirectly by nationals or companies of the other Party, such as equity, debt, and service and investment contracts; and includes:

(i) tangible and intangible property, including rights, such as mortgages, liens and pledges;

(ii) a company or shares of stock or other interests in a company or interests in the assets thereof;

(iii) a claim to money or a claim to performance having economic value, and associated with an investment;

(iv) intellectual property which includes, inter alia, rights relating to:

literary and artistic works, including sound recordings, inventions in all fields of human endeavor, industrial designs, semiconductor mask works, trade secrets, know-how, and confidential business information, and trademarks, service marks, and trade names; and

(v) any right conferred by law or contract, and any licenses and permits pursuant to law;

(b) "company" of a Party means any kind of corporation, company, association, enterprise, partnership, or other organization, legally constituted under the laws and regulations of a Party or a political subdivision thereof whether or not organized for pecuniary gain, or privately or governmentally owned or controlled;

(c) "national," of a Party means a natural person who is a national of a Party under its applicable law;

(d) "return" means an amount derived from or associated with an investment, including profit; dividend; interest; capital gain; royalty payment; management, technical assistance or other fee; or returns in kind;

(e) "associated activities" include the organization, control, operation, maintenance and disposition of companies, branches, agencies, offices, factories or other facilities for the conduct of business; the making, performance and enforcement of contracts; the acquisition, use, protection and disposition of property of all kinds including intellectual property rights; the borrowing of funds; the purchase, issuance, and sale of equity shares and other securities; and the purchase of foreign exchange for imports;

(f) "state enterprise" means an enterprise owned, or controlled through ownership interests, by a Party; and

(g) "delegation" includes a legislative grant, and a government order, directive or other act transferring to a state enterprise or monopoly, or authorizing the exercise by a state enterprise or monopoly of, governmental authority.

2. Each Party reserves the right to deny to any company the advantages of this Treaty if nationals of any third country control such company and, in the case of a company of the other Party, that company has no substantial business activities in the territory of the other Party or is controlled by nationals of a third country with which the denying Party does not maintain normal economic relations.

3. Any alteration of the form in which assets are invested or reinvested shall not affect their character as investment.

ARTICLE II

1. Each Party shall permit and treat investment, and activities associated therewith, on a basis no less favorable than that accorded in like situations to investment or associated activities of its own nationals or companies, or of nationals or companies of any third country, whichever is the most favorable, subject to the right of each Party to make or maintain exceptions falling within one of the sectors or matters listed in the Annex to this Treaty. Each Party agrees to notify the other Party before or on the date of entry into force of this Treaty of all such laws and regulations of which it is aware concerning the sectors or matters listed in the Annex. Moreover, each Party agrees to notify the other of any future exception with respect to the sectors or matters listed in the Annex, and to limit such exceptions to a minimum. Any future exception by either Party shall not apply to investment existing in that sector or matter at the time the exception becomes effective. The treatment accorded pursuant to any exceptions shall, unless specified otherwise in the Annex, be not less favorable than that accorded in like situations to investments and associated activities of nationals or companies of any third country.

2. (a) Nothing in this Treaty shall be construed to prevent a Party from maintaining or establishing a state enterprise.

(b) Each Party shall ensure that any state enterprise that it maintains or establishes acts in a manner that is not inconsistent with the Party's obligations under this Treaty wherever such enterprise exercises any regulatory, administrative or other governmental authority that the Party has delegated to it, such as the power to expropriate, grant licenses, approve commercial transactions, or impose quotas, fees or other charges.

(c) Each Party shall ensure that any state enterprise that it maintains or establishes accords the better of national or most favored nation treatment in the sale of its goods or services in the Party's territory.

3. (a) Investment shall at all times be accorded fair and equitable treatment, shall enjoy full protection and security and shall in no case be accorded treatment less than that required by international law.

(b) Neither Party shall in any way impair by arbitrary or discriminatory measures the management, operation, maintenance, use, enjoyment, acquisition, expansion, or disposal of investments. For purposes of dispute resolution under Article 3 VI and VII, a measure may be arbitrary or discriminatory notwithstanding the fact that a Party has had or has exercised the opportunity to review such measure in the courts or administrative tribunals of a Party.

(c) Each Party shall observe any obligation it may have entered into with regard to investments.

4. Subject to the laws relating to the entry and sojourn of aliens, nationals of either Party shall be permitted to enter and to remain in the territory of the other Party for the purpose of establishing, developing, administering or advising on the operation of an investment to which they, or a company of the first Party that, employs them, have committed or are in the process of committing a substantial amount of capital or other resources.

5. Companies which are legally constituted under the applicable laws or regulations of one Party, and which are investments, shall be permitted to engage top managerial personnel of their choice, regardless of nationality.

6. Neither Party shall impose performance requirements as condition of, establishment, expansion or maintenance of investments, which require or enforce commitments to export goods produced, or which specify that goods or services must purchased locally, or which impose any other similar requirements.

7. Each Party shall provide effective means of asserting claims and enforcing rights with respect to investment, investment agreements, and investment authorizations.

8. Each Party shall make public all laws, regulations, administrative practices and procedures, and adjudicatory decisions that pertain to or affect investments.

9. The treatment accorded by the United States of America to investments and associated activities of nationals and companies of Ukraine under the provisions of this Article shall in any State, Territory or possession of the United States of America be no less favorable than the treatment accorded therein to investments and associated activities of nationals of the United States of America resident in, and companies legally constituted under the laws and regulations of other States, Territories or possessions of the United States of America.

10. The most favored nation provisions of this Treaty shall not apply to advantages accorded by either Party to nationals or companies of any third country by virtue of:

(a) that Party's binding obligations that derive from full membership in a free trade area or customs union; or

(b) that Party's binding obligations under any multilateral international agreement under the framework of the General Agreement on Tariffs and Trade that enters into force subsequent to the signature of this Treaty.

11. The Parties acknowledge and agree that "associated" activities, include without limitation, such activities as:

(a) the granting of franchises or rights under licenses;

(b) access to registrations, licenses, permits and other approvals (which shall in any event be issued expeditiously);

(c) access to financial institutions and credit markets;

(d) access to their funds held in financial institutions;

(e) the importation and installation of equipment necessary for the normal conduct of business affairs, including but not limited to, office equipment and automobiles, and the export of any equipment and automobiles so imported;

(f) the dissemination of commercial information;

(g) the conduct of market studies;

(h) the appointment of commercial representatives, including agents, consultants and distributors and their participation in trade fairs and promotion events;

(i) the marketing of goods and services, including through internal distribution and marketing systems, as well as by advertising and direct contact with individuals and companies;

(j) access to public utilities, public services and commercial rental space at nondiscriminatory prices, if the prices are set or controlled by the government; and

(k) access to raw materials, inputs-and services of all types at nondiscriminatory prices, if the prices are set or controlled by the government.

ARTICLE III

1. Investments shall not be expropriated or nationalized either directly or indirectly through measures tantamount to expropriation or nationalization ("expropriation") except: for public purpose; in a nondiscriminatory manner; upon payment of prompt, adequate and effective compensation; and in accordance with due process of law and the general principles of treatment provided for in Article II(2). Compensation shall be equivalent to the fair market value of the expropriated investment immediately before the expropriatory action was taken or became known, whichever is earlier; be calculated in a freely usable currency on the basis of the prevailing market rate of exchange at that time; be paid without delay; include interest at a commercially reasonable rate, such as LIBOR plus an appropriate margin, from the date of expropriation; be fully realizable; and be freely transferable.

2. A national, or company of either Party that asserts that all or part of its investment has been expropriated shall have a right to prompt review by the appropriate judicial or administrative authorities of the other Party to determine whether any such expropriation has occurred and, if so, whether such expropriation, and any associated compensation, conforms to the principles of international law.

3. Nationals or companies of either Party whose investments suffer losses in the territory of the other Party owing to war or other armed conflict, revolution, state of national emergency, insurrection, civil disturbance or other similar events shall be accorded treatment by such other Party no less favorable than that accorded to its own nationals or companies or to nationals or companies of any third country, whichever is the most favorable treatment, as regards any measures it adopts in relation to such losses.

ARTICLE IV

1. Each Party shall permit all transfers related to an investment to be made freely and without delay into and out of its territory. Such transfers include: (a) returns; (b) compensation pursuant to Article III; (c) payments arising out of an investment dispute; (d) payments made under a contract, including amortization of principal and accrued interest payments made pursuant to a loan agreement; (e) proceeds from the sale or liquidation of all or any part of an investment; and (f) additional contributions to capital for the maintenance or development of an investment.

2. Transfers shall be made in a freely usable currency at the prevailing market rate of exchange on the date of transfer with respect to spot transactions in the currency to be transferred.

3. Notwithstanding the provisions of paragraphs I and 2, either Party may maintain laws and regulations (a) requiring reports of currency transfer; and (b) imposing income taxes by such means as a withholding tax applicable to dividends or other transfers. Furthermore, either Party may protect the rights of creditors, or ensure the satisfaction of judgments in adjudicatory proceedings, through the equitable, nondiscriminatory and good faith application of its law.

ARTICLE V

The Parties agree to consult promptly, on the request of either, to resolve any disputes in connection with the Treaty, or to discuss any matter relating to the interpretation or application of the Treaty.

ARTICLE VI

1. For purposes of this Article, an investment dispute is a dispute between a Party and a national or company of the other Party arising out of or relating to (a) an investment agreement between that Party and such national or company; (b) an investment authorization granted by that Party's foreign investment authority to such national or company; or (c) an alleged breach of any right conferred or created by this Treaty with respect to an investment.

2. In the event of an investment dispute, the parties to the dispute should initially seek a resolution through consultation and negotiation. If the dispute cannot be settled amicably, the national or company concerned may choose to submit the dispute for resolution:

(a) to the courts or administrative tribunals of the Party that in a Party to the dispute; or

(b) in accordance with any applicable, previously agreed dispute-settlement procedures; or

(c) in accordance with the terms of paragraph 3.

3. (a) Provided that the national or company concerned has not submitted the dispute for resolution under paragraph 2 (a) or (b) and that six months have elapsed from the date on which the dispute arose, the national or company concerned may choose to consent in writing to the submission of the dispute for settlement by binding arbitration:

(i) to the International Centre for the Settlement of Investment Disputes ("Centre") established by the Convention on the Settlement of Investment Disputes between States and Nationals of other States, done at Washington, March 18, 1965 ("ICSID Convention"), provided that the Party is a Party to such Convention; or

(ii) to the Additional Facility of the Centre, if the Centre is not available; or

(iii) in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL); or

(iv) to any other arbitration institution, or in accordance with any other arbitration rules, as may be mutually agreed between the parties to the dispute.

(b) once the national or company concerned has so consented, either Party to the dispute may initiate arbitration in accordance with the choice so specified in the consent.

4. Each Party hereby consents to the submission of any investment dispute for settlement by binding arbitration in accordance with the choice specified in the written consent of the national or company under paragraph 3. Such consent, together with the written consent of the national or company when given under paragraph 3 shall satisfy the requirement for:

(a) written consent of the parties to the dispute for purposes of Chapter II of the ICSID Convention (Jurisdiction of the Center) and for purposes of the Additional Facility Rules; and

(b) an "agreement in writing," for purposes of Article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, June 10, 1958 ("New York Convention").

5. Any arbitration under paragraph 3(a)(ii), (iii) or (iv) of this Article shall be held in a state that is a Party to the New York Convention.

6. Any arbitral award rendered pursuant to this Article shall be final and binding on the parties to the dispute. Each Party undertakes to carry out without delay the provisions of any such award and to provide in its territory for its enforcement.

7. In any proceeding involving an investment dispute, a Party shall not assert, as a defense, counterclaim, right of set-off or otherwise, that the national or company concern ad has received or will receive, pursuant to an insurance or guarantee contract, indemnification or other compensation for all or part of its alleged damages.

8. For purposes of an arbitration held under paragraph 3 of this Article, any company legally constituted under the applicable laws and regulations of a Party or a political subdivision thereof but that, immediately before the occurrence of the event or events giving rise to the dispute, was an

investment of nationals or companies of the other Party, shall be treated as a national or company of such other Party in accordance with Article 25(2)(b) of the ICSID Convention.

ARTICLE VII

1. Any dispute between the Parties concerning the interpretation or application of the Treaty which is not resolved through consultations or other diplomatic channels, shall be submitted, upon the request of either Party, to an arbitral tribunal for binding decision in accordance with the applicable rules of international law. In the absence of an agreement by the Parties to the contrary, the arbitration rules of the United Nations Commission on International Trade Law (UNCITRAL), except to the extent modified by the Parties or by the arbitrators, shall govern.

2. Within two months of receipt of a request, each Party shall appoint an arbitrator. The two arbitrators shall select a third arbitrator as Chairman, who is a national of a third State. The UNCITRAL Rules for appointing members of three member panels shall apply mutatis mutandis to the appointment of the arbitral panel except that the appointing authority referenced in those rules shall be the Secretary General of the Centre.

3. Unless otherwise agreed, all submissions shall be made and all hearings shall be completed within six months of the date of selection of the third arbitrator, and the Tribunal shall render its decisions within two months of the date of the final submissions or the date of the closing of the hearings, whichever is later.

4. Expenses incurred by the Chairman, the other arbitrators, and other costs of the proceedings shall be paid for equally by the Parties. The Tribunal may, however, at its discretion, direct that a higher proportion of the costs be paid by one of the Parties.

ARTICLE VIII

This Treaty shall not derogate from:

(a) laws and regulations, administrative practices or procedures, or administrative or adjudicatory decisions of either Party;

(b) international legal obligations; or

(c) obligations assumed by either Party, including those contained in an investment agreement or an investment authorization, that entitle investments or associated activities to treatment more favorable than that accorded by this Treaty in like situations.

ARTICLE IX

1. This Treaty shall not preclude the application by either Party of measures necessary for the maintenance of public order, the fulfillment of its obligations with respect to the maintenance or restoration of international peace or security, or the protection of its own essential security interests.

2. This Treaty shall not preclude either Party from prescribing special formalities in connection with the establishment of investments, but such formalities shall not impair the substance of any of the rights set forth in this Treaty.

ARTICLE X

1. With respect to its tax policies, each Party should strive to accord fairness and equity in the treatment of investment of nationals and companies of the other Party.

2. Nevertheless, the provisions of this Treaty, and in particular Article VI and VII, shall apply to matters of taxation only with respect to the following:

(a) expropriation, pursuant to Article III;

(b) transfers, pursuant to Article IV; or

(c) the observance and enforcement of terms of an investment agreement or authorization as referred to in Article VI (1) (a) or (b), to the extent they are not subject to the dispute settlement provisions of a Convention for the avoidance of double taxation between the two Parties, or have been raised under such settlement provisions and are not resolved within a reasonable period of time.

ARTICLE XI

This Treaty shall apply to the political subdivisions of the Parties.

ARTICLE XII

1. This Treaty shall enter into force thirty days after the date of exchange of instruments of ratification. It shall remain in force for a period of ten years and shall continue in force unless terminated in accordance with paragraph 2 of this Article. It shall apply to investments existing at the time of entry into force as well as to investments made or acquired thereafter.

2. Either Party may, by giving one year's written notice to the other Party, terminate this Treaty at the end of the initial ten year period or at any time thereafter.

3. With respect to investments made or acquired prior to the date of termination of this Treaty and to which this Treaty otherwise applies, the provisions of all of the other Articles of this Treaty shall thereafter continue to be effective for a further period of ten years from such date of termination.

4. The Annex shall form an integral part of the Treaty.

IN WITNESS WHEREOF, the respective plenipotentiaries have signed this Treaty.

DONE in duplicate at Washington, this fourth day of March, 1994 in the English and Ukranian languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA:

FOR THE REPUBLIC OF UKRAINE

ANNEX

1. The United States reserves the right to make or maintain limited exceptions to national treatment, as provided in Article II, paragraph 1, in the sectors or matters it has indicated below:

air transportation; ocean and coastal shipping; banking; insurance; government-grants; government insurance and loan programs; energy and power production; custom house brokers; ownership of real property; ownership and operation of broadcast or common carrier radio and television stations; ownership of shares in the Communications Satellite Corporation; the provision of common carrier telephone and telegraph services; the provision of submarine cable services; use of land and natural resources; mining on the public domain; maritime services and maritime-related services; and primary dealership in United States government securities.

2. The United States reserves the right to make or maintain limited exceptions to most favored nation treatment, as provided in Article II, paragraph 1, in the sectors or matters it has indicated below:

ownership of real property; mining on the public domain; maritime services and maritime-related services; and primary dealership in United States government securities.

3. Ukraine reserves the right to make or maintain limited exceptions to national treatment, as provided in Article II, paragraph 1, in the sectors or matters it has indicated below:

production of equipment used exclusively for nuclear power plants; maritime transportation including ocean and coastal shipping; air transportation; nuclear electric energy generation; privatization of those educational, sports, medical and scientific facilities financed by the national budget; mining of salt; mining and processing of rare earch, and of uranium and other television and radioactive elements; ownership and operation of television and radio broadcasting stations; and ownership of land.

DEPUTY UNITED STATES TRADE REPRESENTATIVE

EXECUTIVE OFFICE OF THE PRESIDENT

WASHINGTON, DC 20506

March 4, 1994

Dear Mr. Minister:

I have the honor to confirm receipt of your letter which reads as follows:

"I have the honor to confirm the following understanding which was reached between the Government of the United States of America and the Government of Ukraine in the course of negotiations of the Treaty Concerning the Encouragement and Reciprocal Protection of Investment (the "Treaty"):

The Government of Ukraine agrees to designate an office to assist U.S. nationals and companies in deriving the full benefits of the Treaty in connection with their investment and related activities.

--The office will serve as the coordinator and problem solver for investors experiencing difficulties with registration, licensing, access to utilities, regulatory and other matters.

-- The office will provide the following types of services:

-- Information on current national and local business/investment regulations, including licensing and registration procedures, taxation, labor regulations, accounting standards, and access to credit.

-- A notification procedure on proposed regulatory or legal changes affecting investors with circulation of notices on regulatory changes put into force.

-- Coordination with Ukraine Government agencies at the national and local level to facilitate investment and resolve disputes.

-- Identification and dissemination of information on investment projects and their sources of finance.

-- Assistance to investors experiencing difficulties with repatriating profits and obtaining foreign exchange.

His Excellency

Roman Shpek

Minister of Economy of Ukraine

I understand that the offices designated by the Government of Ukraine to assist U.S. nationals and companies in accordance with this letter are the Administration for Investment Cooperation of the Ministry of Foreign Economic Relations of Ukraine and the Department of Foreign Investments and Credits of the Ministry of the Economy of Ukraine.

I have the honor to propose that this understanding be treated as an integral part of the Treaty.

I would be grateful if you would confirm that this understanding is shared by your government.

I have the further honor to confirm that this understanding is shared by my Government and constitutes an integral part of the Treaty.

Sincerely,

Rufus Yerxa

# EXHIBIT 2

United States Bilateral Investment Treaties - United States Department of State    Page 1 of 8
Case 1:20-cv-25313-MGC    Document 26-2    Entered on FLSD Docket 02/19/2021    Page 60 of
276

An official website of the United States government    Here's how you know

Press

Menu

Business 

**Menu**

Employees

Job Seekers

**BILATERAL INVESTMENT TREATIES AND RELATED AGREEMENTS**

Students

★ ★ ★

Travelers

# United States Bilateral Investment Treaties

**DIVISION FOR INTERNATIONAL FINANCE AND DEVELOPMENT
BUREAU OF ECONOMIC AND BUSINESS AFFAIRS**

Share ⌁

| Country | Date of Signature | Date Entered Into Force |
|---|---|---|
| **Albania**  | January 11, 1995 | January 4, 1998 |
| **Argentina** | November 14, 1991 | October 20, 1994 |
| **Armenia** | September 23, 1992 | March 29, 1996 |

| **Azerbaijan** | August 1, 1997 | August 2, 2001 |
| **Bahrain** | September 29, 1999 | May 30, 2001 |
| **Bangladesh** | March 12, 1986 | July 25, 1989 |
| Belarus | January 15, 1994 | N/A[1] |
| **Bolivia** | April 17, 1998 | June 6, 2001 (see Note 7) |
| **Bulgaria** | September 23, 1992 | June 2, 1994 |
| **Cameroon** | February 26, 1986 | April 6, 1989 |
| **Congo, Democratic Republic of the** [2] | August 3, 1984 | July 28, 1989 |
| **Congo, Republic of the (Brazzaville)** | February 12, 1990 | August 13, 1994 |
| **Croatia** | July 13, 1996 | June 20, 2001 |
| **Czech Republic** [3] | October 22, 1991 | December 19, 1992 |
| **Ecuador** | August 27, 1993 | May 11, 1997 (see Note 8) |
| **Egypt** | March 11, 1986 | June 27, 1992 |
| El Salvador | March 10, 1999 | N/A[1] |

| **Estonia** | April 19, 1994 | February 16, 1997 |
|---|---|---|
| **Georgia** | March 7, 1994 | August 17, 1997 |
| **Grenada** | May 2, 1986 | March 3, 1989 |
| Haiti | December 13, 1983 | N/A[4] |
| **Honduras** | July 1, 1995 | July 11, 2001 |
| **Jamaica** | February 4, 1994 | March 7, 1997 |
| **Jordan** | July 2, 1997 | June 12, 2003 |
| **Kazakhstan** | May 19, 1992 | January 12, 1994 |
| **Kyrgyzstan** | January 19, 1993 | January 12, 1994 |
| **Latvia** | January 13, 1995 | December 26, 1996 |
| **Lithuania** | January 14, 1998 | November 22, 2001 |
| **Moldova** | April 21, 1993 | November 25, 1994 |
| **Mongolia** | October 6, 1994 | January 1, 1997 |
| **Morocco** | July 22, 1985 | May 29, 1991 |
| **Mozambique** | December 1, 1998 | March 3, 2005 |

United States Bilateral Investment Treaties - United States Department of State     Page 4 of 8
Case 1:20-cv-25313-MGC    Document 26-2    Entered on FLSD Docket 02/19/2021    Page 63 of
276

| | | |
|---|---|---|
| Nicaragua | July 1, 1995 | N/A[6] |
| Panama | October 27, 1982 | May 30, 1991 |
| Poland | March 21, 1990 | August 6, 1994 |
| **Romania** | May 28, 1992 | January 15, 1994 |
| Russia | June 17, 1992 | N/A[5] |
| Rwanda | February 19, 2008 | January 1, 2012 |
| **Senegal** | December 6, 1983 | October 25, 1990 |
| **Slovakia** [3] | October 22, 1991 | December 19, 1992 |
| **Sri Lanka** | September 20, 1991 | May 1, 1993 |
| Trinidad & Tobago | September 26, 1994 | December 26, 1996 |
| **Tunisia** | May 15, 1990 | February 7, 1993 |
| **Turkey** | December 3, 1985 | May 18, 1990 |
| Ukraine | March 4, 1994 | November 16, 1996 |
| **Uruguay** | November 4, 2005 | November 1, 2006 |
| Uzbekistan | December 16, 1994 | N/A[1] |

**Notes:**

1. Entry into force pending exchange of instruments of ratification.

2. Formerly Zaire.

3. Treaty signed on October 22, 1991, with the Czech and Slovak Federal Republic and has been in force for the Czech Republic and Slovakia as separate states since January 1, 1993.

4. Entry into force pending domestic ratification process by both Parties and exchange of instruments of ratification.

5. Entry into force pending other Party's domestic ratification process and exchange of instruments of ratification by both Parties.

6. Entry into force pending U.S.'s domestic ratification process and exchange of instruments of ratification by both Parties.

7. **The Government of Bolivia delivered notice to the United States**   on June 10, 2011, that it was terminating the "Treaty Between the Government of the United States of America and the Government of the Republic of Bolivia Concerning the Encouragement and Reciprocal Protection of Investment." As of June 10, 2012 (the date of termination), the treaty ceased to have effect, except that it will continue to apply for another 10 years to covered investments existing at the time of termination.

8. **The Government of Ecuador has delivered to the United States a notice of termination**   for the bilateral investment treaty between the two countries. As of May 18, 2018 (the date of termination), the treaty ceased to have effect, except that it will continue to apply for another 10 years to covered investments existing at the time of termination.

TAGS

Bilateral Investment Treaties          Bureau of Economic and Business Affairs

Division for International Finance and Development          Investments          Treaties

★ ★ ★

# Related Articles



FEBRUARY 21, 2019

1993 World Trade Center Bombing

**READ MORE**

JANUARY 1, 1950

1981 Treaties and Agreements

**READ MORE**

White House

USA.gov

Office of the Inspector General

Archives

Contact Us



Privacy Policy

Accessibility Statement

Copyright Information

FOIA

No FEAR Act

# EXHIBIT 3

INTERNATIONAL CENTRE FOR
SETTLEMENT OF INVESTMENT DISPUTES

**OPTIMA VENTURES, LLC and OPTIMA 55 PUBLIC SQUARE, LLC,**

*Claimants,*

**v.**

**UNITED STATES OF AMERICA,**

*Respondent.*

ICSID CASE NO. ARB /

**POWER OF ATTORNEY ISSUED TO
BLACK, SREBNICK, KORNSPAN & STUMPF P.A.,
KASOWITZ BENSON & TORRES LLP, AND
ROCHE CYRULNIK FREEDMAN LLP
BY
OPTIMA VENTURES, LLC AND OPTIMA 55 PUBLIC SQUARE, LLC**

I, Mordechai Korf, hereby declare as follows:

1. I, Mordechai Korf, am the duly authorized Manager of Optima Ventures, LLC ("Optima Ventures").

2. Pursuant to Section 4.1 of Optima Ventures' Operating Agreement, "the business and affairs of the Company shall be conducted and its powers shall be

exercised, by or under the direction of the Manager. Mordechai Korf shall be the Manager of the Company."

3. Optima 55 Public Square ("Optima 55 Public Square") is a wholly owned subsidiary of Optima Ventures, whose sole equity member is Optima Ventures.

4. Pursuant to Optima 55 Public Square's Operating Agreement, including sections 9 and 11, Optima 55 Public Square has provided Mordechai Korf with power to authorize Optima 55 Public Square to commence this arbitration.

5. I, Mordechai Korf, have authorized Black, Srebnick, Kornspan & Stumpf, P.A., Kasowitz Benson & Torres LLP, and Roche Cyrulnik Freedman LLP to commence this arbitration on behalf of Optima Ventures and Optima 55 Public Square.

6. Optima Ventures and Optima 55 Public Square have provided Black, Srebnick, Kornspan & Stumpf, P.A., Kasowitz Benson & Torres LLP, and Roche Cyrulnik Freedman LLP with power of attorney to represent the interests of Optima Ventures and Optima 55 Public Square in this arbitration.

I, Mordechai Korf, have read the foregoing Power of Attorney Issued to Black, Srebnick, Kornspan & Stumpf, P.A., Kasowitz Benson & Torres LLP, and Roche Cyrulnik Freedman LLP by Optima Ventures, LLC and Optima 55 Public Square, LLC and know the contents of the same. Pursuant to 28 U.S.C. § 1746, I

2

declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on February 19 2021 at Miami, Florida.

Mordechai Korf

# EXHIBIT 4

INTERNATIONAL CENTRE FOR
SETTLEMENT OF INVESTMENT DISPUTES

**OPTIMA VENTURES, LLC AND OPTIMA 55 PUBLIC SQUARE LLC,**

*Claimants,*

**v.**

**UNITED STATES OF AMERICA,**

*Respondent.*

**FIRST DECLARATION OF DMYTRO MARCHUKOV**
**Prepared at the Request of Counsel for the Claimants**

19 February 2021

**FIRST DECLARATION OF DMYTRO MARCHUKOV**

CITY OF KYIV    )
                )
UKRAINE         )

I, Dmytro Marchukov, 1 Dobrovolchykh Batalioniv St., Kyiv 01015, Ukraine,

declare as follows:

## I.    INTRODUCTION

1.   I am a qualified Ukrainian lawyer, Partner and Head of Cross-Border
     Litigation at Integrites law firm in Kyiv. I have been instructed to provide
     this Declaration in relation to certain points of Ukrainian law by Kasowitz
     Benson Torres LLP and by Black, Srebnick, Kornspan & Stumpf, P.A.,
     counsel for the Claimants, in connection with the request for arbitration to
     be filed by the Claimants against the Respondent to the International Centre
     for Settlement of Investment Disputes relating to the Verified Complaint
     filed by the United States Department of Justice (the "**Plaintiff**"),
     on 30 December 2020 in the United States District Court for the Southern
     District of Florida. I set out my instructions in more detail at paragraph 9
     below.

2.   I attach to this Declaration a bundle of Exhibits marked **DM-1 – DM-16**
     respectively. All references to the documents in this Declaration are
     references to the respective Exhibits, unless otherwise stated. Significant
     part of the exhibited documents are English translations of the Ukrainian
     texts. Those translations were prepared by those instructing me.

3. I have prepared this Declaration in the English language because I am fluent in English and the bulk of my practice is conducted in English. My native language is Russian and I am also fluent in Ukrainian as the official language in Ukraine.

4. In preparing this Declaration I was assisted by various members of my team, whose work I personally supervised. The views expressed in this report are entirely my own.

## II. MY QUALIFICATIONS AND EXPERIENCE

5. I have the following degrees from universities in Ukraine and Sweden:

   5.1. 2003 – Bachelor of International Relations, Institute of International Relations of the National Taras Shevchenko University of Kyiv (Ukraine).

   5.2. 2006 – Master of International Law, Institute of International Relations of the National Taras Shevchenko University of Kyiv (Ukraine).

   5.3. 2009 – Master of International Commercial Arbitration Law, Stockholm University (Sweden).

6. I have practiced law in Ukraine for over 15 years. My professional experience includes representation of clients in close to every kind of dispute resolution including national and cross-border litigation, transnational insolvency and receivership, asset tracing and recovery, fraud investigation, enforcement of pledges, commercial and investment arbitration under the

3

major institutional and *ad hoc* rules, as well as recognition and enforcement of foreign judicial and arbitral awards.

7.  Starting from mid-2017 I have been instructed on several occasions to act as the Ukrainian law expert in civil and criminal proceedings in various jurisdictions, including Switzerland, Cyprus, the UK and the US. For the sake of full disclosure and transparency, I deem it appropriate to disclose several of such instructions:

7.1.  Earlier in the past year, I acted as the Ukrainian law expert in an unrelated dispute before the High Court of Justice in London brought by the Russian PJSC Tatneft against Ukrainian businessmen Gennadiy Bogolyubov, Igor Kolomoisky, Alexander Yaroslavsky, and Pavel Ovcharenko. In that case, I was instructed jointly by the solicitors acting for the defendants.

7.2.  Since 2019, I have acted as the Ukrainian law expert in the dispute before the Court of Chancery of the State of Delaware brought by the Ukrainian JSC Commercial Bank PrivatBank against Igor Valeryevich Kolomoisky and others. In that case, I was instructed by Kasowitz Benson Torres LLP who act for defendants Mordechai Korf, Uriel Tzvi Laber, Chaim Schochet, Optima International of Miami, Inc., and Optima 1375 II, LLC.

4

7.3.  I have also acted as the Ukrainian law expert in the disputes brought by the United States in the U.S. District Court for the Southern District of Florida seeking forfeiture of the following assets:

7.3.1.  Real property located at 7505 and 7171 Forest Lane, Dallas, Texas 75230.

7.3.2.  All right to and interest in PNC Corporate Plaza Holdings, LLC held, controlled, or acquired, directly or indirectly, by Optima CBD Investments, LLC and/or CBD 500 LLC, including any interest held in or secured by the real property and appurtenances located at 500 West Jefferson Street, Louisville, KY 40202.

7.3.3.  Real property located at 55 Public Square, Cleveland, Ohio.

7.4.  Finally, I have acted as the Ukrainian law expert for Optima Ventures, LLC and Optima 7171, LLC in connection with the investment arbitration filed by them with the International Centre for Settlement of Investment Disputes against the United States.

7.5.  In the cases mentioned in paragraphs 7.3 and 7.4 above, I was instructed by Kasowitz Benson Torres LLP and by Black, Srebnick, Kornspan & Stumpf, P.A.

8.  I attach the summary of my qualifications and experience at **DM-1**.

### III.  MY INSTRUCTIONS

9.  I have been instructed by Kasowitz Benson Torres LLP and by Black, Srebnick, Kornspan & Stumpf, P.A., to provide my expert opinion on the following questions and issues under Ukrainian law:

   9.1.  Whether Ukrainian state authorities have exclusive powers to declare that a crime under the Criminal Code of Ukraine was committed?

   9.2.  Whether, under Ukrainian law, an individual has a right to be free from civil liability for committing a crime under the Criminal Code of Ukraine, absent a judgment of criminal conviction? If so, what is the legal basis for such right?

   9.3.  Whether Ukrainian state authorities are competent to bring a civil forfeiture claim with respect to the assets in Ukraine (belonging to a foreign investor) alleging that such assets are fruits of the actions, which are qualified as crimes under the foreign criminal statute, notwithstanding the fact that the competent authorities in the respective foreign jurisdiction have not brought any criminal proceedings based on such criminal statute?

10.  I understand from the Verified Complaint that the Plaintiff is alleging that Ihor Kolomoisky and Gennadiy Boholiubov committed a number of crimes under the Criminal Code of Ukraine[1]. In this regard, I have not been

---

[1] §§64 – 71 of the Verified Complaint.

instructed for the purpose of this Declaration to review the said allegations and to opine as to whether they are sufficient to conclude that the respective crimes were committed by Ihor Kolomoisky and Gennadiy Boholiubov or not. Nor have I independently verified the facts alleged in the Verified Complaint. I, therefore, perceive (but not accept) them purely as alleged by the Plaintiff. The use in this Declaration of any terms used by the Plaintiff in the Verified Complaint is for ease of reference only, and does not (and should not be considered to) represent my agreement with any of the Plaintiff's characterizations or allegations.

## IV.  SUMMARY OF CONCLUSIONS

11. A crime under the Criminal Code of Ukraine, as well as the fact that certain person committed this crime and is guilty of that can be established exclusively within the Ukrainian criminal proceeding. Within such criminal proceeding, (1) various Ukrainian investigative authorities – under the control and direction of the Ukrainian Prosecutor's Office – are exclusively authorised to investigate the alleged crime; (2) the Prosecutor's Office has exclusive authority to charge a crime upon any person in Ukraine, as well as to prosecute the crime before the Ukrainian criminal court; and (3) Ukrainian criminal courts have exclusive authority to declare and determine that certain person has committed a crime under the Criminal Code of Ukraine.

12. Any person has a right to be deemed as not having committed any alleged crime unless and until the opposite has been duly declared and established by the Ukrainian criminal court. Ukrainian civil and commercial courts consistently and adamantly hold that they cannot establish on their own a violation of the Criminal Code of Ukraine and that the same cannot be established otherwise than by the Ukrainian criminal courts.

13. Ukrainian law does not allow Ukrainian authorities to take any actions in respect of the assets of foreign investor in response to the alleged violations by the latter of foreign criminal statute. This covers also situations where the competent authorities in the respective foreign jurisdiction have not brought any criminal proceeding regarding the same. Furthermore, Ukrainian law does not recognize a cause of action akin to the civil forfeiture under the US law.

## V.  ANALYSIS

## 1.  Whether Ukrainian state authorities have exclusive powers to declare that a crime under the Criminal Code of Ukraine was committed?

14. As a starting point, it is appropriate to refer to Article 62 of the Constitution of Ukraine, dated 28 June 1996 (the "**Ukrainian Constitution**"), which provides as follows:

> "***Article 62.*** *A person shall be deemed innocent of committing a crime and shall not be subjected to a criminal punishment unless*

*his/her guilt has been proven through a legal procedure and established by a court verdict of guilty*"[2].

15. The result of this constitutional provision is, *inter alia*, that under Ukrainian law, for a conclusion that a crime has been committed by certain person, (1) a procedure must be followed, as envisaged by Ukrainian law, for investigating and proving the alleged crime; and (2) ultimately the power to establish that the crime has been committed and that certain person is guilty of that is vested exclusively with the Ukrainian criminal court[3] and such finding must be in the form of court verdict of guilty.

16. Respective procedure and the powers of Ukrainian authorities in conducting criminal proceeding[4] is set out in the Criminal Procedure Code of Ukraine, dated 13 April 2012 (the "**CrPCU**").

17. The CrPCU provides for a list of the Ukrainian law-enforcement authorities that are impowered to investigate the alleged crime (at the stage of pretrial investigation)[5]. Furthermore, Ukrainian law provides for pivotal role of the Ukrainian Prosecutor's Office in criminal proceeding in Ukraine. In particular, the Ukrainian Constitution provides that the Prosecutor's

---

[2] Article 62(1) of the Ukrainian Constitution, **Exhibit DM-2**.

[3] I should explain that Ukrainian judiciary does not establish a separate branch of criminal courts. Criminal matters are tried by general courts. Therefore, in this Declaration, I use the terms "Ukrainian criminal court" and "Ukrainian criminal courts" for convenience.

[4] The criminal proceeding consists of pretrial stage and court trial (see Article 3(1)(10) of the CrPCU, **Exhibit DM-3**).

[5] Article 38(2) of the CrPCU, **Exhibit DM-3**, listing National Police, State Bureau of Investigations, National Anticorruption Bureau of Ukraine, Security Service of Ukraine and authorities that supervise compliance with tax legislation.

Office is responsible for "*organization and procedural direction of the pretrial investigation, deciding in accordance with the law on other issues during criminal proceeding, supervising the covert and other investigation and search activities of law-enforcement authorities*"[6].

18. Putting aside the overarching control of the Prosecutor's Office over the investigation, once the criminal proceeding comes to a stage that a suspect can be determined, the respective notice of suspicion either must be issued directly by the prosecutor, or must be approved by the prosecutor[7]. Furthermore, once the pretrial investigation is completed, it is exclusively the prosecutor who is empowered to submit the charging (accusation) documents to the court[8], from which moment a suspect becomes an accused[9].

19. Importantly, under Article 5 of the Law of Ukraine "On Prosecutor's Office", dated 14 October 2014, "*functions of the prosecutor's office of Ukraine shall be exercised exclusively by the prosecutors. Delegation of the functions of prosecutor's office, as well as their appropriation by other authorities or officials shall be prohibited*"[10].

---

[6] Article 131-1(2) of the Ukrainian Constitution, **Exhibit DM-2**.
[7] Article 277(1) of the CrPCU, **Exhibit DM-3**.
[8] Article 110(4) of the CrPCU, **Exhibit DM-3**.
[9] Article 42(2) of the CrPCU, **Exhibit DM-3**.
[10] Article 5 of the Law of Ukraine "On Prosecutor's Office", **Exhibit DM-4**.

20. I conclude from the above that Ukrainian Prosecutor's Office has exclusive authority to charge a crime under the Criminal Code of Ukraine. Ukrainian law prohibits exercising this power by any other authority.

21. During the trial stage of criminal proceeding, Prosecutor's Office is exclusively empowered to prosecute the case before the Ukrainian criminal court. Again, such power is expressly set out in the Ukrainian Constitution[11]. The court, in turn, has exclusive power to establish and declare whether a crime has been committed and whether an individual charged with that crime by the Prosecutor's Office, is guilty of that crime. This is derived from the aforementioned Article 62 of the Ukrainian Constitution, which requires that a fact that certain person committed a crime must be established by a court verdict of guilty (see paragraph 14 above), as well as from Article 124 of the Ukrainian Constitution providing that only courts are entitled to administer justice in Ukraine[12], and that no one else can exercise the functions of the court[13].

22. To conclude, a crime under the Criminal Code of Ukraine, as well as the fact that certain person committed this crime and is guilty of that can be established only within the Ukrainian criminal proceeding. Within such criminal proceeding, (1) various Ukrainian investigative authorities – under

---

[11] Article 131-1(1) of the Ukrainian Constitution, **Exhibit DM-2**; Article 2(1)(1) of the Law of Ukraine "On Prosecutor's Office", **Exhibit DM-4**.
[12] Article 124(1) of the Ukrainian Constitution, **Exhibit DM-2**.
[13] Article 124(2) of the Ukrainian Constitution, **Exhibit DM-2**.

11

the control and direction of the Prosecutor's Office – are exclusively authorised to investigate the crime; (2) the Prosecutor's Office has exclusive authority to charge a crime upon any person in Ukraine, as well as to prosecute the crime before the Ukrainian criminal court; and (3) Ukrainian criminal courts have exclusive authority to declare and determine that certain person has committed a crime under the Criminal Code of Ukraine.

23. I do not see from the Verified Complaint (and I am not aware from information in the public domain) that Ihor Kolomoisky or Gennadiy Boholiubov (or, indeed, anyone else) have been charged with the crimes asserted by the Plaintiff in §§64 – 71 of the Verified Complaint, let alone that the Ukrainian criminal court has confirmed that those crimes occurred at all.

**2.     Whether, under Ukrainian law, an individual has a right to be free from civil liability for committing a crime under the Criminal Code of Ukraine, absent a judgment of criminal conviction? If so, what is the legal basis for such right?**

24. As a starting point, it is again appropriate to remind that pursuant to the aforementioned Article 62 of the Ukrainian Constitution (see paragraph 14 above), a person is deemed innocent of committing a crime unless and until the opposite has been duly proven through a legal procedure and established by the court verdict of guilty. The said provision refers to a judgment of the criminal court (court verdict of guilty, or "обвинувальний вирок" in

12

Ukrainian) and it is only this court that can establish – as a result of the Ukrainian criminal proceeding (pretrial investigation followed by court trial) – that the crime has occurred, and that certain person has committed this crime. Without such decision of the Ukrainian criminal court, any finding in the context of civil claim that certain person has committed a crime would be contrary to this constitutional entitlement.

25. It is a well-established position of the Ukrainian courts that civil and commercial courts cannot establish violation of the criminal laws on their own and, therefore, cannot invoke any such violation unless it has been confirmed in the respective judgment of the Ukrainian criminal court[14]. Below, I will refer to several specific judgments exemplifying such approach of the highest Ukrainian judiciary in different contexts.

26. In case No. 490/11934/15-ц, the plaintiff sought to remove one of the "competing" heirs from inheritance. The plaintiff relied upon the provision of the Ukrainian Civil Code, which prohibits inheritance by person who intentionally caused death to the testator[15]. Courts of all levels, including the High Specialized Court of Ukraine for Civil and Criminal Matters, dismissed the claim. They expressly explained that this was because the conduct referred to in the respective provision of the Ukrainian Civil Code

---

[14] Article 262(11) of the Civil Procedure Code of Ukraine, **Exhibit DM-5**; Article 246(11) of the Commercial Procedure Code of Ukraine, **Exhibit DM-6**.
[15] Article 1224 of the Civil Code of Ukraine, **Exhibit DM-7**.

was criminally unlawful and, therefore, could be established exclusively by the Ukrainian criminal court in the criminal proceeding. No Ukrainian criminal court had so established in that case. Therefore, the claim was bound to fail. The High Specialized Court for Civil and Criminal Matters in the order, dated 6 September 2017, said the following:

> "*As regards resolution of the claims for the removal from the right to inherit, the decisions of the courts of first and appellate instances meet the requirements of legality and reasonableness, due the following grounds.*
>
> *According to Part 1 of Art. 1224 of the [Civil Code] of Ukraine, persons who have deliberately took the life of the testator or any of the possible heirs or have committed an attempt on their life are not entitled to inheritance. The provisions of the first paragraph of this part shall not apply to a person who committed such an attempt if the testator, knowing this, nevertheless appointed this person as his heir under the will.*
>
> *The acts referred to in part 1 of this Article are criminally punishable; therefore, they must be confirmed by a court sentence, [or] a decision to close the criminal case on grounds other than*

14

*exoneration.* These are independent and sufficient grounds for removing from the right to inheritance"[16] (emphasis added).

27. Ukrainian courts also uniformly come to similar conclusion in the context of defamation claims. For instance, in case No. 481/40/16-ц, the plaintiff (Ukrainian political party) brought a defamation claim against the public official, who had publicly asserted that such political party had financed hostilities in Eastern Ukraine. Both local and appellate courts dismissed the claim. However, the Supreme Court disagreed. It noted that the conduct, of which the defendant had accused the plaintiff, constitutes a crime (financing of terrorism) under Ukrainian law. Therefore, in light of Article 62 of the Ukrainian Constitution, such conduct can be only established and proven in a verdict of guilty issued by the criminal court in the respective criminal proceeding. The Supreme Court helpfully explained:

"*In accordance with Article 62 of the Constitution of Ukraine, Article 6 of the Convention for the Protection of Human Rights and Fundamental Freedoms, a person is considered innocent of*

---

[16] Order of High Specialized Court of Ukraine in Civil and Criminal Matters dated 6 September 2017 in case No. 490/11934/15-ц, **Exhibit DM-8**. See also judgement of the Supreme Court dated 27 April 2020 in case No. 2029/2-2762/11, **Exhibit DM-9**. In this case the plaintiff also sought to remove the heir from inheritance because the latter had murdered the testator. The Supreme Court in that case reconfirmed that "*Since the actions specified in the part one of Article 1224 of the CC of Ukraine are criminally punishable, they must be confirmed by a court verdict of guilty or a decision to close criminal proceedings for reasons other than exoneration; these are independent and sufficient grounds for removal from the right to inheritance*". In that case the competent criminal court had issued a court verdict of guilty finding that the defendant had, indeed, murdered the testator. Therefore, the courts in the civil matter granted the claim.

*committing a crime, as well as cannot be subjected to criminal punishment, until his guilt is proven through legal procedure and established by a court verdict of guilty.*

*[…] The treatment of a person whose guilt in the commission of a criminal offense has not been established by a court sentence that has entered into legal force must be consistent with the treatment of an innocent person.*

*The presumption of innocence must be viewed in general legal and procedural senses. As a general legal requirement, it determines the position of the individual in society. <u>Although this principle is formulated as a principle of criminal procedure, its effect goes beyond the scope of the criminal process. The presumption of innocence is an objective legal provision. This is a requirement of the law, addressed to all citizens, officials, state and public organizations, to public thought in general</u>. This position is also adhered to by the European Court of Human Rights, in its decision dated February 10, 1995 in the case "Allenet de Ribermont v. France", which emphasized that the scope of application of the principle of the presumption of innocence is significantly [broader]: it is mandatory not only for the criminal court, which decides whether the charge is justified, but also for all other organs of the state.*

16

*In its most general form, the rule of presumption of innocence means that a person can be found guilty of committing a crime, as well as punished, only on the condition that his/her guilt is proven in the manner prescribed by law and established by a court verdict of guilty. Notice of suspicion to a person, drawing up the accusation act by an investigator and approving the same by a prosecutor at the stage of pre-trial investigation, consideration of a case in preparatory proceedings do not decide in advance whether he/she is guilty of committing a crime. Only one body in the state is endowed with such a right - this is the court, which, in accordance with the Constitution of Ukraine (Article 124), is the bearer of the judicial power, which administers justice in conditions of legality, independence, transparency and in accordance with adversarial principle.*

*A court verdict is the only procedural document that establishes guilt*"[17] (emphasis added).

---

[17] Judgement of the Supreme Court dated 12 December 2018 in case No. 481/40/16-ц, **Exhibit DM-10**. See also Judgment of the Supreme Court in case No. 727/8388/17, dated 5 June 2019, **Exhibit DM-11**. In that case the defendant publicly accused the city mayor that the latter had driven a company to bankruptcy and stolen money from it. The plaintiff brought a defamation claim. The court, again, emphasized that the conduct, of which the defendant had publicly accused the plaintiff is criminally unlawful and as such can only be proven with a criminal conviction issued by the Ukrainian criminal court – which was lacking in the circumstances.

28. Judgment in case No. 6-3687ск15 is also noteworthy. The plaintiff in that case brought a civil claim for compensation of damages caused by the alleged murder of his son. Courts of all levels dismissed the claim because there had been no court verdict of guilty against the defendants rendered by the criminal court in the criminal proceedings. The High Specialized Court of Ukraine for Civil and Criminal Matters opined as follows:

> "*When dismissing the claim, the court of first instance, guided by the provisions of Article 62 of the Constitution of Ukraine, Article 22, 23, 1177 of the [Civil Code] of Ukraine, rightfully concluded that there were no grounds to grant the claims of PERSON_2 for compensation of moral and pecuniary losses, infliction of which he attributes to commission of premeditated crimes that led to murder of his son and hiding the guilty persons by the defendants when performing their official duties, as there was no court sentence that had entered into legal force as regards murder of PERSON_5, the death of the latter had not been declared violent, the defendants had not featured in the crimes as regards plaintiff's son, no criminal proceedings had been commenced in respect of them and no court verdicts of guilty had been rendered*".[18]

---

[18] Judgment of the High Specialized Court of Ukraine for Civil and Criminal Matters in case No. 6-3687ск15, dated 13 February 2015, **Exhibit DM-12**.

18

29. Another example of the same approach, is the judgment of the High Specialized Court of Ukraine for Civil and Criminal Matters in case No. 296/9905/15-ц. In that case, the plaintiff (Ukrainian pension authority) brought a tort claim against the defendant, alleging that the latter had applied for (and had been receiving during several years) a pension based on the false documents. The plaintiff, *inter alia*, argued that such alleged conduct of the defendant was unlawful in a sense that it constituted a crime of forgery (article 358 of the Criminal Code of Ukraine) and infliction of pecuniary harm through deceit or abuse of trust (Article 192 of the Criminal Code of Ukraine). The appellate court had granted the claim. However, the High Specialized Court of Ukraine for Civil and Criminal Matters disagreed and remitted the case for a new consideration. It specifically noted that the appellate court was wrong because "*when the appellate court rendered its judgment to grant the claim in the case, no court verdict had been rendered in a criminal matter...*"[19].

---

[19] Judgment of the High Specialized Court of Ukraine for Civil and Criminal Matters in case No. 296/9905/15-ц, date 4 October 2017, **Exhibit DM-13**. With this judgment, the High Specialized Court of Ukraine for Civil and Criminal Matters remitted the case for a new consideration to the lower court. The new consideration ultimately ended up before the Supreme Court, which – in its judgment dated 8 April 2020 – reconfirmed the aforementioned approach: "*Pre-trial investigation of the potential commission of crime, as such, does not evidence that the person's conduct was unlawful, because pursuant to Article 62 of the Constitution of Ukraine, a person shall be deemed innocent of committing a crime, as well as shall not be subjected to a criminal punishment, unless his/her guilt has been proven through a legal procedure and established by a court verdict of guilty*", **Exhibit DM-14**. In the premises, the claim was dismissed.

30. In other words, Ukrainian criminal law (substantive and procedural) should be viewed as a closed self-contained system. As a matter of Ukrainian law, criminal substantive law and criminal procedural law do not exist without each other: rather, they go together with each other (the latter "serves" the former). In this respect, Ukrainian criminal substantive law (including articles of the Criminal Code of Ukraine asserted in the Verified Complaint) might be considered to be similar to an iPhone, which – in order to be charged – needs a specially designed charger (Ukrainian criminal procedural law): a regular micro-USB, which works for various other phones, will not do.

31. The effect of the above is that nobody can be found liable in breach of the provisions of the Criminal Code of Ukraine other than in the result of the criminal investigation of the Ukrainian law-enforcement authorities followed by the trial of the Ukrainian criminal court. During the criminal proceeding, the respective person is entitled to defend himself exercising the rights granted to him by the Ukrainian Constitution and by the CrPCU. I understand that this is what Ihor Kolomoisky and Gennadiy Boholiubov would, most likely, do if they were charged with the crimes asserted by the Plaintiff in §§64 – 71 of the Verified Complaint. As per paragraph 23 above, however, I do not see from the Verified Complaint (and I am not aware from information in the public domain) that Ihor Kolomoisky or Gennadiy

20

Boholiubov (or, indeed, anyone else) have been charged at all with the crimes asserted by the Plaintiff in §§64 – 71 of the Verified Complaint.

32.  To conclude, under Ukrainian law, any person has a right to be deemed as not having committed any alleged crime unless and until the opposite has been duly declared and established by the Ukrainian criminal court. Ukrainian civil and commercial courts consistently and adamantly hold that they cannot establish on their own a violation of the Criminal Code of Ukraine and that the same cannot be established otherwise than by the Ukrainian criminal courts in the criminal proceedings.

**3.   Whether Ukrainian state authorities are competent to bring a civil forfeiture claim with respect to the assets in Ukraine (belonging to a foreign investor) alleging that such assets are fruits of the actions, which are qualified as crimes under the foreign criminal statute, notwithstanding the fact that the competent authorities in the respective foreign jurisdiction have not brought any criminal proceedings based on such criminal statute?**

33.  The short answer to this question is "no" and the reasons are two-fold:

33.1. First, Ukrainian law does not allow Ukrainian authorities to prosecute the alleged violations of foreign criminal statute (either by way of criminal prosecution, or by way of filing any civil claims). This is, in particular, so where the competent authorities in the respective foreign

jurisdiction have not brought any criminal proceeding regarding the same.

33.2. Second, under Ukrainian law there is no cause of action that is sufficiently akin to the civil forfeiture under the US law.

34. As a starting point, under Article 19 of the Ukrainian Constitution, "*state bodies and local self-government bodies, as well as their officials, must act on the basis, within the powers and in a way envisaged by the Constitution and the laws of Ukraine*"[20]. In other words, Ukrainian state bodies may act in certain way only if the Ukrainian Constitution and Ukrainian laws vest respective authority with them. There is no provision of Ukrainian law, that would vest with the Ukrainian authorities the power to prosecute the alleged violation of the foreign criminal statute. The only criminal statute, which respective Ukrainian authorities are empowered to enforce, is the Ukrainian criminal statute.

35. Ukrainian authorities may take actions in response to the alleged violation of the foreign criminal statute only by way of international legal assistance (as may be envisaged in the applicable international treaties). However, the latter implies that the respective foreign jurisdiction – via its competent authorities – is itself prosecuting the alleged violation of its criminal statute. In such case, Ukrainian authorities may be empowered to take certain

---

[20] Article 19 of the Ukrainian Constitution, **Exhibit DM-2.**

actions if the respective foreign state so requests, and following the mechanisms and procedures envisaged in the applicable international treaty on legal assistance.

36. However, in all other cases – particularly, when the respective jurisdiction does not itself prosecute the alleged violation of its criminal statute (and, accordingly, does not seek legal assistance from the respective Ukrainian authorities pursuant to the applicable international legal assistance treaties) – the Ukrainian authorities must not and will not take any actions (either civil, or criminal) in response to such alleged violation.

37. Another reason why I strongly believe that Ukrainian authorities cannot bring a civil forfeiture claim in respect of the assets of foreign investors in Ukraine is that Ukrainian law simply does not recognize such cause of action. Indeed, there is no identical cause of action to what is understood as civil forfeiture under the US law. The only one that bears certain similarity is forfeiture of unjustified assets, which has been introduced quite recently as a civil law arm to fight corruption of the Ukrainian public officials. As such, this cause of action cannot be invoked in principle to confiscate the assets of foreign investors in Ukraine. I will further explain in more detail how the forfeiture of unjustified assets works under Ukrainian law and what its limits are.

38. First of all, by its nature, the forfeiture of unjustified assets can be sought when the value of the assets that belong (directly or beneficially) to the

Ukrainian public official exceeds the amount of his/her lawful income and such public official fails to prove that the respective assets were, nevertheless, acquired from the lawful income[21]. Therefore, forfeiture of unjustified assets can be sought only against the following individuals and legal entities (not against anyone else)[22]:

38.1. A Ukrainian public official himself / herself if he/she acquired the relevant assets when exercising the state or local self-government functions. The law provides for an exhaustive list of the respective official positions in Ukraine[23].

38.2. An individual or a legal entity that acquired the relevant assets upon instructions of the individual mentioned in paragraph 38.1 above.

38.3. An individual or a legal entity that acquired the relevant assets, with respect to which the individual mentioned in paragraph 38.1 above is able to fulfil (directly or indirectly) the actions, which are essentially identical to disposal.

39. Second, the claim for forfeiture of unjustified assets can be brought exclusively by the Ukrainian Specialized Anti-Corruption Prosecutor's Office or, in certain instances, by the Ukrainian Prosecutor's General

---

[21] Articles 290(2) and 291 of the Civil Procedure Code of Ukraine, **Exhibit DM-5.**
[22] Article 290(4) of the Civil Procedure Code of Ukraine, **Exhibit DM-5.**
[23] Article 290(8)(3) of the Civil Procedure Code of Ukraine, **Exhibit DM-5**; Article 3(1)(1) of the Law of Ukraine "On Prevention of Corruption", dated 14 October 2014, **Exhibit DM-15.**

Office[24]. No other authorities – either Ukrainian or foreign – are competent to pursue this cause of action under Ukrainian law.

40. Finally, I should mention that this cause of action had not existed at all under Ukrainian law until 4 June 2015[25]. Furthermore, the respective legislative provisions have been significantly amended since then and now forfeiture of unjustified assets can be sought only in respect of assets that were acquired after 28 November 2019[26] or income received from the same assets[27].

41. To conclude, Ukrainian law does not allow Ukrainian authorities to take any actions in respect of the assets of foreign investor in response to the alleged violations by the latter of foreign criminal statute (in particular, where the respective foreign jurisdiction has not itself brought any criminal proceeding regarding the same). Furthermore, Ukrainian law does not recognize a cause of action akin to the civil forfeiture under the US law.

## VI.  CONCLUSION

42. The foregoing statements made by me and the opinions expressed in this Declaration are made within a reasonable degree of professional certainty.

---

[24] Article 290(1) of the Civil Procedure Code of Ukraine, **Exhibit DM-5.**
[25] Law of Ukraine "On Amending Certain Legislative Acts of Ukraine Regulating Activities of the National Anti-Corruption Bureau of Ukraine and of the National Agency on Corruption Prevention", dated 12 February 2015, **Exhibit DM-16.**
[26] Articles 290(2)(2) and 290(2)(3) of the Civil Procedure Code of Ukraine, **Exhibit DM-5.**
[27] Article 290(2)(4) of the Civil Procedure Code of Ukraine, **Exhibit DM-5.**

43. I reserve the right to supplement this Declaration upon review of any expert legal opinion offered by legal experts retained by the Respondent.

Pursuant to 28 U.S.C. § 1746 I, Dmytro Marchukov, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States.

Executed on this 19th day of February 2021 at 1 Dobrovolchykh Batalioniv St., Kyiv 01015, Ukraine.

Signed: _____

Name:      **Dmytro Marchukov**

Position:  **Partner, Integrites (Kyiv, Ukraine)**

26

## INDEX OF EXHIBITS

| No. | Name of the Document |
|---|---|
| **DM-1.** | Summary of qualifications and experience |
| **DM-2.** | Constitution of Ukraine, dated 28 June 1996 (excerpts) |
| **DM-3.** | Criminal Procedure Code of Ukraine, dated 13 April 2012 (excerpts) |
| **DM-4.** | Law of Ukraine "On Prosecutor's Office", dated 14 October 2014 (excerpts) |
| **DM-5.** | Civil Procedure Code of Ukraine, dated 18 March 2004 (excerpts) |
| **DM-6.** | Commercial Procedure Code of Ukraine, dated 6 November 1991 (excerpts) |
| **DM-7.** | Civil Code of Ukraine, dated 16 January 2003 (excerpts) |
| **DM-8.** | Order of the High Specialized Court of Ukraine in Civil and Criminal Matters in case No. 490/11934/15-ц, dated 6 September 2017 |
| **DM-9.** | Judgement of the Supreme Court in case No. 2029/2-2762/11, dated 27 April 2020 |
| **DM-10.** | Judgement of the Supreme Court in case No. 481/40/16-ц, dated 12 December 2018 |
| **DM-11.** | Judgement of the Supreme Court in case No. 727/8388/17, dated 5 June 2019 |
| **DM-12.** | Judgment of the High Specialized Court of Ukraine for Civil and Criminal Matters in case No. 6-3687ск15, dated 13 February 2015 |
| **DM-13.** | Judgment of the High Specialized Court of Ukraine for Civil and Criminal Matters in case No. 296/9905/15-ц, dated 4 October 2017 |
| **DM-14.** | Judgment of the Supreme Court in case No. 296/9905/15-ц, dated 8 April 2020 |
| **DM-15.** | Law of Ukraine "On Prevention of Corruption", dated 14 October 2014 |

| No. | Name of the Document |
|---|---|
| **DM-16.** | Law of Ukraine "On Amending Certain Legislative Acts of Ukraine Regulating Activities of the National Anti-Corruption Bureau of Ukraine and of the National Agency on Corruption Prevention", dated 12 February 2015 |

## INDEX OF EXHIBITS

| No. | Name of the Document |
|---|---|
| **DM-1.** | Summary of qualifications and experience |
| **DM-2.** | Constitution of Ukraine, dated 28 June 1996 (excerpts) |
| **DM-3.** | Criminal Procedure Code of Ukraine, dated 13 April 2012 (excerpts) |
| **DM-4.** | Law of Ukraine "On Prosecutor's Office", dated 14 October 2014 (excerpts) |
| **DM-5.** | Civil Procedure Code of Ukraine, dated 18 March 2004 (excerpts) |
| **DM-6.** | Commercial Procedure Code of Ukraine, dated 6 November 1991 (excerpts) |
| **DM-7.** | Civil Code of Ukraine, dated 16 January 2003 (excerpts) |
| **DM-8.** | Order of the High Specialized Court of Ukraine in Civil and Criminal Matters in case No. 490/11934/15-ц, dated 6 September 2017 |
| **DM-9.** | Judgement of the Supreme Court in case No. 2029/2-2762/11, dated 27 April 2020 |
| **DM-10.** | Judgement of the Supreme Court in case No. 481/40/16-ц, dated 12 December 2018 |
| **DM-11.** | Judgement of the Supreme Court in case No. 727/8388/17, dated 5 June 2019 |
| **DM-12.** | Judgment of the High Specialized Court of Ukraine for Civil and Criminal Matters in case No. 6-3687ск15, dated 13 February 2015 |
| **DM-13.** | Judgment of the High Specialized Court of Ukraine for Civil and Criminal Matters in case No. 296/9905/15-ц, dated 4 October 2017 |
| **DM-14.** | Judgment of the Supreme Court in case No. 296/9905/15-ц, dated 8 April 2020 |
| **DM-15.** | Law of Ukraine "On Prevention of Corruption", dated 14 October 2014 |

| No. | Name of the Document |
|---|---|
| **DM-16.** | Law of Ukraine "On Amending Certain Legislative Acts of Ukraine Regulating Activities of the National Anti-Corruption Bureau of Ukraine and of the National Agency on Corruption Prevention", dated 12 February 2015 |



**INTEGRITES**
CIS LAW FIRM



# Dmytro Marchukov

**Partner**
**Head of Cross-Border Litigation**

Dmytro.Marchukov@integrites.com
+38 050 398 80 28

Dmytro Marchukov is a Partner and the Head of Cross-Border Litigation at INTEGRITES.

He has represented international and local clients in close to every kind of dispute resolution including national and cross-border litigation, transnational insolvency and receivership, asset tracing and recovery, fraud investigation, enforcement of mortgages and pledges (including against shareholdings in Ukrainian companies), commercial and investment arbitration under the major institutional and *ad hoc* rules, as well as recognition and enforcement of foreign judicial and arbitral awards.

Dmytro is a founding member of the Asset Tracing and Recovery Association and in 2015 – 2018 served on the Board of the Ukrainian Arbitration Association.

He also occasionally receives appointments as an arbitrator and has acted as the Ukrainian law expert in the civil and criminal proceedings in the US, the UK, Cyprus and Switzerland.

He has been selected to the list of arbitrators of the Shanghai International Economic and Trade Arbitration Commission (SHIAC).

## EDUCATION

> Master in International Commercial Arbitration Law, 2009, Stockholm University, Sweden

> Master of International Law, 2006, Institute of International Relations at the National Taras Shevchenko University of Kiev, Ukraine

> TEMPUS / TACIS scholar, 2003 – 2004, Lund University, Sweden

> Bachelor of International Relations, 2003, Institute of International Relations at the National Taras Shevchenko University of Kiev, Ukraine



**LANGUAGES**

> English

> Russian

> Ukrainian

**RECOGNITION**

> Recommended lawyer in Ukraine for Dispute Resolution (Chambers Global 2020, 2019, 2018, 2017, 2016, 2015 and 2014; Chambers Europe 2020, 2019, 2018, 2017, 2016, 2015, 2014, 2013 and 2012)

> Recommended lawyer in Ukraine for Dispute Resolution (Legal500 2020, 2019, 2018, 2017, 2016, 2015 and 2014)

> Recommended lawyer in Ukraine for Asset Recovery (Who's Who Legal 2020, 2019, 2018 and 2017) and for Litigation (Who's Who Legal 2020)

> Best Lawyer in Ukraine for Arbitration & Mediation, International Arbitration and Litigation (Best Lawyers 2021, 2020, 2019, 2018, 2017, 2016 and 2015)

> Notable practitioner in Ukraine in International Arbitration and Litigation (Ukrainian Law Firms 2019, 2018, 2017 and 2016, Yuridicheskaya Praktika)

> Distinguished in Ukraine for Arbitration (GAR100 2020, 2015 and 2014)

> The only Ukrainian lawyer recognized among "40 Europe outstanding up and comers" (Chambers Europe 2014)

**EXPERIENCE AS AN ARBITRATOR**

> Before the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation in the dispute arising out of supply of the military equipment between Russian claimant and Ukrainian defendant (appointed by a party)

> Before the International Court of Arbitration at the International Chamber of Commerce in the telecom dispute between Ukrainian claimant and Syrian defendant (appointed by the institution)



## EXPERIENCE AS A LEGAL EXPERT

> Before the Prosecutor of Geneva in the USD multi-million criminal proceedings brought by the Ukrainian investment bank against a Ukrainian HNWI (instructed by the complainant)

> Before the High Court of England and Wales in the litigation brought by the Ukrainian claimant against the global steel producer, its Ukrainian subsidiary and a former top manager for ca. USD 30 million (instructed by the solicitors for defendants)

> Before the High Court of England and Wales in the litigation involving several Ukrainian HNWIs and their UK and offshore corporate vehicles (instructed by the solicitors for claimants)

> Before the Court of Chancery of the State of Delaware brought by the Ukrainian bank against a number of Ukrainian and US HNWIs, as well as their companies (instructed by the attorneys for some of the US-based defendants)

> Before the Nicosia District Court in the proceedings on recognition of the Ukrainian court judgments totalling over USD 300 mln upon application of the Ukrainian subsidiary of the Russian major bank against a member of the Ukrainian Parliament (instructed by the applicant)

> Before the Nicosia District Court in the proceedings on contentious liquidation of a Cypriot holding company for a major Ukrainian agricultural holding upon application of a minority shareholder (instructed by the defendants)

## SELECTED EXPERIENCE AS COUNSEL

### Arbitration matters (includes arbitration-related litigation)

> Acted for Ukrenergo, a Ukrainian state-owned enterprise, in the *ad hoc* arbitration under the UNCITRAL rules against the Russian Federation based on the Russian-Ukrainian bilateral investment treaty

> Advised a Korean client with respect to the arbitration against a Belarussian plant under the rules of the Singapore International Arbitration Centre

> Advised Republic of Latvia in the ICSID arbitration initiated by the Ukrainian businessman under the Latvian-Ukrainian bilateral investment treaty

> Advised group of Estonian investors with respect to protection of their rights under the Estonian-Ukrainian bilateral investment treaty

> Acted for the largest producer of oil-immersed power transformers and electric reactors in the CIS and Europe in the International Commercial Arbitration Court at the Chamber of



Commerce and Industry of the Russian Federation in the dispute against the client's Russian supplier

> Acted for the Ukrainian state-owned defence enterprise in the ICC arbitration (settled at an early stage) against a major French industrial corporation related to the design, supply and installation of the sophisticated combat equipment

> Represented leading Ukrainian state-owned power-generating company in the LCIA arbitration against an international trading company regarding the quality of shipped commodities

> Acted for the major German industrial group in the ICC arbitration (settled at an early stage) against its international customer related to operation of sophisticated industrial equipment

> Acted for defendant in the ICSID arbitration GEA Group AG v. Ukraine under the German-Ukrainian bilateral investment treaty, which was resolved fully in favour of defendant

> Acted for defendant in the *ad hoc* arbitration under the UNCITRAL rules based on the Greek-Ukrainian bilateral investment treaty, which was ultimately resolved by award on agreed terms

> Acted for defendant in the *ad hoc* arbitration under the UNCITRAL rules based on the Energy Charter Treaty and the Moldovan-Ukrainian bilateral investment treaty

> Acted for Ukraine in the SCC arbitration brought by Vanco Prykerchenska Ltd. under Ukraine's first hydrocarbons sharing agreement. The matter was ultimately resolved by the consent award

> Acted for a Central Asian bank as a defendant within arbitration before the International Commercial Arbitration Court at the Ukrainian Chamber of Commerce and Industry for ca. USD 15 million with a challenging legal position (the case was ultimately struck out by the arbitral tribunal with no findings made against the client)

> Acted for a Ukrainian renewable energy company in the arbitration before the International Commercial Arbitration Court at the Ukrainian Chamber of Commerce and Industry against the client's German subcontractor

> Acted for a Norwegian technology company in the arbitration before the International Commercial Arbitration Court at the Ukrainian Chamber of Commerce and Industry against its Ukrainian subcontractor

> Resisted enforcement in Ukraine of several FOSFA arbitral awards that had been set aside by the UK courts (the work included lifting attachment placed on the client's cargo in a Ukrainian port, which was ultimately successfully released)

4



> Advised a client in the course of the LCIA arbitration for ca. USD 50 million against Ukrainian defendants making sure that the future award would be recognizable in Ukraine (proper repeated notification of the non-participating Ukrainian defendants ultimately made them "come out of the shade")

> Assisted a claimant in the ICC arbitration in making the future award recognizable in Ukraine, namely effecting proper notification of the non-participating Ukrainian defendant about the arbitration proceeding, as well as proper service of the core procedural documents upon the Ukrainian defendant

> Acted for a UAE commodities trader in a GAFTA arbitration arising out of the supply of grain out of Ukraine

> Acted for a shareholder of a major Ukrainian mobile operator in the complex corporate dispute (the work included assisting within the Ukrainian litigations, as well as *ad hoc* arbitration under the UNCITRAL rules in New York and its satellite litigations before the courts in New York)

> Acted for HSH Nordbank (currently Hamburg Commercial Bank) in the proceedings on recognition in Ukraine of an LCIA USD multi-million award issued against a Ukrainian state-owned enterprise (it was one of very few examples where post-award interest was recognized by Ukrainian courts)

> Acted for Moston Properties Limited, a UK supplier of the sophisticated equipment for the oil and gas industry, in the proceedings on recognition in Ukraine on an LCIA USD multi-million award issued against a Ukrainian state-owned enterprise

> Advised an LSE-listed oil and gas company with respect to recognition of foreign arbitral awards in Ukraine

> Recognition in Ukraine of the award issued by the International Commercial Arbitration Court at the Ukrainian Chamber of Commerce and Industry in favour of a Hungarian metal trader.

> Recognition in the US of the award issued by the International Commercial Arbitration Court at the Ukrainian Chamber of Commerce and Industry in favour of a Ukrainian state-owned energy company.

**Litigation matters**

> Advised on points of Ukrainian law within the USD 2 billion litigation before the High Court of England and Wales relating to the dispute arising out of division of interests in the Ukrainian businesses



> Acted for world leading investment funds as owners of majority of notes issued by Mriya Agro Holding plc in the debt recovery proceedings against almost 70 surety providers before the Ukrainian courts (the work was distinguished by Financial Times Innovative Lawyers)

> Acted for Ferrexpo Poltava Mining, Ferrexpo Yeristovo Mining and Ferrexpo Belanovo Mining, Ukrainian subsidiaries of LSE-listed Ferrexpo plc, in a set of litigations arising out of insolvency of Bank "Finance and Credit"

> Advised a Nordic investor in renewable energy on the dispute against a US industry consultancy firm

> Acted for the spouse of a Russian HNWI in a hard-fought cross-border family dispute spanning across several jurisdictions and involving a number of civil and criminal proceedings

> Advised a Ukrainian businessman within divorce and division of matrimonial estate proceeding in Ukraine

> Acted for Ferrexpo Yeristovo Mining, Ukrainian subsidiary of LSE-listed Ferrexpo plc, in a highly complex tax litigation boiling down to the essence of the client's production activities

> Acted for the Bulgarian investor in a corporate dispute defending the shareholders' resolutions, which are vital to the activity of its Ukrainian subsidiary

> Acted for the Bulgarian investor in administrative litigation defending financial regulator's approval for acquisition of a majority stake in a Ukrainian insurance company

> Acted for the Bulgarian investor in an employment dispute against the former management of its Ukrainian subsidiary

> Acted for the largest Ukrainian ice cream producer and its major shareholder in a commercial litigation initiated by several former minority shareholders in order to challenge the squeeze-out procedure

> Acted for the Ukrainian gas supply company in the dispute against the Ukrainian antimonopoly regulator

> Acted for Moston Properties Limited, a UK supplier of the sophisticated equipment for the oil and gas industry, in the dispute against the Ukrainian antimonopoly regulator

> Acted for the Ukrainian subsidiary of Bühler Holding AG in a litigation relating to the supply of the allegedly poor quality agricultural equipment

> Acted for MHP, one of the largest Ukrainian agricultural producers, in the litigation aimed at protecting the client's business reputation



> Acted for several Turkish investors in a hard-fought corporate dispute with respect to their shareholdings in the Ukrainian agricultural business

> Advised a Ukrainian subsidiary of an LSE-listed oil and gas company on a range of issues related to tax and criminal matters

> Acted for a major Ukrainian state-owned energy company in the Ukrainian litigation arising out of purchase of the equipment for a power plant

> Advised a major Ukrainian agricultural company with respect to the dispute against the construction company arising out of collapse of a grain silo

> Acted for the Ukrainian producer of equipment for the renewable energy industry in the litigation in Kazakhstan relating to the wind power plant

> Acted for Turkish Airlines with respect to passenger claims

## Asset recovery matters

> Acted for asset holding subsidiary of the Central Bank of Iceland with respect to enforcement of claims against the pledge in Ukraine that was granted in its favour but subsequently stolen from the pledgor (the work also included representing the client and its affiliates within the number of relevant criminal proceedings)

> Acted for an Icelandic client within Ukrainian commercial litigation under Icelandic law with respect to the valuable deposit in a Ukrainian bank

> Acted for an Icelandic client within the set of Ukrainian civil litigations over shareholdings in the Ukrainian companies brought by two Icelandic individuals

> Advised an Icelandic client with respect to taking control over Ukrainian real estate businesses in the course of enforcement of claims

> Advised an Icelandic client with respect to taking control over a Ukrainian pharmacy chain in the course of enforcement of claims and its subsequent disposal to monetise the recovery

> Advised a major Ukrainian oil and gas company within the cross-border asset recovery matter initiated by its Italian business partner

> Advised a major global airline in the course of the insolvency of Aerosvit Airlines

> Acted for the Ukrainian businessman in a USD multi-million dispute aimed at recovery of the profits diverted by his business partner, a global automotive company, out of the joint venture



> Acted for a Ukrainian businessman in the asset recovery dispute in Switzerland against two Ukrainian individuals

> Acted for Irish Bank Resolution Corporation Limited (formerly Anglo Irish Bank) on enforcing its claims arising out of the security documents with respect to over a dozen of commercial real estate assets in Ukraine and the Russian Federation (the work included representing the client and related parties before the Ukrainian courts, as well as within the numerous proceedings in a number of European and offshore jurisdictions)

> Acted for the majority shareholders of a large Ukrainian agricultural holding in the oppression of minority shareholder litigation in Cyprus

> Acted for a large Ukrainian agricultural holding in the proceedings on recognition of the Ukrainian judgment in British Virgin Islands against its indirect shareholder

> Acted for Irish Bank Resolution Corporation Limited (formerly Anglo Irish Bank) in the proceedings on recognition in Ukraine of the judgment issued by the High Court of Northern Ireland under the Insolvency (Northern Ireland) Order

> Acted for Flooring Industries Limited SARL in the proceedings on recognition in Ukraine of the judgment issued by the Düsseldorf Court against the client's Ukrainian business partner

> Acted for VTB Bank in the proceedings on recognition of the Ukrainian court judgments totalling over USD 300 mln against a member of the Ukrainian Parliament

> Acted for an Austrian agricultural holding in the dispute relating to recovery of significant amounts of grain from the silo in Ukraine

> Advised world leading investment funds as owners of majority of notes issued by Mriya Agro Holding plc on strategy of criminal prosecution of former owners and hostile management of Mriya Agro holding (included representing victim in criminal proceedings, as well as assets preservation and recovery)

> Acted for Ferrexpo Poltava Mining, Ukrainian subsidiary of LSE-listed Ferrexpo plc, against Bank "Finance and Credit" for recovery of ca. USD 10 mln

> Advised a UK investor on recovery of debt from Ukrainian borrower and surety providers, as well as recognition and enforcement of the UK court judgments and freezing orders in Ukraine

> Acted for world leading investment funds as owners of majority of notes issued by Mriya Agro Holding plc in a number of insolvency proceedings of Mriya group companies before the Ukrainian courts

> Acted for the largest Ukrainian ice cream producer with respect to the bankruptcy proceeding of its business partner in Lithuania



> Acted for the individual deposit holder in the asset recovery proceedings against the UBO of a large Ukrainian insolvent bank

> Acted for Česká exportní banka, a. s. in a set of litigations before Ukrainian commercial and administrative courts against the Ukrainian borrower and local municipal authorities aimed at reinstatement of the Bank's rights under the mortgage agreements, as well as opposing attempts by the Ukrainian borrower to dissipate the mortgaged and pledged assets

> Acted for Česká exportní banka, a. s. in the bankruptcy proceedings of the Ukrainian borrower initiated by the Bank

> Acted for Česká exportní banka, a. s. in a set of litigations before general, commercial and administrative courts arising out of the enforcement of the Bank's claims against the mortgaged and pledged assets of the Ukrainian borrower

> Acted for the US fund on the recovery of the USD multi-million debt from a Dutch national

> Acted for the global private jet manufacturer on the recovery of the USD multi-million debt from a UAE national

> Acted for National Bank "Trust" in a dispute with its former Ukrainian subsidiary regarding USD 21 million debt, which included litigations before Ukrainian general and commercial courts, as well as representation within liquidation proceeding

> Acted for National Bank "Trust" in litigation on enforcement of mortgage against commercial real estate in Kiev belonging to the Ukrainian borrower

> Acted for the Ukrainian supplier of refrigerating equipment in a set of commercial litigations against its corporate debtors

> Advised a large European bank regarding the recovery of debt from the group of companies that owns a network of petrol stations in Ukraine

> Advised a large Ukrainian bank in the set of litigations and administrative proceedings regarding enforcement of mortgage against commercial real estate in the Kiev downtown

> Advised a Swiss fund on the asset recovery from a Ukrainian debtor


**Fraud investigation matters**

> Acted for a leading international sports dance organization on countering fraudulent actions of its Ukrainian member



> Acted for an international IT company on protection against fraud, unfair competition and infringement of IP rights in Ukraine (the work involved advice on initiation of civil and criminal proceedings to recover damages suffered by the client)

> Acted for a European hygiene products manufacturer on actions against the fraudulent former director of the client's Ukrainian subsidiary

> Acted for a major international producer of medicinal goods in combatting counterfeit in Ukraine

> Acted for a major global airline as regards the fraud suffered by it in Ukraine

> Assisted a UK company in investigation into loss of a USD multi-million deposit, which was held in one of the Ukrainian banks

> Acted for a Korean technology company, which was defrauded by its Ukrainian business partners

> Acted for a Swiss energy efficiency company in investigating the fraud committed by one of its senior managers in Ukraine

### Miscellaneous

> Advised German producer of equipment for surgery theatres in connection with tender procedures in Ukraine

> Advised a major international pharma company as regards its regional business following geopolitical events in Crimea

> Advised a GCC investor with respect to the potential joint venture with the major Ukrainian aircraft producer

> Advised the Bulgarian investor as regards replacement of the senior management in its Ukrainian subsidiary

> Advised the Bulgarian investor as regards various Ukrainian regulatory issues

> Advised an LSE-listed oil and gas company with respect to the authority of the senior management in the client's Ukrainian and Russian subsidiaries

> Advised an LSE-listed oil and gas company with respect to taxation of dividends

> Advised an Icelandic client on operation of its indirectly owned commercial real estate in the western Ukraine



> Advised major international pharma company as regards personal data privacy regulations in Ukraine

> Acted for Irish Bank Resolution Corporation Limited (formerly Anglo Irish Bank) within the merger clearance procedure before the Ukrainian antimonopoly regulator

> Advised a major Ukrainian oil and gas company on the antimonopoly issues

> Advised one of the largest Ukrainian banks on the public procurement matters

> Advised a Lithuanian subsidiary of a Swiss industrial company on the trade and antimonopoly issues arising in Ukraine

> Advised one of the largest Ukrainian agricultural producers with respect to the Ukrainian goods labelling regulations

> Advised a global industrial consultancy company with respect limitations of liability under Ukrainian law

> Advised a German client on the issues relating to its Ukrainian business partner, a spouse of an infamous former senior judge

> Advised a large Nordic investor in renewable energy within the dispute with its major Chinese subcontractor in Ukraine

> Advised a large Nordic investor in renewable energy on the investment protection mechanisms available to it in Ukraine

> Advised a large Luxembourgian investor in renewable energy on the investment protection mechanisms available to it in Ukraine

> Advised a Ukrainian tobacco producer with respect to the industry regulations proposed by the Ukrainian government

> Acted for a Dutch national suspected in drug trafficking into Ukraine

> Advised an Austrian agricultural holding on the issues relating to one of its shareholders, a Ukrainian HNWI

> Advised a Turkish ship owner with respect to the responsibility of calling on Crimean ports

> Advised a Russian ship owner with respect to the responsibility of calling on Crimean ports

> Advised a major global airline with respect to passenger claims arising, *inter alia*, out of cancelled flights



> Advised a major global airline on the real estate issues in Ukraine

> Advised an Austrian agricultural holding on the real estate issues in Ukraine

> Advised the international air transport organisation on the various issues relating to the operations of its representative office in Ukraine

> Advised the global healthcare company on the various issues relating to the operations of its subsidiary in Ukraine



# КОНСТИТУЦІЯ УКРАЇНИ

**(Відомості Верховної Ради України (ВВР), 1996, № 30, ст. 141)**

[…]

**Стаття 19.** Правовий порядок в Україні ґрунтується на засадах, відповідно до яких ніхто не може бути примушений робити те, що не передбачено законодавством.

Органи державної влади та органи місцевого самоврядування, їх посадові особи зобов'язані діяти лише на підставі, в межах повноважень та у спосіб, що передбачені Конституцією та законами України.

[…]

**Стаття 62.** Особа вважається невинуватою у вчиненні злочину і не може бути піддана кримінальному покаранню, доки її вину не буде доведено в законному порядку і встановлено обвинувальним вироком суду.

Ніхто не зобов'язаний доводити свою невинуватість у вчиненні злочину.

Обвинувачення не може ґрунтуватися на доказах, одержаних незаконним шляхом, а також на припущеннях. Усі сумніви щодо доведеності вини особи тлумачаться на її користь.

У разі скасування вироку суду як неправосудного держава відшкодовує матеріальну і моральну шкоду, завдану безпідставним засудженням.

[…]

**Стаття 124.** Правосуддя в Україні здійснюють виключно суди.

Делегування функцій судів, а також привласнення цих функцій іншими органами чи посадовими особами не допускаються.

Юрисдикція судів поширюється на будь-який юридичний спір та будь-яке кримінальне обвинувачення. У передбачених законом випадках суди розглядають також інші справи.

Законом може бути визначений обов'язковий досудовий порядок урегулювання спору.

Народ безпосередньо бере участь у здійсненні правосуддя через присяжних.

Україна може визнати юрисдикцію Міжнародного кримінального суду на умовах, визначених Римським статутом Міжнародного кримінального суду.

[…]

**Стаття 131-1.** В Україні діє прокуратура, яка здійснює:

1) підтримання публічного обвинувачення в суді;

2) організацію і процесуальне керівництво досудовим розслідуванням, вирішення відповідно до закону інших питань під час кримінального провадження, нагляд за негласними та іншими слідчими і розшуковими діями органів правопорядку;

3) представництво інтересів держави в суді у виключних випадках і в порядку, що визначені законом.

Організація та порядок діяльності прокуратури визначаються законом.

Прокуратуру в Україні очолює Генеральний прокурор, якого призначає на посаду та звільняє з посади за згодою Верховної Ради України Президент України.

Строк повноважень Генерального прокурора становить шість років. Одна й та ж особа не може обіймати посаду Генерального прокурора два строки поспіль.

Дострокове звільнення з посади Генерального прокурора здійснюється виключно у випадках і з підстав, визначених цією Конституцією та законом.

[…]



## *CONSTITUTION OF UKRAINE*

**(Bulletin of the Verkhovna Rada of Ukraine (BVR), 1996, No. 30, p. 141)**

[…]

**Article 19.** The legal order in Ukraine is based on a principle that nobody can be compelled to do what is not envisaged in the legislation.

State bodies and local self-governance bodies, their officials must act only on the basis, within the limits of their authority and in a way that are envisaged in the Constitution of Ukraine and laws of Ukraine.

[…]

**Article 62.** A person shall be deemed innocent of committing a crime and shall not be subjected to a criminal punishment unless his/her guilt has been proven through a legal procedure and established by a court verdict of guilty.

No one is obliged to prove his innocence in committing a crime.

The accusation cannot be based on evidence obtained by illegal means, as well as on assumptions. All doubts about the proof of the person's guilt are interpreted in his favor.

If the court's verdict is canceled as unjust, the state shall compensate the pecuniary and moral damage caused by the unjustified conviction.

[…]

**Article 124.** Justice in Ukraine is administered exclusively by the courts.

The delegation of functions of the courts, as well as assignment of these functions to other bodies or officials, is not allowed.

Jurisdiction of courts extends to any legal dispute and any criminal accusation. If envisaged by law, the courts shall also consider other cases.

The law may define a mandatory pre-trial procedure for settling a dispute.

The people participate directly in the administration of justice through juries.

Ukraine may recognize the jurisdiction of the International Criminal Court under the terms set out in the Rome Statute of the International Criminal Court.

[…]

**Article 131-1.** In Ukraine, there is a prosecutor's office that conducts:

1) maintenance of a public prosecution in court;

2) organization and procedural direction of the pretrial investigation, decision in accordance with the law on other issues during criminal proceedings, supervision of covert and other investigation and search activities of law-enforcement authorities;

3) representation of the interests of the state in court in exceptional cases and in the manner determined by law.

The organization and procedure for the activities of the prosecutor's office are determined by law.

The Prosecutor's Office in Ukraine is headed by the Prosecutor General, who is appointed and dismissed by the President of Ukraine with the consent of the Verkhovna Rada of Ukraine.

The term of office of the Prosecutor General is six years. One and the same person cannot hold the office of the Prosecutor General for two consecutive terms.

Early dismissal of the Prosecutor General from office is conducted exclusively in the cases and on the grounds determined by this Constitution and law.

[…]

TRANSPERFECT

**DATE OF TRANSLATION:**  13-Jan-2021

**ELECTRONIC FILE NAME:**  Constitution of Ukraine (Articles 62 and 131-1) (UKR)

**SOURCE LANGUAGE:**  Ukrainian

**TARGET LANGUAGE:**  English

**TRANSPERFECT JOB ID:**  US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

Tcert v. 4.0



## КРИМІНАЛЬНИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ

**(Відомості Верховної Ради України (ВВР), 2013, № 9-10, № 11-12, № 13, ст.88)**

[…]

**Стаття 3.** Визначення основних термінів Кодексу

1. Терміни, що їх вжито в цьому Кодексі, якщо немає окремих вказівок, мають таке значення:

[…]

10) кримінальне провадження - досудове розслідування і судове провадження, процесуальні дії у зв'язку із вчиненням діяння, передбаченого законом України про кримінальну відповідальність;

[…]

**Стаття 38.** Орган досудового розслідування

1. Органами досудового розслідування є органи, що здійснюють досудове слідство і дізнання.

2. Досудове слідство здійснюють:

1) слідчі підрозділи:

а) органів Національної поліції;

б) органів безпеки;

в) органів, що здійснюють контроль за додержанням податкового законодавства;

г) органів Державного бюро розслідувань;

2) підрозділ детективів, підрозділ внутрішнього контролю Національного антикорупційного бюро України.

3. Дізнання здійснюють підрозділи дізнання або уповноважені особи інших підрозділів:

а) органів Національної поліції;

б) органів безпеки;

в) органів, що здійснюють контроль за додержанням податкового законодавства;

ґ) органів Державного бюро розслідувань;

ґ) Національного антикорупційного бюро України.

4. Досудове слідство здійснюють слідчі одноособово або слідчою групою.

5. Орган досудового розслідування зобов'язаний застосовувати всі передбачені законом заходи для забезпечення ефективності досудового розслідування.

[…]

**Стаття 42.** Підозрюваний, обвинувачений

1. Підозрюваним є особа, якій у порядку, передбаченому статтями 276-279 цього Кодексу, повідомлено про підозру, особа, яка затримана за підозрою у вчиненні кримінального правопорушення, або особа, щодо якої складено повідомлення про підозру, однак його не вручено їй внаслідок невстановлення місцезнаходження особи, проте вжито заходів для вручення у спосіб, передбачений цим Кодексом для вручення повідомлень.

2. Обвинуваченим (підсудним) є особа, обвинувальний акт щодо якої переданий до суду в порядку, передбаченому статтею 291 цього Кодексу.

3. Підозрюваний, обвинувачений має право:

1) знати, у вчиненні якого кримінального правопорушення його підозрюють, обвинувачують;

2) бути чітко і своєчасно повідомленим про свої права, передбачені цим Кодексом, а також отримати їх роз'яснення;

3) на першу вимогу мати захисника і побачення з ним до першого допиту з дотриманням умов, що забезпечують конфіденційність спілкування, а також після першого допиту - мати такі побачення без обмеження їх кількості й тривалості; на участь захисника у проведенні допиту та інших процесуальних дій; на відмову від захисника в будь-який момент кримінального провадження; на отримання правової допомоги захисника за рахунок держави у випадках, передбачених цим Кодексом та/або законом, що регулює надання безоплатної правової допомоги, в тому числі у зв'язку з відсутністю коштів на її оплату;

4) не говорити нічого з приводу підозри проти нього, обвинувачення або у будь-який момент відмовитися відповідати на запитання;

5) давати пояснення, показання з приводу підозри, обвинувачення чи в будь-який момент відмовитися їх давати;

6) вимагати перевірки обґрунтованості затримання;

7) у разі затримання або застосування запобіжного заходу у вигляді тримання під вартою - на негайне повідомлення членів сім'ї, близьких родичів чи інших осіб про затримання і місце свого перебування згідно з положеннями статті 213 цього Кодексу;

8) збирати і подавати слідчому, прокурору, слідчому судді докази;

9) брати участь у проведенні процесуальних дій;

10) під час проведення процесуальних дій ставити запитання, подавати свої зауваження та заперечення щодо порядку проведення дій, які заносяться до протоколу;

11) застосовувати з додержанням вимог цього Кодексу технічні засоби при проведенні процесуальних дій, в яких він бере участь. Слідчий, прокурор, слідчий суддя, суд мають право заборонити застосовування технічних засобів при проведенні окремої процесуальної дії чи на певній стадії кримінального провадження з метою нерозголошення відомостей, які містять таємницю, що охороняється законом, чи стосуються інтимного життя особи, про що виноситься (постановляється) вмотивована постанова (ухвала);

12) заявляти клопотання про проведення процесуальних дій, про забезпечення безпеки щодо себе, членів своєї сім'ї, близьких родичів, майна, житла тощо;

13) заявляти відводи;

14) ознайомлюватися з матеріалами досудового розслідування в порядку, передбаченому статтею 221 цього Кодексу, та вимагати відкриття матеріалів згідно зі статтею 290 цього Кодексу;

15) одержувати копії процесуальних документів та письмові повідомлення;

16) оскаржувати рішення, дії та бездіяльність слідчого, прокурора, слідчого судді в порядку, передбаченому цим Кодексом;

17) вимагати відшкодування шкоди, завданої незаконними рішеннями, діями чи бездіяльністю органу, що здійснює оперативно-розшукову діяльність, досудове розслідування, прокуратури або суду, в порядку, визначеному законом, а також відновлення репутації, якщо підозра, обвинувачення не підтвердилися;

18) користуватися рідною мовою, отримувати копії процесуальних документів рідною або іншою мовою, якою він володіє, та в разі необхідності користуватися послугами перекладача за рахунок держави.

4. Обвинувачений також має право:

1) брати участь під час судового розгляду у допиті свідків обвинувачення або вимагати їхнього допиту, а також вимагати виклику і допиту свідків захисту на тих самих умовах, що й свідків обвинувачення;

2) збирати і подавати суду докази;

3) висловлювати в судовому засіданні свою думку щодо клопотань інших учасників судового провадження;

4) виступати в судових дебатах;

5) ознайомлюватися з журналом судового засідання та технічним записом судового процесу, які йому зобов'язані надати уповноважені працівники суду, і подавати щодо них свої зауваження;

6) оскаржувати в установленому цим Кодексом порядку судові рішення та ініціювати їх перегляд, знати про подані на них апеляційні та касаційні скарги, заяви про їх перегляд, подавати на них заперечення;

7) отримувати роз'яснення щодо порядку підготовки та використання досудової доповіді, відмовлятися від участі у підготовці досудової доповіді;

8) брати участь у підготовці досудової доповіді, надавати представнику персоналу органу пробації інформацію, необхідну для підготовки такої доповіді, ознайомлюватися з текстом досудової доповіді, подавати свої зауваження та уточнення.

5. Підозрюваний, обвинувачений мають також інші процесуальні права, передбачені цим Кодексом.

6. Підозрюваний, обвинувачений, який є іноземцем і тримається під вартою, має право на зустріч з представником дипломатичної чи консульської установи своєї держави, яку йому зобов'язана забезпечити адміністрація місця ув'язнення.

7. Підозрюваний, обвинувачений зобов'язаний:

1) прибути за викликом до слідчого, прокурора, слідчого судді, суду, а в разі неможливості прибути за викликом у призначений строк - заздалегідь повідомити про це зазначених осіб;

2) виконувати обов'язки, покладені на нього рішенням про застосування заходів забезпечення кримінального провадження;

3) підкорятися законним вимогам та розпорядженням слідчого, прокурора, слідчого судді, суду;

4) надавати достовірну інформацію представнику персоналу органу пробації, необхідну для підготовки досудової доповіді.

8. Підозрюваному, обвинуваченому вручається пам'ятка про його процесуальні права та обов'язки одночасно з їх повідомленням особою, яка здійснює таке повідомлення.

[…]

**Стаття 110**. Процесуальні рішення

1. Процесуальними рішеннями є всі рішення органів досудового розслідування, прокурора, слідчого судді, суду.

2. Судове рішення приймається у формі ухвали, постанови або вироку, які мають відповідати вимогам, передбаченим статтями 369, 371-374 цього Кодексу.

3. Рішення слідчого, дізнавача, прокурора приймається у формі постанови. Постанова виноситься у випадках, передбачених цим Кодексом, а також коли слідчий, дізнавач, прокурор визнає це за необхідне.

4. Обвинувальний акт є процесуальним рішенням, яким прокурор висуває обвинувачення у вчиненні кримінального правопорушення і яким завершується досудове розслідування. Обвинувальний акт повинен відповідати вимогам, передбаченим у статті 291 цього Кодексу.

5. Постанова слідчого, дізнавача, прокурора складається з:

1) вступної частини, яка повинна містити відомості про:

місце і час прийняття постанови;

прізвище, ім'я, по батькові, посаду особи, яка прийняла постанову;

2) мотивувальної частини, яка повинна містити відомості про:

зміст обставин, які є підставами для прийняття постанови;

мотиви прийняття постанови, їх обгрунтування та посилання на положення цього Кодексу;

3) резолютивної частини, яка повинна містити відомості про:

зміст прийнятого процесуального рішення;

місце та час (строки) його виконання;

особу, якій належить виконати постанову;

можливість та порядок оскарження постанови.

6. Постанова слідчого, дізнавача, прокурора виготовляється на офіційному бланку та підписується службовою особою, яка прийняла відповідне процесуальне рішення.

7. Постанова слідчого, дізнавача, прокурора, прийнята в межах компетенції згідно із законом, є обов'язковою для виконання фізичними та юридичними особами, прав, свобод чи інтересів яких вона стосується.

[…]

**Стаття 277.** Зміст письмового повідомлення про підозру

1. Письмове повідомлення про підозру складається прокурором або слідчим за погодженням з прокурором.

Повідомлення має містити такі відомості:

1) прізвище та посаду слідчого, прокурора, який здійснює повідомлення;

2) анкетні відомості особи (прізвище, ім'я, по батькові, дату та місце народження, місце проживання, громадянство), яка повідомляється про підозру;

3) найменування (номер) кримінального провадження, у межах якого здійснюється повідомлення;

4) зміст підозри;

5) правова кваліфікація кримінального правопорушення, у вчиненні якого підозрюється особа, із зазначенням статті (частини статті) закону України про кримінальну відповідальність;

6) стислий виклад фактичних обставин кримінального правопорушення, у вчиненні якого підозрюється особа, у тому числі зазначення часу, місця його вчинення, а також інших суттєвих обставин, відомих на момент повідомлення про підозру;

7) права підозрюваного;

8) підпис слідчого, прокурора, який здійснив повідомлення.



# CRIMINAL PROCEDURE CODE OF UKRAINE

### (Bulletin of the Verkhovna Rada of Ukraine (BVR), 2013, No. 9-10, No. 11-12, No. 13, p. 88)

[…]

**Article 3.** Key definitions of the Code

1. The terms that are used in this Code, if there are no special instructions, have the following meaning:

[…]

10) criminal proceedings – pretrial investigation and court trial, procedural actions in connection with the commission of an act provided for by the law of Ukraine on criminal liability;

[…]

**Article 38.** Pretrial investigation body

1. The bodies of the pretrial investigation are the bodies that conduct the pretrial investigation and inquiry.

2. Pre-trial investigation is conducted:

1) investigative units of:

a) bodies of the National Police;

b) security bodies;

c) bodies exercising control over the observance of tax legislation;

d) bodies of the State Bureau of Investigation;

2) detectives unit, internal control unit of the National Anticorruption Bureau of Ukraine.

3. Inquiries are conducted by inquiry units or authorized persons of other units of:

a) bodies of the National Police;

b) security bodies;

c) bodies exercising control over the observance of tax legislation;

d) bodies of the State Bureau of Investigation;

e) National Anticorruption Bureau of Ukraine.

4. The pretrial investigation is conducted by investigators alone or by an investigative group.

5. The pretrial investigation body is obliged to take all measures provided by law to ensure the effectiveness of the pretrial investigation.

[…]

**Article 42.** Suspect, accused

1. A suspect is a person who, in accordance with the procedure provided for in Articles 276-279 of this Code, has been notified of suspicion, a person detained on suspicion of committing a criminal offense, or a person in respect of whom a notice of suspicion has been drawn up, but it has not been handed over due to failure to establish the location of the person, however, measures have been taken to deliver in the manner prescribed by this Code for the delivery of notifications.

2. Accused (defendant) is a person in respect of whom accusation documents have been brought to court in accordance with the procedure provided for in Article 291 of this Code.

3. The suspect, the accused has the right:

1) to know what criminal offense he is suspected of, accused of;

2) to be clearly and timely notified of his rights provided for by this Code, as well as to receive their explanations;

3) at the first request to have a defense lawyer and a meeting with him before the first interrogation, subject to conditions ensuring the confidentiality of communication, and also after the first interrogation - to have such visits without limiting their number and duration; to the participation of a defense lawyer in interrogation and other procedural actions; to refuse a defense lawyer at any time in criminal proceedings; to receive legal assistance from a defense lawyer at the expense of the state in cases provided for by this Code and/or the law regulating the provision of free legal assistance, including in connection with the lack of funds to pay for it;

4) not to say anything about the suspicion against him, the accusation or at any time refuse to answer questions;

5) to give explanations, testimonies about suspicions, accusations or refuse to give them at any time;

6) to require verification of the justification for detention;

7) in the event of arrest or the application of a preventive measure in the form of detention in custody - to immediately notify family members, close relatives or other persons about the detention and the place of stay in accordance with the provisions of Article 213 of this Code;

8) to collect and submit evidence to the investigator, prosecutor, investigating judge;

9) to participate in the conduct of legal proceedings;

10) during procedural actions, to ask questions, submit comments and objections regarding the procedure for conducting actions that shall be recorded in the protocol;

11) to apply, in compliance with the requirements of this Code, technical means during procedural actions in which he participates. An investigator, a prosecutor, an investigating judge, a court has the right to prohibit the use of technical means during a separate procedural action or at a certain stage of criminal proceedings for the purpose of non-disclosure of information containing secrets protected by law, relate to the intimate life of a person, about which a reasoned resolution (order) is issued;

12) to file requests for procedural actions, on ensuring security in relation to himself, his family members, close relatives, property, housing, etc.;

13) to declare challenges;

14) to get acquainted with the materials of the pretrial investigation in the manner prescribed by Article 221 of this Code, and to demand the opening of materials in accordance with Article 290 of this Code;

15) to receive copies of procedural documents and written notifications;

16) to appeal against decisions, actions and inaction of an investigator, prosecutor, investigating judge in the manner prescribed by this Code;

17) to demand compensation for harm caused by illegal decisions, actions or inaction of the body conducting operational-search activities, pretrial investigation, prosecutor's office or court, in the manner prescribed by law, as well as restoration of reputation, if the suspicion, accusation was not confirmed;

18) to use his native language, receive copies of procedural documents in his native or another language that he speaks, and, if necessary, use the services of an interpreter at the expense of the state.

4. The accused also has the right:

1) to participate during the trial in the examination of witnesses for prosecution or demand their interrogation, and to demand the summoning and interrogation of witnesses for defense under the same conditions as witnesses for prosecution;

2) to collect and submit evidence to the court;

3) to express in the court session his opinion regarding the petitions of other participants in the court proceedings;

4) to speak in court hearings;

5) to get acquainted with the journal of the court session and the technical record of the trial, which the authorized employees of the court must provide to him, and submit comments on them;

6) to appeal in accordance with the procedure established by this Code against court decisions and initiate their revision, to know about the appeals and cassation complaints filed against them, applications for their revision, to submit objections to them;

7) to receive explanations on the procedure for the preparation and use of the pretrial report, refuse to participate in the preparation of the pretrial report;

8) to participate in the preparation of the pretrial report, provide the representative of the staff of the probation authority with the information necessary for the preparation of such a report, get acquainted with the text of the pretrial report, submit comments and clarifications.

5. The suspect, the accused also have other procedural rights provided for by this Code.

6. The suspect, the accused, who is a foreigner and is in custody, has the right to a meeting with a representative of the diplomatic or consular institution of his state, which the administration of the place of detention is obliged to arrange.

7. The suspect, the accused is obliged:

1) to arrive upon summons to the investigator, prosecutor, investigating judge, court, and if it is impossible to arrive on summons within the appointed time – inform the indicated persons about it in advance;

2) to fulfill the duties assigned to him by the decision on the application of interim measures in criminal proceedings;

3) to obey the legal requirements and orders of the investigator, prosecutor, investigator, judge, court;

4) to provide the representative of the staff of probation authority with reliable information necessary for the preparation of the pretrial report.

8. The suspect, the accused is given a memo on his procedural rights and obligations simultaneously with their notification by the person who conducts such notification.

[…]

**Article 110.** Procedural decisions

1. Procedural decisions are all decisions of the bodies of pretrial investigation, prosecutor, investigating judge, court.

2. The court decision is taken in the form of an order, resolution or verdict, which must meet the requirements provided for in Articles 369, 371-374 of this Code.

3. The decision of the investigator, inquirer, prosecutor is made in the form of a resolution. The resolution is issued in the cases provided for by this Code, as well as when the investigator, inquirer, prosecutor considers it necessary.

4. An accusation document is a procedural decision by which a prosecutor brings charges of a criminal offense and by which the pretrial investigation ends. The accusation document must comply with the requirements provided for in Article 291 of this Code.

5. The decision of the investigator, inquirer, prosecutor consists of:

1) the introductory part, which must contain information about:

place and time of issuance of the resolution;

surname, name, patronymic, position of the person who adopted the resolution;

2) motivation part, which must contain information about:

the content of the circumstances that are the grounds for the adoption of the resolution;

the reasons for the adoption of the resolution, their justification and references to the provisions of this Code;

3) operative part, which must contain information about:

the content of the adopted procedural decision;

place and time (terms) of its execution;

the person who is to execute the resolution;

the possibility and procedure for appealing against the decision.

6. The resolution of the investigator, inquirer, prosecutor is made on the official letterhead and signed by the official who made the relevant procedural decision.

7. The resolution of the investigator, inquirer, prosecutor, adopted within the competence in accordance with the law, is binding on individuals and legal entities whose rights, freedoms or interests it concerns.

[…]

**Article 277.** Content of a written notice of suspicion

1. A written notice of suspicion is issued by a prosecutor or an investigator in agreement with the prosecutor.

The notification must contain the following information:

1) surname and position of the investigator, prosecutor conducting the notification;

2) personal information of the person (surname, name, patronymic, date and place of birth, place of residence, citizenship), which is notified of the suspicion;

3) title (number) of the criminal proceedings within which the notification is conducted;

4) content of the suspicion;

5) legal qualification of a criminal offense, of which the person is suspected, with an indication of the article (part of the article) of the law of Ukraine on criminal liability;

6) summary of the factual circumstances of the criminal offense of which the person is suspected, including the indication of the time, place of its commission, as well as other significant circumstances known at the time of notification of suspicion;

7) the suspect's rights;

8) the signature of the investigator, the prosecutor who made the notification.

**TRANSPERFECT**

**DATE OF TRANSLATION:**       13-Jan-2021

**ELECTRONIC FILE NAME:**      Criminal Procedure Code (UKR)

**SOURCE LANGUAGE:**       Ukrainian

**TARGET LANGUAGE:**       English

**TRANSPERFECT JOB ID:**       US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

Tcert v. 4.0



### *З А К О Н   У К Р А Ї Н И*

## Про прокуратуру

### (Відомості Верховної Ради (ВВР), 2015, № 2-3, ст.12)

[…]

**Стаття 2.** Функції прокуратури

1. На прокуратуру покладаються такі функції:

1) підтримання державного обвинувачення в суді;

2) представництво інтересів громадянина або держави в суді у випадках, визначених цим Законом та главою 12 розділу III Цивільного процесуального кодексу України;

3) нагляд за додержанням законів органами, що провадять оперативно-розшукову діяльність, дізнання, досудове слідство;

4) нагляд за додержанням законів при виконанні судових рішень у кримінальних справах, а також при застосуванні інших заходів примусового характеру, пов'язаних з обмеженням особистої свободи громадян.

2. З метою реалізації своїх функцій прокуратура здійснює міжнародне співробітництво.

3. На прокуратуру не можуть покладатися функції, не передбачені Конституцією України.

[…]

**Стаття 5.** Здійснення функцій прокуратури виключно прокурорами

1. Функції прокуратури України здійснюються виключно прокурорами. Делегування функцій прокуратури, а також привласнення цих функцій іншими органами чи посадовими особами не допускається.

[…]



*L A W   O F   U K R A I N E*

**On Prosecutor's Office**

**(Bulletin of the Verkhovna Rada (BVR), 2015, No. 2-3, p. 12)**

[…]

**Article 2.** Functions of the prosecutor's office

1. The prosecutor's office is assigned with the following functions:

1) maintenance of public prosecution in court;

2) representation of the interests of a citizen or the state in court in cases determined by this Law and Chapter 12 of Section III of the Civil Procedure Code of Ukraine;

3) supervision over the observance of laws by bodies conducting operational-search activity, inquiry, pre-trial investigation;

4) supervision over the observance of laws in the execution of court decisions in criminal cases, as well as in the application of other coercive measures related to the restriction of the personal freedom of citizens.

2. In order to fulfill its functions, the prosecutor's office conducts international cooperation.

3. The prosecutor's office cannot be assigned functions that are not provided for by the Constitution of Ukraine.

[…]

**Article 5.** Exercise of the functions of the prosecutor's office exclusively by prosecutors

1. The functions of the prosecutor's office of Ukraine shall be exercised exclusively by prosecutors. Delegation of the functions of the prosecutor's office, as well as their appropriation by other authorities or officials shall be prohibited.

[…]

**DATE OF TRANSLATION:**          13-Jan-2021

**ELECTRONIC FILE NAME:**          Law on Prosecutor`s Office (UKR)

**SOURCE LANGUAGE:**          Ukrainian

**TARGET LANGUAGE:**          English

**TRANSPERFECT JOB ID:**          US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

Tcert v. 4.0



# ЦИВІЛЬНИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ

## (Відомості Верховної Ради України (ВВР), 2004, № 40-41, 42, ст.492)

[…]

**Стаття 262.** Окрема ухвала суду

[…]

11. Окрема ухвала стосовно порушення законодавства, яке містить ознаки кримінального правопорушення, надсилається прокурору або органу досудового розслідування, які повинні надати суду відповідь про вжиті ними заходи у визначений в окремій ухвалі строк. За відповідним клопотанням прокурора або органу досудового розслідування вказаний строк може бути продовжено.

[…]

**Стаття 290.** Пред'явлення позову про визнання необґрунтованими активів та їх стягнення в дохід держави

1. Позов про визнання необґрунтованими активів та їх стягнення в дохід держави подається та представництво держави в суді здійснюється прокурором Спеціалізованої антикорупційної прокуратури. У справах про визнання необґрунтованими активів та їх стягнення в дохід держави щодо активів працівника Національного антикорупційного бюро України, прокурора Спеціалізованої антикорупційної прокуратури чи активів, набутих іншими особами в передбачених цією статтею випадках, звернення до суду та представництво держави в суді здійснюються прокурорами Генеральної прокуратури України за дорученням Генерального прокурора.

2. Позов пред'являється щодо:

активів, набутих після дня набрання чинності Законом України "Про внесення змін до деяких законодавчих актів України щодо конфіскації незаконних активів осіб, уповноважених на виконання функцій держави або місцевого самоврядування, і покарання за набуття таких активів", якщо різниця між їх вартістю і законними доходами особи, уповноваженої на виконання функцій держави або місцевого самоврядування, у п'ятсот і більше разів перевищує розмір прожиткового мінімуму для працездатних осіб, встановленого законом на день набрання чинності зазначеним Законом, але не перевищує межу, встановлену статтею 368-5 Кримінального кодексу України;

активів, набутих після дня набрання чинності Законом України "Про внесення змін до деяких законодавчих актів України щодо конфіскації незаконних активів осіб, уповноважених на виконання функцій держави або місцевого самоврядування, і покарання за набуття таких активів", якщо різниця між їх вартістю і законними доходами особи, уповноваженої на виконання функцій держави або місцевого самоврядування, у

п'ятсот і більше разів перевищує розмір прожиткового мінімуму для працездатних осіб, встановленого законом на день набрання чинності зазначеним Законом, а кримінальне провадження за статтею 368-5 Кримінального кодексу України, предметом злочину в якому були ці активи, закрите на підставі пунктів 3, 4, 5, 8, 10 частини першої статті 284 Кримінального процесуального кодексу України і відповідне рішення набуло статусу остаточного;

доходів, отриманих від активів, зазначених в абзацах другому та третьому цієї частини.

3. Для визначення вартості активів, зазначених у частині другій цієї статті, застосовується вартість їх набуття, а у разі їх набуття безоплатно чи за ціною, нижчою за мінімальну ринкову, мінімальна ринкова вартість таких або аналогічних активів на дату набуття.

4. Позов про визнання необґрунтованими активів та їх стягнення в дохід держави може бути пред'явлено до особи, яка, будучи особою, уповноваженою на виконання функцій держави або місцевого самоврядування, набула у власність активи, зазначені у частині другій цієї статті, та/або до іншої фізичної чи юридичної особи, яка набула у власність такі активи за дорученням особи, уповноваженої на виконання функцій держави або місцевого самоврядування, або якщо особа, уповноважена на виконання функцій держави або місцевого самоврядування, може прямо чи опосередковано вчиняти щодо таких активів дії, тотожні за змістом здійсненню права розпорядження ними.

5. Національне антикорупційне бюро України та Спеціалізована антикорупційна прокуратура, а у визначених законом випадках - Державне бюро розслідувань та Генеральна прокуратура України - вживають заходів щодо виявлення необґрунтованих активів та збору доказів їх необґрунтованості.

6. При визначенні різниці між вартістю набутих активів і законними доходами відповідно до частини другої цієї статті не враховуються активи, враховані при кваліфікації діяння у триваючому кримінальному провадженні за статтею 368-5 Кримінального кодексу України, у рішенні про закриття кримінального провадження, крім випадків його закриття на підставі пунктів 3, 4, 5, 8, 10 частини першої статті 284 Кримінального процесуального кодексу України, або у вироку суду за зазначеною статтею Кримінального кодексу України, які набрали законної сили.

7. У разі якщо ухвалення судового рішення щодо визнання необґрунтованими активів та їх стягнення в дохід держави може вплинути на права та обов'язки третіх осіб щодо таких активів, позивач зобов'язаний одночасно з пред'явленням позову повідомити про це таких третіх осіб і подати до суду заяву про залучення їх до участі у справі як третіх осіб, які не заявляють самостійні вимоги щодо предмета спору. До такої заяви мають бути додані докази про направлення копій заяви особам, про залучення яких як третіх осіб подана заява.

8. Для цілей цієї глави:

1) термін "активи" означає грошові кошти (у тому числі готівкові кошти, кошти, що перебувають на банківських рахунках чи на зберіганні у банках або інших фінансових установах), інше майно, майнові права, нематеріальні активи, у тому числі криптовалюти, обсяг зменшення фінансових зобов'язань, а також роботи чи послуги, надані особі, уповноваженій на виконання функцій держави чи місцевого самоврядування;

2) під "набуттям активів" слід розуміти набуття активів особою, уповноваженою на виконання функцій держави або місцевого самоврядування, у власність, а також набуття

активів у власність іншою фізичною або юридичною особою, якщо доведено, що таке набуття було здійснено за дорученням особи, уповноваженої на виконання функцій держави або місцевого самоврядування, або що особа, уповноважена на виконання функцій держави або місцевого самоврядування, може прямо чи опосередковано вчиняти щодо таких активів дії, тотожні за змістом здійсненню права розпорядження ними;

3) особами, уповноваженими на виконання функцій держави або місцевого самоврядування, є особи, зазначені у пункті 1 частини першої статті 3 Закону України "Про запобігання корупції";

4) працівниками Національного антикорупційного бюро України є Директор бюро, його перший заступник, заступник, особи начальницького складу та державні службовці Національного антикорупційного бюро України;

5) термін "законні доходи" означає доходи, правомірно отримані особою із законних джерел, зокрема джерел, визначених пунктами 7 і 8 частини першої статті 46 Закону України "Про запобігання корупції";

**Стаття 291.** Визнання необґрунтованими активів

1. Суд визнає необґрунтованими активи, якщо судом на підставі поданих доказів не встановлено, що активи або грошові кошти, необхідні для придбання активів, щодо яких поданий позов про визнання їх необґрунтованими, були набуті за рахунок законних доходів.

[…]



## CIVIL PROCEDURE CODE OF UKRAINE

**(Bulletin of the Verkhovna Rada of Ukraine (BVR), 2004, No. 40-41, p. 492)**

[…]

**Article 262**. A separate order

[…]

11. A separate order on violation of the law, which contains elements of a criminal offense, is sent to the prosecutor or the pre-trial investigation authority, which must provide the court with a response on the measures taken within a period specified in a separate order. At the request of the prosecutor or the pre-trial investigation authority, this period may be extended.

[…]

**Article 290.** Filing a claim for the recognition of assets as unjustified and their recovery to the state revenue

1. The claim for the recognition of assets as unjustified and their recovery to the state revenue is filed and the representation of the state in court is performed by the prosecutor of the Specialized Anti-Corruption Prosecutor's Office. In cases on the recognition of assets as unjustified and their recovery to the state revenue on the assets of an employee of the National Anti-Corruption Bureau of Ukraine, the prosecutor of the Specialized Anti-Corruption Prosecutor's Office or assets acquired by other persons in the cases provided for by this Article, the appeal to the court and the representation of the state in court are performed by the prosecutors of the Prosecutor`s General Office of Ukraine on behalf of the Prosecutor General.

2. The claim is being filed against:

assets acquired after the effective date of the Law of Ukraine "On Amendments to Certain Legislative Acts of Ukraine Concerning the Forfeiture of Illegal Assets of Persons Authorized to Perform the Functions of the State or Local Self-Government, and Punishment for the Acquisition of Such Assets", if the difference between their value and the legal income of the person authorized to perform the functions of the state or local self-government is five hundred or more times higher than the poverty line for able-bodied persons established by law on the date of entry into force of the specified Law, but does not exceed the limit established by Article 368-5 of the Criminal Code of Ukraine;

assets acquired after the effective date of the Law of Ukraine "On Amendments to Certain Legislative Acts of Ukraine Concerning the Forfeiture of Illegal Assets of Persons Authorized to Perform the Functions of the State or Local Self-Government, and Punishment for the Acquisition of Such Assets", if the difference between their value and the legal income of the person authorized to perform the functions of the state or local self-government is five hundred or more times higher than the poverty line for able-bodied persons established by law on the date

of entry into force of the specified Law, and criminal proceedings under Article 368-5 of the Criminal Code of Ukraine, the target of crime in which was these assets are closed on the basis of items 3, 4, 5, 8, 10 of the part one of Article 284 of the Criminal Procedure Code of Ukraine and the corresponding decision received the final status;

income received from the assets specified in the second and third paragraphs of this part.

3. To determine the value of the assets specified in part two of this article, the cost of their acquisition is applied, and if they are acquired free of charge or at a price below the minimum market value, the minimum market value of such or similar assets on the date of acquisition.

4. A claim for the recognition of assets as unjustified and their recovery to the state revenue may be brought against a person who, being a person authorized to perform the functions of the state or local self-government, acquired the assets specified in part two of this article, and/or individual or legal entity who acquired ownership of such assets on behalf of a person authorized to perform the functions of the state or local self-government, or if the person authorized to perform the functions of the state or local self-government can directly or indirectly perform actions in relation to such assets that are identical in the meaning of the exercise of the right to dispose of them.

5. The National Anti-Corruption Bureau of Ukraine and the Specialized Anti-Corruption Prosecutor's Office, and in cases specified by law - the State Bureau of Investigation and the Prosecutor's General Office of Ukraine - take measures to identify unjustified assets and collect evidence of their groundlessness.

6. When determining the difference between the value of acquired assets and legal income in accordance with part two of this article, the assets taken into account when qualifying an act in an ongoing criminal proceeding under Article 368-5 of the Criminal Code of Ukraine, in a decision to close criminal proceedings, except for cases of its closure on the basis of items 3, 4, 5, 8, 10 of part one of Article 284 of the Criminal Procedure Code of Ukraine, or in a court decision under the specified article of the Criminal Code of Ukraine, which entered into legal force, are not taken into account.

7. If the adoption of a court decision on the recognition of assets as unjustified and their recovery to the state revenue may affect the rights and obligations of third parties in relation to such assets, the plaintiff is obliged, simultaneously with the filing of a claim, to inform such third parties about this and file the application to the court to involve them in the case as third parties who do not make independent claims regarding the subject of the dispute. Such an application must be accompanied by evidence that copies of the application have been sent to persons whose involvement as third parties the application has been submitted.

8. For the purposes of this chapter:

1) the term "assets" means monetary funds (including cash, funds held in bank accounts or stored in banks or other financial institutions), other property, property rights, intangible assets, including cryptocurrency, the amount of reduction in financial obligations, as well as works or services provided to a person authorized to perform the functions of the state or local self-government;

2) the term "acquisition of assets" designates the acquisition of assets by a person authorized to perform the functions of the state or local self-government, by right of ownership, as well as the acquisition of assets by right of ownership by another individual or legal entity, if it is proved that such an acquisition was performed on behalf of a person authorized to perform functions of

the state or local self-government, or if a person authorized to perform the functions of the state or local self-government can directly or indirectly perform actions in relation to such assets that are identical in the meaning of the exercise of the right to dispose of them.

3) persons authorized to perform the functions of the state or local self-government are the persons specified in item 1 of part one of Article 3 of the Law of Ukraine "On Prevention of Corruption";

4) the employees of the National Anti-Corruption Bureau of Ukraine are the Director of the Bureau, his first deputy, deputy, officials of the command staff and civil servants of the National Anti-Corruption Bureau of Ukraine;

5) the term "legal income" designates the income lawfully received by a person from legal sources, in particular, sources specified in items 7 and 8 of part one of Article 46 of the Law of Ukraine "On Prevention of Corruption";

**Article 291.** The recognition of assets as unjustified

1. The court recognizes the assets as unjustified if the court, on the basis of the evidence provided, has not established that the assets or funds necessary to acquire the assets, in respect of which a claim has been filed for recognizing them as unjustified, were acquired from legal income.

[…]

**TRANSPERFECT**

**DATE OF TRANSLATION:**      14-Jan-2021

**ELECTRONIC FILE NAME:**      Civil Procedure Code (Article 262(11))

**SOURCE LANGUAGE:**      Ukrainian

**TARGET LANGUAGE:**      English

**TRANSPERFECT JOB ID:**      US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

Tcert v. 4.0



**DATE OF TRANSLATION: 1/31/2021**

**ENGLISH ELECTRONIC FILE NAME:**
Civil Procedure Code (Article 290, 291)_EN

**SOURCE LANGUAGE: Ukrainian**
**TARGET LANGUAGE: English**
**TRANSPERFECT JOB ID: US0890664**

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

TCert v. 4.0



## ГОСПОДАРСЬКИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ

**(Відомості Верховної Ради України (ВВР), 1992, № 6, ст.56)**

[…]

**Стаття 246.** Окрема ухвала

[…]

11. Окрема ухвала стосовно порушення законодавства, яке містить ознаки кримінального правопорушення, надсилається прокурору або органу досудового розслідування, який повинен надати суду відповідь про вжиті ними заходи у визначений в окремій ухвалі строк. За відповідним клопотанням прокурора або органу досудового розслідування вказаний строк може бути продовжено.

[…]



## COMMERCIAL PROCEDURE CODE OF UKRAINE

### (Bulletin of the Verkhovna Rada of Ukraine, 1992, No. 6, p.56)

[…]

**Article 246.** A separate Order

[…]

11. A separate order on violation of the law, which contains elements of a criminal offense, is sent to the prosecutor or the pre-trial investigation authority, which must provide the court with a response on the measures taken within a period specified in a separate order. At the request of the prosecutor or the pre-trial investigation authority, this period may be extended.

[…]

**DATE OF TRANSLATION:**        14-Jan-2021

**ELECTRONIC FILE NAME:**        Commercial Procedure Code (Article 246 (11))

**SOURCE LANGUAGE:**        Ukrainian

**TARGET LANGUAGE:**        English

**TRANSPERFECT JOB ID:**        US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

Tcert v. 4.0



### *ЦИВІЛЬНИЙ КОДЕКС УКРАЇНИ*

**(Відомості Верховної Ради України (ВВР), 2003, №№ 40-44, ст.356)**

[…]

**Стаття 1224.** Усунення від права на спадкування

1. Не мають права на спадкування особи, які умисно позбавили життя спадкодавця чи будь-кого з можливих спадкоємців або вчинили замах на їхнє життя.

Положення абзацу першого цієї частини не застосовується до особи, яка вчинила такий замах, якщо спадкодавець, знаючи про це, все ж призначив її своїм спадкоємцем за заповітом.

[…]



*CIVIL CODE OF UKRAINE*

**(Bulletin of the Verkhovna Rada of Ukraine (BVR), 2003, Nos. 40-44, p.356)**

[…]

**Article 1224.** Removal from the right to inheritance

Persons who have deliberately took the life of the testator or any of the possible heirs, or have committed an attempt on their lives, are not entitled to inheritance.

The provisions of the first paragraph of this part shall not apply to a person who committed such an attempt if the testator, knowing this, nevertheless appointed this person as his heir under the will.

[…]

**TRANSPERFECT**

**DATE OF TRANSLATION:** 14-Jan-2021

**ELECTRONIC FILE NAME:** Civil Code of Ukraine (Article 1224)

**SOURCE LANGUAGE:** Ukrainian

**TARGET LANGUAGE:** English

**TRANSPERFECT JOB ID:** US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

Tcert v. 4.0

Категорія справи № **490/11934/15-ц**: **не визначено.**

Надіслано судом: **не визначено.** Зареєстровано: **27.09.2017.** Оприлюднено: **28.09.2017.**
Номер судового провадження: **не визначено**



**У Х В А Л А**

**І М Е Н Е М   У К Р А Ї Н И**

**6 вересня 2017 року**                                                                 **м. Київ**

**Колегія суддів судової палати у цивільних справах Вищого спеціалізованого суду
України з розгляду цивільних і кримінальних справ у складі:**

**головуючого Ткачука О.С. суддів: Висоцької В.С., Кафідової О.В., Умнової
О.В., Фаловської І.М.,** розглянувши у відкритому судовому засіданні цивільну справу
за позовом ОСОБА_6, правонаступником якої є ОСОБА_7 до ОСОБА_8, третя особа:
ОСОБА_9, про усунення від права на спадкування, визнання права власності в порядку
спадкування за законом та визначення часток, за касаційною скаргою ОСОБА_6 в особі
представника ОСОБА_7 на заочне рішення Центрального районного суду  м. Миколаєва
від 11 травня 2016 року, ухвалу  апеляційного суду Миколаївської області від 26 вересня
2016 року,

**встановила:**

У грудні 2014 року ОСОБА_6, правонаступником якої є ОСОБА_10 звернулася до суду
з позовом, вимоги якого уточнила в ході розгляду справи та просила: усунути ОСОБА_8
від отримання права на спадкування за законом після смерті ОСОБА_10, померлого
ІНФОРМАЦІЯ_1 року; визнати за ОСОБА_9 право спадкування за законом після смерті її
батька ОСОБА_10 на володіння частиною квартири АДРЕСА_1; визнати за ОСОБА_6
право спадкування за законом після смерті її сина ОСОБА_10 на володіння частиною
квартири АДРЕСА_1; визначити частки у спадщині на вказану квартиру між спадкоємцями.

Позов мотивовано тим, що ІНФОРМАЦІЯ_1 року помер син позивача - ОСОБА_10.
Після його смерті відкрилася спадщина, до складу якої увійшла частка квартири
АДРЕСА_2, яка належала останньому на праві спільної сумісної власності разом з
ОСОБА_6 відповідно до свідоцтва про право власності на житло від 6 липня 1998 року.

27 липня 2007 року ОСОБА_6 звернулась до Першої Миколаївської державної
нотаріальної контори з заявою про прийняття спадщини після смерті сина. Крім того, 4
грудня 2007 року, в межах встановленого шестимісячного строку, до державної
нотаріальної контори з заявою про прийняття спадщини звернулась також дружина
спадкодавця - ОСОБА_8

Посилаючись на те, що відповідач ОСОБА_8 вчиняла дії щодо умисного позбавлення життя свого чоловіка, який хворів та потребував сторонньої допомоги, яку не надавала відповідач, хоча мала можливість надавати таку допомогу, позивач звернулася до суду з відповідним позовом про усунення від права на спадкування, визнання права власності в порядку спадкування за законом та визначення часток.

Заочним рішенням Центрального районного суду  м. Миколаєва від 11 травня 2016 року, залишеним без змін ухвалою апеляційного суду Миколаївської області від 26 вересня 2016 року, у задоволенні позову відмовлено.

Представник ОСОБА_6, не погоджуючись з рішеннями судів попередніх інстанцій, звернувся з касаційною скаргою, в якій, посилаючись на неправильне застосування судами норм матеріального та порушення норм процесуального права, просить їх скасувати з ухваленням нового рішення про задоволення позову.

Відповідно до п. 6 розд. XII «Прикінцеві та перехідні положення» Закону України від 02 червня 2016 року № 1402-VIII «Про судоустрій і статус суддів» Вищий спеціалізований суд України з розгляду цивільних і кримінальних справ діє в межах повноважень, визначених процесуальним законом, до початку роботи Верховного Суду та до набрання чинності відповідним процесуальним законодавством, що регулює порядок розгляду справ Верховним Судом.

У зв'язку з цим справа підлягає розгляду в порядку, передбаченому Цивільним процесуальним кодексом України від 18 березня 2004 року.

Заслухавши доповідь судді Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ, дослідивши матеріали цивільної справи, перевіривши доводи касаційної скарги, колегія суддів судової палати у цивільних справах Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ вважає, що касаційну скаргу слід задовольнити частково, виходячи з наступного.

Відмовляючи у задоволенні позовних вимог суд першої інстанції виходив з того, що позивач та її представник не надали жодного належного і допустимого доказу на підтвердження того, що відповідач вчиняла дії щодо умисного позбавлення життя спадкодавця. Щодо позовних вимог про визнання права власності за позивачем на відповідну частку у спадковій квартирі в порядку спадкування за законом після смерті сина і визначення розміру такої частки суд вважав, що вони не підлягають задоволенню, оскільки заявлені передчасно та відсутні докази наявності спору про право в даних правовідносинах сторін. Що стосується вимог позову про визнання права власності на частку квартири в порядку спадкування за законом за ОСОБА_9, то суд вважав, що вони також не можуть бути задоволені, оскільки остання з самостійними вимогами до суду не зверталася, а зазначена позивачем як третя особа, яка не заявляє самостійних вимог, щодо предмету спору, що унеможливлює захист її прав у обраний позивачем спосіб.

Залишаючи без змін рішення суду першої інстанції, апеляційний суд погодився з такими висновками та, крім іншого виходив з того, що позивач, в порушення вимог ст.60 ЦПК України, не надала доказів на підтвердження того, що умисними діями відповідач позбавила життя спадкодавця. Суд першої інстанції дійшов обґрунтованого висновку про відсутність підстав, передбачених ч. 1 ст. 1224 ЦК України для усунення відповідача від спадкування після смерті ОСОБА_10 Позивачем також не надано достовірних та допустимих доказів того, що спадкодавець потребував допомоги, а відповідач ухилялася від виконання обов'язку забезпечувати підтримку та надавати допомогу ОСОБА_10

Згідно висновків апеляційного суду вимога позивача в частині визнання за нею право власності в порядку спадкування за законом задоволенню також не підлягає, оскільки матеріали справи не містять доказів наявності спору про таке її право, у тому числі і між нею та відповідачем. Крім того, визнання права власності на спадкове майно в судовому порядку є винятковим способом захисту, що має застосовуватися, якщо існують перешкоди для оформлення спадкових прав у нотаріальному порядку.

Стосовно позовних вимог про визнання права власності в порядку спадкування за законом за ОСОБА_9, апеляційний суд погодився з висновками місцевого суду про відсутність підстав для їх задоволення, оскільки остання із такими самостійними вимогами до суду за захистом своїх спадкових прав не зверталась, а суд не може вийти за межі позовних вимог.

З такими висновками суду апеляційної інстанції повністю погодитися не можна, оскільки вони зроблені без належного з'ясування дійсних обставин справи, прав та обов'язків сторін, без належної оцінки наявних у матеріалах справи доказів, з огляду на наступне.

Згідно зі ст.ст. 213, 214 ЦПК України рішення суду повинно бути законним і обґрунтованим. Під час ухвалення рішення суд вирішує такі питання: чи мали місце обставини, якими обґрунтовувалися вимоги і заперечення, та якими доказами вони підтверджуються; чи є інші фактичні дані (пропущення строку позовної давності тощо), які мають значення для вирішення справи, та докази на їх підтвердження; які правовідносини сторін випливають із встановлених обставин; яка правова норма підлягає застосуванню до цих правовідносин.

Згідно ст. 303 ЦПК України під час розгляду справи в апеляційному порядку апеляційний суд перевіряє законність і обґрунтованість рішення суду першої інстанції в межах доводів апеляційної скарги та вимог, заявлених у суді першої інстанції.

Вказаним вимогам рішення суду апеляційної інстанції в частині вирішення позовних вимог про визнання права власності в порядку спадкування за законом та визначення часток не відповідає.

Судами встановлено, що ІНФОРМАЦІЯ_1 року помер ОСОБА_10 в місті Буча Київської області (а.с.5).

З 25 січня 1990 року і по день смерті ОСОБА_10 був зареєстрованим разом з ОСОБА_6 за адресою: АДРЕСА_3 (а.с.61).

З 28 жовтня 2005 року ОСОБА_10 перебував у зареєстрованому шлюбі з ОСОБА_8 (а.с.6).

Після смерті ОСОБА_10 відкрилась спадщина, у тому числі і на частку квартири АДРЕСА_2, яка належала останньому на праві спільної сумісної власності разом з ОСОБА_6 на підставі свідоцтва про право власності на житло від 6 липня 1998 року, виданого Миколаївською міською службою приватизації державного житлового фонду на підставі розпорядження від 3 липня 1998 року за №1562 (а.с.68 зв).

27 липня 2007 року Першою Миколаївською державною нотаріальною конторою заведена спадкова справа за №648/2007р. після смерті ОСОБА_11 Спадкоємцями за законом є ОСОБА_6, яка 27 липня 2007 року звернулась до державної нотаріальної контори із заявою про прийняття спадщини після смерті сина та ОСОБА_8, яка 4 грудня 2007 року

звернулась до вищевказаної нотаріальної контори із заявою про прийняття спадщини після смерті свого чоловіка (а.с.55, 55 зв.).

13 жовтня 2008 року із заявою про прийняття спадщини до державної нотаріальної контори також звернулася ОСОБА_9, як дочка ОСОБА_11 (а.с.56).

Державним нотаріусом неодноразово надсилалося на адресу ОСОБА_9 запит щодо надання свідоцтва про народження на підтвердження факту родинних відносин з померлим та обґрунтування пропуску шестимісячного строку на подання заяви про прийняття спадщини (а.с.69 зв. ас.70). Разом з тим, жодних дій на запит державного нотаріуса остання не вчиняла.

Постановою державного нотаріуса Першої Миколаївської державної нотаріальної контори від 15 березня 2012 року позивачу відмовлено у видачі свідоцтва про право на спадщину за законом на квартиру АДРЕСА_1, після смерті її сина ОСОБА_12, який помер ІНФОРМАЦІЯ_1 року, з тих підстав, що не було надано правовстановлюючого документу на вищевказану квартиру.

Звертаючись до суду з даним позовом позивач ставила питання про визнання за нею право власності в порядку спадкування за законом після смерті її батька ОСОБА_11 на частину квартири АДРЕСА_1 та визначення часток у спадщині на вказану квартиру.

Залишаючи без змін рішення суду першої інстанції про відмову у задоволенні позову, апеляційний суд вважав такі вимоги передчасними, оскільки матеріали справи не містять доказів наявності спору про таке право позивача, у тому числі і між нею та відповідачем. Апеляційний суд послався на те, що визнання права власності на спадкове майно в судовому порядку є винятковим способом захисту, що має застосовуватися, якщо існують перешкоди для оформлення спадкових прав у нотаріальному порядку.

Разом з тим, апеляційним судом не враховано та не надано оцінки тому факту, що постановою державного нотаріуса Першої Миколаївської державної нотаріальної контори від 15 березня 2012 року позивачу відмовлено у видачі свідоцтва про право на спадщину за законом на квартиру АДРЕСА_1, після смерті її сина ОСОБА_12, який помер ІНФОРМАЦІЯ_1 року.

Відповідно до положень ч. 1, 3 та 5 ст. 1268 ЦК Україниспадкоємець за заповітом чи за законом має право прийняти спадщину або не прийняти її. Спадкоємець, який постійно проживав разом із спадкодавцем на час відкриття спадщини, вважається таким, що прийняв спадщину, якщо протягом строку, встановленого статтею 1270 цього Кодексу, він не заявив про відмову від неї. Незалежно від часу прийняття спадщини вона належить спадкодавцеві з часу відкриття спадщини.

Згідно з вимогами ст. 1296 ЦК Україниспадкоємець, який прийняв спадщину, може одержати свідоцтво про право на спадщину. Якщо спадщину прийняло кілька спадкоємців, свідоцтво про право на спадщину видається кожному з них із визначенням часток у спадщині інших спадкоємців. Відсутність свідоцтва про право на спадщину не позбавляє спадкоємця на спадщину.

Відповідно до пункту 1 та 2 Глави 7 «Порядку про вчинення нотаріальних дій нотаріусами України» нотаріус має право витребувати від фізичних та юридичних осіб відомості та документи, необхідні для вчинення нотаріальних дій. Такі відомості та (або) документи повинні бути подані в строк, визначений нотаріусом. Цей строк не може

перевищувати одного місяця. Неподання відомостей та документів на вимогу нотаріуса є підставою для відкладення, зупинення вчинення нотаріальної дії або відмови у її вчиненні.

Згідно із ч. 1 ст. 3 ЦПК України кожна особа має право в порядку, встановленим цим Кодексом, звернутися до суду за захистом своїх порушених, невизнаних або оспорюваних прав, свобод чи інтересів.

Відповідно до ст. 16 ЦК України кожна особа має право звернутися до суду за захистом свого особистого немайнового або майнового права та інтересу. Способом захисту цивільних прав та інтересів можуть бути, серед іншого і визнання права власності.

Розглядаючи справу, апеляційний суд не врахував, що свідоцтво про право на спадщину нотаріусом не було видане позивачу, не встановив причин неподання позивачем відповідних правовстановлюючих документів нотаріусу, не перевірив підстав відмови у видачі свідоцтва про право на спадкове майно, та не врахував, що винесення нотаріусом постанови про відмову у видачі свідоцтва про право на спадщину не позбавляє спадкоємця права на спадкове майно та захист своїх майнових прав у судовому порядку.

В порушення вимог ст. ст. 212-214, 315 ЦПК України апеляційний суд на зазначені положення закону уваги не звернув; доводи сторін як на підтвердження, так і на заперечення позову у цій частині належним чином не перевірив; не навів мотивів відхилення доводів позивача і оцінки поданих доказів та дійшов передчасного висновку про відмову у позові в частині вимог про визнання за нею право власності в порядку спадкування за законом після смерті її батька ОСОБА_11 на частину квартири АДРЕСА_1 та визначення часток у спадщині на вказану квартиру.

Оскільки, фактичні обставини, які мають значення для правильного вирішення справи, апеляційним судом не встановлені, судове рішення апеляційного суду в частині вирішення позовних вимог про визнання права власності в порядку спадкування за законом та визначення часток у спадщині не відповідає вимогам ст. 213 ЦПК України щодо законності й обґрунтованості, що в силу ст. 338 ЦПК України є підставою для його скасування із передачею справи в частині вказаних позовних вимог на новий розгляд до суду апеляційної інстанції.

В частині вирішення позовних вимог про усунення від права на спадкування рішення судів першої та апеляційної інстанції відповідають вимогам щодо законності і обґрунтованості, з наступних підстав.

Відповідно до ч. 1 ст. 1224 ЦК України, не мають права на спадкування особи, які умисно позбавили життя спадкодавця чи будь-кого з можливих спадкоємців або вчинили замах на їхнє життя. Положення абзацу першого цієї частини не застосовується до особи, яка вчинила такий замах, якщо спадкодавець, знаючи про це, все ж призначив її своїм спадкоємцем за заповітом.

Діяння, зазначені у ч. 1 цієї статті, є кримінально караними, тому мають підтверджуватись вироком суду, постановою про закриття кримінальної справи з нереабілітуючих підстав, які є самостійною та достатньою підставою для усунення від права на спадкування.

Усунення від права на спадкування спадкоємців за законом та за заповітом можливе виключно на підставі рішення суду.

Вимога про усунення спадкоємця від права на спадкування може бути пред'явлена особою, для якої таке усунення зумовлює пов'язані зі спадкуванням права та обов'язки (збільшення частки у спадщині, зміна черговості одержання права на спадкування), одночасно з її позовом про одержання права на спадкування з підстав, визначених у ч. 2 ст. 1259 ЦК України.

За правилами ст.60 ЦПК України, кожна сторона повинна довести ті обставини, на які вона посилається як на підставу своїх вимог і заперечень, крім випадків, встановлених статтею 61 цього Кодексу. Докази подаються сторонами та іншими особами, які беруть участь у справі. Доказуванню підлягають обставини, які мають значення для ухвалення рішення у справі і щодо яких у сторін та інших осіб, які беруть участь у справі, виникає спір. Доказування не може ґрунтуватись на припущеннях.

Згідно довідки Бучанської міської поліклініки від 16 березня 2012 року, ОСОБА_10 за медичною допомогою до лікарів Бучанської міської поліклініки не звертався та карта амбулаторного хворого на нього не оформлялась.

З довідки комунального закладу «Ірпінська центральна міська лікарня» від 29 липня 2013 року встановлено, що 11 червня 2007 року ОСОБА_10 був доставлений швидкою медичною допомогою до неврологічного відділення вказаного медичного закладу, де останньому був поставлений діагноз - гостре порушення мозкового кровообігу по геморагічному типу. Субарахноїдальний крововилив. Стовбурові порушення. Набряк головного мозку. Судомний синдром. Анемія. Гіпертонічна хвороба ІІІ ступеня (а.с.29).

Згідно протоколу патологоанатомічного дослідження НОМЕР_1 від ІНФОРМАЦІЯ_1 року та лікарського свідоцтва про смерть НОМЕР_1, ОСОБА_10 помер в Ірпінській міській лікарні Київської області з діагнозом внутрішньомозковий крововилив (а.с. 22, 30).

Постановою слідчого СВ Ірпінського МВ ГУМВС України в Київській області від 5 лютого 2011 року відмовлено в порушенні кримінальної справи згідно п.1 ст. 6 КПК України по факту смерті ОСОБА_10 (а.с.24).

Отже, як свідчать вказані обставини справи та дослідженні судом першої інстанції докази, позивач, в порушення вимог ст.60 ЦПК України, не надала доказів на підтвердження того, що умисними діями відповідач позбавила життя спадкодавця.

Суди попередніх інстанцій, встановивши та належним чином перевіривши вказані обставини на основі досліджених доказів, дійшли обґрунтованих висновків, що, позивач, в порушення вимог ст.60 ЦПК України, не довів того, що умисними діями відповідач позбавила життя спадкодавця.

За таких обставин суд першої інстанції, з висновками якого погодився апеляційний суд дійшли обґрунтованого висновку про відсутність підстав, передбачених ч. 1 ст. 1224 ЦК України для усунення відповідача від спадкування після смерті ОСОБА_10

Суди також правильно виходили з відсутності правових підстав для задоволення позовних вимог про усунення від права на спадкування за ч. 5 ст. 1224 ІДК України, відповідно до якої особа може бути усунена від права на спадкування за законом, якщо судом буде встановлено, що вона ухилялася від надання допомоги спадкодавцеві, який через похилий вік, тяжку хворобу або каліцтво був у безпорадному стані.

Зі змісту наведеної норми закону вбачається, що лише при одночасному настанні таких обставин, як ухилення особи від надання спадкодавцеві допомоги, так і перебування спадкодавця в безпорадному стані через похилий вік, тяжку хворобу або каліцтво, а також доведеності зазначених фактів у їх сукупності, спадкоємець може бути усунений від права на спадщину.

Звертаючись до суду з вищевказаним позовом до відповідача та обґрунтовуючи свої позовні вимоги, позивач зазначала, що ОСОБА_10 за життя хворів і потребував допомоги, яку відповідач не надавала та ухилялася від її надання, хоча мала таку можливість.

Разом з тим, в порушення приписів ст.60 ЦПК України позивачем не надано належних та допустимих доказів того, що спадкодавець потребував допомоги, а відповідач ухилялася від виконання обов'язку забезпечувати підтримку та допомогу ОСОБА_10

Встановивши факти та визначивши правовідносини, зумовлені встановленими фактами, суд першої інстанції в частині вирішення позовних вимог про усунення від права на спадкування правильно застосував правові норми та ухвалив правильне по суті рішення.

Апеляційний суд дав належну оцінку законності та обґрунтованості рішення суду першої інстанції в частині відмови у задоволенні позовних вимог про усунення від права на спадкування. Належним чином перевірив встановлені судом фактичні обставини справи у цій частині з урахуванням зібраних доказів та дійшов правильного висновку щодо відсутності правових підстав для його скасування у цій частині.

Доводи касаційної скарги в частині висновків судів про відсутність правових підстав для задоволення позовних вимог про усунення від права на спадкування не дають підстав для встановлення неправильного застосування судами першої та апеляційної інстанцій норм матеріального права та порушення ними процесуального права, не спростовують висновків судів у цій частині, обґрунтовано викладених в мотивувальних частинах оскаржуваних рішень. При вирішенні даних позовних вимог судами правильно визначено характер правовідносин між сторонами, вірно застосовано закон, що їх регулює, повно і всебічно досліджено матеріали справи та надано належну правову оцінку доводам сторін і зібраним у справі доказам.

Доводи, наведені в касаційній скарзі в частині незгоди з рішеннями судів попередніх інстанцій про відмову у задоволенні позовних вимог про усунення від права на спадкування фактично зводяться до переоцінки доказів та незгоди заявника з висновками судів першої та апеляційної інстанцій щодо їх оцінки.

За таких обставин, відповідно до ст. 337 ЦПК України оскаржувані рішення місцевого та апеляційного судів в частині вирішення позовних вимог про усунення від права на спадкування слід залишити без змін без змін.

Таким чином, рішення апеляційного суду підлягає скасуванню в частині вирішення позовних вимог про визнання права власності в порядку спадкування за законом та визначення часток з направленням справи до цього ж суду на новий розгляд.

В іншій частині рішення судів першої та апеляційної інстанції слід залишити без змін.

Керуючись ст.ст. 336, 337, 338 ЦПК України, колегія суддів судової палати у цивільних справах Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ,

ухвалила:

Касаційну скаргу ОСОБА_6 в особі представника ОСОБА_7, який є її правонаступником задовольнити частково.

Ухвалу апеляційного суду Миколаївської області від 26 вересня 2016 року в частині вирішення позовних вимог ОСОБА_6, правонаступником якої є ОСОБА_7 до ОСОБА_8, третя особа ОСОБА_9 про визнання права власності в порядку спадкування за законом та визначення часток скасувати.

Справу у цій частині передати до суду апеляційної інстанції на новий розгляд.

В іншій частині рішення судів першої та апеляційної інстанції залишити без змін.

Ухвала оскарженню не підлягає.

**ГоловуючийО.С. Ткачук Судді: В.С. Висоцька О.В. Кафідова О.В. Умнова І.М. Фаловська**

Category of case No. **490/11934/15-ts**: **undefined.**

Sent by the court: **undefined.** Registered: **09/27/2017.** Made public: **09/28/2017.**
Proceedings number: **undefined**



### ORDER

### IN THE NAME OF UKRAINE

**September 06, 2017** Kyiv

**The Panel of Judges of the Civil Court Chamber of the High Specialized Court of Ukraine for Civil and Criminal Matters, composed of:**

**presiding O.S. Tkachuk, judges: V.S. Vysotska, O.V. Kafidova, O.V. Umnova, I.M. Falovska,** having considered in open court a civil case under the claim of PERSON_6, the legal successor of which is PERSON_7, against PERSON_8, a third party: PERSON_9, on the removal from the right to inheritance, declaration of ownership right by way of inheritance under the law and determination of shares, on the cassation appeal of PERSON_6 represented by PERSON_7 against the default decision of the Tsentralnyi District Court of Mykolaiv dated May 11, 2016, order of the Appellate Court of Mykolaiv Region dated September 26, 2016,

### found:

In December 2014, PERSON_6, the legal successor of which is PERSON_10, applied to the court with a lawsuit, the claims of which were clarified during the consideration of the case, and asked: to remove PERSON_8 from the right to inherit under the law after death of PERSON_10, deceased on INFORMATION_1; to declare PERSON_9`s right to inherit under the law after the death of her father PERSON_10 ownership over the part of the apartment at ADDRESS_1; to declare PERSON_6`s right to inherit under the law after the death of her son PERSON_10 ownership over the part of the apartment at ADDRESS_1; to determine the shares in the inheritance in the specified apartment between the heirs.

The claim is motivated by the fact that plaintiff`s son - PERSON_10 deceased on INFORMATION_1. After his death, an inheritance was opened, which included the share of the apartment at ADDRESS_2, which belonged to the latter on the basis of common joint property, together with PERSON_6 in accordance with the Residential Property Right Certificate dated July 06, 1998.

On July 27, 2007 PERSON_6 applied to the First Mykolaiv State Notary Office for the acceptance of the inheritance after the death of her son. In addition, on December 04, 2007, within the established six-month period, the testator's wife, PERSON_8, also applied to the State Notary Office with an application for accepting the inheritance.

Referring to the fact that the defendant PERSON_8 committed actions to deliberately deprive her husband of life, who was ill and required physical assistance, which was not provided by the defendant, although she had the opportunity to provide such assistance, the plaintiff applied to the court with a respective claim for the removal from the right to inherit, declaration of the ownership right by way of inheritance under the law and determination of shares.

By default decision of the Tsentralnyi District Court of Mykolaiv dated May 11, 2016, which was upheld by the order of the Appellate Court of Mykolaiv Region dated September 26, 2016, the claim was denied.

The representative of PERSON_6, disagreeing with the decisions of the courts of previous instances, filed a cassation appeal, in which, referring to the incorrect application of material norms by the courts and violation of the norms of procedure law, asks to cancel them and issue a new decision to satisfy the claim.

According to item 6 of Chapter <u>XII "Final and Transitional Provisions" of the Law of Ukraine No. 1402-VIII "On the Judicial System and the Status of Judges"</u> dated June 02, 2016, the High Specialized Court of Ukraine for Civil and Criminal Matters operates within the powers determined by the procedure law pending the commencement of the work of the Supreme Court and until the entry into force of the relevant procedural legislation governing the procedure for considering cases by the Supreme Court.

In this regard, the case is subject to consideration in the manner prescribed by the <u>Civil Procedure Code of Ukraine dated March 18, 2004</u>.

After hearing the report of the judge of the High Specialized Court of Ukraine for Civil and Criminal Matters, having examined the case materials, checking the arguments of the cassation appeal, the Panel of Judges for Civil Cases of the High Specialized Court of Ukraine for Civil and Criminal Matters believes that the cassation appeal should be satisfied in part, proceeding from the following.

In refusing to satisfy the claims, the Court of First Instance proceeded from the fact that the plaintiff and her representative did not provide single appropriate and admissible evidence in support of the fact that the defendant committed acts of intentionally depriving the testator's life. Regarding the claims for the declaration of plaintiff`s ownership right to the corresponding share in the inherited apartment by way of inheritance under the law after the death of her son and determining the size of such a share, the court considered that they were not subject to satisfaction, since the claims filed are premature and there is no evidence of a dispute about the right in these legal relations between the parties. As for the claims of the claim for the declaration of PERSON_9`s ownership right to the share of the apartment by way of inheritance under the law, the court considered that they also could not be satisfied, since the latter did not apply to the court with independent claims, but is indicated by the plaintiff as a third party who does not declare independent claims regarding the subject of the dispute, which makes it impossible to defend her rights in the way chosen by the plaintiff.

Upholding the decision of the Court of First Instance, the Court of Appeal agreed with such conclusions and, among other things, proceeded from the fact that the plaintiff, in violation of the requirements of <u>Art. 60 of the CPC [Civil Procedure Code] of Ukraine</u>, did not provide evidence in support of the fact that by deliberate actions the defendant took the testator's life. The Court of First Instance came to a well-founded conclusion that there were no grounds envisaged in Part 1 of <u>Art. 1224 of the CC [Civil Code] of Ukraine</u> to remove the defendant from inheritance after death of PERSON_10. The plaintiff also did not provide reliable and admissible evidence that the

testator required assistance, and the defendant evaded the obligation to provide support and provide assistance to PERSON_10

According to the conclusions of the Court of Appeal, the plaintiff's claim regarding the declaration of her ownership right by inheritance under the law is also not subject to satisfaction, since the case materials do not contain evidence of a dispute about such right, including between her and the defendant. In addition, the declaration of ownership right to inherited property in court is an exclusive way of defense, which muse apply if there are obstacles to registering inheritance rights in accordance with notary procedure.

With regard to the claims for declaration of PERSON_9`s ownership right by way of inheritance under the law, the Court of Appeal agreed with the findings of the local court that there were no grounds for their satisfaction, since the latter did not apply to the court with such independent claims for the defense of her inheritance rights, and the court cannot go beyond the limits of the claim.

It is impossible to fully agree with such conclusions of the Court of Appeal, since they were made without proper clarification of the actual circumstances of the case, the rights and obligations of the parties, without a proper assessment of the evidence in the case materials, taking into account the following.

According to Articles 213, 214 of the CPC [Civil Procedure Code] of Ukraine, a court decision must be lawful and justified. When making a decision, the court decides the following issues: whether circumstances that substantiated the claims and objections took place, and what evidence they are supported by; whether there are other factual data (omission of the limitation period, etc.) that are important for the adjudication of the case, and evidence in support of them; what legal relations between the parties arise from the established circumstances; what legal norm is to be applied to these legal relations.

According to Article 303 of the CPC [Civil Procedure Code] of Ukraine, when considering a case on appeal, the Court of Appeal verifies the legality and validity of the decision of the Court of First Instance within the limits of the arguments of the appeal and the claims stated in the Court of First Instance.

The decision of the Court of Appeal in terms of the decision of claims for declaration of ownership right by way of inheritance under the law and determination of shares does not meet these requirements.

The courts established that PERSON_10 deceased on INFORMATION_1 in Bucha, Kyiv Region (c.s.5).

From January 25, 1990 to the day of death PERSON_10 was registered together with PERSON_6 at the address: ADDRESS_3 (c.s. 61).

From October 28, 2005, PERSON_10 was officially married with PERSON_8 (c.s. 6).

After the death of PERSON_10, an inheritance was opened, including for the share of apartment at ADDRESS_2, which belonged to the latter on the basis of joint property right together with PERSON_6 on the basis of the Residential Property Right Certificate dated July 06, 1998, issued by the Mykolaiv City Service of Privatization of the State Housing Stock on the basis of an order No. 1562 dated July 03, 1998 (c.s. 68).

On July 27, 2007, the First Mykolaiv State Notary Office opened an inheritance case under No. 648/2007p. after the death of PERSON_11. The heirs under the law are PERSON_6, which on July 27, 2007 applied to the State Notary Office with an application for accepting the inheritance after the death of her son, and PERSON_8, who on December 04, 2007 applied to the above-mentioned notary office with an application for accepting the inheritance after the death of her husband (c.s. 55, 55).

On October 13, 2008, PERSON_9 also applied for the acceptance of the inheritance to the State Notary Office, as the daughter of PERSON_11 (c.s. 56).

The state notary has repeatedly sent a request to PERSON_9 to provide a Birth Certificate to confirm the fact of kinship with the deceased and justify skipping the six-month period for filing an application for accepting the inheritance (c.s. 69, c.s. 70). At the same time, the latter did not perform any actions at the request of the state notary.

By the decision of the state notary of the First Mykolaiv State Notary Office dated March 15, 2012, the plaintiff was denied the issuance of a Certificate of the Right to Inheritance under the Law for the apartment at ADDRESS_1, after the death of her son PERSON_12, who deceased on INFORMATION_1, on the grounds that no title document was provided for the above apartment.

Appealing to the Court with this claim, the plaintiff raised the issue of declaration of her ownership right by inheritance under the law after the death of her father PERSON_11 to part of the apartment at ADDRESS_1 and determining the shares in the inheritance in the said apartment.

Upholding the decision of the Court of First Instance to dismiss the claim, the Court of Appeal considered such demands premature, since the case materials do not contain evidence of a dispute about such a right of the plaintiff, including between her and the defendant. The Court of Appeal referred to the fact that the declaration of ownership right to inherited property in Court is an exceptional way of defense, which must apply if there are obstacles to the registration of inheritance rights in accordance with notary procedure.

At the same time, the Court of Appeal did not take into account and give an assessment of the fact that by the decision of the state notary of the First Mykolaiv State Notary Office dated March 15, 2012 the plaintiff was denied the issuance of the Certificate of the Right to Inheritance under the Law for the apartment at ADDRESS_1, after the death of her son PERSON_12 who deceased on INFORMATION_1.

In accordance with the provisions of Parts 1, 3 and 5 of Art. 1268 of the CC [Civil Code] of Ukraine the heir under a will or under the law has the right to accept the inheritance or not to accept it. The heir who permanently resided with the testator at the time of the opening of the inheritance is considered to have accepted the inheritance if, within the period established by Article 1270 of this Code, he did not declare his rejection. Regardless of the time of acceptance of the inheritance, it belongs to the testator from the time the inheritance was opened.

According to the requirements of Art. 1296 of the CC [Civil Code] of Ukraine the heir who has accepted the inheritance may receive a Certificate of the Right to Inheritance. If the inheritance is accepted by several heirs, the Certificate of the Right to Inheritance is issued to each of them with the determination of the shares in the inheritance of other heirs. The absence of the Certificate of the Right to Inheritance does not deprive the heir of the inheritance.

In accordance with paragraphs 1 and 2 of Section 7 of the "Procedure for the performance of notarial acts by notaries of Ukraine", the notary has the right to demand from individuals and legal

entities information and documents necessary for the performance of notarial acts. Such information and (or) documents must be submitted within the period specified by the notary. This period cannot exceed one month. Failure to provide information and documents at the request of a notary is the basis for postponement, suspension of a notarial act or refusal to perform it.

According to Part 1 of <u>Art. 3 of the CPC [Civil Procedure Code] of Ukraine</u> every person has the right, in the manner prescribed by this Code, to apply to the Court for the defending his violated, undeclared or disputed rights, freedoms or interests.

According to <u>Art. 16 of the CC [Civil Code] of Ukraine</u> every person has the right to apply to the Court for the protection of his personal non-property or property right and interests. The way to protect civil rights and interests can be, including the declaration of property right.

Considering the case, the Court of Appeal did not take into account that a Certificate of the Right to Inheritance had not been issued by the notary to the plaintiff, did not established the reasons for the plaintiff's failure to submit the relevant documents of title to the notary, did not check the grounds for refusing issuance of the Certificate of the Right to Inheritance, and did not take into account that the notary issued a resolution on refusal to issue a Certificate of the Right to Inheritance does not deprive the heir of the right to inheritance and defend his property rights in court.

In violation of the requirements of Arts. <u>212-214, 315 of the CPC [Civil Procedure Code] of Ukraine</u>, the Court of Appeal did not pay attention to these provisions of the law; did not properly check the arguments of the parties both in support and objections to the claim in this part; did not provide reasons for rejecting the plaintiff's arguments and assessing the evidence submitted, and came to a premature conclusion about the rejection of the claim in terms of declaring her ownership right by way of inheritance under the law after the death of her father PERSON_11 to part of the apartment at ADDRESS_1 and determining the shares in the inheritance in the specified apartment.

Since the factual circumstances that are important for the correct adjudication of the case have not been established by the Court of Appeal, the court decision of the Court of Appeal regarding the decision upon claims for the declaration of ownership right by way of inheritance under the law and determination of shares in the inheritance does not meet the requirements of <u>Art. 213 of the CPC [Civil Procedure Code] of Ukraine</u> on legality and validity. By virtue of <u>Art. 338 of the CPC [Civil Procedure Code] of Ukraine</u> it constitutes the basis for cancellation of the decision with the transfer of the case in terms of the specified claims for new consideration to the Court of Appeal.

As regards the resolution of the claims for the removal from the right to inherit, the decisions of the courts of first and appellate instances meet the requirements of legality and reasonableness, due to the following grounds.

According to Part 1 of <u>Art. 1224 of the CC [Civil Code] of Ukraine</u>, persons who have deliberately took the life of the testator or any of the possible heirs or have committed an attempt on their life are not entitled to inheritance. The provisions of the first paragraph of this part shall not apply to a person who committed such an attempt if the testator, knowing this, nevertheless appointed this person as his heir under the will.

The acts referred to in part 1 of this Article are criminally punishable, therefore, must be confirmed by a court sentence, a decision to close the criminal case on grounds other than

exoneration. These are independent and sufficient grounds for removing from the right to inheritance.

Removal from the right to inherit under the law and under the will is possible solely on the basis of a court decision.

The claim to remove the heir from the right to inherit may be filed by a person for whom such removal entails inheritance-related rights and obligations (increasing the share in the inheritance, changing the order of obtaining the right to inherit), simultaneously with the claim for obtaining the right to inherit on the grounds defined in Part 2 of Art. 1259 of the CC [Civil Code] of Ukraine.

According to the rules of Article 60 of the CPC [Civil Procedure Code] of Ukraine, each party must prove the circumstances to which it refers as the basis for its claims and objections, except for the cases established by Article 61 of this Code. Evidence is submitted by the parties and other persons involved in the case. Circumstances that are important for making a decision on the case and in respect of which the parties and other persons participating in the case have a dispute are to be proved by evidence. Evidence cannot be based on assumptions.

According to the statement of the Bucha Municipal Polyclinic dated March 16, 2012, PERSON_10 did not apply to the physicians of the Bucha Municipal Polyclinic for medical assistance and the dispensary record was not drawn up.

From the statement of the Municipal Institution "Irpin Central City Hospital" dated July 29, 2013, it was established that on June 11, 2007 PERSON_10 was delivered by ambulance to the neurological department of the said medical institution, where the latter was diagnosed with acute cerebrovascular accident due to hemorrhagic type. Subarachnoid hemorrhage. Brainstem disorders. Cerebral edema. Convulsive disorder. Anemia. Hypertensive disease III degree (c.s. 29).

According to the protocol of pathological study NUMBER_1 dated INFORMATION_1 and the medical certificate of death NUMBER_1, PERSON_10 deceased in the Irpin Municipal Hospital of the Kyiv Region with a diagnosis of intracerebral hemorrhage (c.s. 22, 30).

By the order of the investigator of the ID [Investigation Department] of the Irpin MD [Municipal Division] of the MD of the MIA [Main Department of the Ministry of Internal Affairs] of Ukraine dated February 05, 2011, it was refused to initiate a criminal case in accordance with item 1 of Art. 6 of the CPC [Criminal Procedure Code] of Ukraine upon death of PERSON_10 (c.s. 24).

So, as evidenced by the indicated circumstances of the case and the examination of the evidence by the Court of First Instance, the plaintiff, in violation of the requirements of Art. 60 of the CPC [Civil Procedure Code] of Ukraine, did not provide evidence in support of the fact that by deliberate actions the defendant took the life of the testator.

The lower courts, having established and duly verified the indicated circumstances on the basis of the evidence examined, came to well-grounded conclusions that the plaintiff, in violation of the requirements of Art. 60 of the CPC [Civil Procedure Code] of Ukraine, did not prove that by deliberate actions the defendant took the life of the testator.

Under such circumstances, the Court of First Instance, with the conclusions of which the Court of Appeal agreed, came to a well-founded conclusion that there were no grounds provided for in Part 1 of Art. 1224 of the CC [Civil Code] of Ukraine to remove the defendant from inheritance after death of PERSON_10

The courts also correctly proceeded from the absence of legal grounds for satisfying claims for removal from the right to inherit under Part 5 of Art. 1224 of the CC [Civil Code] of Ukraine, according to which a person may be removed from the right to inherit under the law if it is established by the Court that she evaded providing assistance to the testator, who was in a helpless state due to advanced age, serious illness or injury.

From the content of the cited norm of the law, it follows that only with the simultaneous occurrence of such circumstances as the evasion of the person from providing assistance to the testator and the testator's stay in a helpless state due to old age, serious illness or injury, as well as the proof of these facts in their totality, the heir may be removed from the inheritance right.

Appealing to the Court with the above claim against the defendant and substantiating its claims, the plaintiff noted that PERSON_10 was ill during his lifetime and required assistance, which the defendant did not provide and evaded its provision, although it had such an opportunity.

At the same time, in violation of the provisions of Art. 60 of the CPC [Civil Procedure Code] of Ukraine, the plaintiff did not submit appropriate and admissible evidence that the testator required assistance, and the defendant evaded the obligation to provide support and assistance PERSON_10

Having established the facts and having determined the legal relations conditioned by the established facts, the Court of First Instance, in terms of resolving claims for removal from the right to inherit, correctly applied the legal norms and made correct decision on merits.

The Court of Appeal gave a proper assessment of the legality and validity of the decision of the Court of First Instance regarding the refusal to satisfy the claims for the removal from the right to inherit. The Court of Appeal duly checked the factual circumstances of the case established by the Court in this part, taking into account the collected evidence, and came to the correct conclusion that there were no legal grounds for canceling it in this part.

The arguments of the cassation appeal concerning the  courts' conclusions about the absence of legal grounds for satisfying claims for removal from the right to inherit do not give grounds for establishing the incorrect application of norms of substantive law by the courts of first and appellate instances and violation of the rules of procedure law, do not refute the conclusions of the courts in this part, reasonably stated in the reasoning part of the contested decisions. When solving these claims, the courts correctly determined the nature of the legal relations between the parties, correctly applied the law that regulates these relations, fully and comprehensively examined the case materials and provided a proper legal assessment to the arguments of the parties and the evidence collected in the case.

The arguments submitted in the cassation appeal regarding disagreement with the decisions of the courts of previous instances on the refusal to satisfy the claims for removal from the right to inherit are actually reduced to a reassessment of the evidence and the applicant's disagreement with the conclusions of the courts of the first and appellate instances on their assessment.

In such circumstances, in accordance with Art. 337 of the CPC [Civil Procedure Code] of Ukraine the contested decisions of the local courts and courts of appeal regarding the decision of claims for removal from the right to inheritance should be left unchanged.

Thus, the decision of the Court of Appeal is subject to cancellation in the part concerning the resolution of claims for the declaration of ownership right by way of inheritance under the law and the determination of shares with the direction of the case to the same Court for a new consideration.

The rest of the decision of the courts of first and appellate instances should be left unchanged.

Guided by Art. <u>336, 337, 338 of the CPC [Civil Procedure Code] of Ukraine</u>, the Panel of Judges of the Civil Court Chamber of the High Specialized Court of Ukraine for Civil and Criminal Matters,

resolved:

To partially satisfy the cassation appeal of PERSON_6 represented by PERSON_7, who is its legal successor.

To cancel the order of the Appellate Court of Mykolaiv Region dated September 26, 2016 in terms of settling claims of PERSON_6, the legal successor of which is PERSON_7, against PERSON_8, third party PERSON_9 on the declaration of ownership right by inheritance under the law and determination of shares.

The case in this part should be referred to the Court of Appeal for a new consideration.

The remaining part of the decision of the courts of first and appellate instances shall be left unchanged.

The resolution is not subject to appeal.

**Presiding O.S. Tkachuk, Judges:   V.S. Vysotska, O.V. Kafidova, O.V. Umnova, I.M. Falovska**

**DATE OF TRANSLATION:**          13-Jan-2021

**ELECTRONIC FILE NAME:**          Order No. 490_11934_15

**SOURCE LANGUAGE:**          Ukrainian

**TARGET LANGUAGE:**          English

**TRANSPERFECT JOB ID:**          US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

Tcert v. 4.0

Категорія справи № **2029/2-2762/11**: **Цивільні справи (до 01.01.2019); Позовне провадження; Спори про право власності та інші речові права; Спори про право власності та інші речові права про приватну власність.**

Надіслано судом: **не визначено.** Зареєстровано: **29.04.2020.** Оприлюднено: **29.04.2020.**
Дата набрання законної сили: **27.04.2020**
Номер судового провадження: **61-14824ск19**



**Верховний Суд**

**Постанова**

**Іменем України**

27 квітня 2020 року

м. Київ

справа № 2029/2-2762/11

провадження № 61-14824св19

**Верховний Суд у складі колегії суддів Першої судової палати Касаційного цивільного суду:**

Шиповича В. В. (суддя-доповідач), Синельникова Є. В., Хопти С. Ф.,

**учасники справи:**

**позивач (відповідач за зустрічним позовом)** - ОСОБА_1 ,

**відповідачі (позивачі за зустрічними позовами):** ОСОБА_2 , ОСОБА_3 , ОСОБА_4 ,

розглянув у попередньому судовому засіданні у порядку письмового провадження касаційну скаргу ОСОБА_1 , подану його представником - адвокатом Лукашенком Олександром Вікторовичем, на рішення Орджонікідзевського районного суду м. Харкова, у складі судді Зяброва О. Г., від 25 лютого 2019 року та постанову Харківського апеляційного суду, у складі колегії суддів: Бровченка І. О., Бурлаки І. В., Колтунової А. І., від 04 липня 2019 року,

**ВСТАНОВИВ:**

**Короткий зміст позовних вимог ОСОБА_1 .**

У жовтні 2011 року ОСОБА_1 звернувся до суду із позовом до ОСОБА_2 , ОСОБА_3 , ОСОБА_4 про визнання права власності на майно в порядку спадкування за законом після смерті своєї матері ОСОБА_5 .

Позов ОСОБА_1 мотивовано тим, що ІНФОРМАЦІЯ_1 померла його мати - ОСОБА_5 , після смерті якої відкрилася спадщина, до складу якої ввійшла квартира АДРЕСА_1 та 2/3 частини квартири АДРЕСА_2 та грошові кошти на рахунках в банку.

ОСОБА_5 заповіт не складала.

На час відкриття спадщини після смерті матері він постійно проживав зі спадкодавцем, а тому в силу статті 1268 Цивільного кодексу України (далі - ЦК України) вважається таким, що прийняв спадщину.

Посилався на те, що на час звернення до суду з цим позовом відсутній вирок суду, яким би було встановлено факт умисного позбавлення ним життя спадкодавця - ОСОБА_5 , а отже підстави для усунення його від права на спадкування в порядку, передбаченому частиною першою статті 1224 ЦК України, відсутні.

Просив суд визнати за ним в порядку спадкування за законом право власності на все майно, яке належало на час відкриття спадщини на праві власності ОСОБА_5 , в тому числі на частку в праві спільної сумісної власності на квартиру АДРЕСА_2 , на квартиру АДРЕСА_1 та грошові кошти на рахунках в Державному ощадному банку України.

**Короткий зміст зустрічних позовних вимог ОСОБА_2 та ОСОБА_3 .**

У жовтні 2011 року ОСОБА_2 та ОСОБА_3 звернулись до суду із зустрічним позовом до ОСОБА_1 , ОСОБА_4 про визнання права власності на грошові кошти в порядку спадкування за законом після смерті ОСОБА_6 , померлої ІНФОРМАЦІЯ_1 - в рівних частках за кожною, та з урахуванням поданих уточнень просили встановити факт належності спадкодавцю ОСОБА_6 грошових коштів в сумі 270 187 грн, розміщених на банківських рахунках на ім`я ОСОБА_5 на час відкриття спадщини - ІНФОРМАЦІЯ_1 та визнати за ними право власності на зазначені грошові кошти в порядку спадкування за законом після смерті ОСОБА_6 ІНФОРМАЦІЯ_1 , в рівних частках за кожною.

Позовна заява ОСОБА_2 та ОСОБА_3 мотивована тим, що в дійсності грошові кошти, які залишались на рахунках ОСОБА_5 на день відкриття спадщини, в більшій частині належали не їй, а ОСОБА_6 , ІНФОРМАЦІЯ_2 , яка також загинула ІНФОРМАЦІЯ_1 .

Так, після загибелі в дорожньо-транспортній пригоді 10 січня 2005 року ОСОБА_7 та його дружини - матері ОСОБА_9 , над ОСОБА_6 була встановлена опіка.

Згідно рішення Виконавчого комітету Орджонікідзевської районної ради м. Харкова від 01 березня 2005 року № 51/5 опікуном над малолітньою ОСОБА_6 була призначена ОСОБА_5

ОСОБА_5 звернулась до суду із позовною заявою про відшкодування шкоди в свої інтересах та в інтересах малолітньої ОСОБА_6 та рішенням Орджонікідзевського районного суду м. Харкова від 13 грудня 2007 року у справі № 2-162/2007, частково зміненим рішенням Апеляційного суду Харківської області від 18 березня 2008 року (справа № 22-ц-539/2008), було частково задоволено позовні вимоги.

На користь ОСОБА_5 стягнуто: 3 365 грн - одноразово на відшкодування шкоди, завданої смертю потерпілої; 766, 67 грн - щомісячно, з урахуванням індексації, з 01 листопада 2007 року до досягнення малолітньою ОСОБА_6 чотирнадцяти років; 20 000 грн - компенсації моральної шкоди; 6 760 грн - матеріального збитку за пошкоджений автомобіль; 5 340 грн - витрат на придбання пам`ятника;

550 грн - витрат на правову допомогу. На користь ОСОБА_6 стягнуто: 50 912,50 грн - одноразово на відшкодування шкоди завданої смертю її батьків; 1 916, 67 грн - щомісячно, з урахуванням індексації, з 01 листопада 2007 року до досягнення нею вісімнадцяти років; 50 000 грн - одноразово на відшкодування моральної шкоди.

Отже, на користь спадкодавця ОСОБА_6 було стягнуто одноразово 100 912, 50 грн, а сума щомісячних виплат на її користь за період з 01 листопада 2007 року по ІНФОРМАЦІЯ_1 з урахуванням індексації мала скласти 103 187, 50 грн. Всі грошові кошти за судовим рішенням на користь ОСОБА_6 мали перераховуватись на рахунки, відкриті ОСОБА_5 . Всі нараховані проценти на кошти, які належали ОСОБА_6 , також були власністю останньої, а тому входять до складу спадщини після її смерті.

**Короткий зміст зустрічних позовних вимог**

ОСОБА_4 ОСОБА_4 в жовтні 2018 року подала до суду зустрічний позов до ОСОБА_1 , ОСОБА_2 та ОСОБА_3 про визнання за неюв порядку спадкування за законом після смерті сестри ОСОБА_5 , померлої ІНФОРМАЦІЯ_1 , права власності на квартиру АДРЕСА_1 , 2/3 частини квартири АДРЕСА_2 та грошові кошти у розмірі 270 187 грн, розміщені на банківських рахунках.

Позовна заява ОСОБА_4 обгрунтована тим, що її рідній сестрі - ОСОБА_5 належало на праві власності зазначене майно, та оскільки спадкоємці першої черги за законом, які б мали право на спадкування відсутні, тому згідно статті 1262 ЦК України вона як рідна сестра має право на спадкування за законом після смерті ОСОБА_5 .

**Короткий зміст рішення суду першої інстанції**

Ухвалою Орджонікідзевського районного суду м. Харкова від 25 лютого 2019 року прийнято відмову від позову ОСОБА_1 до ОСОБА_2 , ОСОБА_3 , ОСОБА_4 про визнання права власності в порядку спадкування за законом та провадження по справі в цій частині закрито на підставі пункту 4 частини першої статті 255 ЦК України.

Рішенням Орджонікідзевського районного суду м. Харкова від 25 лютого 2019 року позовні вимоги ОСОБА_2 , ОСОБА_3 до ОСОБА_1 , ОСОБА_4 про визнання права власності в порядку спадкування задоволено частково. Позовні вимоги ОСОБА_4 до ОСОБА_2 , ОСОБА_3 , ОСОБА_1 про визнання права власності в порядку спадкування за законом задоволено частково.

Визнано за ОСОБА_4 в порядку спадкування за законом після ОСОБА_6 та ОСОБА_5 право власності на трикімнатну квартиру загальною площею 64, 3 кв. м, житловою площею 40, 3 кв. м, розташовану за адресою: АДРЕСА_1 .

Визнано за ОСОБА_4 в порядку спадкування за законом після ОСОБА_6 та ОСОБА_5 на частку в розмірі 2/3 у праві власності на трикімнатну квартиру загальною площею 63, 9 кв. м. житловою площею 44, 6 кв. м, розташовану за адресою: АДРЕСА_2 .

Визнано за ОСОБА_4 в порядку спадкування за законом після ОСОБА_6 та ОСОБА_5 право власності на грошові кошти, розміщені на банківському рахунку № НОМЕР_1 (компенсаційний), відкритому на ім`я ОСОБА_5 у ТВБВ № 10020/0327 філії - Харківське обласне управління АТ «Ощадбанк».

Визнано за ОСОБА_4 в порядку спадкування за законом після ОСОБА_6 та ОСОБА_5 право власності на грошові кошти, розміщені на банківському рахунку № НОМЕР_2 (компенсаційний), відкритому на ім`я ОСОБА_5 у ТВБВ № 10020/0159 філії - Харківське обласне управління АТ «Ощадбанк».

Визнано за ОСОБА_4 в порядку спадкування за законом після ОСОБА_6 та ОСОБА_5 право власності на грошові кошти, розміщені на поточному банківському рахунку № НОМЕР_3 ( НОМЕР_4 ), відкритому на ім`я ОСОБА_5 у ТВБВ № 10020/0314 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823).

Визнано за ОСОБА_4 в порядку спадкування за законом після ОСОБА_6 та ОСОБА_5 право власності на депозитний банківський вклад в національній валюті України, розміщений на рахунку № НОМЕР_5 ( НОМЕР_6 ) «Комбінований БО «Строковий», відкритому 05 липня 2010 року на ім`я ОСОБА_5 у ТВБВ № 10020/0314 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823).

Визнано за ОСОБА_3 та ОСОБА_2 в порядку спадкування за законом після ОСОБА_6 та ОСОБА_5 в рівних частинах право власності на депозитний банківський вклад в національній валюті України, розміщений на рахунку № НОМЕР_7 ( НОМЕР_8 ) «Комбінований ОБ «Строковий», відкритому 05 липня 2010 року на ім`я ОСОБА_5 у ТВБВ № 10020/0314 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823).

Визнано за ОСОБА_3 та ОСОБА_2 в порядку спадкування за законом після ОСОБА_6 та ОСОБА_5 , в рівних частинах право власності на депозитний банківський вклад в національній валюті України, розміщений на рахунку № НОМЕР_9 ( НОМЕР_10 ) «Комбінований ОБ «Строковий», відкритому 05 липня 2010 року на ім`я ОСОБА_5 у ТВБВ № 10020/0314 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823).

Ухвалюючи рішення від 25 лютого 2019 року, суд першої інстанції виходив з того, що ОСОБА_1 усунутий від права на спадщину після померлої ОСОБА_5 , як такий що вчинив її вбивство. Інших спадкоємців першої черги після померлої немає, а спадкоємцем другої черги є сестра померлої ОСОБА_5 - ОСОБА_4 , яка у передбачений законом строк подала заяву про прийняття спадщини.

Після смерті ОСОБА_6 спадкоємцями є її сестри ОСОБА_2 та ОСОБА_3 , які в передбачений законом строк подали нотаріусу заяви про прийняття спадщини. При цьому, судом враховано часткове визнання сторонами зустрічних позовних вимог.

**Короткий зміст постанови суду апеляційної інстанції**

Постановою Харківського апеляційного суду від 04 липня 2019 року апеляційну скаргу ОСОБА_1 задоволено частково. Рішення Орджонікідзевського районного суду м. Харкова від 25 лютого 2019 року змінено.

Виключено з резолютивної частини рішення висновки про визнання за ОСОБА_4 права власності в порядку спадкування за законом після ОСОБА_6 .

Виключено з резолютивної частини рішення висновки про визнання за ОСОБА_3 та ОСОБА_2 права власності в порядку спадкування за законом після ОСОБА_5 .

В іншій частині рішення Орджонікідзевського районного суду м. Харкова від 22 лютого 2019 року залишено без змін.

Приймаючи постанову від 04 липня 2019 року та змінюючи рішення суду першої інстанції, апеляційний суд виходив з того, що суд першої інстанції, вирішуючи вимоги зустрічних позовів, вийшов за межі їх вимог.

ОСОБА_4 просила суд визнати право власності в порядку спадкування після смерті ОСОБА_6 , а ОСОБА_2 та ОСОБА_3 - після смерті ОСОБА_5 . Крім того, нерухоме майно, яке за життя належало на праві власності ОСОБА_5 , не входило до спадкової маси ОСОБА_6 ОСОБА_4 не є спадкоємцем другої черги після смерті ОСОБА_6 , а ОСОБА_2 та ОСОБА_3 - спадкоємцями другої черги після смерті ОСОБА_5 . Із заявою про зміну черговості одержання права на спадщину відповідачі не зверталась.

**Короткий зміст вимог касаційної скарги**

У касаційній скарзі ОСОБА_1 , поданій його представником - адвокатом Лукашенко О. В., посилаючись на неправильне застосування судами норм матеріального права і порушення норм процесуального права, просить оскаржувані судові рішення скасувати, ухвалити нове рішення, яким позовні вимоги ОСОБА_1 задовольнити, а в задоволені зустрічних позовів ОСОБА_4 , ОСОБА_2 та ОСОБА_3 відмовити в повному обсязі.

**Надходження касаційної скарги до суду касаційної інстанції**

У серпні 2019 року до Верховного Суду надійшла касаційна скарга ОСОБА_1 , подана його представником - адвокатом Лукашенко О. В,. на рішення Орджонікідзевського районного суду м. Харкова від 25 лютого 2019 року та постанову Харківського апеляційного суду від 04 липня 2019 року.

Ухвалою Верховного Суду від 25 жовтня 2019 року відкрито касаційне провадження за цією касаційною скаргою.

В листопаді 2019 року матеріали справи надійшли до Верховного Суду.

**Аргументи учасників справи**

**Доводи особи, яка подала касаційну скаргу**

Касаційна скарга мотивована помилковістю висновків судів попередніх інстанцій.

Вважав, що спадщина, яка відкрилась після смерті ОСОБА_5 з часу відкриття спадщини, тобто з ІНФОРМАЦІЯ_1 належить її сину ОСОБА_1 , як єдиному спадкоємцю першої черги за законом.

На час відкриття спадщини та прийняття її ОСОБА_1 , і протягом встановленого законодавством шестимісячного строку для прийняття спадщини не існувало обвинувального вироку суду про визнання його винним в умисному позбавлені життя ОСОБА_5 , а отже ОСОБА_1 не міг бути позбавлений права на спадкування автоматично лише через наявність кримінальної справи за фактом вбивства ОСОБА_5 .

Висновки судів, що вирок Апеляційного суду Харківської області від 21 вересня 2017 року має преюдиційне значення для цієї справи є помилковим.

Жоден позивач за зустрічними позовами не просив суд в будь-якій формі застосувати правові наслідки дій ОСОБА_1 , встановлених вироком Апеляційного суду Харківської

області від 21 вересня 2017 року, та не пред`являв вимогу про усунення ОСОБА_1 від права на спадкування. Посилання судів попередніх інстанцій в оскаржуваних рішеннях на усунення ОСОБА_1 від права на спадкування як на встановлений факт та підставу для одержання наступною чергою спадкоємців права на спадкування після смерті ІНФОРМАЦІЯ_1 ОСОБА_5 є безпідставним та не підтвердженим жодним належним та допустимим доказом.

Провадження по справі за позовом ОСОБА_1 було закрито судами безпідставно.

Суд першої інстанції ухвалюючи оскаржуване судове рішення не врахував, що у разі визнання відповідачем (або його представником за відсутності у дорученні відповідних обмежень) позову можливе лише ухвалення рішення про задоволення позову, а не про задоволення позову частково.

Харківський апеляційний суд, приймаючи оскаржувану постанову та задовольняючи частково апеляційну скаргу ОСОБА_1 , в порушення підпункту 4 частини першої статті 382 ЦПК України не зазначив в якій саме частині ним задовольняється апеляційна скарга. Постанова апеляційного суду не містить висновків по суті вимог апеляційної скарги.

**Доводи осіб, які подали відзив на касаційну скаргу**

У листопаді 2019 року до Верховного Суду надійшов відзив ОСОБА_2 та ОСОБА_3 , поданий їх представником - адвокатом Мироновим О. А., на касаційну скаргу, в якому представник відповідачів просив в поряду статті 396 ЦПК України провадження за касаційною скаргою адвоката Лукашенко О. В., поданою в інтересах ОСОБА_1 , закрити.

Вважає, що адвокатом Лукашенко О. В. не подано належних та достатніх доказів того, що він уповноважений діяти від імені ОСОБА_1 .

Крім того просив врахувати, що оскаржені судові рішення є законними та обгрунтованими, а вирок суду відносно ОСОБА_1 є самостійною підставою для його усунення від спадкування після жертви.

**Іншими учасникам справи у встановлений касаційним судом строк відзив на касаційну скаргу не подано**

**Фактичні обставини справи, встановлені судами**

Судами встановлено, що ІНФОРМАЦІЯ_1 померли ОСОБА_5 та ОСОБА_6

ОСОБА_1 є сином ОСОБА_5 .

Відносно ОСОБА_1 28 грудня 2016 року Фрунзенським районним судом м. Харкова постановлено вирок, який був змінений вироком Апеляційного суду Харківської області від 21 вересня 2017 року в частині призначення покарання, згідно із яким ОСОБА_1 визнано винним за частиною першої статті 115 та пунктами 9, 13 частини другої статті 115 КК України у скоєні умисного вбивства ОСОБА_5 та ОСОБА_6 та призначено покарання у вигляді довічного позбавлення волі.

ОСОБА_4 є сестрою ОСОБА_5 та у передбачений законом строк подала нотаріусу заяву про прийняття спадщини після смерті сестри.

ОСОБА_2 та ОСОБА_3 є сестрами ОСОБА_6 і в передбачений законом строк подали нотаріусу заяви про прийняття спадщини після смерті сестри.

На час відкриття спадщини ОСОБА_5 належали на праві власності:

1) квартира АДРЕСА_1 ;

2) 2/3 частини квартири АДРЕСА_2 ;

3) грошові кошти на банківському рахунку № НОМЕР_1 (компенсаційний), відкритому на ім`я ОСОБА_5 у ТВБВ № 10020/0327 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823); на банківському рахунку № НОМЕР_2 (компенсаційний), відкритому на ім`я ОСОБА_5 у ТВБВ № 10020/0159 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823); на поточному банківському рахунку № НОМЕР_3 ( НОМЕР_4 ), відкритому на ім`я ОСОБА_5 у ТВБВ № 10020/0314 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823); на рахунку № НОМЕР_5 ( НОМЕР_6 ) «Комбінований БО «Строковий», відкритому 05 липня 2010 року на ім`я ОСОБА_5 у ТВБВ № 10020/0314 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823); на рахунку № НОМЕР_7 ( НОМЕР_8 ) «Комбінований ОБ «Строковий», відкритому 05 липня 2010 року на ім`я ОСОБА_5 у ТВБВ № 10020/0314 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823); на рахунку № НОМЕР_9 ( НОМЕР_10 ) «Комбінований ОБ «Строковий», відкритому 05 липня 2010 року на ім`я ОСОБА_5 у ТВБВ № 10020/0314 філії - Харківське обласне управління АТ «Ощадбанк» (МФО 351823).

Згідно рішення Виконавчого комітету Орджонікідзевської районної ради м. Харкова від 01 березня 2005 року № 51/5 опікуном над малолітньою ОСОБА_6 була призначена її бабуся ОСОБА_5 .

Рішенням Орджонікідзевського районного суду м. Харкова від 13 грудня 2007 року у справі № 2-162/2007, частково зміненим рішенням Апеляційного суду Харківської області від 18 березня 2008 року (справа № 22-ц-539/2008) було частково задоволено позовні вимоги ОСОБА_5 і на її користь з відповідача по справі - ЗАТ «Хлібзавод «Салтівський» було стягнуто:

- 3 365 грн - одноразово на відшкодування шкоди, завданої смертю потерпілої;

- 766, 67 грн - щомісячно, з урахуванням індексації, з 01 листопада

2007 року до досягнення малолітньою ОСОБА_6 чотирнадцяти років;

- 20 000 грн - компенсації моральної шкоди;

- 6 760 грн - матеріальний збиток за пошкоджений автомобіль;

- 5 340 грн - витрати на придбання пам`ятника;

- 550 грн - витрати на правову допомогу.

На користь ОСОБА_6 стягнуто:

- 50 912, 50 грн - одноразово на відшкодування шкоди завданої смертю її батьків;

- 1 916, 67 грн - щомісячно, з урахуванням індексації, з 01 листопада 2007 року до досягнення нею вісімнадцяти років

- 50 000 грн - одноразово на відшкодування моральної шкоди.

Таким чином на користь ОСОБА_6 було стягнуто одноразово 100 912, 50 грн, а сума щомісячних виплат на її користь за період з 01 листопада 2007 року по ІНФОРМАЦІЯ_1 з урахуванням індексації мала скласти 103 187, 50 грн.

Грошові кошти за рішенням Орджонікідзевського районного суду м. Харкова від 13 грудня 2007 року у справі № 2-162/2007 на користь ОСОБА_6 перераховуватись на рахунки, відкриті ОСОБА_5 .

**Позиція Верховного Суду**

Відповідно до статті 388 Цивільного процесуального кодексу України (далі - ЦПК України) судом касаційної інстанції у цивільних справах є Верховний Суд.

Згідно з положенням частини другої статті 389 ЦПК України (тут і надалі по тексту в редакції Кодексу на час подання касаційної скарги) підставами касаційного оскарження є неправильне застосування судом норм матеріального права чи порушення норм процесуального права.

Касаційна скарга ОСОБА_1 , подана його представником - адвокатом Лукашенко О. В., не підлягає задоволенню.

**Мотиви, з яких виходив Верховний Суд, та застосовані норми права**

Згідно з частиною третьою статті 3 ЦПК України провадження в цивільних справах здійснюється відповідно до законів, чинних на час вчинення окремих процесуальних дій, розгляду і вирішення справи.

Відповідно до вимог частин першої і другої статті 400 ЦПК України під час розгляду справи в касаційному порядку суд перевіряє в межах касаційної скарги правильність застосування судом першої або апеляційної інстанції норм матеріального чи процесуального права і не може встановлювати або (та) вважати доведеними обставини, що не були встановлені в рішенні чи відкинуті ним, вирішувати питання про достовірність або недостовірність того чи іншого доказу, про перевагу одних доказів над іншими.

Суд касаційної інстанції перевіряє законність судових рішень лише в межах позовних вимог, заявлених у суді першої інстанції.

Частиною першою статті 15 ЦК України визначено право кожної особи на захист свого цивільного права у разі його порушення, невизнання або оспорювання.

Відповідно до частин першої, другої та п`ятої статті 263 ЦПК України судове рішення повинно ґрунтуватися на засадах верховенства права, бути законним і обґрунтованим.

Законним є рішення, ухвалене судом відповідно до норм матеріального права із дотриманням норм процесуального права.

Обґрунтованим є рішення, ухвалене на підставі повно і всебічно з`ясованих обставин, на які сторони посилаються як на підставу своїх вимог і заперечень, підтверджених тими доказами, які були досліджені в судовому засіданні.

Згідно зі статтями 1216, 1217 ЦК України спадкуванням є перехід прав і обов`язків (спадщини) від фізичної особи, яка померла (спадкодавця), до інших осіб (спадкоємців). Спадкування здійснюється за заповітом або за законом.

До складу спадщини входять усі права і обов`язки, що належали спадкодавцеві на момент відкриття спадщини і не припинилися внаслідок його смерті. (стаття 1218 ЦК України).

Відповідно до статті 1223 ЦК України у разі відсутності заповіту, визнання його недійсним, неприйняття спадщини або відмови від її прийняття спадкоємцями за заповітом, а також у разі неохоплення заповітом усієї спадщини право на спадкування за законом одержують особи, визначені у статтях 1261-1265 цього Кодексу.

Частки у спадщині кожного із спадкоємців за законом є рівними (частина перша статті 1267 ЦК України).

Статтею 1261 ЦК України передбачено, що в першу чергу право на спадкування за законом мають діти спадкодавця, у тому числі зачаті за життя спадкодавця та народжені після його смерті, той з подружжя, який його пережив, та батьки.

Згідно частини першої статті 1224 ЦК України не мають права на спадкування особи, які умисно позбавили життя спадкодавця чи будь-кого з можливих спадкоємців або вчинили замах на їхнє життя. Положення абзацу першого цієї частини не застосовується до особи, яка вчинила такий замах, якщо спадкодавець, знаючи про це, все ж призначив її своїм спадкоємцем за заповітом.

Оскільки діяння, зазначені у частині першій статті 1224 ЦК України є кримінально караними, то вони повинні бути підтверджені обвинувальним вироком суду або постановою про закриття кримінального провадження з нереабілітуючих підстав, які є самостійною та достатньою підставою для усунення від права на спадкування.

За наявності постановлених у кримінальному судочинстві, вказаних судових рішень, які набрали законної сили, ухвалення окремого рішення суду у цивільній справі про усунення від спадкування не вимагається, оскільки особа яка умисно позбавила життя спадкодавця не має права на спадкування в силу закону.

Відповідно до частини шостої статті 82 ЦПК України вирок суду в кримінальному провадженні, ухвала про закриття кримінального провадження і звільнення особи від кримінальної відповідальності або постанова суду у справі про адміністративне правопорушення, які набрали законної сили, є обов`язковими для суду, що розглядає справу про правові наслідки дій чи бездіяльності особи, стосовно якої ухвалений вирок, ухвала або постанова суду, лише в питанні, чи мали місце ці дії (бездіяльність) та чи вчинені вони цією особою.

Встановивши, що ОСОБА_1 умисно позбавив життя свою матір ОСОБА_5 , що підтверджено вироком Фрунзенського районного суду м. Харкова від 28 грудня 2016 року, зміненим вироком Апеляційного суду Харківської області від 21 вересня 2017 року в частині призначення покарання, суди дійшли обґрунтованого висновку про те, що в силу

закону ОСОБА_1 не має права на спадкування після смерті ОСОБА_5 відповідно до положень статті 1224 ЦК України.

Згідно зі статтею 1262 ЦК України у другу чергу право на спадкування за законом мають рідні брати та сестри спадкодавця, його баба та дід як з боку батька, так і з боку матері.

Суд першої інстанції, з висновком якого погодився апеляційний суд, встановивши, що після смерті ОСОБА_5 відкрилася спадщина на належні їй квартиру АДРЕСА_1 та 2/3 частки квартири АДРЕСА_2 та грошові кошти, розміщені на банківських рахунках, за виключенням грошових коштів, належних ОСОБА_6 на підставі рішення Орджонікідзевського районного суду м. Харкова від 13 грудня 2007 року у справі № 2-162/2007, а ОСОБА_4 , як сестра спадкодавця та спадкоємець другої черги за законом, прийняла спадщину, оскільки у встановлений статтею 1270 ЦК України строк подала нотаріусу заяву про прийняття спадщини, дійшов обгрунтованого висновку про часткове задоволення позову ОСОБА_4 .

Касаційний суд враховує, що відомості про інших спадкоємців першої та другої черг після смерті ОСОБА_5 , які б прийняли спадщину, суду не надані.

Також встановивши, що після смерті ОСОБА_6 відкрилася спадщина на належні їй грошові кошти, сплачені на виконання рішення Орджонікідзевського районного суду м. Харкова від 13 грудня 2007 року у справі № 2-162/2007 та розміщені на банківських рахунках, належних ОСОБА_5 , а ОСОБА_2 та ОСОБА_3 , як сестри спадкодавця та спадкоємці другої черги за законом, прийняли спадщину, подавши нотаріусу у встановлений статтею 1270 ЦК України строк заяви про прийняття спадщини, суд дійшов правильного висновку про часткове задоволення позову ОСОБА_2 та ОСОБА_3 .

Апеляційний суд обгрунтовано змінив рішення суду першої інстанції врахувавши, що ОСОБА_4 є спадкоємцем ОСОБА_5 , а ОСОБА_2 та ОСОБА_3 спадкоємцями ОСОБА_6 .

На підставі пункту 1 частини другої статті 49 ЦПК України відповідач має право визнати позов (всі або частину позовних вимог) на будь-якій стадії судового процесу.

Часткове визнання відповідачами ОСОБА_2 та ОСОБА_3 позову ОСОБА_4 , та часткове визнання ОСОБА_4 позову ОСОБА_2 та ОСОБА_3 не суперечить вимогам закону та не порушує права, свободи чи інтереси ОСОБА_1 .

Доводам заявника щодо безпідставного закриття провадження по справі в частині вирішення позову ОСОБА_1 надано оцінку Верховним Судом в постанові від 27 квітня 2020 року прийнятої за результатами розгляду касаційної скарги ОСОБА_1 , поданої адвокатом Лукашенко О. В., на ухвалу Орджонікідзевського районного суду м. Харкова від 25 лютого 2019 року про закриття провадження у цивільній справі та постанову Харківського апеляційного суду від 04 липня 2019 року.

Таким чином доводи касаційної скарги на рішення Орджонікідзевського районного суду м. Харкова від 25 лютого 2019 року та постанову Харківського апеляційного суду від 04 липня 2019 року не спростовують встановлених у справі фактичних обставин та висновків, які обгрунтовано викладені у мотивувальних частинах судових рішень судів першої та апеляційної інстанцій.

Європейський суд з прав людини вказав, що пункт 1 статті 6 Конвенції про захист прав людини і основоположних свобод зобов`язує суди давати обгрунтування своїх рішень, але

це не може сприйматись як вимога надавати детальну відповідь на кожен аргумент. Межі цього обов`язку можуть бути різними залежно від характеру рішення. Крім того, необхідно брати до уваги, між іншим, різноманітність аргументів, які сторона може представити в суд, та відмінності, які існують у державах-учасницях, з огляду на положення законодавства, традиції, юридичні висновки, викладення та формулювання рішень. Таким чином, питання, чи виконав суд свій обов`язок щодо подання обґрунтування, що випливає зі статті 6 Конвенції, може бути визначено тільки у світлі конкретних обставин справи (Проніна проти України, № 63566/00, § 23, ЄСПЛ, від 18 липня 2006 року). Оскаржені судові рішення відповідають критерію обґрунтованості судового рішення.

Відповідно до частини третьої статті 401 ЦПК України суд касаційної інстанції залишає касаційну скаргу без задоволення, а рішення - без змін, якщо відсутні підстави для скасування судового рішення.

Наявність обставин, за яких відповідно до частини першої статті 411 ЦПК України судове рішення підлягає обов`язковому скасуванню, касаційним судом не встановлено.

Враховуючи наведене, касаційну скаргу необхідно залишити без задоволення, а оскаржувані судові рішення - без змін.

Підстав для закриття касаційного провадження відповідно до статті 396 ЦПК України про що зазначав у відзиві представник ОСОБА_2 та ОСОБА_3 - адвокат Миронов О. А., колегією суддів не встановлено.

Підстави для нового розподілу судових витрат, понесених у зв`язку з розглядом справи у судах першої та апеляційної інстанцій, відсутні.

Керуючись статтями 400, 401, 416, 419 ЦПК України, Верховний Суд у складі колегії суддів Першої судової палати Касаційного цивільного суду

**ПОСТАНОВИВ:**

Касаційну скаргу ОСОБА_1 , подану його представником - адвокатом Лукашенком Олександром Вікторовичем, залишити без задоволення.

Рішення Орджонікідзевського районного суду м. Харкова від 25 лютого 2019 року, в незміненій під час апеляційного перегляду частині, та постанову Харківського апеляційного суду від 04 липня 2019 року залишити без змін.

Постанова набирає законної сили з моменту її прийняття, є остаточною та оскарженню не підлягає.

**Судді:В. В. Шипович Є. В. Синельников С. Ф. Хопта**

Category of case No. **2029/2-2762/11**: Civil cases (before 01/01/2019); Action proceeding; Disputes on ownership right and other proprietary rights; Disputes on ownership right and other proprietary rights to private property.

Sent by the court: **undefined.** Registered **04/29/2020.** Made public: **04/29/2020.**
Date of entry into force: **04/27/2020**
Proceedings number: **61-14824ск19**



Supreme Court

**Judgment**

**in the name of Ukraine**

April 27, 2020

Kyiv

Case No. 2029/2-2762/11

proceeding No. 61-14824св19

**The Supreme Court, composed of a Panel of Judges of the First Judicial Chamber of the Civil Court of Cassation:**

V.V. Shypovych (judge-rapporteur), Ye.V. Synelnykov, S.F. Khopta,

**participants in the case:**

**plaintiff (cross-defendant) -** PERSON_1

**defendants (cross-plaintiffs):** PERSON_2 , PERSON_3 , PERSON_4 ,

considered at the preliminary hearing in the manner of written proceedings the cassation appeal of PERSON_1, filed by his representative - attorney Oleksandr Viktorovych Lukashenko, the decision of the Ordzhonikidzevskyi District Court of Kharkiv, composed of Judge O.H. Zyabrova, dated February 25, 2019 and the resolution of the Kharkiv Court of Appeal, composed of a panel of judges: I.O. Brovchenko, I.V. Burlaka, A.I. Koltunova, dated July 04, 2019,

**FOUND:**

**Summary of the claims of PERSON_1.**

In October 2011 PERSON_1 filed a lawsuit against PERSON_2, PERSON_3, PERSON_4 for the declaration of ownership right by inheritance under the law after the death of his mother PERSON_5.

The claim of PERSON_1 is motivated by the fact that his mother PERSON_5 deceased on INFORMATION_1, after whose death an inheritance was opened, which included the apartment at ADDRESS_1 and 2/3 of the apartment at ADDRESS_2 and funds in bank accounts.

PERSON_5 did not make a will.

At the time of opening the inheritance after the death of his mother, he permanently lived with the testator, and therefore, by virtue of Article 1268 of the Civil Code of Ukraine (hereinafter – the CC of Ukraine), he is considered to have accepted the inheritance.

He referred to the fact that at the time of filing this claim with the court, there was no court verdict which would establish the fact that he deliberately took the life of the testator – PERSON_5 of life, and therefore there are no grounds for removing him from the right to inherit in the manner prescribed by part one of Article 1224 of the CC of Ukraine.

He asked the court to declare his ownership right by inheritance under the law to all property that belonged at the time of the opening of the inheritance on the basis of ownership right to PERSON_5, including the share in the right to common joint property of the apartment at ADDRESS_2 for apartment at ADDRESS_1 and funds in accounts with the state savings bank of Ukraine.

**Summary of counterclaims of PERSON_2 and PERSON_3.**

In October 2011, PERSON_2 and PERSON_3 applied to the court with a counterclaim to PERSON_1, PERSON_4 for the declaration of their ownership rights to funds by inheritance under the law after the death of PERSON_6, deceased on INFORMATION_1 – in equal shares for each. Taking into account the clarifications provided, they also asked to establish the fact that the testator PERSON_6 owned funds in the amount of 270,187 hryvnias deposited into bank accounts in the name of PERSON_5 at the time of opening the inheritance – on INFORMATION_1 and declare their property right to the said funds by inheritance under the law after death of PERSON_6 on INFORMATION_1, in equal shares for each.

The statement of claim of PERSON_2 and PERSON_3 is motivated by the fact that in reality the funds that remained in the accounts of PERSON_5 on the day of opening the inheritance, for the most part, belonged not to her, but to PERSON_6, INFORMATION_2, which also perished on INFORMATION_1.

So, after death in a road accident on January 10, 2005 PERSON_7 and his wife – mother of PERSON_9, guardianship was established over PERSON_6.

According to the decision of the Executive Committee of the Ordzhonikidzevskyi District Council of Kharkiv No. 51/5 dated March 01, 2005, PERSON_5 was appointed guardian over the minor PERSON_6

PERSON_5 appealed to the court with a statement of claim on compensation of damages in his own interests and in the interests of the minor PERSON_6. By the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated December 13, 2007 in case No. 2-162/2007, partially modified by the decision of the Kharkiv Region Court of Appeal dated March 18, 2008 (case No. 22-ц-539/2008), the claims were partially satisfied.

In favor of PERSON_5 it was collected: 3,365 hryvnias – a lump sum for compensation for harm caused by the death of the victim; 766.67 hryvnias – monthly, taking into account indexation, from November 01, 2007 until the minor PERSON_6 reaches fourteen years; 20,000 hryvnias – compensation for moral damage; 6,760 hryvnias – material damage for the damaged car; 5,340 hryvnias – expenses for the acquisition of the monument;

550 hryvnias – expenses for legal assistance. In favor of PERSON_6 it was collected 50,912.50 hryvnias – a lump sum for compensation for harm caused by the death of her parents; 1,916.67 hryvnias – monthly, taking into account indexation, from November 01, 2007 until minor reaches eighteen years; 50,000 hryvnias – a lump sum for compensation for moral damage.

So, in favor of the testator PERSON_6 it was collected, a lump sum of 100,912.50 hryvnias, and the amount of monthly payments in favor for the period from November 01, 2007 to INFORMATION_1, taking into account indexation, should have amounted to 103,187.50 hryvnias. All monetary funds by a court decision in favor of PERSON_6 were transferred to accounts opened by PERSON_5. All accrued interest on funds belonging to PERSON_6 were also the property of the latter, and therefore are part of the inheritance after her death.

## Summary of counterclaims

In October 2018, PERSON_4 filed a counterclaim against PERSON_1, PERSON_2 and PERSON_3 for declaration of her ownership right by inheritance under the law after the death of sister PERSON_5, who deceased on INFORMATION_1, to her ownership right to the apartment at ADDRESS_1, 2/3 of the apartment at ADDRESS_2 and funds in the amount of 270,187 hryvnias, deposited into bank accounts.

The statement of claim PERSON_4 is justified by the fact that her own sister – PERSON_5 owned the specified property, and since the heirs of the first category under the law who would have the right to inherit are absent, therefore, according to Article 1262 of the CC of Ukraine, she, as a sister, has the right to inherit after the death of PERSON_5.

## Summary of the decision of the Court of First Instance

By the order of the Ordzhonikidzevskyi District Court of Kharkiv dated February 25, 2019, granted a waiver of the claim of PERSON_1 against PERSON_2, PERSON_3, PERSON_4 for the declaration of ownership right by inheritance under the law and the proceedings in this part were closed on the basis of item 4 of part one of Article 255 of the CC of Ukraine.

By the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated February 25, 2019, claims of PERSON_2, PERSON_3 against PERSON_1, PERSON_4 on the declaration of ownership right by inheritance were partially satisfied. Claims of PERSON_4 against PERSON_2, PERSON_3, PERSON_1 on the declaration of ownership right by inheritance under the law was partially satisfied.

The ownership right of PERSON_4 by inheritance under the law after PERSON_6 and PERSON_5 to a three-room apartment with a total area of 64.3 sq. m, living area 40.3 sq. m, located at: ADDRESS_1 was declared.

The ownership right of PERSON_4 by inheritance under law after PERSON_6 and PERSON_5 to 2/3 share in the ownership right to a three-room apartment with a total area of 63.9 sq. m, living area 44.6 sq. m, located at: ADDRESS_2 was declared.

The ownership right of PERSON_4 by inheritance under the law after PERSON_6 and PERSON_5 to funds deposited into bank account No. NUMBER_1 (compensation), opened in the name of PERSON_5 in TDNB [territorially detached non-accounting branch] No. 10020/0327 of the branch – Kharkiv Regional Department of Oschadbank JSC was declared.

Declared the property right to funds deposited into bank account No. NUMBER_2 (compensation), opened in the name of PERSON_5 in TDNB No. 10020/0159 of the branch – Kharkiv Regional Department of Oschadbank JSC of PERSON_4 by inheritance under the law after PERSON_6 and PERSON_5.

Declared the property right to funds deposited into current bank account No. NUMBER_3 (NUMBER_4), opened in the name of PERSON_5 in TDNB No. 10020/0314 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823) of PERSON_4 by inheritance under the law after PERSON_6 and PERSON_5.

Declared the property right to bank deposit in the national currency of Ukraine deposited into account No. NUMBER_5 (NUMBER_6) "Combined BO "Strokovyi", opened on July 05, 2010 in the name of PERSON_5 in TDNB No. 10020/0314 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823) of PERSON_4 by inheritance under the law after PERSON_6 and PERSON_5.

Declared in equal parts the property right to the bank deposit in the national currency of Ukraine, deposited into account No. NUMBER_7 (NUMBER_8) "Combined BO "Strokovyi", opened on July 05, 2010 in the name of PERSON_5 in TDNB No. 10020/0314 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823) of PERSON_3 and PERSON_2 by inheritance under the law after PERSON_6 and PERSON_5.

Declared in equal parts the property right to the bank deposit in the national currency of Ukraine, deposited into account No. NUMBER_9 (NUMBER_10) "Combined BO "Strokovyi", opened on July 05, 2010 in the name of PERSON_5 in TDNB No. 10020/0314 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823) of PERSON_3 and PERSON_2 by inheritance under the law after PERSON_6 and PERSON_5.

Making a decision dated February 25, 2019, the Court of First Instance proceeded from the fact that PERSON_1 was removed from the right to inherit after the deceased PERSON_5, as a person who committed her murder. There are no other heirs of the first category after the deceased, and the heir of the second category is the sister of the deceased PERSON_5 – PERSON_4, who submitted an application for acceptance of the inheritance within the time period provided by law.

After the death of PERSON_6, the heirs are her sisters PERSON_2 and PERSON_3, who, within the time period stipulated by the law, submitted applications to the notary for accepting the inheritance. At the same time, the court took into account the partial adoption by the parties of counterclaims.

**Summary of the judgment of the Court of Appeal**

By the decision of the Kharkiv Court of Appeal dated July 04, 2019, the appeal of PERSON_1 was partially satisfied. The decision of the Ordzhonikidzevskyi District Court of Kharkiv dated February 25, 2019 was changed.

The conclusions on the declaration of ownership rights of PERSON_4 by inheritance under the law after PERSON_6 were excluded from the operative part of the decision.

The conclusions on the declaration of ownership rights of PERSON_3 and PERSON_2 by inheritance under the law after PERSON_5 were excluded from the operative part of the decision.

The rest of the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated February 22, 2019 was left unchanged.

In adopting the resolution dated July 04, 2019 and changing the decision of the Court of First Instance, the Court of Appeal proceeded from the fact that the Court of First Instance, when resolving the counterclaims, went beyond the claims.

PERSON_4 asked the court to declare the ownership right by inheritance after the death of PERSON_6, and PERSON_2 and PERSON_3 – after the death of PERSON_5. In addition, real estate, which during life belonged under the ownership right to PERSON_5, was not included in the inheritance mass of PERSON_6, PERSON_4 is not the heir of the second category after the death of PERSON_6, and PERSON_2 and PERSON_3 are not heirs of the second category after the death of PERSON_5. The defendants did not apply to change the order of obtaining the right to inheritance.

**Summary of the requirements of the cassation appeal**

In the cassation appeal of PERSON_1, filed by his representative - attorney O.V. Lukashenko, referring to the incorrect application of substantive law by the courts and violation of the rules of procedural law, he asks to cancel the disputed court decisions, make a new decision, whereby satisfy the claims of PERSON_1, and to refuse to satisfy the counterclaims PERSON_4, PERSON_2 and PERSON_3 in full.

**Receipt of a cassation appeal in a Court of Cassation**

In August 2019, the Supreme Court received a cassation appeal of PERSON_1, submitted by his representative – attorney O.V. Lukashenko, decisions of the Ordzhonikidzevskyi District Court of Kharkiv dated February 25, 2019 and the judgment of the Kharkiv Court of Appeal dated July 04, 2019.

By the order of the Supreme Court dated October 25, 2019, the cassation proceedings were opened on this cassation appeal.

In November 2019, the case file was received by the Supreme Court.

**Arguments of the participants in the case**

**Arguments of the person who filed the cassation appeal**

The cassation appeal is motivated by the erroneousness of the conclusions of the courts of previous instances.

[The applicant] believed that the legacy opened after the death of PERSON_5 since the opening of the inheritance, that is, from INFORMATION_1 belongs to her son PERSON_1, as the only heir of the first category under the law.

At the time of the opening of the inheritance and its adoption by PERSON_1, and during the six-month period established by the legislation for accepting the inheritance, there was no verdict of guilty by the court on finding him guilty of intentionally taking PERSON_5`s life, and therefore PERSON_1 could not be deprived of the right to inherit automatically only because of the presence of a criminal case on the murder of PERSON_5.

The conclusions of the courts that the verdict of the Court of Appeal of the Kharkiv Region dated September 21, 2017 is prejudicially important for this case are improper.

Not a single cross-plaintiff asked the court in any form to apply the legal consequences of the actions of PERSON_1, established by the verdict of the Court of Appeal of the Kharkiv Region dated September 21, 2017, and did not submit a claim to remove PERSON_1 from the right to inherit. The reference of the courts of the previous instances in the disputed decisions to remove PERSON_1 from the right to inherit as an established fact and the basis for obtaining the right to inherit after death of PERSON_5 on INFORMATION_1 by the next category of heirs of are groundless and not confirmed by any proper and admissible evidence.

Proceedings in the case on the claim PERSON_1 were closed by the courts without reason.

The Court of First Instance, making the disputed court decision, did not take into account that if the defendant (or his representative, in the absence of appropriate restrictions in the power of attorney), recognizes the claim, it is only possible to make a decision to satisfy the claim, and not to partially satisfy the claim.

The Kharkiv Court of Appeal, accepting the disputed decision and partially satisfying the appeal of PERSON_1, in violation of sub-item 4 of the part one of Article 382 of the CPC of Ukraine did not indicate in which part it satisfied the appeal. The judgment of the Court of Appeal does not contain conclusions on the merits of the claims of the appeal.

**The arguments of the persons who filed a response to the cassation appeal**

In November 2019, the Supreme Court received a response from PERSON_2 and PERSON_3, filed by their representative – attorney O.A. Mironov, on the cassation appeal, in which the representative of the defendants requested, in accordance with Article 396 of the CPC of Ukraine, to close proceedings on the cassation appeal of attorney O.V. Lukashenko, filed in the interests of PERSON_1.

[The person] considers that attorney O.V. Lukashenko did not submit proper and sufficient evidence that he is authorized to act on behalf of PERSON_1.

In addition, he asked to take into account that the disputed court decisions are lawful and justified, and the court's verdict against PERSON_1 is an independent basis for its removal from inheritance after the victim.

**The other participants in the case did not submit a response to the cassation appeal within the time period established by the Court of Cassation**

**Factual circumstances of the case established by the courts**

The courts established that PERSON_5 and PERSON_6 deceased on INFORMATION_1.

PERSON_1 is the son of PERSON_5.

On December 28, 2016, the Frunzenskyi District Court of Kharkiv, issued a verdict regarding PERSON_1, which was changed by the verdict of the Court of Appeal of Kharkiv Region dated September 21, 2017 in terms of sentencing, in accordance with which PERSON_1 was found guilty under part one of Article 115 and items 9, 13 of part two of Article 115 of the Criminal

Code of Ukraine in committing premeditated murder of PERSON_5 and PERSON_6 and sentenced to life imprisonment.

PERSON_4 is the sister of PERSON_5 and, within the time period stipulated by the law, submitted to the notary an application for acceptance of the inheritance after the death of her sister.

PERSON_2 and PERSON_3 are the sisters of PERSON_6 and, within the time period stipulated by the law, submitted applications to the notary for accepting the inheritance after the death of the sister.

At the time of the opening of the inheritance PERSON_5 owned:

1) apartment at ADDRESS_1;

2) 2/3 of apartment at ADDRESS_2;

3) funds deposited into bank account No. NUMBER_1 (compensation), opened in the name of PERSON_5 in TDNB No. 10020/0327 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823); into bank account No. NUMBER_2 (compensation), opened in the name of PERSON_5 in TDNB No. 10020/0159 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823); into current bank account No. NUMBER_3 (NUMBER_4), opened in the name of PERSON_5 in TDNB No. 10020/0314 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823); into account No. NUMBER_5 (NUMBER_6) "Combined BO "Strokovyi", opened on July 05, 2010 in the name of PERSON_5 in TDNB No. 10020/0314 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823); into account No. NUMBER_7 (NUMBER_8) "Combined BO "Strokovyi", opened on July 05, 2010 in the name of PERSON_5 in TDNB No. 10020/0314 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823); into account No. NUMBER_9 (NUMBER_10) "Combined BO "Strokovyi", opened on July 05, 2010 in the name of PERSON_5 in TDNB No. 10020/0314 of the branch – Kharkiv Regional Department of Oschadbank JSC (sort code 351823).

According to the decision of the Executive Committee of the Ordzhonikidzevskyi District Council of Kharkiv No. 51/5 dated March 01, 2005, her grandmother PERSON_5 was appointed guardian of the minor PERSON_6.

By the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated December 13, 2007 in case No. 2-162/2007, partially modified by the decision of the Court of Appeal of the Kharkiv Region dated March 18, 2008 (case No. 22-ts-539/2008), the claims of PERSON_5 were partially satisfied, and in her favor, the following was recovered from defendant in the case, Bakery Plant "Saltivskyi" CJSC:

- 3,365 hryvnias – a lump sum for compensation for harm caused by the death of the victim;

- 766.67 hryvnias – monthly, taking into account indexation, from November 01,

2007 until the minor PERSON_6 reaches fourteen years;

- 20,000 hryvnias – compensation for moral damage;

- 6,760 hryvnias – material damage for the damaged car;

- 5,340 hryvnias – expenses for the acquisition of the monument;

- 550 hryvnias – expenses for legal assistance.

In favor of PERSON_6 it was collected:

- 50,912.50 hryvnias – a lump sum for compensation for damage caused by the death of her parents;

- 1,916.67 hryvnias – monthly, taking into account indexation, from November 01, 2007 until minor reaches eighteen years;

- 50,000 hryvnias – a lump sum for compensation for moral damage.

In this way, in favor of the testator PERSON_6 it was collected, a lump sum of 100,912.50 hryvnias, and the amount of monthly payments in favor for the period from November 01, 2007 to INFORMATION_1, taking into account indexation, should have amounted to 103,187.50 hryvnias.

By the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated December 13, 2007 in case No. 2-162/2007, funds in favor of PERSON_6 were to be transferred to accounts opened by PERSON_5.

**Position of the Supreme Court**

In accordance with Article 388 of the Civil Procedure Code of Ukraine (hereinafter - CPC of Ukraine), the Supreme Court is the Court of Cassation in civil cases.

According to the provisions of the part two of Article 389 of the CPC of Ukraine (hereinafter in the text as amended by the Code at the time of filing the cassation appeal), the grounds for the cassation appeal are the incorrect application of substantive law by the court or violation of the norms of procedural law.

The cassation appeal of PERSON_1, submitted by his representative – attorney O.V. Lukashenko, is not subject to satisfaction.

**The motives from which the Supreme Court proceeded and the norms of law were applied**

According to part three of Article 3 of the CPC of Ukraine, civil proceedings are conducted in accordance with the laws in force during the performance of certain procedural actions, consideration and adjudication of the case.

In accordance with the requirements of parts one and two of Article 400 of the CPC of Ukraine, when considering a case in cassation, the court verifies, within the limits of the cassation appeal, the correctness of the application by the courts of first or appeal instances of the norms of substantive or procedural law and cannot establish or (and) consider proven circumstances that were not established in the decision or rejected by it, decide on the reliability or unreliability of this or that evidence, on the advantage of some evidence over others.

The Court of Cassation verifies the legality of court decisions only within the limits of the claims stated in the Court of First Instance.

Part one of <u>Article 15 of the CC of Ukraine</u> defines the right of every person to defend their civil rights in the event of its violation, non-declaration or appealing.

In accordance with parts one, two and five of <u>Article 263 of the CPC of Ukraine</u>, a court decision must be based on the principles of the rule of law, be lawful and justified.

A legal decision is made by a court in accordance with the norms of substantive law in compliance with the norms of procedural law.

Justified decision is the decision taken on the basis of fully and comprehensively clarified the circumstances, which the parties refer to as the basis for their claims and objections, confirmed by the evidence that was examined in the court session.

According to Articles <u>1216</u>, <u>1217 of the CC of Ukraine</u>, inheritance is the transfer of rights and obligations (inheritance) from an individual who deceased (testator) to other persons (heirs). Inheritance is conducted under the will or the law.

The inheritance includes all the rights and obligations that belonged to the testator at the time of the opening of the inheritance and did not end due to his death. (<u>Article 1218 of the CC of Ukraine</u>).

In accordance with <u>Article 1223 of the CC of Ukraine</u>, in the absence of a will, declaration of it as invalid, rejection of the inheritance or refusal to accept it by the heirs under the will, as well as in the event that the will does not cover the entire inheritance, the right to inherit under the law shall be received by persons specified in <u>Articles 1261-1265 of this Code</u>.

The shares in the inheritance of each of the heirs under the law are equal (part one of <u>Article 1267 of the CC of Ukraine</u>).

<u>Article 1261 of the CC of Ukraine</u> stipulates that the children of the testator, including those conceived during the life of the testator and born after his death, the spouse who survived him, and the parents have the right to inherit under the law.

According to the part one of <u>Article 1224 of the CC of Ukraine</u>, persons who have deliberately took the life of the testator or any of the possible heirs, or have committed an attempt on their lives, are not entitled to inheritance. The provisions of the first paragraph of this part shall not apply to a person who committed such an attempt if the testator, knowing this, nevertheless appointed this person as his heir under the will.

Since the actions specified in the part one of <u>Article 1224 of the CC [Civil Code] of Ukraine</u> are criminally punishable, they must be confirmed by a court verdict of guilty or a decision to close criminal proceedings for reasons other than exoneration; these are independent and sufficient grounds for removal from the right to inheritance.

In the presence of the court decisions adopted in criminal proceedings, which have entered into legal force, a separate court decision in a civil case on removal from inheritance is not required, since the person deliberately took the life of the testator does not have the right to inherit under the law.

According to part six of <u>Article 82 of the CPC of Ukraine</u>, a court verdict in criminal proceedings, a decision to close criminal proceedings and release a person from criminal liability or a court decision in a case of an administrative offense, which entered into legal force, are binding on the court considering the case on the legal consequences of the actions or inaction of the person against

whom the verdict, resolution or judgment of the court has been issued, only in the question whether these actions (inaction) took place and whether they were committed by this person.

Having established that PERSON_1 deliberately took the life of his mother PERSON_5, which is confirmed by the verdict of the Frunzenskyi District Court of Kharkiv dated December 28, 2016, amended by the verdict of the Court of Appeal of the Kharkiv Region dated September 21, 2017 in terms of the assignment of punishment, the courts came to a reasonable conclusion that by virtue of the law PERSON_1 does not have the right to inherit after death of PERSON_5 in accordance with the provisions of Article 1224 of the CC of Ukraine.

According to Article 1262 of the CC of Ukraine, the brothers and sisters of the testator, his grandmother and grandfather, both from the father's side and from the mother's side, have the right to inherit by second category under the law.

The Court of First Instance, with the conclusion of which the Court of Appeal agreed, having established that after the death of PERSON_5, an inheritance was opened for the apartment at ADDRESS_1 and 2/3 of apartment at ADDRESS_2 belonging to her and the funds deposited into bank accounts, excluding the funds belonging to PERSON_6 on the basis of the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated December 13, 2007 in case No. 2-162/2007, and PERSON_4, as the sister of the testator and the heir of the second category under the law, accepted the inheritance, since within the time period established by Article 1270 of the CC of Ukraine it submitted to the notary an application for acceptance of the inheritance, came to a reasonable conclusion about the partial satisfaction of the claim of PERSON_4.

The Court of Cassation takes into account that information about other heirs of the first and second categories after the death of PERSON_5, who would accept the inheritance, was not provided to the court.

Having also established that after the death of PERSON_6, an inheritance was opened for the funds belonging to her, paid pursuant to the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated December 13, 2007 in case No. 2-162/2007 and deposited into bank accounts belonging to PERSON_5, and PERSON_2 and PERSON_3, as sisters of the testator and heirs of the second category under the law, accepted the inheritance, having submitted an application for acceptance of the inheritance to a notary within the period established by Article 1270 of the CC of Ukraine, the court came to the correct conclusion about partial satisfaction of the claim of PERSON_2 and PERSON_3.

The Court of Appeal reasonably changed the decision of the Court of First Instance given that PERSON_4 is the heir of PERSON_5, and PERSON_2 and PERSON_3 are heirs of PERSON_6.

On the basis of item 1 of part two of Article 49 of the CPC of Ukraine, the defendant has the right to adopt the claim (all or part of the claim) at any stage of the court trial.

Partial recognition by defendants of PERSON_2 and PERSON_3 of the claim of PERSON_4, and partial recognition by PERSON_4 of the claim of PERSON_2 and PERSON_3 does not contradict the requirements of the law and does not violate the rights, freedoms or interests of PERSON_1.

The arguments of the applicant regarding the unreasonable closure of the proceedings in the part of the resolution of the claim of PERSON_1 were assessed by the Supreme Court in the judgment dated April 27, 2020 adopted on the basis of the results of consideration of the cassation appeal of PERSON_1, filed by attorney O.V. Lukashenko, against the order of the Ordzhonikidzevskyi

District Court of Kharkiv dated February 25, 2019 on the termination of civil proceedings and the resolution of the Kharkiv Court of Appeal dated July 04, 2019.

Thus, the arguments of the cassation appeal against the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated February 25, 2019 and the resolution of the Kharkiv Court of Appeal dated July 04, 2019 do not refute the factual circumstances and conclusions established in the case, which are reasonably set forth in the reasoning part of the court decisions of the courts of first and appellate instances.

The European Court of Human Rights has indicated that item 1 of Article 6 of the Convention for the Protection of Human Rights and Fundamental Freedoms obliges courts to provide reasons for their decisions, but this cannot be taken as a requirement to provide a detailed answer to every argument. The limits of this obligation may vary depending on the nature of the decision. In addition, it is necessary to take into account, among other things, the variety of arguments a party may submit to the court, and the differences that exist in the participating States, taking into account the provisions of legislation, traditions, legal opinions, statements and wording of decisions. Thus, the question whether the court has fulfilled its duty to provide justification, as follows from Article 6 of the Convention, can only be determined in the light of the specific circumstances of the case (Pronina v. Ukraine, No. 63566/00, § 23, ECHR, dated July 18, 2006). The disputed court decisions meet the criterion of the validity of the court decision.

According to part three of Article 401 of the CPC of Ukraine, the Court of Cassation leaves the cassation appeal without satisfaction, and the decision – unchanged, if there are no grounds for canceling the court decision.

The cassation court has not established the existence of circumstances under which, in accordance with part one of Article 411 of the CPC of Ukraine, the court decision is subject to mandatory cancellation.

Taking into account the above, the cassation appeal must be left unsatisfied, and the disputed court decisions – unchanged.

The grounds for closing the cassation proceedings in accordance with Article 396 of the CPC of Ukraine, as noted in the response by the representative of PERSON_2 and PERSON_3 – attorney O.A. Myronov, was not established by the panel of judges.

There are no grounds for a new distribution of court costs incurred in connection with the consideration of the case in the courts of first and appellate instances.

Guided by Articles 400, 401, 416, 419 of the CPC of Ukraine, the Supreme Court composed of a panel of judges of the First Judicial Chamber of the Civil Court of Cassation

**RESOLVED:**

To leave the cassation appeal of PERSON_1, filed by his representative – attorney Oleksandr Viktorovych Lukashenko unsatisfied.

To uphold the decision of the Ordzhonikidzevskyi District Court of Kharkiv dated February 25, 2019 in part that was not changed during the appeal review, and the resolution of the Kharkiv Court of Appeal of July 4, 2019.

The judgment comes into force from the moment of its adoption, is final and not subject to appeal.

**Judges: V.V. Shypovych Ye.V. Synelnykov S.F. Khopta**

**TRANSPERFECT**

**DATE OF TRANSLATION:**          13-Jan-2021

**ELECTRONIC FILE NAME:**       Judgment No. 2029_2-2762_11

**SOURCE LANGUAGE:**             Ukrainian

**TARGET LANGUAGE:**              English

**TRANSPERFECT JOB ID:**         US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

Tcert v. 4.0

**Категорія справи № <u>481/40/16-ц</u>: Цивільні справи (з 01.01.2019); Справи позовного провадження; Справи у спорах про захист немайнових прав фізичних осіб, з них; про захист честі, гідності та ділової репутації, з них:.**

Надіслано судом: **не визначено.** Зареєстровано: **22.12.2018.** Оприлюднено: **22.12.2018.**
Дата набрання законної сили: **12.12.2018**
Номер судового провадження: **61-16628ск18**

---



Верховний
Суд

**Постанова**

**Іменем України**

12 грудня 2018 року

м. Київ

справа № 481/40/16-ц

провадження № 61-16628св18

Верховний Суд у складі колегії суддів Першої судової палати Касаційного цивільного суду:

головуючого - Ступак О. В. (суддя-доповідач),

суддів:           Карпенко С. О.,    Погрібного С. О.,

                    Кузнєцова В.О.,   УсикаГ. І.,

учасники справи:

позивач - Партія «Відродження»,

відповідач - голова Новобузької районної державної адміністрації Миколаївської області ОСОБА_3,

розглянув у порядку спрощеного позовного провадження касаційну скаргу Партії «Відродження» на рішення Новобузького районного суду Миколаївської області від 11 березня 2016 року у складі судді Уманської О. В. та ухвалу Апеляційного суду Миколаївської області від 12 грудня 2016 року у складі колегії суддів: Серебрякової Т. В., Галущенко О. І., Лисенка П. П.,

ВСТАНОВИВ:

У січні 2016 року Партія «Відродження» звернулася до суду із позовом до голови Новобузької районної державної адміністрації Миколаївської області ОСОБА_3 (далі - голова Новобузької РДА Миколаївської області) про захист ділової репутації та спростування недостовірної інформації.

Свої позовні вимоги позивач обґрунтовував тим, що 27 листопада 2015 року на другій сесії Новобузької районної ради Миколаївської області 7 скликання голова Новобузької РДА Миколаївської області ОСОБА_3, який під час публічного виступу з трибуни допустив висловлювання, які містять недостовірну інформацію, яка завдає шкоди діловій репутації Партії «Відродження», зокрема, відповідач під час свого виступу зазначив наступне: «…але не має права морального Партія «Відродження», яка спонсорувала війну, яка зараз відбувається на Донбасі, людей яких розстрілювали на Майдані, розповідати в цьому залі взагалі щось». Зазначені висловлювання також були розміщені в мережі Інтернет навеб-сайті ТОВ Інформаційне агентство «ТУТ.Інфо». Вказана інформація не відповідає дійсності та принижує ділову репутацію Партії «Відродження».

Посилаючись на викладене, позивач просив визнати вказану інформацію недостовірною та такою, що принижує ділову репутацію Партії «Відродження», зобов'язати ОСОБА_3 спростувати поширену інформацію в такий самий спосіб, яким вона була поширена та відшкодувати судові витрати.

Рішенням Новобузького районного суду Миколаївської області від 11 березня 2016 року у задоволенні позову Партії «Відродження» відмовлено.

Відмовляючи у задоволенні позову, суд першої інстанції виходив із того, що слова відповідача на сесії, свідчать про те, що він дає свою оцінку роботі представників попередньої влади, критично сформулювавши свою думку щодо наслідків цієї роботи, яка представляє громадський інтерес. Про те, що це висловлення є критичним вираженням своїх поглядів, є вживання такого поняття як «війна», оскільки офіційно в Україні наразі військовий стан не оголошувався, а події які відбуваються на території Донецької області, офіційно, є - широкомасштабною антитерористичною операцією за участю Збройних сил України. Висловлення відповідача є наслідком протестних подій, які відбувалися в суспільстві з листопада 2013 року по лютий 2014 року на Майдані Незалежності у м. Києві. Висловлювання ОСОБА_3 не містять конкретних звинувачень у вчиненні індивідуально-визначених кримінально-караних чи інших протиправних дій, що по своїй суті є фактично критикою політики партії. Чинним законодавством не передбачена можливість притягнення до відповідальності за висловлювання оціночних суджень, вони, як і думки, переконання суджения, критична оцінка певних фактів і недоліків не можуть бути предметом судового захисту. Оскільки, будучи вираженням суб'єктивної думки і поглядів, не можуть бути перевірені на предмет відповідності їх дійсності (на відміну від перевірки істинності фактів).

Рішенням Апеляційного суду Миколаївської області від 08 червня 2016 року рішення суду першої інстанції у частині правового обґрунтування відмови у задоволенні позову змінено. У решті - рішення суду першої інстанції залишено без змін.

Апеляційний суд, змінюючи рішення суду першої інстанції у частині правового обґрунтування відмови у задоволенні позову, виходив із того, що ОСОБА_3 при поширенні інформації, діяв відповідно до своїх службових обов'язків як голова районної державної адміністрації, яку не залучено до участі у справі. При цьому одночасно зазначив, що висновок суду про відмову у задоволенні позову є вірним та відповідає фактичним обставинам у справі.

Ухвалою Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ від 09 листопада 2016 року рішенням Апеляційного суду Миколаївської області від 08 червня 2016 року скасовано, справу передано на новий розгляд до суду апеляційної інстанції.

Скасовуючи рішення суду апеляційної інстанції, суд касаційної інстанції виходив із того, що апеляційний суд, пославшись на статтю 34 Закону України «Про місцеві державні адміністрації», не врахував, що відповідач, як голова Новобузької РДА Миколаївської області, на сесії Новобузької районної ради Миколаївської області має лише право дорадчого голосу, без оцінки дій та рішень Новобузької районної ради Миколаївської області. Разом з тим апеляційний суд послався й на пункт 3 статті 13 Закону України «Про місцеві державні адміністрації», який не стосується цих цивільно-правових відносин та не визначає повноважень голови Новобузької РДА Миколаївської області ОСОБА_3 діяти у той спосіб, у який він діяв 27 листопада 2015 року на сесії Новобузької районної ради Миколаївської області. У разі поширення такої інформації посадовою чи службовою особою для визначення належного відповідача судам необхідно з'ясовувати, від імені кого ця особа виступає. Якщо посадова чи службова особа виступає не від імені юридичної особи і не при виконанні посадових (службових) обов'язків, то належним відповідачем є саме вона.

Ухвалою Апеляційного суду Миколаївської області від 12 грудня 2016 року рішення суду першої інстанції залишено без змін.

Залишаючи рішення суду першої інстанції без змін, суд апеляційної інстанції виходив із того, що зміст оспорюваних тверджень не містить фактичних даних. Висловлювання відповідача щодо позивача, не містять конкретних звинувачень у вчиненні індивідуально-визначених кримінально-караних чи інших протиправних дій.

У грудні 2017 року Партія «Відродження» подала до Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ касаційну скаргу на рішення Новобузького районного суду Миколаївської області від 11 березня 2016 року та ухвалу Апеляційного суду Миколаївської області від 12 грудня 2016 року, в якій просить скасувати оскаржувані судові рішення та ухвалити нове рішення про задоволення позову, посилаючись на неправильне застосування судами норм матеріального права та порушення норм процесуального права. Вказує на те, що відповідач має діяти не як фізична особа, а саме як публічна особа (самостійний суб'єкт владних повноважень). Судом першої інстанції не враховано, що голова Новобузької РДА Миколаївської області, на сесії Новобузької районної ради Миколаївської області має лише право дорадчого голосу, без оцінки дій та рішень ради. Органи виконавчої влади, їх посадові особи не мають права втручатися в законну діяльність органів та посадових осіб місцевого самоврядування, а також вирішувати питання, віднесені Конституцією України, цим та іншими законами до повноважень органів та посадових осіб місцевого самоврядування, крім випадків виконання делегованих їм радами повноважень, та в інших випадках, передбачених законом. Негативна інформація поширена про особу, вважається недостовірною, якщо особа, яка її поширила, не доведе протилежного. Поширення неправдивої інформації відповідачем визначеному колу осіб мало на меті опорочення ділової репутації позивача. Саме від волевиявлення та позиції виборців залежить представлення Партії «Відродження» в органах виконавчої влади та органах місцевого самоврядування. Апеляційним судом безпідставно та невідомо з яких причин у ухвалі суду змінено найменування позивача (юридичної особи) з Партія «Відродження» на Політична партія «Відродження», і змінена назва не відповідає реєстраційним документам юридичної особи.

Ухвалою Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ від 20 січня 2017 року відкрито провадження у справі, витребувано матеріали цивільної справи та надано строк для подання заперечення на касаційну скаргу.

У квітні 2017 року від ОСОБА_3 до суду надійшли заперечення на касаційну скаргу, у яких зазначено, що задоволення позову Партії «Відродження» означатиме ніщо інше, ніж втручання в його право на свободу вираження поглядів; і хоча таке втручання передбачене законом (існують норми щодо права її захист ділової репутації) і переслідує законну мету (захистити ділову репутацію), проте в контексті всього засідання сесії районної ради та взагалі напруженої соціально-політичної ситуації в країні навколо конкретних політичних сил (які пов'язують із колишньою владою), які на цей час знаходяться в опозиції до політичних сил, що перебувають при владі, очевидно, що таке втручання не може вважатись «необхідним в демократичному суспільстві та пропорційним до законної мети, яка переслідувалася».

15 грудня 2017 року набув чинності Закон України від 03 жовтня 2017 року «Про внесення змін до Господарського процесуального кодексу України, Цивільного процесуального кодексу України, Кодексу адміністративного судочинства України та інших законодавчих актів», за яким судом касаційної інстанції у цивільних справах є Верховний Суд (стаття 388 ЦПК України).

Згідно з частиною третьою статті 3 ЦПК України провадження в цивільних справах здійснюється відповідно до законів, чинних на час вчинення окремих процесуальних дій, розгляду і вирішення справи.

Відповідно до підпункту 4 пункту 1 розділу XIII «Перехідні положення» ЦПК України касаційні скарги (подання) на судові рішення у цивільних справах, які подані і розгляд яких не закінчено до набрання чинності цією редакцією Кодексу, передаються до Касаційного цивільного суду та розглядаються спочатку за правилами, що діють після набрання чинності цією редакцією Кодексу.

У квітні 2018 року справу передано до Верховного Суду.

Станом на час розгляду справи у Верховному Суді від інших учасників справи не надходило відзивів на касаційну скаргу.

Згідно з частиною першою статті 402 ЦПК України у суді касаційної інстанції скарга розглядається за правилами розгляду справи судом першої інстанції в порядку спрощеного позовного провадження без повідомлення учасників справи з урахуванням статті 400цього Кодексу.

За змістом статті 412 ЦПК України підставами для скасування судових рішень повністю або частково і ухвалення нового рішення у відповідній частині або зміни рішення є неправильне застосування норм матеріального права або порушення норм процесуального права.

Вивчивши матеріали справи, перевіривши доводи касаційної скарги, Верховний Суд у складі колегії суддів Першої судової палати Касаційного цивільного суду дійшов висновку, що касаційна скарга підлягає частковому задоволенню, а рішення суду першої й апеляційної інстанцій скасуванню з передачею справи на новий розгляд до суду першої інстанції з наступних підстав.

Судом установлено, що 27 листопада 2015 року проходила друга сесія сьомого скликання Новобузької районної ради Миколаївської області.

Згідно зі списком відповідальних працівників райдержадміністрації та районної ради, депутатів обласної ради, керівників підприємств, товариств, установ, які запрошені другу сесію сьомого скликання Новобузької районної ради Миколаївської області, серед запрошених осіб міститься ім'я голови Новобузької РДА Миколаївської області ОСОБА_3

Як зазначено у протоколі вказаної сесії, в її роботі брали участь представники засобів масової інформації, у тому числі, інформаційне агентство «ТУТ.ІНФО».

Відповідно до відеозапису вказаного інформаційного агентства, відповідач брав участь у роботі сесії та виступав із промовою перед депутатами. Так, у своїй промові щодо необрання кандидатури ОСОБА_4, члена Партії «Відродження», головою однієї із постійних депутатських комісій, ОСОБА_3 сказав, що «...але не має права морального Партія «Відродження», яка спонсорувала війну, яка зараз відбувається на Донбасі, людей яких розстрілювали на Майдані, розповідати в цьому залі взагалі щось».

Відмовляючи у задоволенні позову Партії «Відродження», суд першої інстанції, з яким погодився й суд апеляційної інстанції, виходив із того, що висловлювання відповідача є оціночними судженнями, а закон не передбачає захисту від висловлених оціночних суджень.

Проте такі висновки судів є необґрунтованими з огляду на таке.

Відповідно до статті 32 Конституції України кожному гарантується судовий захист права спростовувати недостовірну інформацію про себе і членів своєї сім'ї та права вимагати вилучення будь-якої інформації, а також право на відшкодування матеріальної і моральної шкоди, завданої збиранням, зберіганням, використанням та поширенням такої недостовірної інформації.

Статтею 201 ЦК України передбачено, що честь, гідність і ділова репутація є особистими немайновими благами, які охороняються цивільним законодавством.

Згідно із статтями 297, 299 ЦК України кожен має право на повагу до його гідності та честі, на недоторканність своєї ділової репутації.

Відповідно до статті 91 ЦК України юридична особа здатна мати такі ж цивільні права та обов'язки (цивільну правоздатність), як і фізична особа, крім тих, які за своєю природою можуть належати лише людині.

Особистими немайновими благами, які охороняються цивільним законодавством, є, в тому числі, ділова репутація, ім'я (найменування), а також інші блага, які охороняються цивільним законодавством (частина перша статті 201 ЦК України).

Згідно із частиною першою статті 94 ЦК України юридична особа має право на недоторканність її ділової репутації, на таємницю кореспонденції, на інформацію та інші особисті немайнові права, які можуть їй належати.

Під діловою репутацією юридичної особи, у тому числі підприємницьких товариств, фізичних осіб-підприємців, адвокатів, нотаріусів та інших осіб, розуміється оцінка їх підприємницької, громадської, професійної чи іншої діяльності, яку здійснює така особа як учасник суспільних відносин.

Юридичним складом правопорушення, наявність якого може бути підставою для задоволення позову прозахист гідності та честі фізичної особи, а також ділової репутації фізичної та юридичної особи, є сукупність таких обставин: поширення інформації, тобто доведення її до відома хоча б одній особі у будь-який спосіб; поширена інформація стосується певної фізичної чи юридичної особи, тобто позивача; поширення недостовірної інформації, тобто такої, яка не відповідає дійсності; поширення інформації, що порушує особисті немайнові права, тобто або завдає шкоди відповідним особистим немайновим благам, або перешкоджає особі повно і своєчасно здійснювати своє особисте немайнове право.

Під поширенням інформації необхідно розуміти: опублікування її у пресі, передання по радіо, телебаченню чи з використанням інших засобів масової інформації; поширення в мережі Інтернет чи з використанням інших засобів телекомунікаційного зв'язку; викладення в характеристиках, заявах, листах, адресованих іншим особам; повідомлення в публічних виступах, в електронних мережах, а також в іншій формі хоча б одній особі.

Поширенням інформації також є вивішування (демонстрація) в громадських місцях плакатів, гасел, інших творів, а також розповсюдження серед людей листівок, що за своїм змістом або формою порочать гідність, честь фізичної особи або ділової репутації фізичної та юридичної особи.

Недостовірною вважається інформація, яка не відповідає дійсності або викладена неправдиво, тобто містить відомості про події та явища, яких не існувало взагалі або які існували, але відомості про них не відповідають дійсності (неповні або перекручені).

Позивач повинен довести факт поширення інформації відповідачем, а також те, що внаслідок цього було порушено його особисті немайнові права.

Вирішуючи питання про визнання поширеної інформації недостовірною, суди повинні визначати характер такої інформації та з'ясовувати, чи є вона фактичним твердженням, чи оціночним судженням.

Відповідно до частини другої статті 30 Закону України «Про інформацію» оціночними судженнями, за винятком наклепу, є висловлювання, які не містять фактичних даних, критика, оцінка дій, а також висловлювання, що не можуть бути витлумачені як такі, що містять фактичні дані, зокрема з огляду на характер використання мовно-стилістичних засобів (вживання гіпербол, алегорій, сатири). Оціночні судження не підлягають спростуванню та їх правдивість не доводиться.

Статтею 10 Конвенції про захист прав людини і основоположних свобод передбачено, що кожен має право на свободу вираження поглядів. Це право включає свободу дотримуватися своїх поглядів, одержувати і передавати інформацію та ідеї без втручання органів державної влади і незалежно від кордонів. Здійснення цих свобод, оскільки воно пов'язане з обов'язками і відповідальністю, може підлягати таким формальностям, умовам, обмеженням або санкціям, що встановлені законом в інтересах національної безпеки, територіальної цілісності або громадської безпеки, для охорони порядку або запобігання злочинам, для охорони здоров'я або моралі, для захисту репутації або прав інших осіб, для запобігання розголошенню конфіденційної інформації або підтримання авторитету і безсторонності суду і є необхідним в демократичному суспільстві.

Згідно з усталеною практикою Європейського суду з прав людини свобода вираження поглядів є однією з важливих засад демократичного суспільства та однією з базових умов

прогресу суспільства в цілому та самореалізації кожної окремої особи. Відповідно до пункту 2 статті 10 Конвенції вона стосується не тільки «інформації» чи «ідей», які сприймаються зі схваленням чи розглядаються як необразливі або нейтральні, але й тих, які можуть ображати, шокувати чи непокоїти. Саме такими є вимоги плюралізму, толерантності та широти поглядів, без яких немає «демократичного суспільства» (рішення у справі «Карпюк та інші проти України від 06 жовтня 2015 року).

Як зазначено в рішеннях Європейського суду з прав людини (справи Лінгенса, Де Гаєс і Гійзельс, Гудвіна, Прагер і Обершлік) свобода вираження поглядів, гарантована пунктом 1 статті 10, становить одну з основних підвалин демократичного суспільства й одну з принципових умов його розвитку та умов реалізації кожної особи. За умови додержання пункту 2 свобода вираження стосується не лише тієї «інформації» чи тих «ідей», які отримані належним чином або розглядаються як необразливі чи незначні, а й тих, що викликають образу, обурення або неспокій. Такими є вимоги плюралізму, терпимості й широти поглядів, без яких «демократичне суспільство» неможливе.

Повинно бути зроблене чітке розмежування між констатацією фактів та оціночними судженнями. У той час як наявність фактів може бути продемонстровано, достовірність оціночних суджень не піддається доведенню. Вимогу доводити достовірність оціночних суджень неможливо виконати, вона порушує свободу думки як таку, що є базовою частиною права, гарантованого статтею 19 (Lingens, cited above, p. 28, пункт 46).

Отже, коли робляться твердження про поведінку третьої особи, деколи може бути важко, як і в цій справі, віднайти різницю між оцінкою фактів та оціночними судженнями. Проте навіть оціночне судження може бути надмірним, якщо воно не має під собою фактичних підстав. (Jerusalem v.Austria, no. 26958/95, n. 43, ECHR 2001-11).

Відповідно до статті 62 Конституції України, статті 6 Конвенції про захист прав людини і основоположних свобод, особа вважається невинуватою у вчиненні злочину і не може бути піддана кримінальному покаранню, доки її вину не буде доведено в законному порядку і встановлено обвинувальним вироком суду.

Ніхто не зобов'язаний доводити свою невинуватість у вчиненні злочину.

У частинах першій, другій та п'ятій статті 17 КПК України зазначено, що особа вважається невинуватою у вчиненні кримінального правопорушення і не може бути піддана кримінальному покаранню, доки її вину не буде доведено у порядку, передбаченому цим Кодексом, і встановлено обвинувальним вироком суду, що набрав законної сили. Ніхто не зобов'язаний доводити свою невинуватість у вчиненні кримінального правопорушення і має бути виправданим, якщо сторона обвинувачення не доведе винуватість особи поза розумним сумнівом. Поводження з особою, вина якої у вчиненні кримінального правопорушення не встановлена обвинувальним вироком суду, що набрав законної сили, має відповідати поводженню з невинуватою особою.

Презумпцію невинуватості необхідно розглядати в загально правовому і процесуальному значеннях. Як загально правова вимога вона визначає положення особи в суспільстві. Хоча цей принцип сформульований як кримінальний процесуальний, однак його дія виходить за рамки лише кримінального процесу. Презумпція невинуватості - об'єктивне право положення. Це вимога закону, звернена до всіх громадян, посадових осіб, державних і громадських організацій, до громадської думки в цілому. Такої позиції дотримується і Європейський Суд з прав людини, що у своєму рішенні від 10 лютого 1995 року у справі «Аллене де Рібермон проти Франції» підкреслив, що сфера застосування принципу

презумпції невинуватості є значно першою: він обов'язковий не лише для кримінального суду, який вирішує питання про обґрунтованість обвинувачення, а й для всіх інших органів держави.

У найзагальнішому вигляді правило презумпції невинуватості означає, що особа може бути визнана винуватою у вчиненні злочину і покарана лише за умови, що її вина буде доведена в передбаченому законом порядку і встановлена обвинувальним вироком суду. Повідомлення особі про підозру, складання слідчим та затвердження прокурором обвинувального акта на стадії досудового розслідування, розгляд справи у підготовчому провадженні не вирішують наперед визнання його винуватим у вчиненні злочину. Лише один орган у державі наділений таким правом - це суд, який є відповідно до Конституції України (стаття 124) носієм судової влади, що здійснює правосуддя в умовах законності, незалежності, гласності та змагальності.

Вирок суду є єдиним процесуальним документом, що встановлює винуватість.

При цьому Європейський суд з прав людини зазначає, що презумпцію невинуватості буде порушено, якщо судове рішення або заява посадової особи щодо особи, обвинуваченої у вчиненні кримінального злочину, відображає думку про її вину до того, як вона буде доведена відповідно до закону. Достатньо мати навіть за відсутності будь-якого формального висновку певні підстави припускати, що суд або посадова особа вважає обвинуваченого винним. Питання про те, чи порушує заява посадової особи державного органу принцип презумпції невинуватості, слід визначати в контексті конкретних обставин, за яких оспорювану заяву було зроблено (пункт 42 рішення від 21 вересня 2006 року в справі «Грабчук проти України» (заява № 8599/02); пункт 48 рішення від 12 січня 2012 року в справі «Довженко проти України» (заява № 36650/03)).

Разом з тим суд першої інстанції, з яким погодився й суд апеляційної інстанції, ухвалюючи рішення про відмову у задоволенні позову у зв'язку з тим, що висловлювання ОСОБА_3 є критичним вираженням своїх поглядів, які представляють громадський інтерес, не надав оцінку такому висловлюванню та не здійснив розмежування між фактичними твердженнями та оціночними судженнями.

Суди не звернули уваги на те, що висловлювання відповідача щодо дій позивача, є такими, що можуть бути перевірені на їх правдивість, оскільки підпадають під ознаки кримінально-караного діяння, що у свою чергу виключає віднесення слів ОСОБА_3 щодо діяльності Партії «Відродження» до оціночних суджень чи критичних зауважень про діяльність партії.

Суди не встановили чи є вирок суду щодо позивача про вчинення таких дій, що підпадають під ознаки злочину на який вказав відповідач, а саме під ознаки злочину проти громадської безпеки передбаченого розділом IX КК України статтею 258-5 фінансування тероризму, а тому з огляду на відсутність дослідження судами доказів у справі, зокрема чи є висловлювання відповідача вираженням суб'єктивної думки і поглядів і чи можливо такі висловлювання перевірити на предмет їх відповідності, рішення судів попередніх інстанцій не можуть вважатися законними та обґрунтованими, оскільки фактичні твердження та оціночні судження є різними поняттями, а розмежовування цих термінів лежить в основі захисту права на честь, гідність та ділову репутацію.

Суди, порушуючи норми матеріального права, не взяли до уваги норми національного та міжнародного права, прецедентної судової практики Європейського суду з прав людини щодо презумпції невинуватості, не перевірили належним чином доводи сторін у справі, не визначили характер поширеної відповідачем інформації та не з'ясовували є вона фактичним

твердженням чи оціночним судженням, тому дійшли передчасного висновку за встановлених обставин про наявність правових підстав для відмови у задоволенні позову.

Верховний Суд дійшов переконання, що суди першої та апеляційної інстанцій розглянули спір із порушенням норм процесуального права, не дослідили зібрані докази у справі, не надали їм належної оцінки, не навели мотивів врахування одних доказів та відхилення інших, а тому постановлені судові рішення не відповідають критеріям обґрунтованості та правомірності, висновки, які вони зробили, є передчасними. Враховуючи, що усунути допущені порушення Верховний Суд не вправі через обмеження повноважень як суду касаційної інстанції, справедливим та підставним є направлення справи на новий розгляд до суду першої інстанції

Під час нового розгляду суди повинні надати оцінку доводам сторін та встановити, чи є поширена відповідачем інформація фактичним твердженням, чи оціночним судженням.

Доводи заявника про необхідність застосування до спірних правовідносин презумпції добропорядності, передбаченою частиною третьою статті 277 ЦК України, є безпідставними, оскільки її було виключено на підставі Закону № 1170-VII від 27 березня 2014 року, тобто до виникнення спірних правовідносин.

Ураховуючи, що фактичні обставини, які мають значення для правильного вирішення справи, судами повністю не встановлено, рішення суду першої та апеляційної інстанцій ґрунтуються на припущеннях, що відповідно до статті 411 ЦПК України є підставою для їх скасування з передачею справи на новий розгляд до суду першої інстанції.

Керуючись статтями 406, 409, 411, 415, 416 ЦПК України, Верховний Суд у складі колегії суддів Першої судової палати Касаційного цивільного суду

ПОСТАНОВИВ:

Касаційну скаргу Партії «Відродження» задовольнити частково.

Рішення Новобузького районного суду Миколаївської області від 11 березня 2016 року та ухвалу Апеляційного суду Миколаївської області від 12 грудня 2016 року скасувати, справу передати на новий розгляд до суду першої інстанції.

Постанова суду касаційної інстанції є остаточною і оскарженню не підлягає.

**Головуючий**                                    **О. В. Ступак**

**Судді:**                                          **С. О. Карпенко**

                                                   **В.О. Кузнєцов**

                                                   **С. О. Погрібний**

                                                   **Г. І. Усик**

Category of case No. **481/40/16-ц**: **Civil cases (from 01./01/.2019); Action proceeding cases; Cases on disputes on defending non-property rights of individuals, of which: protection of honor, dignity and business reputation, of which:.**

Sent by the court: **undefined.** Registered: **12/22/2018.** Made public: **12/22/2018.**
Date of entry into force: **12/12/2018**
Proceedings number: **61-16628ск18**



Supreme Court

**Judgment**

**in the name of Ukraine**

December 12, 2018

Kyiv

Case No. 481/40/16-ц

proceeding No. 61-16628св18

The Supreme Court, composed of the Panel of Judges of the First Judicial Chamber of the Civil Court of Cassation:

presiding – O.V. Stupak (judge-rapporteur),

judges:            S.O. Karpenko, S.O. Pohribnyi,

                     V.O. Kuznetsov, H.I. Usyk,

participants in the case:

plaintiff – "Vidrodzhennia" Party,

defendant - chairman of the Novyi Buh District State Administration of Mykolaiv Region PERSON_3,

considered in the manner of a simplified action proceeding the cassation appeal of the "Vidrodzhennya" Party against the judgment of the Novyi Buh District Court of Mykolaiv Region dated March 11, 2016 composed of judge O.V. Umanska, and the order of the Appellate Court of Mykolaiv Region dated December 12, 2016 composed of the panel of judges: T.V. Serebriakova, O.I. Halushchenko, P.P. Lysenko,

FOUND:

In January 2016, the "Vidrodzhennya" Party filed a lawsuit against chairman of the Novyi Buh District State Administration of Mykolaiv Region PERSON_3 (hereinafter - the chairman of the Novyi Buh DSA of Mykolaiv Region) for the protection of business reputation and refutation of false information.

The plaintiff substantiated his claims by the fact that on November 27, 2015, at the second session of the Novyi Buh District Council of Mykolaiv Region of the 7th convocation, chairman of the Novyi Buh DSA of Mykolaiv Region PERSON_3, who, during a public speech from the rostrum, made statements containing false information that damages the business reputation of the "Vidrodzhennya" Party, in particular, the defendant noted the following during his speech: "... but the "Vidrodzhennya" Party which sponsored the war that is now taking place in Donbas, people that shot on the Maidan, has no moral right to say anything in this hall". These statements were also posted on the Internet on the website of News Agency "TUT.Info" LLC. This information does not correspond to reality and humiliates the business reputation of the "Vidrodzhennya" Party.

Referring to the above, the plaintiff asked to recognize the specified information as false and degrading the business reputation of the "Vidrodzhennya" Party, to oblige PERSON_3 to refute the disseminated information in the same way as it was disseminated and to reimburse legal costs.

By the decision of the Novyi Buh District Court of Mykolaiv Region dated March 11, 2016, the claim of the "Vidrodzhennya" Party was refused.

In refusing to satisfy the claim, the Court of First Instance proceeded from the fact that the defendant's words at the session indicate that he gives his assessment of the work of representatives of the previous government, critically formulating his opinion on the consequences of this work, which is of public interest. The fact that this statement is a critical expression of one's views is the use of such concept as "war", since the state of war has not yet been officially declared in Ukraine, and the events that take place on the territory of Donetsk Region, officially, are – a large-scale anti-terrorist operation with the participation of the Armed Forces of Ukraine. The statements of the defendant are a consequence of the protest events that took place in society from November 2013 to February 2014 on Maidan Nezalezhnosti in Kyiv. The statements of PERSON_3 do not contain specific accusations of committing individually defined criminal offenses or other illegal actions, which, in fact, constitutes criticism of the party's policies. The current legislation does not provide for the possibility of holding accountable for making value judgments; they, like thoughts, beliefs, judgments, critical assessment of certain facts and shortcomings, cannot be the subject of judicial defense. Since, being an expression of subjective opinions and views, they cannot be checked for their compliance with reality (as opposed to checking the truth of facts).

By the decision of the Appellate Court of Mykolaiv Region dated June 08, 2016, the decision of the Court of First Instance in terms of the legal justification for the refusal to satisfy the claim was modified. In the rest, the decision of the Court of First Instance was upheld.

The appellate court, modifying the decision of the Court of First Instance in terms of the legal justification for the refusal to satisfy the claim, proceeded from the fact that PERSON_3, when disseminating information, acted in accordance with its official duties as the chairman of the District State Administration, which is not involved in the case. At the same time, it noted that the court's conclusion about the refusal to satisfy the claim is correct and corresponds to the factual circumstances of the case.

By the order of the High Specialized Court of Ukraine for Civil and Criminal Matters dated November 09, 2016 the judgment of the Appellate Court of Mykolaiv Region dated June 08, 2016 was cancelled, the case was sent for a new consideration to the Court of Appeal.

Canceling the decision of the Court of Appeal, the court of cassation proceeded from the fact that the appellate court, referring to Article 34 of the Law of Ukraine "On Local State Administrations", did not take into account that the defendant, as chairman of the Novyi Buh DSA of Mykolaiv Region, at the session of the Novyi Buh District Council of Mykolaiv Region has only the right of an advisory vote, without evaluating the actions and decisions of the Novyi Buh District Council of Mykolaiv Region. At the same time, the appellate court also referred to item 3 of Article 13 of the Law of Ukraine "On Local State Administrations", which does not apply to these civil relations and does not establish the powers of chairman of the Novyi Buh District State Administration of Mykolaiv Region PERSON_3 to act in the way that he acted on November 27, 2015 at the session of the Novyi Buh District Council of Mykolaiv Region. If such information is disseminated by an executive or official, in order to determine the appropriate defendant, the courts need to find out on behalf of whom this person is acting. If the executive or official does not act on behalf of a legal entity and not in the performance of official duties, then he is the proper defendant.

By the decision of the Appellate Court of Mykolaiv Region dated December 12, 2016, the judgment of the court of first instance was upheld.

Upholding the judgment of the Court of First Instance, the Court of Appeal proceeded from the fact that the content of the disputed statements did not contain factual data. The statements of the defendant in relation to the plaintiff do not contain specific accusations of committing individually defined criminally punishable or other illegal actions.

In December 2017, the "Vidrodzhennya" Party filed a cassation appeal against the judgment of the Novyi Buh District Court of Mykolaiv Region dated March 11, 2016 and the order of the Appellate Court of Mykolaiv Region dated December 12, 2016 to the High Specialized Court of Ukraine for Civil and Criminal Matters, in which it asks to cancel the disputed court decisions and make a new decision to satisfy the claim, referring to the incorrect application of substantive law by the courts and violation of the rules of procedural law. It indicates that the defendant should act not as an individual, but as a public person (an independent subject of official powers). The Court of First Instance did not take into account that the defendant, as the chairman of the Novyi Buh DSA of Mykolaiv Region, at the session of the Novyi Buh District Council of Mykolaiv Region has only the right of an advisory vote, without evaluating the actions and decisions of the council. Executive authorities, their officials do not have the right to interfere in the legal activities of bodies and officials of local self-government, as well as to settle issues, attributed by the Constitution of Ukraine, these and other laws to the powers of bodies and officials of local self-government, except for the cases when the powers are delegated to them by the councils, and in other cases provided for by law. Negative information disseminated about a person is considered false if the person who disseminated it does not prove otherwise. The dissemination of untruthful information by the defendant to a certain circle of persons was aimed at defaming the business reputation of the plaintiff. The representation of the "Vidrodzhennya" Party in the executive authorities and local self-government bodies depends on the expression of the will and position of voters. In the order, the appellate court groundlessly and for unknown reasons changed the name of the plaintiff (legal entity) from the "Vidrodzhennya" Party to the "Vidrodzhennya" Political Party; and the changed name does not correspond to the registration documents of the legal entity.

By the order of the High Specialized Court of Ukraine for Civil and Criminal Matters dated January 20, 2017, proceedings were opened in the case, the materials of the case were requested and a time limit was given for filing an objection to the cassation appeal.

In April 2017, the court received from PERSON_3 objections to the cassation appeal, which indicated that the satisfaction of the claim of the "Vidrodzhennya" Party would mean nothing more than interference with his right to freedom of expression; and although such interference is

prescribed by law (there are rules on the right to protect its business reputation) and pursues a legitimate aim (to protect business reputation), however, in the context of the entire session of the district council and the generally tense social and political situation in the country around specific political forces (which are associated with the previous government), which are currently in opposition to the political forces that are in power, it is clear that such interference cannot be considered "necessary in a democratic society and proportionate to the legitimate aim pursued".

On December 15, 2017, the <u>Law of Ukraine "On Amendments to the Commercial Procedure Code of Ukraine, the Civil Procedure Code of Ukraine, the Code of Administrative Justice of Ukraine and other legislative acts"</u> dated October 03, 2017 came into force, according to which the Supreme Court is the court of cassation in civil cases (<u>Article 388 of the CPC [Civil Procedure Code] of Ukraine</u>).

According to part three of <u>Article 3 of the CPC [Civil Procedure Code] of Ukraine</u>, civil proceedings are conducted in accordance with the laws in force at the time of performance of certain procedural actions, consideration and adjudication of the case.

In accordance with sub-item 4 of item 1 of <u>Section XIII "Transitional Provisions" of the CPC [Civil Procedure Code] of Ukraine,</u> cassation appeals against judicial decisions in civil cases, filed and pending before this version of the Code entered into force, are transferred to the Civil Court of Cassation and are considered first with the rules in force after the entry into force of this version of the Code.

In April 2018, the case was transferred to the Supreme Court.

As of the time of consideration of the case in the Supreme Court, there were no responses to the cassation appeal from other participants in the case.

According to part one of <u>Article 402 of the CPC [Civil Procedure Code] of Ukraine,</u> in the court of cassation, the complaint is considered according to the rules for considering the case by the Court of First Instance in the manner of simplified action proceedings without notifying the participants in the case, taking into account <u>Article 400 of the Code</u>.

Within the meaning of <u>Article 412 of the CPC [Civil Procedure Code] of Ukraine,</u> the grounds for canceling court decisions in whole or in part and issuing a new decision in the relevant part or modifying the decision are incorrect application of the rules of substantive law or violation of the rules of procedural law.

After examining the case materials, checking the arguments of the cassation appeal, the Supreme Court, composed of the Panel of Judges of the First Court Chamber of the Civil Court of Cassation, came to the conclusion that the cassation appeal should be satisfied, and the decision of the courts of first and appeal instances should be cancelled with the transfer of the case for new consideration to the Court of First Instance due to the following grounds.

The court established that on November 27, 2015, the second session of the seventh convocation of the Novyi Buh District Council of Mykolaiv Region took place.

According to the list of responsible employees of the District State Administration and the District Council, deputies of the Regional Council, heads of enterprises, companies, institutions who are invited to the second session of the seventh convocation of the Novyi Buh District Council of Mykolaiv Region, among the invited persons there is the name of chairman of the Novyi Buh District State Administration of Mykolaiv Region PERSON_3

As indicated in the minutes of this session, representatives of the media, including the News Agency "TUT.Info", took part in its work.

According to the video recording of the said news agency, the defendant took part in the session and delivered a speech to the deputies. So, in his speech on the non-election of the candidacy of PERSON_4, a member of the "Vidrodzhennya" Party, the chairman of one of the permanent deputy commissions, PERSON_3 said that "... but the "Vidrodzhennya" Party which sponsored the war that is now taking place in the Donbass, people who shot on the Maidan, has no moral right to say anything in this hall".

Refusing to satisfy the claim of the "Vidrodzhennya" Party, the Court of First Instance, with which the Court of Appeal also agreed, proceeded from the fact that the statements of the defendant were value judgments, and the law did not provide for protection from the expressed value judgments.

However, such conclusions of the courts are unfounded, given the following.

According to Article 32 of the Constitution of Ukraine, everyone is guaranteed judicial defense of the right to refute false information about himself and his family members and the right to demand the removal of any information, as well as the right to compensation for pecuniary and moral damage caused by the collection, storage, use and dissemination of such false information.

Article 201 of the CC [Civil Code] of Ukraine provides that honor, dignity and business reputation are personal non-property benefits, which are protected by civil law.

According to Articles 297,  299 of the CC [Civil Code] of Ukraine, everyone has the right to respect for his dignity and honor, to the inviolability of his business reputation.

In accordance with Article 91 of the CC [Civil Code] of Ukraine, a legal entity is capable of having the same civil rights and obligations (civil legal capacity) as an individual, except for those that by their nature can only belong to a person.

Personal non-property benefits that are protected by civil law are, among other things, business reputation, name (title), as well as other benefits that are protected by civil law (part one of Article 201 of the CC [Civil Code] of Ukraine).

According to part one of Article 94 of the CC [Civil Code] of Ukraine, a legal entity has the right to inviolability of its business reputation, privacy of correspondence, information and other personal non-property rights belonging to it.

The business reputation of a legal entity, including entrepreneurial companies, individual entrepreneurs, attorneys, notaries and other persons, is understood as an assessment of their entrepreneurial, social, professional or other activities conducted by such a person as a participant in public relations.

The legal structure of an offense, the presence of which may be the ground for satisfying a claim for the protection of the honor and dignity of an individual, as well as the business reputation of an individual and legal entity, is a combination of the following circumstances: dissemination of information, that is, bringing it to the attention of at least one person by any means; the disseminated information concerns a specific individual or legal entity, that is, the plaintiff; dissemination of false information, that is, information that does not correspond to reality; dissemination of information that violates personal non-property rights, i.e. either prejudices the

relevant personal non-property benefits, or prevents a person from fully and timely exercising his personal non-property right.

The dissemination of information should be understood as its publication in print, transmission by radio, television or using other media; distribution on the Internet or using other means of telecommunications; statements in characteristics, statements, letters addressed to other persons; communication in public speeches, in electronic networks, as well as in any other form to at least one person.

Hanging (displaying) posters, slogans, and other works in public places, as well as distributing leaflets among people, which by their content or form discredit the dignity, honor of an individual or the business reputation of an individual and legal entity also constitutes dissemination of information,.

Information that does not correspond to reality or is untruthfully stated, that is, contains information about events and phenomena that did not exist at all or that existed, but information about them does not correspond to reality (is incomplete or distorted) is considered false.

The plaintiff must prove the fact of dissemination of information by the defendant, as well as the fact that as a result of this, his personal non-property rights were violated.

When deciding whether the disseminated information is recognized as false, the courts must determine the nature of such information and find out whether it is a factual statement or a value judgment.

According to part two of Article 30 <u>of the Law of Ukraine "On Information",</u> value judgments, with the exception of libel, are criticism, assessment of actions, statements that do not contain factual data, as well as statements that cannot be interpreted as containing factual data, in particular, given the nature of the use of linguistic and stylistic means (the use of hyperboles, allegories, satire). Value judgments are not subject to refutation and their veracity is not necessary.

<u>Article 10 of the Convention for the Protection of Human Rights and Fundamental Freedoms</u> provides that everyone has the right to freedom of expression. This right includes the freedom to hold opinions, receive and impart information and ideas, without interference from public authorities and regardless of borders. The exercise of these freedoms, insofar as it is associated with duties and responsibilities, may be subject to certain formalities, conditions, restrictions or sanctions established by law in the interests of national security, territorial integrity or public order, for the protection of order or prevention of crime, protection of health and morals, protection of the reputation or rights of others, to prevent the disclosure of confidential information or to ensure the credibility and impartiality of the judiciary and is necessary in a democratic society.

According to the established practice of the European Court of Human Rights, freedom of expression is one of the important foundations of a democratic society and one of the basic conditions for the progress of society as a whole and the self-realization of each individual. In accordance with item 2 of Article 10 of the Convention, it concerns not only "information" or "ideas" that are accepted with approval, considered harmless or neutral, but also those that may offend, shock or disturb. These are the requirements for pluralism, tolerance and broad-mindedness, without which there is no "democratic society" (decision in the case "Karpyuk and Others v. Ukraine dated October 06, 2015).

As stated in the decisions of the European Court of Human Rights (Lingens, De Haes and Gijsels, Goodwin, Prager and Oberschlick cases), freedom of expression, guaranteed by item 1 of Article

10, is one of the basic foundations of a democratic society and one of the fundamental conditions for its progress and the realization of every individual. Subject to item 2, freedom of expression concerns not only those "information" or those "ideas" that are duly received or are considered harmless or unimportant, but also those that offend, outrage or worry. These are the demands for pluralism, tolerance and broad-mindedness, without which a "democratic society" is impossible.

A clear distinction must be made between stating facts and value judgments. While the existence of facts can be demonstrated, the veracity of value judgments cannot be proven. The requirement to prove the reliability of value judgments cannot be met, it violates freedom of thought as such, which is a fundamental part of the right guaranteed by Article 19 (Lingens, cited above, section 28, item 46).

So, when claims are made about the behavior of a third party, it can sometimes be difficult, as in this case, to distinguish between evaluating facts and value judgments. However, even a value judgment can be excessive if it is not based on factual grounds. (Jerusalem v. Austria, No. 26958/95, n. 43, ECHR 2001-11).

In accordance with <u>Article 62 of the Constitution of Ukraine</u>, <u>Article 6 of the Convention for the Protection of Human Rights and Fundamental Freedoms,</u> a person is considered innocent of committing a crime, as well as cannot be subjected to criminal punishment, until his guilt is proven through legal procedure and established by a court verdict of guilty.

No one is obliged to prove his innocence of a crime.

Parts one, two and five of <u>Article 17 of the CPC [Criminal Procedure Code] of Ukraine</u> indicate that a person is considered innocent of a criminal offense and cannot be subjected to criminal punishment until his guilt is proven in accordance with the procedure prescribed by this Code and established by the court verdict of guilty that became effective. No one is obliged to prove his innocence of a criminal offense and must be acquitted unless the prosecution proves the person's guilt beyond a reasonable doubt. The treatment of a person whose guilt in the commission of a criminal offense has not been established by a court conviction that has entered into legal force must be consistent with the treatment of an innocent person.

The presumption of innocence must be viewed in general legal and procedural senses. As a general legal requirement, it determines the position of the individual in society. Although this principle is formulated as a principle of criminal procedure, its effect goes beyond the scope of the criminal process. The presumption of innocence is an objective legal provision. This is a requirement of the law, addressed to all citizens, officials, state and public organizations, to public thought in general. This position is also adhered to by the European Court of Human Rights, in its decision dated February 10, 1995 in the case "Allenet de Ribermont v. France", which emphasized that the scope of application of the principle of the presumption of innocence is significantly first (*sic*): it is mandatory not only for the criminal court, which decides whether the charge is justified, but also for all other organs of the state.

In its most general form, the rule of presumption of innocence means that a person can be found guilty of committing a crime, as well as punished, only on the condition that his/her guilt is proven in the manner prescribed by law and established by a court verdict of guilty. Notice of suspicion to a person, drawing up the accusation act by an investigator and approving the same by a prosecutor at the stage of pre-trial investigation, consideration of a case in preparatory proceedings do not decide in advance whether he/she is guilty of committing a crime. Only one body in the state is endowed with such a right - this is the court, which, in accordance with the <u>Constitution of</u>

Ukraine (Article 124), is the bearer of the judicial power, which administers justice in conditions of legality, independence, transparency and in accordance with adversarial principle.

A court verdict is the only procedural document that establishes guilt.

At the same time, the European Court of Human Rights notes that the presumption of innocence will be violated if a court decision or statement by an official with respect to a person accused of a criminal offense reflects an opinion about his guilt before it is proven in accordance with the law. It is enough to have, even in the absence of any formal opinion, certain grounds to assume that the court or the official considers the accused to be guilty. Whether a statement by a public official violates the principle of the presumption of innocence should be determined in the context of the particular circumstances in which the disputed statement was made (item 42 of the decision dated September 21, 2006 in the case "Hrabchuk v. Ukraine" (application No. 8599/02); item 48 of the decision dated January 12, 2012 in the case "Dovzhenko v. Ukraine" (application No. 36650/03)).

At the same time, the Court of First Instance, with which the Court of Appeal also agreed, when deciding to dismiss the claim due to the fact that the statements of PERSON_3 are a critical expression of their views of public interest, did not provide an assessment of such a statement and did not distinguish between factual statements and value judgments.

The courts did not pay attention to the fact that the statements of the defendant regarding the actions of the plaintiff are such that can be checked for their truthfulness, since they fall under the signs of a criminal offense, which in turn excludes the attribution of the words of PERSON_3 about the activities of the "Vidrodzhennya" Party to value judgments or critical remarks about the activities of the party.

The courts have not established whether there is court's verdict against the plaintiff on the commission of the actions falling under the elements of a crime indicated by the defendant, namely, under the signs of a crime against public safety provided for by Article 258-5 of Section IX of the CrC [Criminal Code] of Ukraine – financing terrorism. Therefore, due to the lack of examination by the courts of the evidence in the case, in particular, whether the statements of the defendant are the expression of subjective opinions and views, and that it is possible to check such statements for their compliance, the decisions of the courts of previous instances cannot be considered lawful and reasonable, since factual statements and value judgments are different concepts, and the delimitation of these terms constitutes the basis for the protection of the right to honor, dignity and business reputation.

The courts, in violation of the substantive law, did not take into account the norms of national and international law, the case law of the European Court of Human Rights on the presumption of innocence, did not properly check the arguments of the parties in the case, did not determine the nature of the information disseminated by the defendant, and did not find out whether it was a factual statement or a value judgment, therefore, they came to a premature conclusion from the established circumstances that there were legal grounds for refusing the claim.

The Supreme Court is convinced that the courts of first and appeal instances considered the dispute in violation of the rules of procedural law, did not examine the collected evidence in the case, did not provide them with a proper assessment, did not give reasons for considering some evidence and rejecting others, therefore, the issued court decisions do not meet the criteria of validity and legality, the conclusions they have drawn are premature. Considering that the Supreme Court is not entitled to eliminate the violations, which were made, through its powers as a court of cassation, it is fair and justified to refer the case for new consideration to the Court of First Instance.

During a new trial, the courts must assess the arguments of the parties and establish whether the information disseminated by the defendant is a factual statement, or a value judgment.

The applicant's arguments about the need to apply the presumption of integrity to the disputed legal relationship, provided for by part three of Article 277 of the CC [Civil Code] of Ukraine, are unfounded, since it was excluded on the basis of Law No. 1170-VII dated March 27, 2014, that is, before the disputed legal relationship arose.

Considering that the courts have not fully established the factual circumstances that are important for the correct adjudication of the case, the decisions of the courts of first and appeal instances are based on the assumptions that, in accordance with Article 411 of the CPC [Civil Procedure Code] of Ukraine, is the basis for their cancellation with the transfer of the case for new consideration to the Court of First Instance.

Guided by Articles 406, 409, 411, 415, 416 of the CPC [Civil Procedure Code] of Ukraine, the Supreme Court composed of the Panel of Judges of the First Court Chamber of the Civil Court of Cassation

RESOLVED:

To partially satisfy the cassation appeal of the "Vidrodzhennya" Party.

To cancel the judgment of the Novyi Buh District Court of Mykolaiv Region dated March 11, 2016 and the order of the Appellate Court of Mykolaiv Region dated December 12, 2016, to transfer the case for new consideration to the Court of First Instance.

Judgment of the Court of Cassation is final and not subject to appeal.

**Presiding**                              **O.V. Stupak**

**Judges:**                                **S.O. Karpenko**

                                           **V.O. Kuznetsov**

                                           **S.O. Pohribnyi**


                                           **H.I. Usyk**

**DATE OF TRANSLATION:**          13-Jan-2021

**ELECTRONIC FILE NAME:**         Judgment No. 481_40_16-ц

**SOURCE LANGUAGE:**              Ukrainian

**TARGET LANGUAGE:**              English

**TRANSPERFECT JOB ID:**          US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001


Tcert v. 4.0

Категорія справи № **727/8388/17: Цивільні справи (з 01.01.2019); Справи позовного провадження; Справи у спорах про захист немайнових прав фізичних осіб, з них.**

Надіслано судом: **не визначено.** Зареєстровано: **28.06.2019.** Оприлюднено: **02.07.2019.**
Дата набрання законної сили: **05.06.2019**
Номер судового провадження: **61-39916ск18**


Верховний
Суд

**Постанова**

**Іменем України**

05 червня 2019 року

м. Київ

справа № 727/8388/17

провадження № 61-39916св18

Верховний Суд у складі колегії суддів Першої судової палати Касаційного цивільного суду: головуючого -  Ступак О. В. (суддя-доповідач),

суддів:                          Гулейкова І. Ю., Олійник А. С.,

Усика Г. І.,                     Яремка В. В.,

учасники справи:

позивач - ОСОБА_1 ,

відповідач - ОСОБА_2 ,

розглянув у порядку спрощеного позовного провадження касаційну скаргу представника ОСОБА_1 - ОСОБА_3 на рішення Шевченківського районного суду м. Чернівці від 13 лютого 2018 року у складі судді Семенка О. В та постанову Апеляційного суду Чернівецької області від 07 червня     2018 року у складі колегії суддів: Половінкіної Н. Ю., Кулянди М. І., Одинака О. О.,

**ВСТАНОВИВ:**

**Короткий зміст позовних вимог і рішень судів**

У серпні 2017 року ОСОБА_1 звернувся до суду з позовом до ОСОБА_2 про визнання інформації недостовірною, її спростування та відшкодування моральної шкоди.

Свої вимоги позивач обґрунтовував тим, що він є службовою особою органу місцевого самоврядування та займає виборну посаду Чернівецького міського голови. ІНФОРМАЦІЯ_1 під час виступу на пленарному засіданні 31 сесії VII скликання

Чернівецької міської ради ОСОБА_2 поширив таку інформацію: «... ОСОБА_1 нам тут розказує про вдалий менеджмент, про те, що він вдалий керівник. Так я вам хочу сказати, що саме цей представник «Народного фронту» знищив те комунальне підприємство, яке ми утворювали. Ми хотіли, щоб комунальне підприємство «Містобуд» будувало в місті житло, ремонтувало садочки, робило по місту капітальні ремонти. Але оцей от представник «Народного фронту», який тут сидить і посміхається і знущається над депутатами і мешканцями міста Чернівці, саме він знищив комунальне підприємство, довів його до банкрутства, вкравши півтора - мільйон триста гривень, постраждав бухгалтер підприємства. Потім тихенько, тишком-нишком вони перевели це комунальне підприємство в підпорядкування Калинівського ринку і подальші його дії було знищення комунального підприємства. Цей недолугий менеджер, який сьогодні сидить, це говоряща голова, яка вміє тільки говорити і нічого робити, просто знущається над Чернівчанами...».

Указує на те, що поширена ОСОБА_2 інформація є неправдивою, принижує його честь, гідність та ділову репутацію, завдає моральної шкоди та душевних страждань.

Посилаючись на викладене, позивач просив визнати недостовірною та такою, що принижує його честь, гідність та ділову репутацію, інформацію, поширену ОСОБА_2 під час його виступу на пленарному засіданні 31 сесії VII скликання Чернівецької міської ради, яке відбулося ІНФОРМАЦІЯ_1; зобов`язати    ОСОБА_2 спростувати таку інформацію на найближчій сесії Чернівецької міської ради (у тому числі позачерговій), а саме: «Я, ОСОБА_2 , депутат Чернівецької міської ради від фракції «Рідне місто», заявляю, що інформація, поширена мною в залі пленарних засідань Чернівецької міської ради під час пленарного засідання 31 сесії VII скликання Чернівецької міської ради ІНФОРМАЦІЯ_1 щодо міського голови ОСОБА_1 , у якій містилися відомості щодо знищення, доведення до банкрутства та розкрадання майна комунального підприємства «Містобуд», є недостовірною та мною спростовується. Мною спростовуються такі відомості: «… ОСОБА_1 нам тут розказує про вдалий менеджмент, про те, що він вдалий керівник. Так я вам хочу сказати, що саме цей представник «Народного фронту» знищив те комунальне підприємство, яке ми утворювали. Ми хотіли, щоб комунальне підприємство «Містобуд» будувало в місті житло, ремонтувало садочки, робило по місту капітальні ремонти. Але оцей от представник «Народного фронту», який тут сидить і посміхається і знущається нас депутатами і мешканцями міста Чернівці, саме він, саме він знищив комунальне підприємство, довів його до банкрутства, вкравши півтора - мільйон триста гривень, постраждав бухгалтер підприємства. Потім тихенько, тишком-нишком вони перевели це комунальне підприємство в підпорядкування Калинівського ринку і подальші його дії було знищення комунального підприємства. Цей недолугий менеджер, який сьогодні сидить, це говоряща голова, яка вміє тільки говорити і нічого робити, просто знущається над Чернівчанами», рішенням Шевченківського районного суду м. Чернівці вказана інформація визнана недостовірною та такою, що принижує честь, гідність та ділову репутацію ОСОБА_1 ». Стягнути з ОСОБА_2 на його користь моральну шкоду в сумі 50 000,00 грн.

Рішенням Шевченківського районного суду м. Чернівці від 13 лютого 2018 року у задоволенні позову ОСОБА_1 відмовлено.

Відмовляючи у задоволенні позову, суд першої інстанції виходив із того, що вислів «вкравши півтора - мільйон триста гривень, постраждав бухгалтер підприємства» - ця частина виступу ОСОБА_2 стосується ситуації, яка склалася на комунальному підприємстві «Містобуд» (далі - КП «Містобуд») під час керування цим підприємством ОСОБА_1 , коли було встановлено чимало фінансових порушень, а також були суттєво знижені фінансові показники роботи цього підприємства. При цьому відповідач надає узагальнюючу негативну оцінку діяльності ОСОБА_1 на посаді керівника КП «Містобуд»,

вказуючи на те, що за таку діяльність відповіла бухгалтер підприємства, оскільки дійсно бухгалтер підприємства ОСОБА_5 була притягнена до кримінальної відповідальності згідно з вироком Шевченківського районного суду м. Чернівці від 19 березня 2014 року в кримінальній справі № 727/5381/13-к. Аналізуючи виступ ОСОБА_2 , тему для обговорення, місце його висловлювань, застосування засобів мовлення, висловлювання відповідача не можуть бути витлумачені як такі, що містять фактичні дані, незважаючи на те, що останні містять критичну оцінку подій, пов`язаних із діяльністю ОСОБА_1 .

Ухвалою Апеляційного суду Чернівецької області від 29 травня 2018 року прийнято відмову ОСОБА_1 від позову до ОСОБА_2 про визнання інформації недостовірною, поширену ОСОБА_2 під час його виступу на пленарному засіданні 31 сесії VII скликання Чернівецької міської ради, яке відбулося ІНФОРМАЦІЯ_1, в частині «... ОСОБА_1 нам тут розказує про вдалий менеджмент, про те, що він вдалий керівник. Так я вам хочу сказати, що саме цей представник «Народного фронту» знищив те комунальне підприємство, яке ми утворювали. Ми хотіли, щоб КП «Містобуд» будувало в місті житло, ремонтувало садочки, робило по місту капітальні ремонти. Але оцей от представник «Народного фронту», який тут сидить і посміхається і знущається над депутатами і мешканцями міста Чернівці... Потім тихенько, тишком-нишком вони перевели це комунальне підприємство в підпорядкування Калинівського ринку і подальші його дії було знищення комунального підприємства. Цей недолугий менеджер, який сьогодні сидить, це говоряща голова, яка вміє тільки говорити і нічого робити, просто знущається над Чернівчанами...» та спростування, стягнення з ОСОБА_2 на користь ОСОБА_1 моральної шкоди в сумі 50 000,00 грн. Провадження у справі в цій частині закрито.

Постановою Апеляційного суду Чернівецької області від 07 червня 2018 року рішення суду першої інстанції в іншій частині залишено без змін.

Залишаючи без змін рішення суду першої інстанції, суд апеляційної інстанції виходив із того, що висловлювання відповідача «знищив комунальне підприємство «Містобуд», довів його до банкрутства, вкравши півтора - мільйон триста гривень» необхідно сприймати як словесний оборот (алегорію), який означає припинення діяльності КП «Містобуд», є оціночним судженням щодо результатів економічної діяльності комунального підприємства «Містобуд», узагальнюючою негативною оцінкою діяльності ОСОБА_1 на посаді керівника, не містить фактичних даних, у тому числі щодо вчинення ОСОБА_1 злочинів. Натомість, у наведеній інформації містяться оціночні судження ОСОБА_2 та критика дій ОСОБА_1 щодо діяльності ОСОБА_1 на посаді директора комунального підприємства «Містобуд». Отже, поширена ОСОБА_2 інформація містить оціночні судження з огляду на співставлення певних фактів, які мали місце, і стосувалися публічної особи, рівень критики якої є значно ширшим, а, крім того, інформація стосувалася суспільного інтересу - діяльності КП «Містобуд». У той же час межа допустимої критики з використанням оціночних суджень під час публічного виступу ОСОБА_2 ІНФОРМАЦІЯ_1 на пленарному засіданні 31 сесії VII скликання Чернівецької міської ради є дотриманою.

**Короткий зміст та узагальнюючі доводи касаційної скарги, позиції інших учасників**

У липні 2018 року представник ОСОБА_1 - ОСОБА_3 подав до Верховного Судукасаційну скаргу на рішення Шевченківського районного суду м. Чернівці від 13 лютого 2018 року та постанову Апеляційного суду Чернівецької області від 07 червня 2018 року, в якій просить скасувати оскаржувані судові рішення та ухвалити нове рішення про задоволення його позову в частині вимог, що залишилися після постановлення судом апеляційної інстанції ухвали про закриття провадження у справі в частині його вимог, посилаючись на неправильне застосування судами норм матеріального права та порушення норм

процесуального права. Вказує на те, що згідно з довідкою Департаменту інформаційних технологій Міністерства внутрішніх справ серії ААА № 0132477, він станом на 17 липня 2017 року до кримінальної відповідальності не притягувався, не знятої чи не погашеної судимості не має та в розшуку не перебуває, що також доводить недостовірність інформації про доведення ним КП «Містобуд» до банкрутства. Суди попередніх інстанцій залишили поза увагою пункт 5 частини першої статті 8 Закону України «Про статус депутатів місцевих рад», який покладає на ОСОБА_2, як на депутата місцевої ради, обов'язок не допускати образливих висловлювань, не використовувати у публічних виступах недостовірні або неперевірені відомості щодо органів державної влади, органів місцевого самоврядування, об'єднань громадян, підприємств, установ і організацій, їх керівників та інших посадових чи службових осіб, депутатських груп, фракцій, окремих депутатів місцевих рад. Наведена відповідачем у виступі недостовірна інформація може бути кваліфікована тільки як неправдиві фактичні дані, які не є оціночними судженнями.

У жовтні 2018 року ОСОБА_2 подав відзив на касаційну скаргу, у якому вказав на те, що позивач фактично визнав те, що рішення суду першої інстанції є законним та обґрунтованим, але, дбаючи тільки про свої політичні амбіції міський голова міста Чернівці, під час апеляційного провадження звернувся до Апеляційного суду Чернівецької області із заявою про відмову від частини позовних вимог.

**Рух справи у суді касаційної інстанції**

Ухвалою Верховного Суду від 24 липня 2018 року відкрито касаційне провадження у справі та надано строк для подання відзиву на касаційну скаргу.

Ухвалою Верховного Суду від 15 травня 2019 року справу призначено до судового розгляду.

Згідно з частиною першою статті 402 ЦПК України у суді касаційної інстанції скарга розглядається за правилами розгляду справи судом першої інстанції в порядку спрощеного позовного провадження без повідомлення учасників справи з урахуванням статті 400цього Кодексу.

За змістом статті 412 ЦПК України підставами для скасування судових рішень повністю або частково і ухвалення нового рішення у відповідній частині або зміни рішення є неправильне застосування норм матеріального права або порушення норм процесуального права.

**Позиція Верховного Суду**

Вивчивши матеріали справи, перевіривши доводи касаційної скарги, Верховний Суд у складі колегії суддів Першої судової палати Касаційного цивільного суду дійшов висновку, що касаційна скарга підлягає частковому задоволенню, а рішення судів апеляційної інстанції - скасуванню з передачею справи на новий розгляд до суду апеляційної інстанції з таких підстав.

Судом установлено, що ОСОБА_2 є депутатом VII скликання Чернівецької міської ради.

ОСОБА_1 є Чернівецьким міським головою.

ІНФОРМАЦІЯ_1 під час виступу на пленарному засіданні 31 сесії VII скликання Чернівецької міської ради ОСОБА_2 поширив таку інформацію щодо міського голови

ОСОБА_1 : «... ОСОБА_1 нам тут розказує про вдалий менеджмент, про те, що він вдалий керівник. Так я вам хочу сказати, що саме цей представник «Народного фронту» знищив те комунальне підприємство, яке ми утворювали. Ми хотіли, щоб комунальне підприємство «Містобуд» будувало в місті житло, ремонтувало садочки, робило по місту капітальні ремонти. Але оцей от представник «Народного фронту», який тут сидить і посміхається і знущається над депутатами і мешканцями міста Чернівці, саме він, саме він знищив комунальне підприємство, довів його до банкрутства, вкравши півтора - мільйон триста гривень, постраждав бухгалтер підприємства. Потім тихенько, тишком-нишком вони перевели це комунальне підприємство в підпорядкування Калинівського ринку і подальші його дії було знищення комунального підприємства. Цей недолугий менеджер, який сьогодні сидить, це говоряща голова, яка вміє тільки говорити і нічого робити, просто знущається над Чернівчанами...».

Після постановлення ухвали Апеляційним судом Чернівецької області від 29 травня 2018 року про прийняття відмови ОСОБА_1 від позову, для розгляду яких позовних вимог про визнання недостовірною інформації залишилася цитата: «…саме він знищив комунальне підприємство, довів його до банкрутства, вкравши півтора - мільйон триста гривень».

**Нормативно-правове обгрунтування**

Відповідно до статті 32 Конституції України кожному гарантується судовий захист права спростовувати недостовірну інформацію про себе і членів своєї сім`ї та права вимагати вилучення будь-якої інформації, а також право на відшкодування матеріальної і моральної шкоди, завданої збиранням, зберіганням, використанням та поширенням такої недостовірної інформації.

Статтею 201 ЦК України передбачено, що честь, гідність і ділова репутація є особистими немайновими благами, які охороняються цивільним законодавством.

Згідно із статтями 297, 299 ЦК України кожен має право на повагу до його гідності та честі, на недоторканність своєї ділової репутації.

Відповідно до статті 91 ЦК України юридична особа здатна мати такі ж цивільні права та обов`язки (цивільну правоздатність), як і фізична особа, крім тих, які за своєю природою можуть належати лише людині.

Особистими немайновими благами, які охороняються цивільним законодавством, є, зокрема, ділова репутація, ім`я (найменування), а також інші блага, які охороняються цивільним законодавством (частина перша статті 201 ЦК України).

Згідно із частиною першою статті 94 ЦК України юридична особа має право на недоторканність її ділової репутації, на таємницю кореспонденції, на інформацію та інші особисті немайнові права, які можуть їй належати.

Під діловою репутацією юридичної особи, у тому числі підприємницьких товариств, фізичних осіб - підприємців, адвокатів, нотаріусів та інших осіб, розуміється оцінка їх підприємницької, громадської, професійної чи іншої діяльності, яку здійснює така особа як учасник суспільних відносин.

Юридичним складом правопорушення, наявність якого може бути підставою для задоволення позову про захист гідності та честі фізичної особи, а також ділової репутації фізичної та юридичної особи, є сукупність таких обставин: поширення інформації, тобто

доведення її до відома хоча б одній особі у будь-який спосіб; поширена інформація стосується певної фізичної чи юридичної особи, тобто позивача; поширення недостовірної інформації, тобто такої, яка не відповідає дійсності; поширення інформації, що порушує особисті немайнові права, тобто або завдає шкоди відповідним особистим немайновим благам, або перешкоджає особі повно і своєчасно здійснювати своє особисте немайнове право.

Під поширенням інформації необхідно розуміти: опублікування її у пресі, передання по радіо, телебаченню чи з використанням інших засобів масової інформації; поширення в мережі Інтернет чи з використанням інших засобів телекомунікаційного зв`язку; викладення в характеристиках, заявах, листах, адресованих іншим особам; повідомлення в публічних виступах, в електронних мережах, а також в іншій формі хоча б одній особі.

Поширенням інформації також є вивішування (демонстрація) в громадських місцях плакатів, гасел, інших творів, а також розповсюдження серед людей листівок, що за своїм змістом або формою порочать гідність, честь фізичної особи або ділової репутації фізичної та юридичної особи.

Недостовірною вважається інформація, яка не відповідає дійсності або викладена неправдиво, тобто містить відомості про події та явища, яких не існувало взагалі або які існували, але відомості про них не відповідають дійсності (неповні або перекручені).

Позивач повинен довести факт поширення інформації відповідачем, а також те, що внаслідок цього було порушено його особисті немайнові права.

Вирішуючи питання про визнання поширеної інформації недостовірною, суди повинні визначати характер такої інформації та з`ясовувати, чи є вона фактичним твердженням чи оціночним судженням.

Відповідно до частини другої статті 30 Закону України «Про інформацію» оціночними судженнями, за винятком наклепу, є висловлювання, які не містять фактичних даних, критика, оцінка дій, а також висловлювання, що не можуть бути витлумачені як такі, що містять фактичні дані, зокрема з огляду на характер використання мовно-стилістичних засобів (вживання гіпербол, алегорій, сатири). Оціночні судження не підлягають спростуванню та їх правдивість не доводиться.

Статтею 10 Конвенції про захист прав людини і основоположних свобод(далі - Конвенція) передбачено, що кожен має право на свободу вираження поглядів. Це право включає свободу дотримуватися своїх поглядів, одержувати і передавати інформацію та ідеї без втручання органів державної влади і незалежно від кордонів. Здійснення цих свобод, оскільки воно пов`язане з обов`язками і відповідальністю, може підлягати таким формальностям, умовам, обмеженням або санкціям, що встановлені законом в інтересах національної безпеки, територіальної цілісності або громадської безпеки, для охорони порядку або запобігання злочинам, для охорони здоров`я або моралі, для захисту репутації або прав інших осіб, для запобігання розголошенню конфіденційної інформації або підтримання авторитету і безсторонності суду і є необхідним в демократичному суспільстві.

Згідно з усталеною практикою Європейського суду з прав людини свобода вираження поглядів є однією з важливих засад демократичного суспільства та однією з базових умов прогресу суспільства в цілому та самореалізації кожної окремої особи. Відповідно до пункту 2 статті 10 Конвенції вона стосується не тільки «інформації» чи «ідей», які

сприймаються зі схваленням чи розглядаються як необразливі або нейтральні, але й тих, які можуть ображати, шокувати чи непокоїти. Саме такими є вимоги плюралізму, толерантності та широти поглядів, без яких немає «демократичного суспільства» (рішення у справі «Карпюк та інші проти України від 06 жовтня 2015 року).

Як зазначено в рішеннях Європейського суду з прав людини (справи Лінгенса, Де Гаєс і Гійзельс, Гудвіна, Прагер і Обершлік) свобода вираження поглядів, гарантована пунктом 1 статті 10, становить одну з основних підвалин демократичного суспільства й одну з принципових умов його розвитку та умов реалізації кожної особи. За умови додержання пункту 2 свобода вираження стосується не лише тієї «інформації» чи тих «ідей», які отримані належним чином або розглядаються як необразливі чи незначні, а й тих, що викликають образу, обурення або неспокій. Такими є вимоги плюралізму, терпимості й широти поглядів, без яких «демократичне суспільство» неможливе.

Повинно бути зроблене чітке розмежування між констатацією фактів та оціночними судженнями. У той час як наявність фактів може бути продемонстровано, достовірність оціночних суджень не піддається доведенню. Вимогу доводити достовірність оціночних суджень неможливо виконати, вона порушує свободу думки як таку, що є базовою частиною права, гарантованого статтею 19 (Lingens, cited above, p. 28, пункт 46).

Суд враховує при цьому правову позицію Європейського суду з прав людини щодо різниці між поняттями «оціночне судження» та «фактів». Так, у пункті 39 рішення Європейського суду з прав людини від 28 березня 2013 року у справі «Нова Газета і Бородянський проти Росії» вказано, що правдивість оціночних суджень не піддається доведенню і їх потрібно відрізняти від фактів, існування яких може бути доведено.    У пункті 75 рішення Європейського суду з прав людини від 12 липня 2001 року у справі «Фельдек проти Словаччини» суд зазначав, що на відміну від оціночних суджень, реальність фактів можна довести.

Отже, при оцінці твердження про поведінку третьої особи, деколи може бути важко, як і в цій справі, віднайти різницю між оцінкою фактів та оціночними судженнями. Проте навіть оціночне судження може бути надмірним, якщо воно не має під собою фактичних підстав. (Jerusalem v. Austria, no. 26958/95, n. 43, ECHR 2001-11).

Відповідно до статті 62 Конституції України, статті 6 Конвенції особа вважається невинуватою у вчиненні злочину і не може бути піддана кримінальному покаранню, доки її вину не буде доведено в законному порядку і встановлено обвинувальним вироком суду.

Ніхто не зобов`язаний доводити свою невинуватість у вчиненні злочину.

У частинах першій, другій та п`ятій статті 17 КПК України зазначено, що особа вважається невинуватою у вчиненні кримінального правопорушення і не може бути піддана кримінальному покаранню, доки її вину не буде доведено у порядку, передбаченому цим Кодексом, і встановлено обвинувальним вироком суду, що набрав законної сили. Ніхто не зобов`язаний доводити свою невинуватість у вчиненні кримінального правопорушення і має бути виправданим, якщо сторона обвинувачення не доведе винуватість особи поза розумним сумнівом. Поводження з особою, вина якої у вчиненні кримінального правопорушення не встановлена обвинувальним вироком суду, що набрав законної сили, має відповідати поводженню з невинуватою особою.

Презумпцію невинуватості необхідно розглядати в загальноправовому і процесуальному значеннях. Як загально правова вимога вона визначає положення особи в суспільстві. Хоча

цей принцип сформульований як кримінальний процесуальний, однак його дія виходить за рамки лише кримінального процесу. Презумпція невинуватості - об`єктивне право положення. Це вимога закону, звернена до всіх громадян, посадових осіб, державних і громадських організацій, до суспільної думки в цілому. Такої позиції дотримується і Європейський Суд з прав людини, що у своєму рішенні від 10 лютого 1995 року у справі «Аллене де Рібермон проти Франції» підкреслив, що сфера застосування принципу презумпції невинуватості є значно першою: він обов`язковий не лише для кримінального суду, який вирішує питання про обгрунтованість обвинувачення, а й для всіх інших органів держави.

У найзагальнішому вигляді правило презумпції невинуватості означає, що особа може бути визнана винуватою у вчиненні злочину і покарана лише за умови, що її вина буде доведена в передбаченому законом порядку і встановлена обвинувальним вироком суду. Повідомлення особі про підозру, складання слідчим та затвердження прокурором обвинувального акта на стадії досудового розслідування, розгляд справи у підготовчому провадженні не вирішують наперед визнання його винуватим у вчиненні злочину. Лише один орган у державі наділений таким правом - це суд, який є відповідно до <u>Конституції</u> <u>України</u> (стаття 124) носієм судової влади, що здійснює правосуддя в умовах законності, незалежності, гласності та змагальності.

Вирок суду є єдиним процесуальним документом, що встановлює винуватість.

При цьому Європейський суд з прав людини зазначає, що презумпцію невинуватості буде порушено, якщо судове рішення або заява посадової особи щодо особи, обвинуваченої у вчиненні кримінального злочину, відображає думку про її вину до того, як вона буде доведена відповідно до закону. Достатньо мати навіть за відсутності будь-якого формального висновку певні підстави припускати, що суд або посадова особа вважає обвинуваченого винним. Питання про те, чи порушує заява посадової особи державного органу принцип презумпції невинуватості, необхідно визначати в контексті конкретних обставин, за яких оспорювану заяву було зроблено (пункт 42 рішення від 21 вересня 2006 року в справі «Грабчук проти України» (заява № 8599/02); пункт 48 рішення від 12 січня 2012 року в справі «Довженко проти України» (заява № 36650/03)).

**Висновки за результатами розгляду касаційної скарги**

Разом з тим суд першої інстанції, з яким погодився й суд апеляційної інстанції, ухвалюючи рішення про відмову у задоволенні позову у зв`язку з тим, що висловлювання ОСОБА_2 є оціночними судженнями, які представляють громадський інтерес, не надав оцінку такому висловлюванню та не здійснив розмежування між фактичними твердженнями та оціночними судженнями.

Так суд першої інстанції вказав на те, що цитата: «…вкравши півтора - мільйон триста гривень, постраждав бухгалтер підприємства» є узагальнюючою негативною оцінкою ОСОБА_1 на посаді керівника підприємства.

Суд апеляційної інстанції, в свою чергу, зазначив, що слова відповідача: «…знищив комунальне підприємство «Містобуд», довів його до банкрутства, вкравши півтора мільйон триста гривень» слід сприймати як словесний оборот - алегорію, а тому такі слова є оціночним судженням.

З такими висновками не можна погодитись з огляду на таке.

За тлумачним словником алегорія - це втілення абстрактного поняття в конкретному художньому образі. Цей термін буквально перекладається «іносказання». Можна сказати, що алегорія - це алегоричне зображення якого-небудь явища дійсності.

Такий висновок апеляційного суду є необґрунтованим, нічим не мотивованим та не підтверджує, що слова відповідача, про спростування яких заявлено вимогу, можна сприймати як алегорію.

Крім того, суди не звернули уваги на те, що висловлювання відповідача щодо дій позивача є такими, що можуть бути перевірені на предмет їх правдивість, оскільки дії, про які заявляє відповідач підпадають під ознаки кримінально-караного діяння, що у свою чергу виключає віднесення слів ОСОБА_2 щодо діяльності ОСОБА_1 до оціночних суджень чи критичних зауважень про його діяльність.

Враховуючи системний аналіз норм КПК України та принцип презумпції невинуватості, який закріплений у статті 62 Конституції України, статті 2 КК України, статті 6 Європейської конвенції про захист прав людини та основоположних свобод, статті 11 Загальної декларації прав людини, суд дійшов до висновку про те, що відсутні правові підстави стверджувати, що особа, яка не перебуває в статусі підозрюваного чи в іншому із зазначених вище процесуальних статусів, має відношення до вчинення злочину, який розслідується. Відповідно до положень КПК України здійснюється досудове розслідування злочинів (статті 215, 216, 246, 294 КПК України), а про початок здійснення чи наявність кримінального провадження стосовно конкретної особи можливо стверджувати виключно у випадку наявності підозрюваних у таких провадженнях.

Таким чином, посилання на конкретну фізичну особу у контексті її зв`язку зі злочином, кримінальним провадженням чи його розслідуванням можливо лише у випадку, коли особа перебуває у статусі підозрюваного, обвинуваченого або підсудного.

Вироком Шевченківського районного суду м. Чернівці від 19 березня 2014 року притягнуто до кримінальної відповідальності іншу особу - бухгалтера підприємства.

Суди не встановили, чи є вирок суду щодо позивача про вчинення таких дій, що підпадають під ознаки злочину, на який вказав відповідач, чи на час поширення оспорюваної інформації стосовно позивача складено та повідомлено про підозру у тому кримінальному правопорушенні, про які зазначив відповідач у своєму виступі, а тому з огляду на відсутність дослідження судами доказів у справі, зокрема, чи є висловлювання відповідача вираженням суб`єктивної думки і поглядів і чи можливо такі висловлювання перевірити на предмет їх відповідності, рішення суду апеляційної інстанції не може вважатися законними та обґрунтованими, оскільки фактичні твердження та оціночні судження є різними поняттями, а розмежування цих термінів лежить в основі захисту права на честь, гідність та ділову репутацію.

Суди, порушуючи норми матеріального права, не взяли до уваги норми національного та міжнародного права, прецедентної судової практики Європейського суду з прав людини щодо презумпції невинуватості, не перевірили належним чином доводи сторін у справі, не визначили характер поширеної відповідачем інформації та не з`ясовували, чи є вона фактичним твердженням чи оціночним судженням, тому дійшли передчасного висновку за встановлених обставин про наявність правових підстав для відмови у задоволенні позову.

Крім того, судом апеляційної інстанції у своєму рішенні здійснено посилання на рішення Європейського суду з прав людини, яке стосується преси та журналістів, що свідчить про

те, що розгляд справи апеляційним судом здійснено поверхово, із застосуванням практики цього суду, яка стосується інших правовідносин, тобто без надання оцінки висловлюванням відповідача щодо дій позивача. Вказане рішення цитується безвідносно до цієї справи, без наведення аргументації, а, крім того, у цих справах наявні інші правовідносини.

Аналізуючи зміст оспорюваного висловлювання з урахуванням мовностилістичних засобів, за допомогою яких оголошена оспорювана інформація, суди дійшли помилкових висновків, що висловлювання відповідача є оціночними судженнями.

Також судами здійснено посилання на практику Європейського суду з прав людини, яка стосується меж допустимої критики щодо політичного діяча чи іншої публічної особи, при цьому суди не звернули увагу на те, що цитата: «…саме він знищив комунальне підприємство, довів його до банкрутства, вкравши півтора - мільйон триста гривень» не стосується діяльності ОСОБА_1 як міського голови, а як колишнього очільника КП «Містобуд».

Суди попередніх інстанцій не проаналізували чи можливо перевірити наведені твердження на предмет відповідності дійсності; не встановили, чи наведені в інформації обставини існували взагалі; не зазначили, якими доказами, поданими позивачем такі обставини спростовуються чи поданими відповідачем підтверджуються.

При вирішені спору, суди дійшли передчасних висновків, оскільки формально вказати про те, що цитата: «…саме він знищив комунальне підприємство, довів його до банкрутства, вкравши півтора - мільйон триста гривень» є оціночними судженнями недостатньо.

Верховний Суд дійшов переконання, що суди першої та апеляційної інстанцій розглянули спір із порушенням норм процесуального права, не дослідили зібрані докази у справі, не надали їм належної оцінки, не навели мотивів врахування одних доказів та відхилення інших, а тому постановлені судові рішення не відповідають критеріям обґрунтованості та правомірності, висновки, які вони зробили, є передчасними. Враховуючи, що усунути допущені порушення Верховний Суд не вправі через обмеження повноважень як суду касаційної інстанції, тому справедливим та підставним є направлення справи на новий розгляд до суду апеляційної інстанції, з метою процесуальної економії та з огляду на те, що саме цей суд прийняв відмову від частини позовних вимог ОСОБА_1 .

Під час нового розгляду суд повинен надати оцінку доводам сторін та встановити, чи є поширена відповідачем інформація фактичним твердженням чи оціночним судженням.

Узагальнюючи викладене, Верховний Суд дійшов висновку про скасування рішення суду апеляційної інстанції про відмову у задоволенні позову та передачу справи на новий розгляд до суду апеляційної інстанції

Керуючись статтями 406, 409, 411, 415, 416 ЦПК України, Верховний Суд у складі колегії суддів Першої судової палати Касаційного цивільного суду

**ПОСТАНОВИВ:**

Касаційну скаргу представника ОСОБА_1 - ОСОБА_3 задовольнити частково.

Постанову Апеляційного суду Чернівецької області від 07 червня 2018 року скасувати, справу передати на новий розгляд до суду апеляційної інстанції.

Постанова суду касаційної інстанції є остаточною і оскарженню не підлягає.

**Головуючий**                                      **О. В. Ступак**

**Судді:**                                          **І. Ю. Гулейков**

                                                    **А. С. Олійник**

                                                    **Г. І. Усик**

                                                    **В. В. Яремко**

Category of case No. **727/8388/17: Civil cases (from 01/01/2019); Action proceeding cases; Cases on disputes on the defending non-property rights of individuals, of which**

Sent by the court: **undefined.** Registered: **06/28/2019.** Made public: **07/02/2019.**
Date of entry into force: **06/05/2019**
Proceedings number: **61-39916ск18**



Supreme Court

**Judgment**

**in the name of Ukraine**

June 05, 2019

Kyiv

Case No. 727/8388/17

proceeding No. 61-39916св18

The Supreme Court, composed of the Panel of Judges of the First Judicial Chamber of the Civil Court of Cassation: presiding – O.V. Stupak (judge-rapporteur),

    judges:              I.Yu. Huleykov, A.S. Oliynyk,

                    H.I. Usyk,          V.V. Yaremko,

participants in the case:

plaintiff – PERSON_1 ,

defendant – PERSON_2 ,

considered in the manner of a simplified action proceeding the cassation appeal of the representative of PERSON_1 – PERSON_3 against the decision of the Shevchenkivskyi District Court of Chernivtsi dated February 13, 2018 composed of Judge O.V. Semenko and the judgment of the Appellate Court of Chernivtsi Region dated June 07, 2018 composed of a panel of judges: N.Yu. Polovinkina, M.I. Kulyanda, O.O. Odynak,

**FOUND:**

**Summary of claims and court decisions**

In August 2017, PERSON_1 filed a lawsuit against PERSON_2 for the recognition of the information as false, its refutation and compensation for moral damage.

The plaintiff substantiated his claims by the fact that he was an official of a local self-government body and held an elective position of the Chernivtsi mayor. INFORMATION_1 during a speech at the plenary meeting of the 31st session of the VII convocation of the Chernivtsi City Council

PERSON_2 disseminated the following information: "... PERSON_1 here tells us about successful management, that he is a successful leader. So I want to tell you that it was this representative of the "Narodny Front" who destroyed the municipal enterprise that we were creating. We wanted the "Mistobud" Municipal Enterprise to build housing in the city, repair kindergartens, and make major repairs around the city. But this representative of the "Narodny Front", who sits here, smiles and mocks the deputies and residents of Chernivtsi, it was he, who destroyed the municipal enterprise, brought it to bankruptcy, having stolen one and a half to three hundred hryvnias, the company's accountant suffered. Then, secretly, they transferred this municipal enterprise to the subordination of the Kalynivsky market and his further actions were the destruction of the utility enterprise. Such ridiculous manager who is sitting today is talking head, who can only speak and do nothing, just mocks the residents of Chernivtsi …".

He indicates that the information disseminated by PERSON_2 is untruthful, humiliates his honor, dignity and business reputation, inflicts moral harm and mental suffering.

Referring to the above, the plaintiff asked to recognize the information disseminated by PERSON_2 during his speech at the plenary meeting of the 31st session of the VII convocation of the Chernivtsi City Council, which took place INFORMATION_1, to be false and humiliating his honor, dignity and business reputation; oblige PERSON_2 to refute such information at the next session of the Chernivtsi City Council (including extraordinary), namely: "I, PERSON_2, a deputy of the Chernivtsi City Council from the "Ridne misto" faction, declare that the information I disseminated in the plenary hall of the Chernivtsi City Council during the plenary session of the 31st session of the VII convocation of the Chernivtsi City Council INFORMATION_1 about mayor PERSON_1, which contained information on the destruction, bringing to bankruptcy and theft of the property of the "Mistobud" Municipal Enterprise, is false and is refuted by me. I refute the following information: "... PERSON_1 here tells us about successful management, that he is a successful leader. So I want to tell you that it was this representative of the "Narodny Front" who destroyed the municipal enterprise that we were creating. We wanted the "Mistobud" Municipal Enterprise to build housing in the city, repair kindergartens, and make major repairs around the city. But this representative of the "Narodny Front", who sits here, smiles and mocks the deputies and residents of Chernivtsi, it was he, who destroyed the municipal enterprise, brought it to bankruptcy, having stolen one and a half to three hundred hryvnias, the company's accountant suffered. Then, secretly, they transferred this municipal enterprise to the subordination of the Kalynivsky market and his further actions were the destruction of the utility enterprise. Such ridiculous manager who is sitting today is talking head, who can only speak and do nothing, just mocks the residents of Chernivtsi", by the decision of the Shevchenkivskyi District Court of Chernivtsi the specified information was recognized as false and degrading honor, dignity and business reputation of PERSON_1". The plaintiff asks to collect from PERSON_2 in his favor moral damage in the amount of 50,000.00 hryvnias.

By the decision of the Shevchenkivskyi District Court of Chernivtsi dated February 13, 2018, the claim of PERSON_1 was refused.

Refusing to satisfy the claim, the Court of First Instance proceeded from the fact that the expression "having stolen one and a half million - three hundred hryvnias, the company's accountant suffered" – this part of the speech of PERSON_2 concerns the situation that developed at the "Mistobud" Municipal Enterprise (hereinafter – Mistobud ME) during the management of this enterprise by PERSON_1, when many violations were established, and the financial performance of this enterprise was significantly reduced. At the same time, the defendant provides a generalizing negative assessment of the activities of PERSON_1 in the position of the head of Mistobud ME, indicating that the accountant of the enterprise was responsible for such activities, since the accountant of the enterprise PERSON_5 was indeed brought to criminal liability according to the

verdict of the Shevchenkivskyi District Court of Chernivtsi dated March 19, 2014 in criminal case No.727/5381/13-к. Analyzing the speech of PERSON_2 the topic for discussion, the place of his statements, the use of broadcasting means, the statements of the defendant cannot be interpreted as containing factual data, despite the fact that the latter contain a critical assessment of events related to the activities of PERSON_1.

By the order of the Court of Appeal of the Chernivtsi Region dated May 29, 2018, the court granted PERSON_1's refusal from the claim to PERSON_2 on recognition of information distributed by PERSON_2 during his speech at the plenary meeting of the 31st session of the VII convocation of the Chernivtsi City Council, which took place INFORMATION_1 as false, in part "... PERSON_1 here tells us about successful management, that he is a successful leader. So I want to tell you that it was this representative of the "Narodny Front" who destroyed the municipal enterprise that we were creating. We wanted the "Mistobud" Municipal Enterprise to build housing in the city, repair kindergartens, and make major repairs around the city. But this representative of the "Narodny Front", who sits here, smiles and mocks the deputies and residents of Chernivtsi… Then, secretly, they transferred this municipal enterprise to the subordination of the Kalynivsky market and his further actions were the destruction of the municipal enterprise. Such ridiculous manager who is sitting today is talking head, who can only speak and do nothing, just mocks the residents of Chernivtsi …", and on refutation, recovery from PERSON_2 in favor of PERSON_1 moral damage in the amount of 50,000.00 hryvnias. The proceedings in this part of the case are closed.

By the resolution of the Appellate Court of Chernivtsi Region dated June 07, 2018, the judgment of the Court of First Instance in another part was upheld.

Upholding the decision of the Court of First Instance, the Court of Appeal proceeded from the fact that the statement of the defendant "destroyed the "Mistobud" Municipal Enterprise, brought it to bankruptcy, having stolen one and a half million - three hundred hryvnias" must be perceived as a verbal turnover (allegory), which means the termination of the activities of Mistobud ME, is a value judgment on the results of the economic activities of the Mistobud ME, a generalizing negative assessment of PERSON_1's activities as a manager, does not contain actual data, including about the commission of crimes by PERSON_1. To the contrary, the information provided contains value judgments of PERSON_2 and criticism of PERSON_1's actions on the activities of PERSON_1 as director of the "Mistobud" Municipal Enterprise. So, the information disseminated by PERSON_2 contains value judgments, taking into account the comparison of certain facts that took place and concerned a public person, the level of criticism of which is much wider, and, in addition, the information concerned public interest – the activities of Mistobud ME. At the same time, the limit of permissible criticism using value judgments during a public speech of PERSON_2 on INFORMATION_1 at the plenary meeting of the 31st session of the VII convocation of the Chernivtsi City Council is complied with.

**Summary and generalizing arguments of the cassation appeal, positions of other participants**

In July 2018, a representative of PERSON_1 – PERSON_3 filed a cassation appeal with the Supreme Court against the judgment of the Shevchenkivskyi District Court of Chernivtsi dated February 13, 2018 and the resolution of the Court of Appeal of the Chernivtsi region dated June 07, 2018. In the cassation appeal, he asks to cancel the disputed court decisions and make a new decision to satisfy his lawsuit in terms of the claims remaining after the Court of Appeal issued a ruling on the termination of proceedings in the case in some of his claims. The plaintiff refers to the incorrect application of substantive law by the courts and violation of the rules of procedural law. He indicates that according to the certificate of the Department of Information Technologies of the Ministry of Internal Affairs of series AAA No. 0132477, as of July 17, 2017, he was not brought to criminal responsibility, has no removed or outstanding conviction and is not wanted,

which also proves the unreliability of information about bringing Mistobud ME to bankruptcy. The courts of previous instances ignored item 5 of part one of Article 8 of the Law of Ukraine "On the Status of Deputies of Local Councils", which imposes on PERSON_2, as a deputy of a local council, the obligation not to allow offensive statements, not to use in public speeches unreliable or unverified information regarding public authorities, local government bodies, associations of citizens, enterprises, institutions and organizations, their leaders and other officials or officials, deputy groups, factions, individual deputies of local councils. The false information provided by the defendant in the speech can only be qualified as untruthful factual data, which are not value judgments.

In October 2018 PERSON_2 filed a response to the cassation appeal, in which he indicated that the plaintiff actually admitted that the decision of the Court of First Instance was legal and reasonable, but, caring only about his political ambitions, the mayor of Chernivtsi, during the appeal proceedings, applied to the Appellate Court of Chernivtsi Region with a statement to waive part of the claim.

**Progress of the case in a Court of Cassation**

By the order of the Supreme Court dated July 24, 2018, the cassation proceedings were opened in the case and a time limit has been given for submitting a response to the cassation appeal.

By the order of the Supreme Court dated May 15, 2019, the case was scheduled for trial.

According to part one of Article 402 of the CPC [Civil Procedure Code] of Ukraine, in the Court of Cassation, the complaint is considered according to the rules for considering the case by the Court of First Instance in the manner of simplified action proceedings without notifying the participants in the case, taking into account Article 400 of this Code.

Under Article 412 of the CPC [Civil Procedure Code] of Ukraine, the grounds for canceling court decisions in whole or in part and making a new decision in the relevant part or changing the decision are the incorrect application of substantive law or a violation of procedural law.

**Position of the Supreme Court**

Having studied the materials of the case, having checked the arguments of the cassation appeal, the Supreme Court, as a part of the Panel of Judges of the First Court Chamber of the Civil Court of Cassation, concluded that the cassation appeal should be satisfied, and the decision of the courts of appeal – canceled with the transfer of the case for new consideration to the Court of Appeal according to the following grounds.

The court found that PERSON_2 is a deputy of the VII convocation of the Chernivtsi City Council.

PERSON_1 is the Chernivtsi mayor.

On INFORMATION_1 during a speech at the plenary meeting of the 31st session of the VII convocation of the Chernivtsi City Council, PERSON_2 disseminated the following information regarding the mayor PERSON_1: "... PERSON_1 here tells us about successful management, that he is a successful leader. So I want to tell you that it was this representative of the "Narodny Front" who destroyed the municipal enterprise that we were creating. We wanted the "Mistobud: Municipal Enterprise to build housing in the city, repair kindergartens, and make major repairs around the city. But this representative of the "Narodny Front", who sits here, smiles and mocks the deputies and residents of Chernivtsi, it was he, who destroyed the municipal enterprise, brought

it to bankruptcy, having stolen one and a half million - three hundred hryvnias, the company's accountant suffered. Then, secretly, they transferred this municipal enterprise to the subordination of the Kalynivsky market and his further actions were the destruction of the municipal enterprise. Such ridiculous manager who is sitting today is talking head, who can only speak and do nothing, just mocks the residents of Chernivtsi …".

Following the issuance of the order by the Appellate Court of Chernivtsi Region dated May 29, 2018 on the acceptance of PERSON_1's refusal from the claim, for consideration of his claims on recognition of information as false, the following quote remained: "… it was he, who destroyed the utility enterprise, brought it to bankruptcy, having stolen one and a half - million three hundred hryvnias".

**Legal and regulatory rationale**

According to Article 32 of the Constitution of Ukraine, everyone is guaranteed judicial defense of the right to refute false information about himself and his family members and the right to demand the removal of any information, as well as the right to compensation for pecuniary and moral damage caused by the collection, storage, use and dissemination of such false information.

Article 201 of the CC [Civil Code] of Ukraine  provides that honor, dignity and business reputation are personal non-property benefits, which are protected by civil law.

According to Articles 297, 299 of the CC [Civil Code] of Ukraine, everyone has the right to respect for his dignity and honor, to the inviolability of his business reputation.

In accordance with Article 91 of the CC [Civil Code] of Ukraine, a legal entity is capable of having the same civil rights and obligations (civil legal capacity) as an individual, except for those that by their nature can only belong to a person.

Personal non-property benefits that are protected by civil law are, among other things, business reputation, name (title), as well as other benefits that are protected by civil law (part one of Article 201 of the CC [Civil Code] of Ukraine).

According to the part one of Article 94 of the CC [Civil Code] of Ukraine, a legal entity has the right to inviolability of its business reputation, privacy of correspondence, information and other personal non-property rights belonging to it.

The business reputation of a legal entity, including entrepreneurial companies, individual entrepreneurs, lawyers, notaries and other persons, is understood as an assessment of their entrepreneurial, social, professional or other activities conducted by such a person as a participant in public relations.

The legal structure of an offense, the presence of which may be the basis for satisfying a claim for the protection of the honor and dignity of an individual, as well as the business reputation of an individual and legal entity, is a combination of the following circumstances: dissemination of information, that is, bringing it to the attention of at least one person in any way; the disseminated information concerns a specific individual or legal entity, that is, the plaintiff; dissemination of false information, that is, information that does not correspond to reality; dissemination of information that violates personal non-property rights, i.e. either prejudices the relevant personal non-property benefits, or prevents a person from fully and timely exercising his personal non-property right.

The dissemination of information should be understood as its publication in print, transmission by radio, television or using other media; distribution on the Internet or using other means of telecommunications; statements in characteristics, statements, letters addressed to other persons; communication in public speeches, in electronic networks, as well as in any other form to at least one person.

By disseminating information, hanging (displaying) posters, slogans, and other works in public places, as well as distributing leaflets among people, by their content or form discredit the dignity, honor of an individual or the business reputation of an individual and legal entity.

Information is considered false if it does not correspond to reality or is untruthfully stated, that is, contains information about events and phenomena that did not exist at all or that existed, but information about them does not correspond to reality (incomplete or distorted).

The plaintiff must prove the fact of dissemination of information by the defendant, as well as the fact that as a result of this, his personal non-property rights were violated.

When deciding on the recognition of a disseminated information as false, the courts must determine the nature of such information and find out whether it is a factual statement or a value judgment.

According to the part two of <u>Article 30 of the Law of Ukraine "On Information"</u>, value judgments, with the exception of libel, are criticism, assessment of actions, statements that do not contain factual data, as well as statements that cannot be interpreted as containing factual data, in particular, given the nature of the use of linguistic and stylistic means (the use of hyperboles, allegories, satire). Value judgments are not subject to refutation and their veracity is not necessary.

<u>Article 10 of the Convention for the Protection of Human Rights and Fundamental Freedoms</u> provides that everyone has the right to freedom of expression. This right includes the freedom to hold opinions, receive and impart information and ideas, without interference from public authorities and regardless of borders. The exercise of these freedoms, insofar as it is associated with duties and responsibilities, may be subject to certain formalities, conditions, restrictions or sanctions established by law in the interests of national security, territorial integrity or public order, for the protection of order or prevention of crime, protection of health and morals, protection of the reputation or rights of others, to prevent the disclosure of confidential information or to ensure the credibility and impartiality of the judiciary and is necessary in a democratic society.

According to the established practice of the European Court of Human Rights, freedom of expression is one of the important foundations of a democratic society and one of the basic conditions for the progress of society as a whole and the self-realization of each individual. In accordance with item 2 of Article 10 of the Convention, it concerns not only "information" or "ideas" that are accepted with approval, considered harmless or neutral, but also those that may offend, shock or disturb. These are the requirements for pluralism, tolerance and broad-mindedness, without which there is no "democratic society" (decision in the case "Karpyuk and Others v. Ukraine dated October 06, 2015).

As stated in the decisions of the European Court of Human Rights (Lingens, De Haes and Gijsels, Goodwin, Prager and Oberschlick cases), freedom of expression, guaranteed by item 1 of Article 10, is one of the basic foundations of a democratic society and one of the fundamental conditions for its progress and the realization of every individual. Subject to item 2, freedom of expression concerns not only those "information" or those "ideas" that are duly received or are considered

harmless or unimportant, but also those that offend, outrage or worry. These are the demands for pluralism, tolerance and broad-mindedness, without which a "democratic society" is impossible.

A clear distinction must be made between stating facts and value judgments. While the existence of facts can be demonstrated, the veracity of value judgments cannot be proven. The requirement to prove the reliability of value judgments cannot be met, it violates freedom of thought as such, which is a fundamental part of the right guaranteed by Article 19 (Lingens, cited above, section 28, item 46).

The Court takes into account the legal position of the European Court of Human Rights regarding the difference between the concepts of "value judgment" and "facts". So, in item 39 of the decision of the European Court of Human Rights dated March 28, 2013 in the case "Novaya Gazeta and Borodyanskiy v. Russia" it is stated that the truthfulness of value judgments cannot be proven and must be distinguished from facts, the existence of which can be proved.      In item 75 of the decision of the European Court of Human Rights dated July 12, 2001 in the case "Feldek v. Slovakia", the court noted that, in contrast to value judgments, the reality of the facts can be proved.

Consequently, when evaluating a statement about the behavior of a third party, it can sometimes be difficult, as in this case, to distinguish between evaluation of facts and value judgments. However, even a value judgment can be excessive if it is not based on factual grounds. (Jerusalem v. Austria, no. 26958/95, n. 43, ECHR 2001-11).

In accordance with Article 62 of the Constitution of Ukraine, Article 6 of the Convention, a person is considered innocent of committing a crime and cannot be subjected to criminal punishment until his guilt is proven through legal procedure and established by a court verdict of guilty.

No one is obliged to prove his innocence of committing a crime.

The parts one, two and five of Article 17 of the CPC [Criminal Procedure Code] of Ukraine indicate that a person is considered innocent of committing a criminal offense and cannot be subjected to criminal punishment until his guilt is proven in the manner prescribed by this Code and established by the court verdict of guilty that entered into legal force. No one is obliged to prove his innocence of committing a criminal offense and must be acquitted unless the prosecution proves the person's guilt beyond a reasonable doubt. The treatment of a person whose guilt in the commission of a criminal offense has not been established by a court conviction that has entered into legal force must be consistent with the treatment of an innocent person.

The presumption of innocence must be viewed in general legal and procedural sense. As a general legal requirement, it determines the position of the individual in society. Although this principle is formulated as a criminal procedural principle, however, its effect goes beyond the scope of only the criminal process. The presumption of innocence is an objective legal provision. This is a requirement of the law, addressed to all citizens, officials, state and public organizations, to public thought in general. This position is also adhered to by the European Court of Human Rights, in its decision dated February 10, 1995 in the case "Allenet de Ribemont v. France", which emphasized that the scope of application of the principle of the presumption of innocence is significantly first: it is mandatory not only for the criminal court, which decides whether the charge is justified, but also for all other organs of the state.

In its most general form, the rule of presumption of innocence means that a person can be found guilty of committing a crime, as well as punished, only on the condition that his/her guilt is proven in the manner prescribed by law and established by a court verdict of guilty. Notice of suspicion

to a person, drawing up the accusation act by an investigator and approving the same by a prosecutor at the stage of pre-trial investigation, consideration of a case in preparatory proceedings do not decide in advance whether he/she is guilty of committing a crime. Only one body in the state is endowed with such a right - this is the court, which, in accordance with the Constitution of Ukraine (Article 124), is the bearer of the judicial power, which administers justice in conditions of legality, independence, transparency and in accordance with adversarial principle.

A court verdict is the only procedural document that establishes guilt.

At the same time, the European Court of Human Rights notes that the presumption of innocence will be instituted if a court decision or statement by an official against a person accused of a criminal offense reflects an opinion about his guilt before it is proven in accordance with the law. It is enough to have, even in the absence of any formal opinion, certain grounds to assume that the court or the official considers the accused guilty. Whether a statement by a public official violates the principle of the presumption of innocence should be determined in the context of the particular circumstances in which the disputed statement was made (item 42 of the decision dated September 21, 2006 in the case "Hrabchuk v. Ukraine" (application No. 8599/02); item 48 of the decision dated January 12, 2012 in the case "Dovzhenko v. Ukraine" (application No. 36650/03)).

**Conclusions based on the results of consideration of the cassation appeal**

At the same time, the Court of First Instance, with which the Court of Appeal also agreed, when deciding to dismiss the claim due to the fact that the statements of PERSON_2 are value judgments that are of public interest, did not provide an assessment of such a statement and did not distinguish between factual statements and value judgments.

So, the Court of First Instance indicated that the quote: "…having stolen one and a half million - three hundred hryvnias" is a generalizing negative assessment of PERSON_1 as the head of the enterprise.

The Court of Appeal, in turn, noted that the defendant's words: "…destroyed the municipal enterprise, brought it to bankruptcy, having stolen one and a half million three hundred hryvnias" should be perceived as a verbal turnover - an allegory, and therefore such words are a value judgment.

One cannot agree with such conclusions, given the following.

According to the explanatory dictionary, an allegory is the embodiment of an abstract concept in a concrete artistic image. This term literally translates as "indirectness". We can say that an allegory is an allegorical depiction of a phenomenon of reality.

Such a conclusion of the Court of Appeal is unfounded, unmotivated and does not confirm that the words of the defendant, the refutation of which is sought by the claim, can be perceived as an allegory.

In addition, the courts did not pay attention to the fact that the statements of the defendant regarding the actions of the plaintiff are such that can be checked for their veracity, since the actions claimed by the defendant fall under the signs of a criminal act, which, in turn excludes the attribution of the words of PERSON_2 about the activities of PERSON_1 to value judgments or critical remarks about his activities.

Taking into account the systematic analysis of the norms of the CPC [Criminal Procedure Code] of Ukraine and the principle of the presumption of innocence, which is enshrined in Article 62 of the Constitution of Ukraine, Article 2 of the CrC [Criminal Code] of Ukraine, Article 6 of the European Convention for the Protection of Human Rights and Fundamental Freedoms, Article 11 of the Universal Declaration of Human Rights, the court concluded that there are no legal grounds to assert that a person who is not in the status of a suspect or in another of the above procedural statuses, is related to the commission of a crime being investigated. In accordance with the provisions of the CPC [Criminal Procedure Code] of Ukraine, pretrial investigation of crimes is conducted (Articles 215, 216, 246, 294 of the CPC [Criminal Procedure Code] of Ukraine), and one can state on the commencement or the existence of criminal proceedings against a specific person only if there are suspects in such proceedings.

Thus, references to a specific individual in the context of its connection with a crime, criminal proceedings or its investigation are possible only if the person is in the status of a suspect, accused or defendant.

By the verdict of the Shevchenkivskyi District Court of Chernivtsi dated March 19, 2014 another person was brought to criminal responsibility – the company's accountant.

The courts have not established whether there is court verdict against the plaintiff on the commission of actions falling under the signs of a crime indicated by the defendant; whether at the time of dissemination of the disputed information about the plaintiff, a notice of suspicion was drawn up and the defendant was notified of suspicion of that criminal offense, which the defendant noted in his speech. Therefore, due to the lack of examination by the courts of the evidence in the case, in particular, whether the defendant's statements constitute the expression of subjective opinion and views, and whether it is possible to check such statements for their compliance, the decision of the Court of Appeal cannot be considered lawful and justified, since factual statements and value judgments are different concepts, and the delimitation of these terms is the basis for the protection of the right to honor, dignity and business reputation.

The courts, in violation of the substantive law, did not take into account the norms of national and international law, the case law of the European Court of Human Rights on the presumption of innocence, did not properly check the arguments of the parties in the case, did not determine the nature of the information disseminated by the defendant, and did not find out whether it was a factual statement or a value judgment, therefore, came to a premature conclusion from the established circumstances that there were legal grounds for refusing the claim.

In addition, the Court of Appeal in its decision made a reference to the decision of the European Court of Human Rights concerning the press and journalists, which indicates that the consideration of the case by the Court of Appeal was conducted superficially, using the practice of this court, concerns other legal relations, that is, without providing an assessment of the statements of the defendant regarding the actions of the plaintiff. This decision is cited without regard to this case, without specifying the argumentation, and, in addition, these cases concern other legal relations.

Analyzing the content of the disputed statement, taking into account the linguistic and stylistic means by which the disputed information was announced, the courts came to erroneous conclusions that the statements of the defendant were value judgments.

Also, the courts made references to the practice of the European Court of Human Rights, concerning the boundaries of permissible criticism in relation to a politician or other public person, however the courts did not pay attention to the fact that the quote: "…it was he, who destroyed the utility enterprise, brought it to bankruptcy, having stolen one and a half to three hundred hryvnias"

does not concern the activities of PERSON_1 as the mayor, but as the former head of Mistobud UE.

The courts of previous instances did not analyze whether it is possible to check the given statements for compliance with reality; did not establish whether the circumstances mentioned in the information existed at all; did not indicate what evidence submitted by the plaintiff such circumstances are refuted or presented by the defendant are confirmed.

In resolving the dispute, the courts came to premature conclusions, since it is not enough to formally indicate that the quote: "…it was he, who destroyed the municipal enterprise, brought it to bankruptcy, having stolen one and a half to three hundred hryvnias" is value judgments.

The Supreme Court is convinced that the courts of first and appeal instances considered the dispute in violation of the rules of procedural law, did not examine the collected evidence in the case, did not provide them with a proper assessment, did not give reasons for taking into account some evidence and rejecting others, and therefore the court decisions made do not meet the criteria of validity and legality, the conclusions they made are premature. Considering that the Supreme Court is not entitled to eliminate the committed violations through its powers as a court of cassation, it is fair and justified to refer the case for new consideration to the Court of Appeal, for the purpose of procedural economy and in view of the fact that it was this court that accepted the waiver of part of the claims of PERSON_1.

During a new trial, the court must assess the arguments of the parties and establish whether the information disseminated by the defendant is a factual statement or a value judgment.

Summarizing the above, the Supreme Court came to the conclusion that the decision of the Court of Appeal on the refusal to satisfy the claim shall be cancelled and the case shall be transferred of for new consideration to the Court of Appeal.

Guided by Articles 406, 409, 411, 415, 416 of the CivPC of Ukraine, the Supreme Court composed of the Panel of Judges of the First Court Chamber of the Civil Court of Cassation

**RESOLVED:**

To partially satisfy the cassation appeal of the representative of PERSON_1 – PERSON_3.

To cancel the judgment of the Appellate Court of Chernivtsi Region dated June 07, 2018, to transfer the case for new consideration to the Court of Appeal.

Judgment of the Court of Cassation is final and not subject to appeal.

| | |
|---|---|
| **Presiding** | **O.V. Stupak** |
| **Judges:** | **I.Yu. Huleykov** |
| | **A.S. Oliynyk** |
| | **H.I. Usyk** |
| | **V.V. Yaremko** |

**DATE OF TRANSLATION:**          13-Jan-2021

**ELECTRONIC FILE NAME:**          Judgment No. 727_8388_17

**SOURCE LANGUAGE:**          Ukrainian

**TARGET LANGUAGE:**          English

**TRANSPERFECT JOB ID:**          US0881324

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001


Tcert v. 4.0

Категорія справи № **6-3687ск15: не визначено.**
Надіслано судом: **не визначено.** Зареєстровано: **24.02.2015.** Оприлюднено: **24.02.2015.**
Номер судового провадження: **не визначено**



**У х в а л а**

## ІМЕНЕМ УКРАЇНИ

**13 лютого 2015 рокум. Київ** Суддя Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ Мартинюк В.І., розглянувши касаційну скаргу ОСОБА_2 на рішення Жовтневого районного суду м. Дніпропетровська від 14 жовтня 2014 року та рішення апеляційного суду Дніпропетровської області від 12 січня 2015 року у справі за позовом ОСОБА_2 до прокуратури Дніпропетровської області, старшого слідчого слідчого відділу слідчого управління прокуратури Дніпропетровської області ОСОБА_6, прокурора відділу процесуального керівництва у кримінальних провадженнях слідчих прокуратури Дніпропетровської області ОСОБА_7, Генеральної прокуратури України про відшкодування матеріальної і моральної шкоди,

**в с т а н о в и в:**

У травні 2014 року ОСОБА_2 звернувся до суду з позовом до прокуратури Дніпропетровської області, старшого слідчого слідчого відділу слідчого управління прокуратури Дніпропетровської області ОСОБА_6, прокурора відділу процесуального керівництва у кримінальних провадженнях слідчих прокуратури Дніпропетровської області ОСОБА_7, Генеральної прокуратури України про відшкодування матеріальної і моральної шкоди

Рішенням Жовтневого районного суду м. Дніпропетровська від 14 жовтня 2014 року в задоволенні позову ОСОБА_2 відмовлено.

Рішенням апеляційного суду Дніпропетровської області від 12 січня 2015 року рішення Жовтневого районного суду м. Дніпропетровська від 14 жовтня 2014 року змінено в частині обґрунтування правових підстав відмови в задоволенні позову.

У касаційній скарзі ОСОБА_2 просить рішення Жовтневого районного суду м. Дніпропетровська від 14 жовтня 2014 року та рішення апеляційного суду Дніпропетровської області від 12 січня 2015 року скасувати, мотивуючи свою

вимогу порушенням судами норм процесуального права й неправильним застосуванням норм матеріального права, та передати справу на новий розгляд.

У відкритті касаційного провадження у справі слід відмовити з таких підстав.

Відмовляючи у задоволенні позовних вимог, суд першої інстанції, керуючись положеннями ст. 62 Конституції України, ст. ст. 22, 23, 1177 ЦК України, обґрунтовано виходив із того, що відсутні підстави для задоволення позовних вимог ОСОБА_2 про відшкодування моральної та матеріальної шкоди, завдання якої він пов'язує із вчиненням умисних злочинів, що призвели до вбивства його сина та покриттям винних осіб саме відповідачами при виконанні ними своїх службових повноважень, оскільки відсутній вирок суду, що набрав законної сили по факту навмисного вбивства ОСОБА_5, смерть останнього насильницькою визнана не була, відповідачі не є фігурантами злочину відносно сина позивача, щодо них кримінальні провадження не порушувалися, обвинувальних вироків не виносилося.

Апеляційний суд погодився з висновками суду першої інстанції щодо відмови в позові, змінивши при цьому правове обґрунтування такої відмови.

Відповідно до п. 5 ч. 4 ст. 328 ЦПК України суддя відмовляє у відкритті касаційного провадження, якщо касаційна скарга є необґрунтованою і викладені у ній доводи не викликають необхідності перевірки матеріалів справи.

Із матеріалів касаційної скарги та змісту оскаржуваних судових рішень убачається, що скарга є необґрунтованою і наведені в ній доводи не дають підстав для висновків щодо незаконності та неправильності зазначених судових рішень.

Керуючись ст. 328 ЦПК України,

**у х в а л и в:**

Відмовити ОСОБА_2 у відкритті касаційного провадження у справі за позовом ОСОБА_2 до прокуратури Дніпропетровської області, старшого слідчого слідчого відділу слідчого управління прокуратури Дніпропетровської області ОСОБА_6, прокурора відділу процесуального керівництва у кримінальних провадженнях слідчих прокуратури Дніпропетровської області ОСОБА_7, Генеральної прокуратури України про відшкодування матеріальної і моральної шкоди.

Додані до скарги матеріали повернути заявнику.

Ухвала оскарженню не підлягає.

**Суддя Вищого спеціалізованого**

**суду України з розгляду**

**цивільних і кримінальних справ                                    В.І. Мартинюк**

Category of the case No. **6-3687ск15**: **undefined.**

Sent by the court: **undefined.** Registered: **02/24/2015.** Made public: **02/24/2015.**
Proceedings number: **undefined**



**Judgment**

**IN THE NAME OF UKRAINE**

**February 13, 2015 Kyiv** The Judge of the High Specialized Court of Ukraine for Civil and Criminal Matters V.I. Martyniuk, having considered the cassation appeal of PERSON_2 against the decision of the Zhovtnevyi District Court of Dnipropetrovsk dated October 14, 2014 and the decision of the Appellate Court of Dnipropetrovsk Region dated January 12, 2015 in the case on a claim of PERSON_2 against the Prosecutor's Office of Dnipropetrovsk Region, Senior Investigator of the Investigation Unit of the Investigation Department of the Prosecutor's Office of Dnipropetrovsk Region PERSON_6, Prosecutor of the Department of Procedural Guidance in Criminal Proceedings of the Investigators of the Prosecutor's Office of Dnipropetrovsk Region PERSON_7, Prosecutor`s General Office of Ukraine for compensation for pecuniary and moral damage,

**found:**

In May 2014 PERSON_2 applied to the court with a claim against the Prosecutor's Office of Dnipropetrovsk Region, Senior Investigator of the Investigation Unit of the Investigation Department of the Prosecutor's Office of Dnipropetrovsk Region PERSON_6, Prosecutor of the Department of Procedural Guidance in Criminal Proceedings of the Investigators of Prosecutor's Office of Dnipropetrovsk Region PERSON_7, Prosecutor`s General Office of Ukraine for compensation for pecuniary and moral damage

By the decision of the Zhovtnevyi District Court of Dnipropetrovsk dated October 14, 2014, the claim of PERSON_2 was refused.

By the decision of the Appellate Court of Dnipropetrovsk Region dated January 12, 2015, the decision of the Zhovtnevyi District Court of Dnipropetrovsk dated October 14, 2014 was changed in the part concerning justification of legal grounds for refusal to grant the claim.

In the cassation appeal, PERSON_2 asks to cancel the decision of the Zhovtnevyi District Court of Dnipropetrovsk dated October 14, 2014 and the decision of the Appellate Court of Dnipropetrovsk Region dated January 12, 2015, justifying its requirement with violation by the courts of the rules of procedural law and incorrect application of the rules of substantive law, and to transfer the case for new consideration.

The opening of cassation proceedings in the case should be refused on the following grounds.

When dismissing the claim, the Court of First Instance, guided by the provisions of Article 62 of the Constitution of Ukraine, Articles 22, 23, 1177 of the [Civil Code] of Ukraine, rightfully concluded that there were no grounds to grant the claims of PERSON_2 for compensation of moral and pecuniary losses, infliction of which he attributes to commission of premeditated crimes that led to murder of his son and hiding the guilty persons by the defendants when performing their official duties, as there was no court sentence that had entered into legal force as regards premeditated murder of PERSON_5, the death of the latter had not been declared violent, the defendants had not featured in the crimes as regards the plaintiff's son, no criminal proceedings had been commenced in respect of them, and no court verdict of guilty had been rendered.

The Court of Appeal agreed with the conclusions of the Court of the First Instance to refuse the claim having changed the legal justification of such refusal.

According to item 5 of part 4 of Article 328 of the CPC [Civil Procedure Code] of Ukraine, the judge refuses to open cassation proceedings if the cassation appeal is unjustified and the arguments set out in it do not cause the need to verify the case materials.

It is seen from the materials of the cassation appeal and the substance of the appealed court decisions, that the appeal is unjustified and the arguments given in it do not give grounds for conclusions about the illegality and incorrectness of the specified court decisions.

Guided by Article 328 of the CPC [Civil Procedure Code] of Ukraine.

**resolved:**

To refuse PERSON_2 in opening of cassation proceedings in case on claim of PERSON_2 against the Prosecutor's Office of Dnipropetrovsk Region, Senior Investigator of the Investigation Unit of the Investigation Department of the Prosecutor's Office of Dnipropetrovsk Region PERSON_6, Prosecutor of the Department of Procedural Guidance in Criminal Proceedings of Investigators of the Prosecutor's Office of Dnipropetrovsk Region PERSON_7, Prosecutor`s General Office of Ukraine for compensation for pecuniary and moral damage.

To return the materials attached to the case to the plaintiff.

The resolution is not subject to appeal.

**Judge of the High Specialized**

**Court of Ukraine for**

**Civil and Criminal Matters**                                          **V.I. Martyniuk**



| | |
|---|---|
| **DATE OF TRANSLATION:** | 14-Jan-21 |
| **ELECTRONIC FILE NAMES:** | Order of the High Specialized Court in case No. 6-3687ск15 |
| **SOURCE LANGUAGE:** | Ukrainian |
| **TARGET LANGUAGES:** | English |
| **TRANSPERFECT JOB ID:** | US0888264 |

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

TCert v. 4.0

Категорія справи №**296/9905/15-ц**: **не визначено.**

Надіслано судом: **не визначено.** Зареєстровано: **09.10.2017.** Оприлюднено: **10.10.2017.**
Номер судового провадження: **не визначено**



**Ухвала**

**іменем україни**

**04 жовтня 2017 року м. Київ**

**Колегія суддів судової палати у цивільних справах**

**Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ у складі:**

**головуючого   Ситнік О.М.,**

**суддів:      Іваненко Ю.Г.,      Леванчука А.О.,**

**Маляренка А.В.,      Ступак О.В.,**

розглянувши в судовому засіданні справу за позовом Житомирського об'єднаного управління Пенсійного фонду України в Житомирській області до ОСОБА_3 про стягнення надміру виплачених коштів, за касаційною скаргою ОСОБА_3 на рішення апеляційного суду Житомирської області від 15 листопада 2016 року,

в с т а н о в и л а:

У серпні 2015 року Управління Пенсійного фонду України в м. Житомирі, правонаступником якого є Житомирське об'єднане управління Пенсійного фонду України в Житомирській області (далі - Житомирське ОУ ПФ України в Житомирській області), звернулося до суду з указаним позовом, в якому просило стягнути з ОСОБА_3 на свою користь 35 596 грн 04 коп. надміру виплачених коштів.

Свої вимоги позивач обґрунтовував тим, що 20 квітня 1999 року відповідач звернулася із заявою про призначення пенсії за віком, в якій вказала, що пенсія з інших підстав чи від іншого відомства їй не призначалася. На підставі цієї заяви та додатних до неї документів Корольовським районним управлінням соціального захисту населення м. Житомира протоколом від 20 квітня 1999 року ОСОБА_3 була призначена пенсія за віком. Згодом стало відомо, що відповідач перебуває на обліку в Головному управлінні Пенсійного фонду України в Житомирській області та з 03 лютого 1996 року отримує пенсію в разі втрати годувальника. За таких обставин позивач вважає, що ОСОБА_3, звертаючись за призначенням пенсії за віком,

приховала той факт, що отримує іншу державну пенсію. Оскільки чинне законодавство не передбачає права одночасно отримувати різні державні пенсії, то сума пенсії, надміру виплачена внаслідок зловживань із боку ОСОБА_3, могла бути повернута останньою добровільно, але відповідач безпідставно отримані кошти не повернула.

Рішенням Корольовського районного суду м. Житомира від 22 вересня 2016 року у задоволенні позову відмовлено.

Вирішено питання про судові витрати.

Рішенням апеляційного суду Житомирської області від 15 листопада 2016 року рішення Корольовського районного суду м. Житомира від 22 вересня 2016 року скасовано та ухвалено нове рішення про задоволення позову.

Стягнуто з ОСОБА_3 на користь Житомирського ОУ ПФ України в Житомирській області 35 596 грн 04 коп. надміру виплачених коштів.

У касаційній скарзі ОСОБА_3 просить скасувати рішення апеляційного суду та залишити в силі рішення суду першої інстанції, обґрунтовуючи свою вимогу порушенням апеляційним судом норм процесуального права та неправильним застосуванням норм матеріального права.

Відповідно до п. 6 розд. XII «Прикінцеві та перехідні положення» Закону України від 02 червня 2016 року № 1402-VIII «Про судоустрій і статус суддів» Вищий спеціалізований суд України з розгляду цивільних і кримінальних справ діє в межах повноважень, визначених процесуальним законом, до початку роботи Верховного Суду та до набрання чинності відповідним процесуальним законодавством, що регулює порядок розгляду справ Верховним Судом.

У зв'язку з цим справа підлягає розгляду в порядку, передбаченому Цивільним процесуальним кодексом України від 18 березня 2004 року.

Вивчивши матеріали справи, перевіривши доводи касаційної скарги, колегія суддів дійшла висновку, що касаційна скарга підлягає задоволенню частково з огляду на таке.

З урахуванням вимог ст. 213 ЦПК України рішення суду повинно бути законним і обґрунтованим.

Згідно зі ст. 214 ЦПК України під час ухвалення рішення суд вирішує такі питання: чи мали місце обставини, якими обґрунтовувалися вимоги і заперечення, та якими доказами вони підтверджуються; чи є інші фактичні дані (пропущення строку позовної давності тощо), які мають значення для вирішення справи, та докази на їх підтвердження; які правовідносини сторін випливають із встановлених обставин; яка правова норма підлягає застосуванню до цих правовідносин.

Відповідно до ст. ст. 303, 304 ЦПК України під час розгляду справи в апеляційному порядку апеляційний суд перевіряє законність і обґрунтованість рішення суду першої інстанції в межах доводів апеляційної скарги та вимог, заявлених у суді першої інстанції. Справа розглядається в апеляційному суді за правилами, встановленими для розгляду справи судом першої інстанції, з винятками і доповненнями, встановленими законом.

Проте рішення апеляційного суду не відповідає зазначеним нормам процесуального права.

Відмовляючи в задоволенні указаного позову, суд першої інстанції виходив із недоведеності заявлених позовних вимог, оскільки позивачем не доведено відповідними доказами вини відповідача та зловживань із її боку при поданні документів для призначення пенсії за віком. При цьому суд зазначив, що вирок у кримінальній справі стосовно ОСОБА_3 скасовано, справу направлено для організації у справі додаткового розслідування та рішення по суті справи на теперішній час не прийнято, а тому доказів вини ОСОБА_3 не встановлено. Крім того, суд виходив із того, що за результатами висновку експерта від 14 грудня 2009 року № 1/1127 неможливо вирішити питання, чи виконані підписи в графах заяви від 20 квітня 1999 року ОСОБА_3 чи іншою особою. За таких обставин суд вважав, що станом на час розгляду справи в суді не доведено відповідними доказами вини ОСОБА_3 та зловживань з її боку при поданні документів для призначення пенсії за віком.

Скасовуючи рішення суду першої інстанції й ухвалюючи нове рішення про задоволення позову, апеляційний суд навпаки вважав, що позивачем доведено недобросовісність із боку відповідача, яка, звернувшись у 1999 році за призначенням їй пенсії за віком, приховала той факт, що у 1996 році їй призначена пенсія по втраті годувальника, у зв'язку з чим суд дійшов висновку, що безпідставно набута відповідачем та надміру виплачена їй сума у розмірі 35 596 грн 04 коп. за період із 12 березня 1999 року по 31 травня 2009 року підлягає поверненню позивачу.

Однак із вказаними висновками не можна погодитися виходячи з наступного.

Стаття 1 ЦПК України передбачає, що завданнями цивільного судочинства є справедливий, неупереджений та своєчасний розгляд і вирішення цивільних справ з метою захисту порушених, невизнаних або оспорюваних прав, свобод чи інтересів фізичних осіб, прав та інтересів юридичних осіб, інтересів держави.

За змістом ст. 10 ЦПК України цивільне судочинство здійснюється на засадах змагальності сторін.

Зокрема, ч. 4 ст. 10 ЦПК України передбачено, що суд сприяє всебічному і повному з'ясуванню обставин справи: роз'яснює особам, які беруть участь у справі, їх права та обов'язки, попереджує про наслідки вчинення або невчинення процесуальних дій і сприяє здійсненню їхніх прав у випадках, встановлених цим Кодексом.

Відповідно до ст. 60 ЦПК України кожна сторона зобов'язана довести ті обставини, на які вона посилається як на підставу своїх вимог і заперечень, крім випадків, встановлених статтею 61 цього Кодексу.

Частиною 4 ст. 61 ЦПК України установлено, що вирок у кримінальній справі, що набрав законної сили, або постанова суду у справі про адміністративне правопорушення обов'язкові для суду, що розглядає справу про цивільно-правові наслідки дій особи, стосовно якої ухвалено вирок або постанову суду, з питань, чи мали місце ці дії та чи вчинені вони цією особою.

Разом із тим за приписами ч. 2 ст. 59 ЦПК України обставини справи, які за законом мають бути підтверджені певними засобами доказування, не можуть підтверджуватись іншими засобами доказування.

Судом установлено, що ОСОБА_3, перебуваючи на обліку в Головному управлінні Пенсійного фонду України в Житомирській області із 03 лютого 1996 року отримує пенсію у разі втрати годувальника.

Протоколом від 20 квітня 1999 року № 1686 Корольовського районного управління соціального захисту населення м. Житомира, яке згодом було реорганізовано в Управління Пенсійного фонду України в Корольовському районі м. Житомира та в наступному - в Управління Пенсійного фонду України в м. Житомирі, правонаступником останнього є позивач, ОСОБА_3 із 12 березня 1999 року призначено іншу державну пенсію за віком.

Вироком Корольовського районного суду м. Житомира від 14 березня 2012 року ОСОБА_3 засуджено за вчинення злочинів, передбачених ч. 2 ст. 358, ч. 3 ст. 358, ч. 2 ст. 192 КК України, присуджено стягнути з ОСОБА_3 на користь Управління Пенсійного фонду України в Корольовському районі м. Житомира заподіяну матеріальну шкоду у розмірі 35 596 грн 04 коп.

Ухвалою апеляційного суду Житомирської області від 26 лютого 2013 року скасовано вирок Корольовського районного суду м. Житомира від 14 березня 2013 року стосовно ОСОБА_3, справу направлено прокурору м. Житомира для організації у справі додаткового розслідування.

Апеляційним судом установлено, що ухвалою Богунського районного суду м. Житомира від 04 серпня 2016 року скасовано постанову слідчого від 21 вересня 2013 року про закриття кримінального провадження (а. с. 97).

У матеріалах справи на а. с. 60 міститься копія постанови старшого слідчого СВ Корольовського РВ УМВС України в Житомирській області про закриття кримінального провадження від 21 вересня 2013 року, згідно з якою закрито кримінальне провадження, внесене до Єдиного реєстру досудових розслідувань від 17 квітня 2013 року № 12013060040001101, у зв'язку з відсутністю в діянні складу кримінального правопорушення за ознаками складу злочину, передбаченого ч. 2 ст. 190, ч. ч. 2, 3 ст. 358 КК України. Згідно зі змістом цієї постанови під час досудового розслідування не було здобуто достатніх доказів, які б вказували на причетність до вчинення вказаних правопорушень ОСОБА_3, та не доведено її вини.

На а. с. 97 знаходиться копія ухвали Богунського районного суду м. Житомира від 04 серпня 2016 року, якою скасовано постанову старшого слідчого СВ Корольовського РВ УМВС України в Житомирській області від 21 вересня 2013 року про закриття кримінального провадження із тих підстав, що під час винесення постанови слідчим не було з'ясовано всіх обставин, які мають істотне значення для правильного вирішення справи, на які звернув увагу апеляційний суд Житомирської області у своїй ухвалі від 26 лютого 2013 року, з урахуванням зібраних доказів у їх сукупності та не надано належної юридичної оцінки діям ОСОБА_3, а також не вжито всіх передбачених законом заходів щодо виявлення та притягнення до відповідальності винної особи, яка вчинила відповідне кримінальне правопорушення, оскільки заподіяні державні збитки продовжують мати місце і ніхто не поніс законної відповідальності за їх спричинення.

Таким чином, станом на час ухвалення апеляційним судом рішення про задоволення позову у справі відсутній вирок у кримінальній справі, що набрав законної сили, який за вищевказаних обставин є допустимим доказом у цій справі, зважаючи на положення ч. 4 ст. 61 ЦПК України.

Виходячи з викладеного, необгрунтованими є висновки апеляційного суду про доведеність факту недобросовісності з боку відповідача.

Разом із тим апеляційний суд залишив поза увагою положення п. 4 ч. 1 ст. 201 ЦПК України, відповідно до якої суд зобов'язаний зупинити провадження у справі у разі неможливості розгляду цієї справи до вирішення іншої справи, що розглядається в порядку конституційного, цивільного, господарського, кримінального чи адміністративного судочинства.

Оскільки усупереч вимогам ст. ст. 212-215, 303, 304, 316 ЦПК України суд апеляційної інстанцій порушив норми процесуального права, що призвело до неможливості встановити фактичні обставини, які мають значення для правильного вирішення справи, на порушення ч. 4 ст. 10 ЦПК України не сприяв всебічному і повному з'ясуванню обставин справи, тому колегія суддів дійшла висновку, що касаційна скарга підлягає задоволенню частково, а ухвалене у справі рішення суду апеляційної інстанції - скасуванню з направленням справи на новий розгляд до апеляційного суду з підстав, передбачених ч. 3 ст. 338 ЦПК України.

Керуючись ст. ст. 336, 338 ЦПК України, колегія суддів судової палати у цивільних справах Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ

**у х в а л и л а :**

Касаційну скаргу ОСОБА_3 задовольнити частково.

Рішення апеляційного суду Житомирської області від 15 листопада 2016 року скасувати, справу передати на новий розгляд до суду апеляційної інстанції.

Ухвала оскарженню не підлягає.

| | |
|---|---|
| **Головуючий** | **О.М. Ситнік** |
| **Судді:** | **Ю.Г. Іваненко** |
| | **А.О. Леванчук** |
| | **А.В.Маляренко** |
| | **О.В.Ступак** |

Category of the case No. **296/9905/15-ц**: undefined.

Sent by the court: **undefined.** Registered: **10/09/2017.** Made public: **10/10/2017.**

Proceedings number: **undefined**



**Judgment**

**in the name of Ukraine**

**October 04, 2017 Kyiv**

**The Panel of Judges of the Civil Court Chamber**

**of the High Specialized Court of Ukraine for Civil and Criminal Matters, composed of:**

presiding     **O.M. Sytnik,**

judges:       **Yu.H. Ivanenko,          A.O. Levanchuk,**

              **A.V. Maliarenko,          O.V. Stupak,**

having considered in a court hearing the case upon the claim of Zhytomyr Joint Administration of the Pension Fund of Ukraine against PERSON_3 on collection of excessively paid funds, upon cassation appeal of PERSON_3 against the decision of the Appellate Court of Zhytomyr Region dated November 15, 2016,

**found:**

In August 2015, the Administration of the Pension Fund of Ukraine in Zhytomyr, the legal successor of which is Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region (hereinafter the Zhytomyr JA of PF of Ukraine in Zhytomyr Region), applied to the court with the said claim, in which it asked to collect from PERSON_3 in its favor 35,596 hryvnias 04 kop. of excessively paid funds.

The plaintiff justified its claims by saying that on April 20, 1999, the defendant applied for an old-age pension, in which she indicated that the pension was not assigned to her on other grounds or from another department. On the basis of this application and the documents attached to it, the Koroliovskyi District Administration of Social Protection of the Population of Zhytomyr by minutes dated April 20, 1999, assigned to PERSON_3 an old-age pension. Subsequently, it became known that the defendant is registered with the Main Department of the Pension Fund of Ukraine in Zhytomyr Region and had been receiving a survivor`s pension since February 03, 1996. In such circumstances, the plaintiff believes that PERSON_3, applying for an old-age pension, concealed the fact that she receives another state pension. Since the current legislation does not provide for the right to receive different state pensions at the same time, the amount of pension overpaid as a result of abuse on the part of PERSON_3 could have been returned by the latter voluntarily, but the defendant did not return the funds received without justification.

By the decision of the Koroliovskyi District Court of Zhytomyr dated September 22, 2016, the claim was refused.

The matter of court expenses was resolved.

By the decision of the Appellate Court of the Zhytomyr Region dated November 15, 2015, the decision of the Koroliovskyi District Court of Zhytomyr dated September 22, 2016 was cancelled and a new decision to satisfy the claim was made.

35,596 hryvnias 04 kop. of overpaid funds was collected from PERSON_3 in favor of Zhytomyr JA of PF of Ukraine in Zhytomyr Region.

In the cassation appeal, PERSON_3 asks to cancel the decision of the Court of Appeal and leave in force the decision of the Court of First Instance, justifying her claim by violation of the rules of procedural law and incorrect application of the rules of substantive law by the Court of Appeal.

According to item 6 of Chapter XII "Final and Transitional Provisions" of the Law of Ukraine No. 1402-VIII dated June 02, 2016 "On the Judiciary and the Status of Judges", the High Specialized Court of Ukraine for Civil and Criminal Matters operates within the powers determined by the procedure law, pending the commencement of the work of the Supreme Court and until the entry into force of the relevant procedural legislation governing the procedure for considering cases by the Supreme Court.

In this regard, the case is subject to consideration in the manner prescribed by the Civil Procedure Code of Ukraine dated March 18, 2004.

Having studied the case materials and verified the arguments of the cassation appeal, the panel of judges concluded that the cassation appeal is subject to satisfaction in part, taking into account the following.

Subject to Article 213 of the CPC [Civil Procedure Code] of Ukraine, a court decision must be lawful and justified.

According to Article 214 of the CPC [Civil Procedure Code] of Ukraine, when making a decision, the court decides the following issues: whether circumstances that substantiated the claims and objections took place, and what evidence they were supported by; whether there are other factual data (omission of the limitation period, etc.) that are important for the adjudication of the case, and evidence in support of them; what legal relations of the parties arise from the established circumstances; what legal norm is to be applied to these legal relations.

Pursuant to Articles 303, 304 of the [Civil Procedure Code] of Ukraine, when considering a case on appeal, the Court of Appeal verifies the legality and validity of the decision of the Court of First Instance within the limits of the arguments of the appeal and the claims stated in the Court of First Instance. The case is considered in the Court of Appeal according to the rules established for the consideration of the case by the Court of First Instance, with exceptions and additions established by law.

However, the decision of the Court of Appeal does not comply with the specified rules of procedural law.

Refusing to satisfy the specified claim, the Court of First Instance proceeded from the lack of proof of the stated claims, since the plaintiff did not prove the defendant's guilt and abuse on her part when submitting documents for assigning an old-age pension. Herewith, the court noted that the sentence in the criminal case against PERSON_3 was canceled, the case was sent for organizing an additional investigation in the case and the decision on the merits of the case has not yet been made, and therefore no evidence of guilt of PERSON_3 has been established. In addition, the court proceeded from the fact that according to the results of the expert opinion No. 1/1127 dated December 14, 2009, it is impossible to decide on the matter whether the signatures in the columns of the application dated April 20, 1999 were made by PERSON_3 or another person. In such circumstances, the court considered that as of the time of consideration of the case in court, the relevant

evidence did not prove the guilt of PERSON_3 and abuse on her part when submitting documents for the assignment of an old-age pension.

Canceling the decision of the Court of First Instance and making a new decision to satisfy the claim, the Court of Appeal, on the contrary, considered that the plaintiff proved bad faith on the part of the defendant, who, applying in 1999 for the assignment of an old-age pension, concealed the fact that in 1996 she was assigned a survivor's pension. In connection with this, the court concluded that the amount of 35,596 hryvnias 04 kopecks unreasonably acquired by the defendant and overpaid to her for the period from March 12, 1999 to May 31, 2009, is subject to return to the plaintiff.

However, we cannot agree with these conclusions based on the following.

Article 1 of the CPC [Civil Procedure Code] of Ukraine provides that the tasks of civil justice include fair, impartial and timely consideration and resolution of civil cases in order to protect the violated, undeclared or disputed rights, freedoms or interests of individuals, the rights and interests of legal entities, and the interests of the state.

By contents of Article 10 of the CPC [Civil Procedure Code] of Ukraine civil proceedings are conducted on the basis of adversarial principle.

In particular, Part 4 of Article 10 of the CPC [Civil Procedure Code] Ukraine provides that a court fosters a comprehensive and complete clarification of the circumstances of the case: explains to persons participating in the case their rights and obligations, warns about the consequences of performing or not performing procedural actions, and promotes the exercise of their rights in cases established by this Code.

According to Art. 60 of the CPC [Civil Procedure Code] of Ukraine, each party must prove the circumstances to which it refers as the basis for its claims and objections, except for the cases established by Article 61 of this Code.

Part 4 of Article 61 of the CPC [Civil Procedure Code] of Ukraine establishes that a sentence in a criminal case that became effective, or a court decision in a case on an administrative offense, are binding on the court, which considers the case on the civil consequences of the actions of the person against whom the sentence or court decision was made, on the matters whether these actions took place and whether they were committed by this person.

At the same time, according to the provisions of Part 2 of Article 59 of the CPC [Civil Procedure Code] of Ukraine, the circumstances of the case, which by law must be confirmed by certain means of proof, cannot be confirmed by other means of proof.

The court established that PERSON_3, being registered with the Main Department of the Pension Fund of Ukraine in Zhytomyr Region, has been receiving a survivors' pension since February 03, 1996.

By minutes No. 1686 dated 20 April 1999 of Koroliovskyi District Administration of Social Protection of the Population of Zhytomyr, subsequently reorganized to the Administration of the Pension Fund of Ukraine in Koroliovskyi District of Zhytomyr and then – to the Administration of the Pension Fund of Ukraine in Zhytomyr, the legal successor of the latter being the plaintiff, since March 12, 1999 PERSON_3 was assigned another state old-age pension.

By the sentence of the Koroliovskyi District Court of Zhytomyr dated March 14, 2012, PERSON_3 was convicted for committing the crimes provided for in Part 2 of Article 358, Part 3 of Article 358, Part 2 of Article 192 of the Criminal Code of Ukraine, the pecuniary damage in the amount of 35,596 hryvnias 04 kop was

recovered from PERSON_3 in favor of the Administration of the Pension Fund of Ukraine in the Koroliovsky District of Zhytomyr.

By the decision of the Appellate Court of Zhytomyr Region dated February 26, 2013, the sentence of the Koroliovsky District Court of Zhytomyr dated March 14, 2013 concerning PERSON_3 was cancelled, the case was sent to the prosecutor of Zhytomyr for organization of additional investigation in the case.

The Court of Appeal established that by the judgment of the Bogunskyi District Court of Zhytomyr dated August 04, 2016, the resolution of investigator dated September 21, 2013 to close criminal proceedings (case sheet 97) was canceled.

The materials of the case on case sheet 60 contain a copy of the resolution of the Senior Investigator of the IU [Investigation Unit] of Koroliovskyi DD [District Department] of DMIA [Department of the Ministry of Internal Affairs] of Ukraine in Zhytomyr Region on closing the criminal proceedings dated September 21, 2013, according to which the criminal proceedings that was entered to the Unified Register of Pretrial Investigations dated April 17, 2013 No. 12013060040001101, was canceled since the act in question did not constitute a criminal offence by elements of offense envisaged in Part 2 of <u>Article 190, Parts 2, 3 of Article 358 of the Criminal Code of Ukraine</u>. According to the content of this resolution, during the pre-trial investigation, sufficient evidence that would indicate the involvement of PERSON_3 in the commission of these offenses was not obtained, and her guilt was not proved.

Case sheet 97 contains a copy of the judgment of the Bogunskyi District Court of Zhytomyr dated August 04, 2016, which canceled the resolution of the Senior Investigator of the IU of Koroliovskyi DD of DMIA of Ukraine in Zhytomyr Region dated September 21, 2013, on closing the criminal proceedings on the grounds that at the time of making the decision, the investigator did not clarify all the circumstances that are essential for the correct resolution of the case, to which the Appellate Court of Zhytomyr Region drew attention to in its decision dated February 26, 2013, taking into account the collected evidence in its entirety and did not provide a proper legal assessment of the actions of PERSON_3, and did not take all the measures provided for by law to identify and bring to justice the guilty person who committed the relevant criminal offense, since the state losses caused continue to occur and no one has been brought to legal responsibility for causing them.

Thus, when the appellate court rendered its judgment to grant the claim in the case, no court verdict had been rendered in a criminal matter that has entered into legal force, which in the above circumstances is admissible evidence in this case, taking into account the provisions of Part 4 of <u>Article 61 of the CPC [Civil Procedure Code] of Ukraine</u>.

Based on the above, the conclusions of the Court of Appeal on the proven fact of bad faith on the part of the defendant are unfounded.

At the same time, the Court of Appeal ignored the provisions of item 4 of Part 1 of <u>Article 201 of the CPC [Civil Procedure Code] of Ukraine</u>, according to which the court is obliged to suspend the proceedings in a case if it is impossible to consider this case until another case, which is being considered in constitutional, civil, economic, criminal or administrative proceedings, is resolved,.

Since contrary to the requirements of <u>Articles 212-215, 303, 304, 316 of the CPC [Civil Procedure Code] of Ukraine</u> the Court of Appeal violated the rules of procedural law, which led to the inability to establish the factual circumstances that are important for the correct resolution of the case, in violation of Part 4 of <u>Article 10 of the CPC [Civil Procedure Code] of Ukraine</u> did not contribute to a comprehensive and complete clarification of the circumstances of the case, the panel of judges concluded that the cassation appeal is subject to satisfaction in part, and the decision of the Court of Appeal rendered in the case is subject to cancelation with referral of the case for a new consideration to the Court of Appeal on the grounds provided for in Part 3 <u>of Article 338 of the CPC [Civil Procedure Code] of Ukraine</u>.

Guided by Articles <u>336, 338 of the CPC [Civil Procedure Code] of Ukraine</u>, the Panel of Judges of the Civil Court Chamber of the High Specialized Court of Ukraine for Civil and Criminal Matters

**resolved:**

To partially grant the cassation appeal of PERSON_3.

To cancel the judgment of the Appellate Court of Zhytomyr Region dated November 15, 2016, to transfer the case for new consideration to the Court of Appeal.

The judgment is not subject to appeal.

**Presiding**                                  **O.M. Sytnik**

**Judges:**                                    **Yu.H. Ivanenko**

                                               **A.O. Levanchuk**

                                               **A.V. Maliarenko**

                                               **O.V. Stupak**



**DATE OF TRANSLATION:**          14-Jan-21

**ELECTRONIC FILE NAMES:**        Order of the High Specialized Court in case No. 296_9905_15-ц

**SOURCE LANGUAGE:**              Ukrainian

**TARGET LANGUAGES:**             English

**TRANSPERFECT JOB ID:**          US0888264

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

TCert v. 4.0

Категорія справи № **296/9905/15-Ц**: **Цивільні справи (до 01.01.2019); Позовне провадження; Інші справи позовного провадження.**

Надіслано судом: **не визначено.** Зареєстровано: **31.05.2020.** Оприлюднено: **01.06.2020.**

Дата набрання законної сили: **08.04.2020**

Номер судового провадження: **61-1803ск17**



Верховний
Суд

ПОСТАНОВА

ІМЕНЕМ УКРАЇНИ

8 квітня 2020 року

м. Київ

справа № 296/9905/15-ц

провадження № 61-1803св17

Верховний Суд у складі колегії суддів Другої судової палати Касаційного цивільного суду:

головуючого - судді Кузнєцова В. О.,

суддів: Жданової В. С., Карпенко С. О. (судді-доповідача), Стрільчука В. А., Тітова М. Ю.,

учасники справи:

позивач - Житомирське об`єднане управління Пенсійного фонду України в Житомирській області,

відповідач - ОСОБА_1 ,

розглянувши у порядку спрощеного позовного провадження касаційну скаргу Житомирського об`єднаного управління Пенсійного фонду України в Житомирській області на рішення Корольовського районного суду м. Житомира від 22 вересня 2016 року, ухвалене у складі судді Бондарчука В. В., та рішення апеляційного суду Житомирської області від 12 грудня 2017 року, ухвалене колегією у складі суддів: Галацевич О. М., Григорусь Н. Й., Коломієць О. С.,

ВСТАНОВИВ:

**Короткий зміст позовних вимог**

У серпні 2016 року Управління Пенсійного фонду України в м. Житомирі Житомирської області звернулося з позовом до ОСОБА_1 про стягнення надміру виплаченої пенсії за період з

12 березня 1999 року до 31 травня 2009 року у розмірі 35 596,04 гривень.

В обґрунтування позову послалося на те, що 20 квітня 1999 року позивач звернулася до Корольовського районного управління соціального захисту населення міста Житомира із заявою про призначення пенсії за віком та вказала, що пенсія з інших підстав чи від іншого відомства їй не призначалася.

Протоколом від 20 квітня 1999 року Корольовське районне управління соціального захисту населення м. Житомира призначило ОСОБА_1 пенсію за віком з 12 березня 1999 року щомісячно. У травні 2009 року позивач дізнався, що відповідач перебуває на обліку в Головному управлінні Пенсійного фонду України в Житомирській області і з 3 лютого 1996 року отримує пенсію у зв`язку з втратою годувальника.

Оскільки ОСОБА_1 , звернувшись за призначенням пенсії за віком, приховала, що отримує іншу державну пенсію, за період з 12 березня 1999 року до 31 травня 2009 року їй надміру виплачено 35 596,04 гривень. За вказаним фактом щодо відповідача здійснювалося досудове розслідування у кримінальній справі за ознаками вчинення злочину, передбаченого частиною другою статті 192, частинами другою та третьою статті 358 КК України.

За таких обставин та на підставі статті 1166 ЦК України позивач просив стягнути з ОСОБА_1 надміру виплачену пенсію у розмірі 35 596,04 гривень як майнову шкоду, завдану її неправомірними діями.

**Короткий зміст судових рішень судів першої і апеляційної інстанцій та мотиви їх прийняття**

Протокольною ухвалою Корольовського районного суду Житомирської області від 22 вересня 2016 року замінено позивача Управління Пенсійного фонду України в м. Житомирі Житомирської області на правонаступника -Житомирське об`єднане управління Пенсійного фонду України в Житомирській області.

Рішенням Корольовського районного суду Житомирської області від 22 вересня 2016 року у задоволенні позову відмовлено. Стягнено з Житомирського об`єднаного управління Пенсійного фонду України в Житомирській області у дохід держави 1 378 гривень судового збору.

Відмовляючи у задоволенні позовних вимог, суд першої інстанції виходив з того, що позивач не довів вину відповідача в отриманні надмірних пенсійних виплат та зловживання з її боку при поданні документів про призначення пенсії за віком.

В апеляційному порядку суди справу переглядали неодноразово.

Останнім рішенням апеляційного суду Житомирської області від 12 грудня 2017 року рішення Корольовського районного суду міста Житомира від 22 вересня 2016 року в частині стягнення з Житомирського об`єднаного управління Пенсійного фонду України в Житомирській області судового збору скасовано.

У іншій частині рішення Корольовського районного суду міста Житомира від 22 вересня 2016

року залишено без змін. Стягнено з Житомирського об`єднаного управління Пенсійного фонду України в Житомирській області на користь ОСОБА_1 427,15 гривень у відшкодування судового збору.

Мотивуючи рішення, суд апеляційної інстанції зазначив, що до спірних правовідносин підлягає застосуванню стаття 1215 ЦК України, згідно з якою не підлягає поверненню безпідставно набута пенсія, яка виплачена за відсутності рахункової помилки з боку платника і недобросовісності з боку набувача. Оскільки у цій справі не встановлено ні рахункової помилки з боку Житомирського об`єднаного управління Пенсійного фонду України в Житомирській області, ні недобросовісності у діях ОСОБА_1 , суд апеляційної інстанції вважав правильним по суті висновок суду першої інстанції про відмову у стягненні 35 596,04 гривень надміру виплаченої пенсії.

Скасовуючи рішення Корольовського районного суду міста Житомира від 22 вересня 2016 року в частині стягнення з Житомирського об`єднаного управління Пенсійного фонду України в Житомирській області судового збору, апеляційний суд послався на те, що відповідно до пункту 18 частини першої статті 5 Закону України «Про судовий збір» у редакції, чинній на день подання позову, Пенсійний фонд України та його органи звільнялися від сплати судового збору.

**Короткий зміст вимог касаційної скарги та узагальнені доводи особи, яка її подала**

У грудні 2017 року Житомирське об`єднане управління Пенсійного фонду України в Житомирській області звернулося до Вищого спеціалізованого суду України з розгляду цивільних і кримінальних справ з касаційною скаргою, у якій просило рішення Корольовського районного суду від 22 вересня 2016 року та рішення апеляційного суду Житомирської області від 12 грудня 2017 року скасувати і ухвалити нове рішення про задоволення позову.

Касаційна скарга мотивована тим, що судові рішення судів першої та апеляційної інстанцій ухвалені з неправильним застосуванням норм матеріального права і порушенням норм процесуального права.

Заявник зазначає, що ОСОБА_1 , звертаючись до Корольовського районного управління соціального захисту населення міста Житомира із заявою про призначення пенсії за віком, діяла недобросовісно, так як приховала факт отримання пенсії у зв`язку з втратою годувальника.

Посилається на те, що у висновку експерта від 14 грудня 2009 року № 1/1127, складеному за результатами проведення почеркознавчої експертизи, відсутня конкретна відповідь на питання щодо підписання чи непідписання відповідачем заяви про призначення пенсії за віком.

На думку заявника, в силу частини другої статті 1166 ЦК України саме на відповідача покладено обов`язок спростування підписання і подання заяви із недостовірними відомостями і вона цей факт не спростувала.

Суди попередніх інстанцій, як вказує заявник, не врахували, що ухвалою Богунського районного суду м. Житомира від 4 серпня 2016 року у справі № 295/10234/16-к скасовано постанову слідчого СВ Корольовського РВ УМВС України в Житомирській області від 21 вересня 2013 року про закриття кримінального провадження, внесеного до Єдиного реєстру

досудових розслідувань за № 120013060040001011 за фактом можливих неправомірних дій ОСОБА_1 .

**Позиція інших учасників справи**

У лютому 2018 року ОСОБА_1 подала відзив на касаційну скаргу, у якому послалася на безпідставність її доводів. Вказала, що почеркознавча експертиза підтвердила непідписання нею заяви про призначення пенсії за віком, тому доводи позивача щодо обману або умисних недобросовісних дій з її боку безпідставні.

**Провадження в суді касаційної інстанції**

Відповідно до пункту 6 розділу XII «Прикінцеві та перехідні положення» Закону України «Про судоустрій і статус суддів» Вищий спеціалізований суд України з розгляду цивільних і кримінальних справ діяв в межах повноважень, визначених процесуальним законом, до початку роботи Верховного Суду та до набрання чинності відповідним процесуальним законодавством, що регулює порядок розгляду справ Верховним Судом.

15 грудня 2017 року набрав чинності Закон України від 3   жовтня 2017 року № 2147-VIII «Про внесення змін до Господарського процесуального кодексу України, Цивільного процесуального кодексу України, Кодексу адміністративного судочинства України та інших законодавчих актів», за яким судом касаційної інстанції у цивільних справах є Верховний Суд (стаття 388 ЦПК України).

Відповідно до підпункту 4 пункту 1 розділу XIII «Перехідні положення» ЦПК України у редакції Закону України від 3 жовтня 2017 року № 2147-VIII касаційні скарги (подання) на судові рішення у цивільних справах, які подані і розгляд яких не закінчено до набрання чинності цією редакцією Кодексу, передаються до Касаційного цивільного суду та розглядаються спочатку за правилами, що діють після набрання чинності цією редакцією Кодексу.

У грудні 2017 року касаційну скаргу передано до Верховного Суду.

Ухвалою Верховного Суду від 9 січня 2018 року відкрито касаційне провадження у справі і ухвалою цього суду від 20 березня 2020 року справу призначено до судового розгляду.

**Встановлені судами першої та апеляційної інстанцій фактичні обставини справи**

Суди попередніх інстанцій встановили, що ОСОБА_1 з 3 лютого 1996 року перебуває на обліку в Головному управлінні Пенсійного фонду України в Житомирській області і відповідно до Закону України «Про пенсійне забезпечення осіб, звільнених з військової служби, та деяких інших осіб» отримує пенсію у зв`язку з втратою годувальника.

20 квітня 1999 року до Корольовського районного управління соціального захисту населення міста Житомира від імені ОСОБА_1 подано заяву про призначення пенсії за віком, у якій вказано, що пенсія з інших підстав чи від іншого відомства їй не призначалася.

Протоколом від 20 квітня 1999 року № 1686 Корольовське районне управління соціального захисту населення міста Житомира призначило ОСОБА_1 державну пенсію за віком з 12 березня 1999 року.

У період 12 березня 1999 року до 31 травня 2009 року відповідач одночасно отримувала пенсію за віком та пенсію у зв`язку з втратою годувальника; надміру виплачена за цей період сума становить 35 596,04 гривень.

Розпорядженням Управління Пенсійного фонду України в Корольовському районі міста Житомира від 20 травня 2009 року закрито особовий рахунок ОСОБА_1 з 1 червня 2009 року.

З висновку експерта відділу кримінальних експертиз Науково-дослідного експертно-криміналістичного центру при Управлінні МВС України в Житомирській області від 14 грудня 2009 року у справі № 1/1127, складеному за результатами проведення почеркознавчої експертизи, суди встановили, що підписи у графах « Назначалась » та « Подпись заявителя» заяви про призначення пенсії за віком ймовірно виконані не ОСОБА_1 , а іншою особою.

Вироком Корольовського районного суду м. Житомира від 14 березня 2012 року ОСОБА_1 визнано винною у вчиненні злочинів, передбачених частиною другою статті 192, частинами другою та третьою статті 358 КК України, проте ухвалою апеляційного суду Житомирської області від 26 лютого 2013 року вказаний вирок скасовано із направленням справи прокурору міста Житомира для організації додаткового розслідування.

Постановою старшого слідчого СВ Корольовського РВ УМВС України в Житомирській області від 21 вересня 2013 року кримінальне провадження № 12013060040001101, внесене до Єдиного реєстру досудових розслідувань за фактом можливих неправомірних дій ОСОБА_1 , закрито у зв`язку з відсутністю в діянні складу кримінального правопорушення, передбаченого частиною  другою статті 192, частинами другою та третьою статті 358 КК України.

Ухвалою Богунського районного суду м. Житомира від 4 серпня 2016 року цю постанову скасовано.

19 червня 2014 року кримінальне провадження № 12013060040001101 повторно закрито у зв`язку з відсутністю в діянні ОСОБА_1 складу кримінального правопорушення, передбаченого частиною  другою статті 192, частинами другою та третьою статті 358 КК України.

Обставин, які б свідчили про те, що надмірна виплата ОСОБА_1 пенсії відбулася у зв`язку з рахунковою помилкою органів Пенсійного фонду України або через недобросовісні дії набувача, судами не встановлено.

**Позиція Верховного Суду, застосовані норми права та мотиви, з яких виходить суд при прийнятті постанови**

Відповідно до статті 3 ЦПК України провадження в цивільних справах здійснюється відповідно до законів, чинних на час вчинення окремих процесуальних дій, розгляду і вирішення справи.

Згідно з пунктом 2 розділу II «;Прикінцеві та перехідні положення» Закону України «Про

внесення змін до Господарського процесуального кодексу України, Цивільного процесуального кодексу України, Кодексу адміністративного судочинства України щодо вдосконалення порядку розгляду судових справ» № 460-IX від 15 січня 2020 року касаційні скарги на судові рішення, які подані і розгляд яких не закінчено до набрання чинності цим Законом, розглядаються в порядку, що діяв до набрання чинності цим Законом.

Відповідно до частини другої статті 389 ЦПК України у редакції Закону України від 3 жовтня 2017 року № 2147-VIII підставами касаційного оскарження є неправильне застосування судом норм матеріального права чи порушення норм процесуального права.

Під час розгляду справи в касаційному порядку суд перевіряє в межах касаційної скарги правильність застосування судом першої або апеляційної інстанції норм матеріального чи процесуального права і не може встановлювати або (та) вважати доведеними обставини, що не були встановлені в рішенні чи відкинуті ним, вирішувати питання про достовірність того чи іншого доказу, про перевагу одних доказів над іншими (частина перша статті 400 ЦПК України у редакції Закону України від 3 жовтня 2017 року № 2147-VIII).

Вивчивши матеріали цивільної справи та перевіривши доводи касаційної скарги і відзиву на неї, суд дійшов таких висновків.

Згідно зі статтею 1 Закону України «Про пенсійне забезпечення» у редакції, чинній на час подання відповідачем заяви про призначення пенсії за віком, громадяни України мають право на державне пенсійне забезпечення за віком, по інвалідності, у зв`язку з втратою годувальника та в інших випадках, передбачених Законом.

Відповідно до статті 6 Закону України «Про пенсійне забезпечення» у тій же редакції особам, які мають одночасно право на різні державні пенсії, призначається одна пенсія за їх вибором, за винятком пенсій інвалідам внаслідок поранення, контузії чи каліцтва, що їх вони дістали при захисті Батьківщини або при виконанні інших обов`язків військової служби, або внаслідок захворювання, пов`язаного з перебуванням на фронті чи з виконанням інтернаціонального обов`язку.

Стаття 103 Закону України «Про пенсійне забезпечення» у редакції, чинній на час подання позову, встановлювала, що наслідком надмірної виплати пенсіонерові пенсії через зловживання з його боку (в результаті подання документів з явно неправильними відомостями, неподання відомостей про зміни у складі членів сім`ї тощо) є стягнення таких сум.

Згідно з частиною першою статті 50 Закону України «Про загальнообов`язкове державне пенсійне страхування» у редакції, чинній на час подання позову, суми пенсій, виплачені надміру внаслідок зловживань з боку пенсіонера або подання страхувальником недостовірних даних, можуть бути повернуті пенсіонером добровільно або стягуються на підставі рішень територіальних органів Пенсійного фонду чи в судовому порядку.

Звертаючись з цим позовом до ОСОБА_1 про стягнення надміру виплаченої пенсії за період з 12 березня 1999 року до 31 травня 2009 року у розмірі 35 596,04 гривень, Житомирське об`єднане управління Пенсійного фонду України в Житомирській області послалося на статтею 1166 ЦК України і просило стягнути дану суму як майнову шкоду, завдану неправомірними діями

відповідача.

Проте сума надміру виплаченої пенсії є майном, збереженим без достатньої правової підстави, і на правовідносини щодо повернення цієї суми поширюються положення глави 83 ЦК України,натомість стаття 1166 ЦК України, яка врегульовує порядок відшкодування шкоди у деліктних правовідносинах, до спірних правовідносин не підлягає застосуванню.

Водночас незгода суду з наведеним у позовній заяві правовим обґрунтуванням спірних правовідносин не є підставою для відмови у позові. Зазначення позивачем конкретної правової норми на обґрунтування позову не є визначальним при вирішенні судом питання про те, яким законом слід керуватися при вирішенні спору.

Суди, з`ясувавши при розгляді справи, що сторона або інший учасник судового процесу на обґрунтування своїх вимог або заперечень послався не на ті норми права, що фактично регулюють спірні правовідносини, самостійно здійснюють правильну правову кваліфікацію останніх та застосовують для прийняття рішення ті норми матеріального і процесуального права, предметом регулювання яких є відповідні правовідносини.

Такі дії суди вчиняють згідно з принципом jura novit curia («суд знає закони»), за змістом якого суди уповноважені під час розгляду справи самостійно перевірити доводи сторін щодо порушення їх прав.

Оскільки саме на суд покладено обов`язок надати правову кваліфікацію правовідносинам сторін, виходячи із фактів, установлених під час розгляду справи, та визначення, яка правова норма підлягає застосуванню для вирішення спору, і самостійне застосування судом для прийняття рішення саме такої норми матеріального права не суперечить положенням цивільного процесуального законодавства.

Подібні за змістом правові висновки викладені у постанові Великої Палати Верховного Суду від 4 грудня 2019 року у справі № 917/1739/17.

Суд апеляційної інстанції, переглядаючи справу, дійшов правильного висновку про те, що спірні правовідносини, які виникли щодо стягнення надміру виплаченої пенсії, врегульовані статтями 1212, 1215 ЦК України.

Так, частиною першою статті 1212 ЦК України передбачено, що особа, яка набула майно або зберегла його у себе за рахунок іншої особи (потерпілого) без достатньої правової підстави (безпідставно набуте майно), зобов`язана повернути потерпілому це майно. Особа зобов`язана повернути майно і тоді, коли підстава, на якій воно було набуте, згодом відпала.

Згідно з пунктом першим частини першої статті 1215 ЦК України не підлягає поверненню безпідставно набуті заробітна плата і платежі, що прирівнюються до неї, пенсії, допомоги, стипендії, відшкодування шкоди, завданої каліцтвом, іншим ушкодженням здоров`я або смертю, аліменти та інші грошові суми, надані фізичній особі як засіб до існування, якщо їх виплата проведена фізичною або юридичною особою добровільно, за відсутності рахункової помилки з її боку і недобросовісності з боку набувача.

Тлумачення цієї норми свідчить, що законодавцем передбачені два виключення із відповідного правила: по-перше, якщо виплата відповідних грошових сум є результатом рахункової помилки зі сторони особи, яка проводила таку виплату; по-друге, у разі недобросовісності зі сторони набувача виплати.

При цьому правильність здійснених розрахунків, за якими була проведена виплата, а також добросовісність набувача презюмуються, і відповідно тягар доказування наявності рахункової помилки та недобросовісності набувача покладається на платника відповідних грошових сум.

Оскільки у ході розгляду справи судами попередніх інстанцій не встановлено недобросовісності у діях ОСОБА_1 або наявність рахункової помилки з боку органів Пенсійного фонду України при виплаті їй пенсії за віком, висновок щодо відмови у стягненні з відповідача надміру виплаченої пенсії у розмірі 35 596,04 гривень є правильним.

Доводи касаційної скарги про те, що ОСОБА_1 , звертаючись до Корольовського районного управління соціального захисту населення міста Житомира із заявою про призначення пенсії за віком, діяла недобросовісно і приховала факт отримання пенсії у зв`язку з втратою годувальника, касаційний суд відхиляє, оскільки належність ОСОБА_1 підписів на цій заяві не доведена і за результатами почеркознавчої експертизи експерт дійшов висновку про ймовірне виконання таких підписів не відповідачем, а іншою особою.

Твердження заявника про відсутність у висновку експерта від 14 грудня 2009 року у справі № 1/1127 конкретної відповіді на питання щодо підписання чи непідписання відповідачем заяви про призначення пенсії за віком не спростовують правильність висновків судів попередніх інстанцій про відмову у позові, так як жодних доказів зворотного позивач не подав, незважаючи на те, що доведення неправомірності дій набувача коштів покладається на платника відповідних грошових сум.

Посилання заявника на частину другу статті 1166 ЦК України, згідно з якою на завдавача шкоди покладається обов`язок доведення відсутності у цьому своєї вини, не мають правового значення, так як стаття 1166 ЦК України не поширює дію на спірні правовідносини, які врегульовані положеннями глави 83 ЦК України.

Касаційний суд відхиляє доводи заявника про те, що неправомірність дій ОСОБА_1 підтверджена здійсненням щодо неї досудового розслідування у кримінальному провадженні № 12001306004001011, оскільки це провадження закрите не підставі пункту 2 частини першої статті 284 КПК України, а саме у зв`язку з відсутністю в діянні складу кримінального правопорушення. Крім того, саме по собі здійснення досудового розслідування за фактом можливого вчинення кримінального правопорушення не свідчить про неправомірність дій особи, так як за змістом статті 62 Конституції України особа вважається невинуватою у вчиненні злочину і не може бути піддана кримінальному покаранню, доки її вину не буде доведено в законному порядку і встановлено обвинувальним вироком суду.

Європейський суд з прав людини вказав, що пункт 1 статті 6 Конвенції про захист прав людини і основоположних свобод зобов`язує суди давати обґрунтування своїх рішень, але це не може сприйматись як вимога надавати детальну відповідь на кожен аргумент.

Межі цього обов`язку можуть бути різними в залежності від характеру рішення. Крім того, необхідно брати до уваги, між іншим, різноманітність аргументів, які сторона може представити в суд, та відмінності, які існують у державах-учасницях, з огляду на положення законодавства, традиції, юридичні висновки, викладення та формулювання рішень.

Таким чином, питання, чи виконав суд свій обов`язок щодо подання обгрунтування, що випливає зі статті 6 Конвенції, може бути визначено тільки у світлі конкретних обставин справи (рішення у справі «Проніна проти України»). Оскаржувані судові рішення відповідають критерію обгрунтованості судового рішення.

За таких обставин суд касаційної інстанції дійшов висновку, що суди попередніх інстанцій, встановивши фактичні обставини справи, які мають значення для правильного її вирішення, ухвалили судові рішення щодо відмови у стягненні надміру виплаченої пенсії з додержанням норм матеріального і процесуального права, що відповідно до статті 410 ЦПК України у редакції Закону України від 3 жовтня 2017 року № 2147-VIII є підставою для залишення касаційної скарги без задоволення, а рішення суду першої інстанції в частині, залишеній без змін судом апеляційної інстанції, та рішення апеляційного суду без змін.

**Щодо судових витрат**

Оскільки касаційна скарга підлягає залишенню без задоволення, підстав для нового розподілу судових витрат, понесених у зв`язку з розглядом справи у судах першої та апеляційної інстанцій, а також розподілу судових витрат, понесених у зв`язку з переглядом справи у суді касаційної інстанції, немає.

Керуючись статтею 409, статтею 410 ЦПК України у редакції Закону України від 3 жовтня 2017 року № 2147-VIII та статтею 416 ЦПК України, Верховний Суд у складі колегії суддів Другої судової палати Касаційного цивільного суду

ПОСТАНОВИВ :

Касаційну скаргу Житомирського об`єднаного управління Пенсійного фонду України в Житомирській області залишити без задоволення.

Рішення Корольовського районного суду м. Житомира від 22 вересня 2016 року в частині, залишеній без змін судом апеляційної інстанції, та рішення апеляційного суду Житомирської області від 12 грудня 2017 року залишити без змін.

Постанова суду касаційної інстанції набирає законної сили з моменту її прийняття, є остаточною і оскарженню не підлягає.

Головуючий Судді: В. О. Кузнєцов В. С. Жданова С. О. Карпенко В. А. Стрільчук   М. Ю. Тітов

Category of the case No.**296/9905/15-ц**: **Civil cases (before01/01/2019); Action proceedings; Other cases of action proceedings.**
Sent by the court: **undefined.** Registered: **05/31/2020.** Made public: **06/01/2020.**
Date of entry into force: **04/08/2020**
Proceedings number: **61-1803ск17**



Supreme
Court

JUDGMENT

IN THE NAME OF UKRAINE

April 08, 2020

Kyiv

case No. 296/9905/15-ц

proceeding No. 61-1803св17

The Supreme Court, composed of a Panel of Judges of the Second Judicial Chamber of the Civil Court of Cassation:

presiding - judge V.O. Kuznetsov,

judges: V.S. Zhdanova, S.O. Karpenko (judge-rapporteur), V.A. Strilchuk, M.Yu. Titov,

participants in the case:

plaintiff - Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region,

defendant – PERSON_1,

having considered in the manner of simplified claim proceedings the cassation appeal of the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region against the decision of the Koroliovskyi District Court of Zhytomyr dated September 22, 2016, made by Judge V.V. Bondarchuk and the decision of the Court of Appeal of Zhytomyr Region dated December 12, 2017, made by a panel composed of judges: O.M. Halatsevych, N.Y. Hryhorus, O.S. Kolomiets,

FOUND:

**Summary of claims**

In August 2016, the Administration of the Pension Fund of Ukraine in Zhytomyr, Zhytomyr Region filed a claim against PERSON_1 for the recovery of overpaid pension for the period from March 12, 1999 to May 31, 2009 in the amount of 35,596.04 hryvnias.

In support of the claim, it referred to the fact that on April 20, 1999 the plaintiff applied to the Koroliovskyi District Administration for Social Protection of Population of Zhytomyr with an application for the awarding a retirement pension and indicated that the pension was not intended for her on other grounds or from another department.

By minutes dated April 20, 1999, the Koroliovskyi District Administration of Social Protection of the Population of Zhytomyr assignedPERSON_1 a retirement pension from March 12, 1999 on a monthly basis. In May 2009, the plaintiff found out that the defendant was registered with the Main Department of the Pension Fund of Ukraine in the Zhytomyr Region and from February 03, 1996 received a survivor`s pension.

Since PERSON_1, having applied for the assignment of a retirement pension, concealed that she was receiving another state pension, for the period from March 12, 1999 to May 31, 2009, she was overpaid 35,596.04 hryvnias. On this fact, a pre-trial investigation was conducted in relation to the defendant in a criminal case on the grounds of committing a crime provided for by part two of Article 192, parts two and three of Article 358 of the CC [Criminal Code] of Ukraine.

Under such circumstances and on the basis of Article 1166 of the CC [Civil Code] of Ukraine, the plaintiff asked to recover from PERSON_1 the overpaid pension in the amount of 35,596.04 hryvnias as pecuniary damage caused by her illegal actions.

**Summary of court decisions of the courts of first and appellate instances and the reasons for their adoption**

By the protocol decision of the Koroliovskyi District Court of Zhytomyr Region dated September 22, 2016, the plaintiff Administration of the Pension Fund of Ukraine in  Zhytomyr, Zhytomyr Region was replaced with the legal successor – Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region.

By the decision of the Koroliovskyi District Court of Zhytomyr Region dated September 22, 2016, the claim was rejected. 1,378 hryvnias of the court fee were recovered from the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region in the income of the state.

In refusing to satisfy the claims, the Court of First Instance proceeded from the fact that the plaintiff did not prove the defendant's guilt in receiving excessive pension payments and abuse on her part when submitting documents on the awarding a retirement pension.

On appeal, the courts have considered the case several times.

By the latest decision of the Court of Appeal of Zhytomyr Region dated December 12, 2017 the decision of the Koroliovskyi District Court of Zhytomyr dated September 22, 2016 regarding the recovery of the court fee from the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region was canceled.

The rest of the decision of the Koroliovskyi District Court of Zhytomyr dated September 22, 2016 was upheld. 427.15 hryvnias in reimbursement for the court fee were recovered from the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region in favor of PERSON_1.

Motivating the decision, the Court of Appeal noted that <u>Article 1215 of the CC [Civil Code] of Ukraine</u>, according to which an unjustifiably acquired pension paid in the absence of a counting error on the part of the payer and bad faith on the part of the recipient, is not subject to return, is applicable to the disputed legal relations. Since in this case neither a counting error on the part of the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region, nor bad faith in the actions of PERSON_1 was established, the Court of Appeal considered the conclusion of the Court of First Instance to refuse to recover 35,596.04 hryvnias of overpaid pension as correct on merits.

Canceling the decision of the Koroliovskyi District Court of Zhytomyr dated September 22, 2016 regarding the recovery of the court fee from the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region, the Court of Appeal referred to the fact that, in accordance with item 18 of part one of <u>Article 5 of the Law of Ukraine "On Court Fees"</u> as amended on the day the claim was filed, the Pension Fund of Ukraine and its bodies were exempted from paying court fees.

**Summary of the requirements of the cassation appeal and generalized arguments of the person who submitted it**

In December 2017, the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region appealed to the High Specialized Court of Ukraine for Civil and Criminal Matters with a cassation appeal, in which it asked to cancel the decision of the Koroliovskyi District Court dated September 22, 2016 and the decision of the Court of Appeal of Zhytomyr Region dated December 12, 2017 and make a new decision to satisfy the claim.

The cassation appeal is motivated by the fact that the court decisions of the courts of first and appellate instances were made with incorrect application of substantive law and a violation of procedural law.

The applicant notes that PERSON_1, referring to the Koroliovskyi District Administration for Social Protection of Population of Zhytomyr with a statement about the assignment of the retirement pension, acted in bad faith, since it concealed the fact of receiving a survivor`s pension.

It refers to the fact that in the expert opinion No. 1/1127 dated December 14, 2009, drawn up based on the results of the handwriting examination, there is no specific answer to the question of whether the defendant signed or did not sign an application for the assignment of the retirement pension.

According to the applicant, by virtue of part two of <u>Article 1166 of the CC [Civil Code] of Ukraine</u>, it is the defendant who is obliged to refute the signing and submission of an application with inaccurate information, and she did not refute this fact.

The courts of previous instances, as the applicant points out, did not take into account that by the decision of the Bohunskiy District Court of Zhytomyr dated August 04, 2016 in case No. 295/10234/16-к the decision of the investigator of the Koroliovskyi DD of the AMIA of Ukraine in the Zhytomyr Region dated September 21, 2013 on ceasing criminal proceedings entered in the Unified Register of Pre-trial Investigations under No. 120013060040001011 on the fact of possible illegal actions of PERSON_1, was canceled.

**Position of other participants in the case**

In February 2018 PERSON_1 filed a response to the cassation appeal, in which she referred to the groundlessness of her arguments. She pointed out that the handwriting examination confirmed that she had not signed an application for the assignment of the retirement pension therefore the plaintiff's arguments regarding deception or willful fraud on her part are groundless.

**Proceedings in a court of cassation**

According to item 6 of Section XII "Final and Transitional Provisions" of the Law of Ukraine "On the Judiciary and the Status of Judges" the High Specialized Court of Ukraine for Civil and Criminal Matters acted within the powers determined by the procedural law, pending the commencement of the operation of the Supreme Court and until the entry into force of the relevant procedural legislation governing the procedure for considering cases by the Supreme Court.

On December 15, 2017, the Law of Ukraine No. 2147-VIII dated October 03, 2017 "On Amendments to the Commercial Procedure Code of Ukraine, the Civil Procedure Code of Ukraine, the Code of Administrative Justice Ukraine and other legislative acts" came into force, according to which the court of cassation in civil cases is the Supreme Court (Article 388 of the CPC [Civil Procedure Code] of Ukraine).

In accordance with sub-item 4 of item 1 of Section XIII "Transitional Provisions" of the CPC [Civil Procedure Code] of Ukraine as amended by the Law of Ukraine No. 2147-VIII dated October 03, 2017, cassation complaints (appeals) against court decisions in civil cases, filed and consideration of which has not been completed before the entry into force of this version of the Code, are transferred to the Cassation Civil Court and are considered first with the rules in force after the entry into force of this version of the Code.

In December 2017, the cassation appeal was transferred to the Supreme Court.

By the decision of the Supreme Court dated January 09, 2018, the cassation proceedings in the case were initiated and by the decision of this court dated March 20, 2020, the case was scheduled for trial.

**The factual circumstances of the case established by the courts of first and appeal instances**

The courts of previous instances established that PERSON_1 since February 03, 1996 is registered with the Main Department of the Pension Fund of Ukraine in Zhytomyr Region and in accordance with the Law of Ukraine "On Pension Support to Persons Dismissed from Military Service and Some Other Persons" receives a survivor`s pension.

On April 20, 1999, on behalf of PERSON_1, an application for the assignment of the retirement pension was submitted to the Koroliovskyi District Administration for Social Protection of Population of Zhytomyr, which indicated that the pension on other grounds or another department was not assigned to her.

By the Minutes No. 1686 dated April 20, 1999, the Koroliovskyi District Administration for Social Protection of Population of Zhytomyr has assigned to PERSON_1 a state retirement pension since March 12, 1999.

From March 12, 1999 to May 31, 2009, the defendant simultaneously received the retirement pension and the survivor`s pension; the amount overpaid for this period is 35,596.04 hryvnias.

By the order of the Administration of the Pension Fund of Ukraine in the Koroliovskyi District of Zhytomyr dated May 20, 2009, an individual account of PERSON_1 was closed from June 01, 2009.

From the conclusion of the expert of the Department of Criminal Examinations of the Scientific Research Expert and Forensic Center under the Directorate of the MIA of Ukraine in the Zhytomyr Region dated December 14, 2009 in case No. 1/1127, drawn up based on the results of the handwriting examination, the courts established that the signatures in the columns "Assigned" and "Signature of the applicant" of the application for the assignment of the retirement pension were probably executed not by PERSON_1, but by another person.

By the sentence of Koroliovskyi District Court of Zhytomyr dated March 14, 2012 PERSON_1 was found guilty of committing crimes provided for in part two of Article 192, parts two and three of Article 358 of the CC [Criminal Code] of Ukraine, however, by the decision of the Court of Appeal of the Zhytomyr Region dated February 26, 2013, this verdict was canceled and the case was sent to the prosecutor of Zhytomyr to organize an additional investigation.

By the judgment of the senior investigator of the ID of the Koroliovskyi DD of the AMIA of Ukraine in the Zhytomyr Region dated September 21, 2013, criminal proceedings No. 12013060040001101, entered into the Unified Register of Pre-trial Investigations on the fact of possible illegal actions of PERSON_1, were ceased due to the absence in the actions of a criminal offense provided for by part two of Article 192, parts two and three of Article 358 of the CC of Ukraine.

By the decision of the Bohunskiy District Court of Zhytomyr dated August 04, 2016, this judgment was canceled.

On June 19, 2014, criminal proceedings No. 12013060040001101 were re-ceased due to the absence in the actions of PERSON_1 of a criminal offense provided for in part two of Article 192, parts two and three of Article 358 of the CC [Criminal Code] of Ukraine.

The courts have not established the circumstances that would indicate that the overpayment of pension to PERSON_1 took place due to a counting error of the Pension Fund of Ukraine or through unfair actions of the recipient.

**The position of the Supreme Court, the rules of law applied and the motives from which the court proceeds when adopting a decision**

According to Article 3 of the CPC [Civil Procedure Code] of Ukraine, civil proceedings are conducted in accordance with the laws in force during the performance of certain procedural actions, consideration and resolution of the case.

According to item 2 of Section II "<u>:Final and Transitional Provisions" of the Law of Ukraine "On Amendments to the Commercial Procedure Code of Ukraine, the Civil Procedure Code of Ukraine, the Code of Administrative Justice of Ukraine regarding the improvement of the procedure for considering court cases" No. 460-IX dated January 15,</u> 2020 cassation appeals against court decisions that have been submitted and the consideration of which has not been completed before the entry into force of this Law shall be considered in accordance with the procedure in force before the entry into force of this Law.

According to the part two of <u>Article 389 of the CPC [Civil Procedure Code] of Ukraine</u> as amended by the <u>Law of Ukraine No. 2147-VIIIdated October 03, 2017</u>, the grounds for cassation appeal are the court's incorrect application of substantive law or a violation of procedural law.

When considering a case in cassation, the court verifies, within the scope of the cassation appeal, the correctness of the application by the court of the first or appeal instances of the norms of substantive or procedural law and cannot establish and (or) consider proven circumstances that were not established in the decision or were rejected by it, decide the question of the reliability of this or that evidence, the advantage of some evidence over others (part one of <u>Article 400 of the CPC [Civil Procedure Code]of Ukraine</u> as amended by the <u>Law of Ukraine No. 2147-VIII dated October 03, 2017</u>).

Having studied the materials of the case and having checked the arguments of the cassation appeal and the response to it, the court came to the following conclusions.

According to <u>Article 1 of the Law of Ukraine "On Pension Support"</u> in the version in effect at the time the defendant submits an application for the assignment of the retirement pension, citizens of Ukraine have the right to state retirement and disability pensions, survivor`s pensions and in other cases provided by law.

In accordance with <u>Article 6 of the Law of Ukraine "On Pension Support"</u> in the same version, persons who are simultaneously entitled to various state pensions are assigned one pension of their choice, with the exception of pensions for disabled people due to injury, concussion or injury received while defending the Motherland or while performing other duties of military service, or as a result of an illness associated with being at the front or with the performance of an international duty.

<u>Article 103 of the Law of Ukraine "On Pension Support"</u> in the version in effect at the time of filing the claim established that the consequence of excessive payment of a pension to a pensioner for abuse on his part (as a result of submission of documents with deliberately incorrect information, failure to provide information about changes in the composition of family members, etc.) is the recovery of such amounts.

According to the part one of <u>Article 50 of the Law of Ukraine "On Compulsory State Pension Insurance"</u> in the wording effective at the time of filing the claim, the amounts of pensions overpaid due to abuse on the part of the pensioner or the provision of inaccurate data by the insured may be returned by the pensioner voluntarily or recovered on the basis of decisions of the territorial bodies of the Pension Fund or in court.

Appealing with this claim to PERSON_1 for the recovery of the overpaid pension for the period from March 12, 1999 to May 31, 2009 in the amount of 35,596.04 hryvnias, the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region referred to <u>Articles 1166 of the</u>

CC [Civil Code] of Ukraine and asked to recover this amount as pecuniary damage caused by unlawful actions of the defendant.

However, the amount of overpaid pension is property kept without a sufficient legal basis, and the provisions of Chapter 83 of the CC [Civil Code] of Ukraine apply to the legal relations for the return of this amount, but Article 1166 of the CC [Civil Code] of Ukraine, which regulates the procedure for compensation for harm in tort legal relations, is not applicable to the disputed legal relations.

At the same time, the court's disagreement with the legal substantiation of the disputed legal relations given in the statement of claim is not a ground for refusing the claim. The plaintiff's indication of a specific legal norm in substantiation of the claim is not decisive in the court's decision on the question of which law should be followed when resolving the dispute.

The courts, having found out during the consideration of the case that a party or another participant in the trial in support of their claims or objections referred to the wrong norms of law, which in fact regulate disputed legal relations, independently exercise the correct legal qualifications of the latter and apply those norms of substantive and procedural law, the subject of regulation of which is the corresponding legal relations.

Such actions of the court are conducted in accordance with the principle of jura novit curia ("the court knows the laws"), according to the content of which the courts are empowered to independently verify the arguments of the parties about the violation of their rights when considering a case.

Since it is the court that is charged with the obligation to provide legal qualifications to the legal relations of the parties, based on the facts established during the consideration of the case, and to determine which legal norm is to be applied to settle the dispute, and the independent application by the court of this particular norm of substantive law to make a decision does not contradict the provisions of civil procedural legislation.

Legal conclusions of similar content are set out in the decision of the Grand Chamber of the Supreme Court dated December 04, 2019 in case No. 917/1739/17.

The Court of Appeal, reviewing the case, came to the correct conclusion that the controversial legal relations arising from the recovery of the overpaid pension was settled by Articles 1212, 1215 of the CC [Civil Code] of Ukraine.

So, part one of Article 1212 of the CC [Civil Code] of Ukraine provides that a person who acquired property or kept it at the expense of another person (victim) without a sufficient legal basis (groundlessly acquired property) is obliged to return this property to the victim. The person is obliged to return the property even when the basis on which it was acquired has disappeared over time.

According to item one of the part one of Article 1215 of the CC [Civil Code] of Ukraine, unjustifiably acquired wages and payments that are equal to it, pensions, benefits, scholarships, compensation for harm caused by injury, other damage to health or death, alimony and other monetary amounts provided to an individual as a means of subsistence are not subject to return, if their payment was made by an individual or legal entity voluntarily, in the absence of an accounting error on its part and bad faith on the part of the recipient.

The interpretation of this provision indicates that the legislator provides for two exceptions to the relevant rule: first, if the payment of the corresponding sums of money is the result of an accounting error on the part of the person who made such payment; secondly, in case of bad faith on the part of the recipient.

In this case, the correctness of the calculations for which the payment was made, as well as the good faith of the recipient are presumed and, accordingly, the burden of proving the existence of a counting error and the bad faith of the recipient rests with the payer of the corresponding sums of money.

Since in the course of the consideration of the case by the courts of previous instances, it was not established that there was bad faith in the actions of PERSON_1 or the presence of a counting error on the part of the bodies of the Pension Fund of Ukraine when paying her the retirement pension, the conclusion about the refusal to recover from the defendant the overpaid pension in the amount of 35,596.04 hryvnias is correct.

The arguments of the cassation appeal that PERSON_1, referring to the Koroliovskyi District Administration for Social Protection of Population of Zhytomyr with an application for the assignment of the retirement pension, acted in bad faith and concealed the fact of receiving a survivor`s pension, the cassation court rejects, since the belonging of the signatures of PERSON_1 in the application has not been proven and according to the results of handwriting examination the expert came to the conclusion that such signatures are likely to be executed not by the defendant, but by another person.

The applicant's statement about the absence in the expert opinion dated December 14, 2009 in case No. 1/1127 of a specific answer to the question of whether the defendant signed or did not sign the application for the retirement pension does not refute the correctness of the conclusions of the courts of previous instances about the dismissal of the claim, since the plaintiff filed no evidence to the contrary, despite the fact that the proof of the illegality of the actions of the recipient of the funds is imposed on the payer of the corresponding sums of money.

The applicant's reference to part two of <u>Article 1166 of the CC [Civil Code] of Ukraine</u>, according to which the tortfeasor is obliged to prove the absence of his fault in this, have no legal significance, since <u>Article 1166 of the CC [Civil Code] of Ukraine</u> does not apply to disputed legal relations, which are regulated by the provisions of <u>Chapter 83 of the CC [Civil Code] of Ukraine</u>.

The cassation court rejects the applicant's arguments that the illegality of the actions of PERSON_1 was confirmed by the conduct of the pre-trial investigation with respect to her in criminal proceedings No. 120013060040001011, since this proceeding was closed on the basis of item 2 of part one of <u>Article 284 of the CPC [Criminal Procedure Code] of Ukraine</u>, namely due to the absence of a criminal offense in the action. In addition, the mere conduct of a pre-trial investigation into a possible commission of a criminal offense does not indicate the illegality of the person's actions, because pursuant to <u>Article 62 of the Constitution of Ukraine</u>, a person shall be deemed innocent of committing a crime, as well as shall not be subjected to a criminal punishment, unless his/her guilt has been proved through a legal procedure and established by a court verdict of guilty.

The European Court of Human Rights has indicated that item 1 of <u>Article 6 of the Convention for the Protection of Human Rights and Fundamental Freedoms</u> obliges courts to provide reasons for their decisions, but this cannot be taken as a requirement to provide a detailed answer to every argument.

The limits of this obligation may vary depending on the nature of the decision. In addition, it is necessary to take into account, among other things, the variety of arguments a party may submit to the court, and the differences that exist in the participating States, taking into account the provisions of legislation, traditions, legal opinions, statements and wording of decisions.

Thus, the question whether the court has fulfilled its duty to provide justification, which follows from Article 6 of the Convention, can only be determined in the light of the specific circumstances of the case (decision in the case "Pronina v. Ukraine"). The disputed court decisions meet the criterion of the validity of the court decision.

In such circumstances, the court of cassation came to the conclusion that the courts of previous instances, having established the factual circumstances of the case that are important for its correct decision, made court decisions to refuse to recover the overpaid pension in compliance with the substantive and procedural law, that in accordance with <u>Article 410 of the CPC [Civil Procedure Code] of Ukraine</u> as amended by the <u>Law of Ukraine No. 2147-VIII dated October 03, 2017</u> is the basis for leaving the cassation appeal without satisfaction, and upholding the decision of the Court of First Instance in the part left unchanged by the Court of Appeal, and the decision of the Court of Appeal unchanged.

**On legal expenses**

Since the cassation appeal must be dismissed, there are no grounds for a new distribution of court costs incurred in connection with the consideration of the case in the courts of first and appeal instances, as well as the distribution of court costs incurred in connection with the review of the case in the court of cassation instance.

Guided by <u>Article 409, Article 410 of the CPC [Civil Procedure Code] of Ukraine as amended by the Law of Ukraine No. 2147-VIII dated October 03, 2017 and Article 416 of the CPC [Civil Procedure Code] of Ukraine</u>, the Supreme Court, composed of a Panel of Judges of the Second Judicial Chamber of the Civil Court of Cassation

RESOLVED:

To leave the cassation appeal of the Zhytomyr Joint Administration of the Pension Fund of Ukraine in Zhytomyr Region without satisfaction.

To uphold the decision of the Koroliovskyi District Court of Zhytomyr dated September 22, 2016 in the part left unchanged by the Court of Appeal, and the decision of the Court of Appeal of the Zhytomyr Region dated December 12, 2017.

The judgment of the Court of Cassation comes into legal force from the moment of its adoption, is final and not subject to appeal.

Presiding Judges: V.O. Kuznetsov V.S. Zhdanova S.O. Karpenko V.A. Strilchuk   M.Yu. Titov



**DATE OF TRANSLATION: 1/31/2021**

**ENGLISH ELECTRONIC FILE NAME:**
**Judgment of the Supreme Court in case 296_9905_15-ц_EN**

**SOURCE LANGUAGE: Ukrainian**
**TARGET LANGUAGE: English**
**TRANSPERFECT JOB ID: US0890664**

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

TCert v. 4.0



*З А К О Н   У К Р А Ї Н И*

**Про запобігання корупції**

**(Відомості Верховної Ради (ВВР), 2014, № 49, ст.2056)**

[…]

**Стаття 3.** Суб'єкти, на яких поширюється дія цього Закону

1. Суб'єктами, на яких поширюється дія цього Закону, є:

1) особи, уповноважені на виконання функцій держави або місцевого самоврядування:

а) Президент України, Голова Верховної Ради України, його Перший заступник та заступник, Прем'єр-міністр України, Перший віце-прем'єр-міністр України, віце-прем'єр-міністри України, міністри, інші керівники центральних органів виконавчої влади, які не входять до складу Кабінету Міністрів України, та їх заступники, Голова Служби безпеки України, Генеральний прокурор, Голова Національного банку України, його перший заступник та заступник, Голова та інші члени Рахункової палати, Уповноважений Верховної Ради України з прав людини, Уповноважений із захисту державної мови, Голова Верховної Ради Автономної Республіки Крим, Голова Ради міністрів Автономної Республіки Крим;

б) народні депутати України, депутати Верховної Ради Автономної Республіки Крим, депутати місцевих рад, сільські, селищні, міські голови;

в) державні службовці, посадові особи місцевого самоврядування;

г) військові посадові особи Збройних Сил України, Державної служби спеціального зв'язку та захисту інформації України та інших утворених відповідно до законів військових формувань, крім військовослужбовців строкової військової служби, курсантів вищих військових навчальних закладів, курсантів вищих навчальних закладів, які мають у своєму складі військові інститути, курсантів факультетів, кафедр та відділень військової підготовки;

ґ) судді, судді Конституційного Суду України, Голова, заступник Голови, члени, інспектори Вищої ради правосуддя, посадові особи секретаріату Вищої ради правосуддя, Голова, заступник Голови, члени, інспектори Вищої кваліфікаційної комісії суддів України, посадові особи секретаріату цієї Комісії, посадові особи Державної судової адміністрації України, присяжні (під час виконання ними обов'язків у суді);

д) особи рядового і начальницького складу державної кримінально-виконавчої служби, податкової міліції, особи начальницького складу органів та підрозділів цивільного захисту, Державного бюро розслідувань, Національного антикорупційного бюро України;

е) посадові та службові особи органів прокуратури, Служби безпеки України, Державного бюро розслідувань, Національного антикорупційного бюро України, дипломатичної служби, державної лісової охорони, державної охорони природно-заповідного фонду,

центрального органу виконавчої влади, що реалізує державну податкову політику, і центрального органу виконавчої влади, що реалізує державну митну політику;

є) Голова, заступник Голови Національного агентства з питань запобігання корупції;

ж) члени Центральної виборчої комісії;

з) поліцейські;

и) посадові та службові особи інших державних органів, органів влади Автономної Республіки Крим;

і) члени державних колегіальних органів;

ї) Керівник Офісу Президента України, його Перший заступник та заступники, уповноважені, прес-секретар Президента України;

й) Секретар Ради національної безпеки і оборони України, його помічники, радники, помічники, радники Президента України (крім осіб, посади яких належать до патронатної служби та які обіймають їх на громадських засадах);

[…]



*L A W   O F   U K R A I N E*

**On Prevention of Corruption**

**(Bulletin of the Verkhovna Rada (BVR), 2014, No. 49, p. 2056)**

[…]

**Article 3.** Subjects covered by this Law.

1. The subjects covered by this Law are:

1) persons authorized to perform the functions of the state or local self-government:

a) The President of Ukraine, the Chairman of the Verkhovna Rada of Ukraine, his First Deputy and Deputy, Prime Minister of Ukraine, First Vice Prime Minister of Ukraine, Vice Prime Ministers of Ukraine, ministers, other heads of central executive bodies that are not part of Cabinet of Ministers of Ukraine, and their deputies, the Head of the Security Service of Ukraine, the Prosecutor General, the Chairman of the National Bank of Ukraine, his first deputy and deputy, the chairman and other members of the Accounting Chamber, the Ukrainian Parliament Commissioner for Human Rights, the Commissioner for the Protection of the State Language, the Chairman of the Verkhovna Rada of the Autonomous Republic of Crimea, Chairman of the Council of Ministers of the Autonomous Republic of Crimea;

b) members of Parliament of Ukraine, deputies of the Verkhovna Rada of the Autonomous Republic of Crimea, deputies of local councils, rural, settlement, city mayors;

c) civil servants, officials of local self-government;

d) military officers of the Armed Forces of Ukraine, the State Service for Special Communication and Information Protection of Ukraine and other military units formed in accordance with the laws, except for military personnel of compulsory military service, cadets of higher military educational institutions, cadets of higher educational institutions that include military institutes, cadets of faculties, chairs and departments of military education;

e) judges, judges of the Constitutional Court of Ukraine, Chairman, Deputy Chairman, members, inspectors of the High Council of Justice, officials of the Secretariat of the High Judicial Council, Chairman, Deputy Chairman, members, inspectors of the High Judicial Qualifications Commission of Ukraine, officials of the secretariat of this Commission, officials of the State Judicial Administration of Ukraine, jurors (during the performance of their duties in court)

f) persons of the rank and file and the commanding staff of the State Bailiffs' Service, the tax police, persons of the commanding staff of bodies and departments of civil protection, the State Bureau of Investigation of Ukraine, the National Anti-Corruption Bureau of Ukraine;

g) officials and officers of the prosecutor's office, the Security Service of Ukraine, the State Bureau of Investigation, the National Anti-Corruption Bureau of Ukraine, the diplomatic service, the state forest protection, the state protection of the nature reserve fund, the central executive

body that implements the state tax policy, and the central executive body that implements the state customs policy;

h) Chairman, Deputy Chairman of the National Agency on Corruption Prevention;

i) members of the Central Election Commission;

j) police officers;

k) officials and officers of other state bodies, authorities of the Autonomous Republic of Crimea;

l) members of state collegial bodies;

m) Head of the Office of the President of Ukraine, his First Deputy and deputies, authorized representatives, press secretary of the President of Ukraine;

n) the Secretary of the National Security and Defense Council of Ukraine, his assistants, advisers, assistants, advisers to the President of Ukraine (except for persons whose posts relate to the executive support service and who hold them on a voluntary basis);

[…]



**DATE OF TRANSLATION: 1/31/2021**

**ENGLISH ELECTRONIC FILE NAME:**
**Law on Prevention of Corruption (Article 3)_EN**

**SOURCE LANGUAGE: Ukrainian**
**TARGET LANGUAGE: English**
**TRANSPERFECT JOB ID: US0890664**

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

TCert v. 4.0



# *З А К О Н   У К Р А Ї Н И*

## Про внесення змін до деяких законодавчих актів України щодо забезпечення діяльності Національного антикорупційного бюро України та Національного агентства з питань запобігання корупції

**(Відомості Верховної Ради (ВВР), 2015, № 17, ст.118)**

Верховна Рада України **постановляє:**

I. Внести зміни до таких законодавчих актів України:

[…]

4. Розділ III Цивільного процесуального кодексу України (Відомості Верховної Ради України, 2004 р., №№ 40-42, ст. 492) доповнити главою 9 такого змісту:

### "Глава 9
### ОСОБЛИВОСТІ ПОЗОВНОГО ПРОВАДЖЕННЯ У СПРАВАХ ПРО ВИЗНАННЯ НЕОБГРУНТОВАНИМИ АКТИВІВ ТА ЇХ ВИТРЕБУВАННЯ

**Стаття 233[1].** Пред'явлення позову про визнання необгрунтованими активів та їх витребування

1. Позов про визнання необгрунтованими активів та їх витребування від визначених в цій статті осіб подається в інтересах держави прокурором упродовж строку загальної позовної давності з дня набрання законної сили обвинувальним вироком щодо особи, уповноваженої на виконання функцій держави або місцевого самоврядування.

2. Позов про визнання необгрунтованими активів та їх витребування може бути пред'явлено до:

1) особи, уповноваженої на виконання функцій держави або місцевого самоврядування, стосовно якої набрав законної сили обвинувальний вирок суду за вчинення корупційного злочину або легалізації (відмивання) доходів, одержаних злочинним шляхом;

2) особи, пов'язаної з особою, зазначеною у пункті 1 цієї частини, - юридичної особи, яка є власником (користувачем) майна, стосовно якого існують докази того, що воно отримано або що ним користується чи розпоряджається (розпоряджалася) особа, зазначена у пункті 1 цієї частини.

У разі пред'явлення позову до особи, зазначеної у пункті 1 цієї частини, прокурор вживає заходів щодо встановлення майна, стосовно якого існують докази того, що воно отримано особою, зазначеною у пункті 1 цієї частини, або що ним користується чи розпоряджається (розпоряджалася) така особа. У разі встановлення такого майна, обов'язковим є також пред'явлення позову до юридичної особи, яка є його власником (користувачем).

3. Для цілей цієї глави:

1) термін "активи" означає грошові кошти або інше майно, а також доходи від них;

2) особами, уповноваженими на виконання функцій держави або місцевого самоврядування, є особи, зазначені у пункті 1 частини першої статті 3 Закону України "Про запобігання корупції".

**Стаття 233². Визнання необґрунтованими активів**

1. Суд визнає необґрунтованими активи, якщо судом на підставі поданих доказів не встановлено, що активи або грошові кошти, необхідні для придбання активів, щодо яких поданий позов про визнання їх необґрунтованими, були набуті на законній підставі.

**Стаття 233³. Правові наслідки визнання активів необґрунтованими**

1. Активи, визнані судом відповідно до статті 233² цього Кодексу необґрунтованими, стягуються в дохід держави.

2. Якщо суд відповідно до статті 233² цього Кодексу визнає необґрунтованими частину активів, в дохід держави стягується частина активів відповідача, яка визнана необґрунтованою, а у разі неможливості виділення такої частини - її вартість.

3. У разі неможливості звернення стягнення на активи, визнані необґрунтованими, на відповідача покладається обов'язок сплатити вартість таких активів.

4. Стягнення в дохід держави активів, визнаних судом необґрунтованими, здійснюється в порядку, встановленому Законом України "Про виконавче провадження".

[…]

II. Цей Закон набирає чинності з дня його опублікування, крім положень:

пункту 4 та підпунктів 6, 9 пункту 5 розділу I цього Закону, які набирають чинності через три місяці з дня опублікування цього Закону;

підпунктів 1, 2, абзаців другого - четвертого підпункту "а" та підпункту "б" підпункту 6 пункту 1 розділу I цього Закону, які набирають чинності з дня введення в дію Закону України "Про запобігання корупції" (Відомості Верховної Ради України, 2014 р., № 49, ст. 2056).

**Президент України**                                                    **П.ПОРОШЕНКО**

**м. Київ**
**12 лютого 2015 року**
**№ 198-VIII**



# *LAW OF UKRAINE*

## On Amending Certain Legislative Acts of Ukraine Regulating the Activities of the National Anti-Corruption Bureau of Ukraine and the National Agency on Corruption Prevention

**(Bulletin of the Verkhovna Rada (BVR), 2015, No. 17, p.118)**

The Verkhovna Rada of Ukraine **decrees:**

I. To amend the following legislative acts of Ukraine:

[…]

4. Section III of the Civil Procedure Code of Ukraine (Bulletin of the Verkhovna Rada of Ukraine, 2004, No. 40-42, p. 492) shall be supplemented with Section 9 as follows:

### "Section 9
### SPECIFIC FEATURES OF THE ACTION PROCEEDING IN THE CASE OF RECOGNIZING THE ASSETS AS UNJUSTIFIED AND THEIR RECOVERY

**Article 233**[1]. Filing of a claim for recognition of assets as unjustified and their recovery

1. A claim for recognition of assets as unjustified and their recovery from persons specified in this article is filed in the interests of the state by a prosecutor during the general limitation period from the effective date of a court verdict of guilty against a person authorized to perform the functions of the state or local self-government.

2. A claim for recognition of assets as unjustified and their recovery may be brought against:

1) a person authorized to perform the functions of the state or local self-government, in respect of which a court verdict of guilty has entered into force for committing a corruption-related crime or legalization (laundering) of proceeds criminally-obtained;

2) a person related to the person specified in item 1 of this part - a legal entity that is the owner (user) of the property, in respect of which there is evidence that it has been received or used or disposed of by the person specified in item 1 of this part.

If a claim is filed against the person specified in item 1 of this part, the prosecutor shall take measures to identify the property in relation to which there is evidence that it was received by the person specified in item 1 of this part, or that such person uses or disposes (disposed) of it. If such property is identified, it is also mandatory to file a claim against the legal entity that owns(uses) it.

3. For the purposes of this chapter:

1) the term "assets" means monetary funds or other property, as well as income from them;

2) the persons authorized to perform the functions of the state or local self-government are the persons specified in **item 1** of the first part of Article 3 of the Law of Ukraine "On Prevention of Corruption".

**Article 233²**. The recognition of assets as unjustified

1. The court recognizes the assets as unjustified if the court, on the basis of the evidence provided, has not established that the assets or funds necessary to acquire the assets in respect of which a claim has been filed for recognizing them as unjustified, were acquired lawfully

**Article 233³**. Legal consequences of recognizing assets as unjustified

1. Assets recognized by a court in accordance with Article 233² of this Code as unjustified shall be recovered to the state revenue.

2. If the court, in accordance with Article 233² of this Code, recognizes a part of the assets as unjustified, a part of the assets of the defendant, which is recognized as unjustified, and in case of impossibility of separating such a part, its value, shall be recovered to the state revenue.

3. If it is impossible to foreclose on assets recognized as unjustified, the defendant is obliged to pay the cost of such assets.

4. The recovery of assets recognized by the court as unjustified to the state revenue is performed in accordance with the procedure established by the **Law of Ukraine** "On Enforcement Proceedings".

[…]

II. The law comes into force from the date of its publication, except for the provisions:

item 4 and sub-items 6, 9 of item 5 of Chapter I of this Law, which shall enter into force three months after the date of publication of this Law;

sub-items 1, 2, paragraphs two – four of sub-item "a" and sub-item "b" of sub-item 6 of item 1 of Chapter I of this Law, which come into force from the effective date of the **Law of Ukraine** "On Prevention of Corruption" (Bulletin of the Verkhovna Rada of Ukraine, 2014, No. 49, p. 2056).

**President of Ukraine**                                                    **P. POROSHENKO**

**Kyiv**
**February 12, 2015**
**No. 198-VIII**



**DATE OF TRANSLATION: 1/31/2021**

**ENGLISH ELECTRONIC FILE NAME:**
**Law on amending acts regulating NACB and NACP_EN**

**SOURCE LANGUAGE: Ukrainian**
**TARGET LANGUAGE: English**
**TRANSPERFECT JOB ID: US0890664**

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

TCert v. 4.0