**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-25313-MGC

UNITED STATES OF AMERICA,

        Plaintiff,

v.

REAL PROPERTY LOCATED AT 55 PUBLIC SQUARE,
CLEVELAND, OHIO, WITH ALL APPURTENANCES,
IMPROVEMENTS, AND ATTACHMENTS THEREON,
AND ANY RIGHT TO COLLECT AND RECEIVE ANY
PROFIT, RENT, INCOME, AND PROCEEDS THEREFROM,

        Defendant.
_____/

**CLAIMANTS' MOTION TO DISMISS THE VERIFIED COMPLAINT**

Claimants Mordechai Korf, Uriel Laber, Optima 55 Public Square, LLC ("Optima 55"), and Optima Ventures, LLC ("Optima Ventures" and, collectively, "Claimants") respectfully submit this alternative motion to address whether the Court should dismiss the Verified Complaint for Forfeiture *in Rem*, dated December 30, 2020 (the "Verified Complaint" or "Compl."),[1] on grounds of international comity and abstention. As noted in the concurrently filed Motions to Compel Arbitration, Claimants urge the Court <u>not</u> to reach the instant Motion to Dismiss and instead order the United States to arbitrate its claims.[2]

---

[1] Citations to "Paul Decl." refer to the February 19, 2021 Declaration of Joshua N. Paul. Citations to "Ex." refer to the exhibits to the Paul. Decl., and all page citations to the exhibits refer to the page numbers of the as-filed PDFs. Citations to "Marchukov Aff." refer to the February 19, 2021 Declaration of Dmytro Marchukov. Citations to "Dkt." refer to the docket in this action.

[2] Optima Ventures and Optima 55 have moved to compel arbitration pursuant to the U.S.-Ukraine BIT at the first available opportunity, *i.e.*, six months from the date that the dispute arose. *See* Dkt. 26. Korf and Laber, in turn, have moved to compel arbitration pursuant to the doctrine of

1

## **PRELIMINARY STATEMENT**

This case is an example of the United States engaging in egregious overreach, and attempting to step into the shoes of Ukraine, a sovereign state, in order to assert claims that alleged conduct committed in Ukraine, by wealthy and powerful Ukrainian nationals, that purportedly harmed a Ukrainian bank, violates specific provisions of Ukrainian criminal law. Notwithstanding that no Ukrainian prosecutor or government entity has even alleged that the Ukrainian conduct described in the Verified Complaint violates Ukrainian criminal law, the United States now seeks, in federal court in Florida, the forfeiture of property located in Ohio, because the United States alleges that property was acquired with funds unlawfully obtained in Ukraine, under Ukrainian law.

PrivatBank is, and has been, one of the largest financial institutions in Ukraine. The bank was owned by two Ukrainian billionaires, Ihor Kolomoisky and Gennadiy Boholiubov until December 2016, when the Ukrainian government seized the bank and nationalized it as a result of what the Ukrainian government claimed was massive theft and fraud. Since that time, PrivatBank has engaged in a worldwide shotgun-blast of litigations against its former owners, all of which are premised on PrivatBank's claims that Kolomoisky and Boholiubov orchestrated a scheme in which they looted the bank by fraudulently misappropriating loan proceeds, laundering those proceeds through various bank accounts in Ukraine and around the world, and then using the funds to invest in assets around the world, including in the United States.

---

equitable estoppel. *See* Dkt. 27. All Claimants seek arbitration of their claims and urge the Court not to reach the merits of the instant motion to dismiss. *See* Rule 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.");

For reasons yet to be explained, and based on authority yet to be identified, the United States chose, in December 2020, to step into the fight between the Ukrainian government and two of Ukraine's most prominent citizens by filing the Verified Complaint. Mirroring PrivatBank's allegations, the United States claims that the property at issue was obtained using funds derived from the same unlawful and fraudulent scheme at issue in PrivatBank's various litigations and in a wave of substantially similar lawsuits that have been decided and are being decided by the Ukrainian courts. Remarkably, the United States claims that the property is subject to forfeiture even though the purportedly unlawful Ukrainian conduct upon which the forfeiture is sought has not even been alleged to be criminal by any Ukrainian prosecutor. Undeterred by the lack of any criminal convictions obtained by, or even charges brought by, Ukrainian law enforcement, the United States seeks to itself allege and prove violations of Ukrainian criminal law, carried out in Ukraine, by Ukrainian nationals, against a Ukrainian state-owned bank. This overreach is a patently improper and transparent effort by the United States to enforce Ukrainian law and regulate conduct occurring in Ukraine in violation of principles of international comity.

Beyond the fact that the United States has no authority to interpret, allege, and prosecute crimes under Ukrainian criminal law (in this Court or anywhere), the United States' claims are time-barred under the one-year statute of limitations for forfeiture claims.

All of these fatal defects to the Verified Complaint are detailed below, and mandate dismissal of this action with prejudice.

## FACTUAL BACKGROUND

**A.  Ukraine Nationalizes PrivatBank and Initiates Litigation Around the World**

As alleged in the Verified Complaint, PrivatBank, which is located in Ukraine, is one of Ukraine's largest banks, and has been since at least the early 2000s. *See* Compl. ¶ 10. In December

2016, the National Bank of Ukraine ("NBU") nationalized PrivatBank, transferring ownership of the bank to the Ukrainian government.[3]  *See id.*

The United States alleges that PrivatBank was seized after audits purportedly "uncovered a scheme by the bank's owners to steal over $5 billion from the bank via the issuance of fraudulent loans." *Id.* The United States alleges that PrivatBank's former owners, Ihor Kolomoisky and Gennadiy Boholiubov are "Ukrainian oligarch[s]" who, together, "exercised extensive control over PrivatBank and its activities." *Id.* ¶¶ 11-12.

Following the seizure of the bank, the Ukrainian government – through PrivatBank – embarked on a worldwide frenzy of litigation, filing actions in London, Switzerland, Israel, Cyprus, and, here in the United States, in Delaware Chancery Court.[4] PrivatBank's claims in each of those actions are premised on the same allegations underlying the United States' claims here – that Kolomoisky and Boholiubov "used their control of PrivatBank to steal billions of dollars of the bank's funds," and laundered the purportedly stolen proceeds through bank accounts in Ukraine and elsewhere around the world.  Compl. ¶¶ 1, 16-18, 22-79.

The United States alleges that Kolomoisky and Boholiubov's conduct violated Ukrainian criminal law.  *See id.* ¶¶ 63-71.  Remarkably, the United States does not, because it cannot, allege that Kolomoisky and Boholiubov have been convicted in Ukraine of any alleged violations of Ukrainian criminal law, including violations asserted by the United States itself.[5]  In fact, ***no***

---

[3] *See* https://bank.gov.ua/en/news/all/derjava-uhvalila-rishennya-pro-vhodjennya-do-kapitalu-pat-privatbank ("The bank will be transferred from private shareholders into the ownership of the State. . . .").

[4] The Court may take judicial notice of the existence of other litigations filed by PrivatBank, the existence of which are not in dispute.  *See Cavero v. Law Offices of Erskine & Fleisher*, 2012 WL 13134213, at *3 (S.D. Fla. Aug. 28, 2012).

[5] The United States does not provide any explanation as to why it (not the Ukrainian government) is asserting violations of Ukrainian criminal law by Ukrainian nationals against a Ukrainian state-

*criminal charges have even been filed against Kolomoisky and Boholiubov in Ukraine relating to PrivatBank*.

The Verified Complaint contains extensive allegations regarding the nature of the supposed scheme employed by Kolomoisky and Boholiubov "to steal billions of dollars of [PrivatBank's] funds." Compl. ¶ 16; *see also id.* ¶¶ 16-79. These allegations include references to specific loans that the United States alleges were used by Kolomoisky and Boholiubov to fraudulently steal loan proceeds from PrivatBank, in violation of Ukrainian law. *See, e.g.*, *id.* ¶¶ 35-38, 42-43, 46, 49, 51-52, 58. Recently, certain of the Ukrainian borrowers accused by the United States of committing Ukrainian crimes, in Ukraine, against a Ukrainian bank, have initiated litigations in Ukraine against PrivatBank seeking judgments that, contrary to PrivatBank's allegations in its various litigations (and the United States here), the purportedly fraudulent loans were in fact entirely legitimate and consistent with Ukrainian law (the "Related Actions"). Those cases are proceeding through the Ukrainian judicial system, and Ukrainian courts have begun issuing decisions directly refuting PrivatBank's allegations, which are mirrored by the United States in the Verified Complaint.

As a specific example, the United States alleges that the application for Loan Number 4N09129D falsely "stated that the loan would be repaid via funds earned through ferroalloy production; instead, it was repaid with funds from two other loans." Compl. ¶ 46. The United States claims that such alleged misrepresentations "constituted a fraud by and on PrivatBank." *Id.* ¶ 47. However, in a decision issued by the Economic Court of Kyiv on January 22, 2021, the

---

owned bank. Claimants are unaware of any basis upon which the United States has the authority to allege and prosecute violations of the criminal laws of Ukraine, a sovereign state, and the Verified Complaint fails to cite any such authority.

5

Ukrainian court found that the "the loan repayment and payment of all interest, fees, and other payments, which were set forth in the Loan Agreement No. 4N09129D . . . were made at the expense of funds received by [NZF] from its business activities, at the expense of the Guarantor and not at the expense of other loan funds, which were received by [NZF] under other loan agreements." *See* Paul Decl., Ex. 1 (Decision, *Joint Stock Co. Nikopol Ferroalloy Plant v. Joint Stock Co. Comm. Bank PrivatBank*, No. 910/14224/20 (Kyiv Econ. Ct. Jan. 22, 2021), at 25). This finding by a Ukrainian court concerning issues of Ukrainian law directly contradicts the United States' allegation that Loan No. 4N09129D was a "fraud," and that the proceeds from that loan "constituted embezzlement and conversion." Compl. ¶¶ 46-47. Similarly, on February 9, 2021, the Economic Court of Kyiv issued a short-form decision recognizing that NZF's obligations under certain loans were fully satisfied "due to proper performance."

Two other decisions issued by the same Ukrainian court have likewise determined that a number of other loans the United States purports to identify as fraudulent were not, including Loan Nos. 4N10122D, 4N10221D, 4N10224D, 4N10220D, 4N10263D, and 4N09128D. *See* Paul Decl., Ex. 2 (Decision, *Joint Stock Co. Nikopol Ferroalloy Plant v. Joint Stock Co. Comm. Bank PrivatBank*, No. 910/13313/20 (Kyiv Econ. Ct. Jan. 22, 2021), at 3-5); Ex. 3 (Decision, *Joint Stock Co. Nikopol Ferroalloy Plant v. Joint Stock Co. Comm. Bank PrivatBank*, No. 910/16154/20 (Kyiv Econ. Ct. Feb. 9, 2021), at 29-30, 38); Compl. ¶¶ 35, 43. Specifically, the United States alleges that Loan No. 4N09128D is an "example[] of misrepresentations related to the purpose of the loan" because "[t]he stated purpose of the loan was '[f]inancing current activities'. . . instead, a portion of the funds were sent to Korf and Laber's personal accounts." Compl. ¶ 43. However, on February 9, 2021 the Kyiv Economic Court found that the funds received by NZF under Loan No. 4N09128D, among others, "were used by [NZF] in the manner and on the terms and conditions

6

provided for in the loan agreements, <u>and for the purpose provided for in the loan agreements, which is financing of the current activities of [NZF]</u>." Ex. 3 at 29 (emphasis added); *see also id.* at 31 ("[NZF] has provide the court with the evidence confirming proper use of the loan funds"), 33-34 (same), 37 (same), 32 (describing use of funds related to Loan No. 4N09128D).

Another Ukrainian borrower identified in the Verified Complaint, ZFZ, has filed at least nineteen similar actions in Ukraine seeking declarations that its loans were properly performed. Each of those actions concern loans identified in the Verified Complaint, including Loan Nos. 4Z1195D, 4Z10282D, 4Z10283D. *See, e.g.*, Paul Decl., Ex. 4 (Statement of Claim, *Joint Stock Co. Zaporizhzhia Ferroalloy Plant v. Joint Stock Co. Comm. Bank PrivatBank*, No. 18-171/195 (Kyiv Econ. Ct. Feb. 1, 2021), at 21); Ex. 5 (Statement of Claim, *Joint Stock Co. Zaporizhzhia Ferroalloy Plant v. Joint Stock Co. Comm. Bank PrivatBank*, No. 18-180/282 (Kyiv Econ. Ct. Dec. 3, 2020), at 22); Ex. 6 (Statement of Claim, *Joint Stock Co. Zaporizhzhia Ferroalloy Plant v. Joint Stock Co. Comm. Bank PrivatBank*, No. 18-181/283 (Kyiv Econ. Ct. Feb. 1, 2021), at 20); Compl. ¶¶ 36, 42. The actions remain active and pending.

**B.**     **The United States Seeks To Forfeit the Property**

On December 30, 2020, the United States filed the Verified Complaint for forfeiture *in rem* seeking to forfeit a 22-story office building located at 55 Public Square in Cleveland, Ohio, 44113 (the "Property"). *See* Compl. ¶¶ 1-2. The United States alleges that the Property was purchased in 2008 by Claimant Optima 55, a Delaware limited liability company owned 100% by Claimant Optima Ventures. *Id.* ¶¶ 92-94 Claimant Optima Ventures, also a Delaware limited liability company, was owned in part by Kolomoisky and Boholiubov. *Id.* ¶ 82(c).

Notwithstanding the absence of any Ukrainian criminal convictions (or even charges) relating to the supposedly massive fraud engaged in and directed by Kolomoisky and Boholiubov,

the United States seeks forfeiture of the Property on the grounds that the Property was purchased with "misappropriated funds" that were fraudulently and unlawfully obtained from PrivatBank in Ukraine. *See id.* ¶¶ 1-5. Every one of the causes of action asserted in the Verified Complaint is predicated on the United States' unproven and unfounded accusations that a portion of the funds used to purchase the Property were "misappropriated from PrivatBank." *Id.* ¶ 113; *see also id.* ¶¶ 128-48.

## ARGUMENT

### I.   INTERNATIONAL COMITY REQUIRES ABSTENTION

International comity is an abstention doctrine that accords deference to the decisions of foreign sovereigns. *See Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237-38 (11th Cir. 2004). As this Court has held, it is "prudent and just" for a federal court to abstain from jurisdiction in deference to concurrent proceedings in another jurisdiction. *Curran v. Hindu Credit Union Co-Op Soc'y Ltd.*, 2011 WL 1131107, at *3 (S.D. Fla. Mar. 25, 2011) (Cooke, J.) (citations omitted); *accord Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1257-58 (11th Cir. 2006) (affirming dismissal on comity grounds); *ITL Int'l, Inc. v. Walton & Post, Inc.*, 741 F. Supp. 2d 1313, 1317 (S.D. Fla. 2010) (dismissing on comity grounds).

Two doctrines of international comity apply to this action: adjudicatory and prescriptive. *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014). Both mandate dismissal.

#### A.   Adjudicatory Comity Requires Abstention

The Eleventh Circuit applies a three-factor test in determining whether abstention based on adjudicatory comity is warranted: (1) whether adjudicatory comity applies; (2) fairness to litigants; and (3) efficient use of scarce judicial resources. *See Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994); *Rivera de Chavon Dev. Grp. SRL v. Diaz*, 2011 WL

5825770, at *3 (S.D. Fla. Nov. 17, 2011); *ITL Int'l, Inc.*, 741 F. Supp. 2d at 1316. This test is easily met here.

        i.        <u>Adjudicatory Comity Applies</u>

In the Eleventh Circuit, adjudicatory comity may be applied "prospectively," or in the absence of any foreign judgment or parallel proceeding. *Ungaro-Benages*, 379 F.3d at 1238 (distinguishing prospective comity, which "occur[s] when a domestic action is stayed or dismissed based on the respective interests of the domestic and foreign governments and the adequacy of the foreign forum in potentially resolving the dispute," from retrospective comity, which "accord[s] respect to foreign judgments or defer[s] to parallel foreign proceedings"); *Curran*, 2011 WL 1131107, at *2; *St. Martinus Univ., NV v. Caribbean Health Holding, LLC*, 2020 WL 956301, at *7 (S.D. Fla. Feb. 27, 2020), *appeal dismissed sub nom. St. Martinus Univ. v. Caribbean Health Holding, LLC*, 2020 WL 7018197 (11th Cir. Sept. 28, 2020); *Mujica*, 771 F.3d at 621. When applying comity prospectively, courts evaluate: (i) the strength of the United States' interest in using a federal forum, (ii) the strength of the foreign nation's interests, and (iii) the adequacy of the alternative forum, a factor dictated by *forum non conveniens* analysis. *Id.*; *Curran*, 2011 WL 1131107, at *2. Abstention is warranted here under each factor in the prospective comity analysis.

*First*, as the Verified Complaint makes clear, Ukraine's interests predominate over this action. The United States' entire case rests on an expansive web of alleged conduct that was conceived, directed, and executed in Ukraine by Ukrainian oligarchs, bank agents, and corporate borrower entities. The Verified Complaint alleges that two Ukrainian nationals, Kolomoisky and Boholiubov, misappropriated assets from PrivatBank, "a Ukrainian financial institution located in Ukraine." Compl. ¶¶ 10-12, 16. It alleges that Kolomoisky and Boholiubov caused PrivatBank to issue loans to companies they owned or controlled, naming three such companies – NZF, ZFZ,

9

and OGZK – all of which are based in Ukraine. *Id.* ¶¶ 32-62. It alleges that Kolomoisky and Boholiubov established a de facto "credit committee" at PrivatBank, consisting of PrivatBank employees, to approve the allegedly unlawful loans. *Id.* ¶¶ 54-62. It alleges that Kolomoisky and Boholiubov laundered the loan proceeds through a network of shell companies, which they created and controlled, at a PrivatBank branch "controlled by PrivatBank in Ukraine." *Id.* ¶¶ 72-79. And it alleges that the losses primarily impacted PrivatBank in Ukraine. *Id.* ¶¶ 16, 32, 60-62. The four corners of the pleadings leave no doubt that the nexus of the alleged scheme was rooted in Ukraine, which has an overriding interest in prosecuting and regulating allegedly criminal conduct in its own borders. Abstention is thus appropriate. *See In re Maxwell Communications Corp.*, 93 F.3d 1036, 1051 (2d Cir. 1996) (abstaining, where "England has a much closer connection to these disputes than does the United States").

*Second*, Ukraine's interests eclipse those of the United States. The only United States-based conduct alleged in the Verified Complaint is the after-the-fact use of allegedly unlawful proceeds to purchase real estate in Texas. However, none of the downstream United States-based conduct would be unlawful but for the allegations of wrongdoing in Ukraine.

More fundamentally, to permit the United States to pursue claims that require U.S. courts to determine the legality of conduct in Ukraine runs contrary to the United States' interests in respecting Ukraine's judicial process, sovereign rights, and Constitution. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 615 (9th Cir. 2014) ("the strength of the U.S. government's interest in respecting Colombia's judicial process" weighs in favor of dismissal). Article 62 of the Constitution of Ukraine grants the Ukrainian criminal court exclusive authority to determine and establish that a crime under Ukrainian law has been committed. Marchukov Aff. ¶¶ 16, 31 n.19. Likewise, Article 124 of the Constitution of Ukraine provides that only Ukrainian courts are

entitled to administer justice in Ukraine, and that no other body or authority can exercise or usurp the functions of the court. *Id.* ¶¶ 23, 29. Therefore, the Constitution of Ukraine dictates that the judgment of the Ukrainian court is the exclusive mechanism to determine and establish that a crime has been committed and that a certain person has committed the crime. *Id.* ¶¶ 11-12, 24, 34. In the absence of such ruling by a Ukrainian criminal court, any finding in a U.S. court concerning the legality of conduct in Ukraine would invade Ukraine's sovereignty and its longstanding Constitutional principles. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 852-53 (2008) (a foreign state has a comity interest in using its own courts, and its "dignity is not enhanced if other nations bypass its courts without right or good cause"); *Bi v. Union Carbide Chems. & Plastics Co.*, 984 F.2d 582 (2d Cir. 1993) (dismissing the claims of Indian nationals injured by a chemical plant explosion in Bhopal based on Indian legislation granting the Indian government exclusive standing to represent all victims); *Ungaro-Benages*, 379 F.3d at 1239 (dismissing claims of heir to German corporation where "the German government has a significant interest in having the Foundation be the exclusive forum for these claims"). Nevertheless, the United States – unable to refer to a single criminal investigation or charge levied against any defendant in the Ukraine concerning the management of PrivatBank – relies on its own interpretation and application of Ukrainian criminal law to conduct occurring in Ukraine, for which Ukraine itself has not brought any such charges.

*Finally*, courts routinely hold that Ukraine is an adequate alternative forum. *See, e.g.*, *In re Arbitration between Monegasque De Reassurances S.A.M.*, 311 F.3d at 499; *Universal Trading*, 2007 WL 2669841, at *15; *see also Curran*, 2011 WL 1131107, at *4 (an alternative forum "need not be a perfect forum," but instead is "adequate" so long as "it offers at least some relief") (citing *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)). If anything, Ukraine "will be far

more adept at applying the law of its own forum, particularly where it is already entertaining lawsuits involving the same subject matter." *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1332 (S.D. Fla. 1998).

### ii. Fairness Considerations Warrant Abstention

In addition to determining whether international comity applies, the Eleventh Circuit considers fairness to the litigants in deciding whether abstention is warranted. *See Turner*, 25 F.3d at 1521-22. Relevant considerations include: (1) the order in which the suits were filed, (2) the more convenient forum; and (3) the possibility of prejudice to parties resulting from abstention. *See id.* (citation omitted); *St. Martinus Univ.*, 2020 WL 956301, at *16 (referencing *forum non conveniens* analysis in assessing fairness).

Fairness militates strongly in favor of deference to the Ukrainian proceedings. While the order in which the suits were filed is a neutral factor, as the Related Actions were filed simultaneously or within a few months of this case, *see Turner*, 25 F.3d at 1522, the availability of highly critical witnesses and the ability to obtain relevant documentary evidence render Ukraine a significantly more convenient forum than the United States. The overwhelming majority of the relevant evidence is located in Ukraine and will be extremely difficult, if not impossible, for Claimants to obtain in this Court. Such evidence concerns, among other things, the origination of purportedly fraudulent loans by a Ukrainian bank to Ukrainian entities (Compl. ¶¶ 32-62); the transfer of such funds both within and outside Ukraine, including through PrivatBank accounts allegedly located in numerous other foreign nations (*id.* ¶¶ 72-79); the organization and activities of the purported "electronic" credit committee at PrivatBank (*id.* ¶¶ 54-62); and information concerning the routing of funds through PrivatBank Cyprus (*id.* ¶¶ 77-79). As set forth in the Marchukov Declaration, Ukraine and the United States are both signatories to the Hague

Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Evidence Convention"), which applies to requests for documents or deposition testimony. Marchukov Aff. ¶¶ 45-46. Ukraine, however, has issued a reservation to the Evidence Convention that effectively precludes pre-trial discovery of documentary evidence, declaring it "will not execute letters of request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries." *Id.* ¶¶ 52, 72 (explaining that Ukraine's reservation is "broad and unqualified"). Claimants' lack of crucial evidence and the attendant prejudice they will suffer weighs in favor of abstention. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1332 (11th Cir. 2011) (affirming dismissal by this Court, where "the vast majority [of evidence] appears to be in Brazil and France").

Claimants also will not be able to compel the testimony of any witness who refuses to testify voluntarily. *See, e.g.*, *Ericson v. Wyndham Worldwide Corp.*, 2014 WL 11822749, at *5 (S.D. Fla. Feb. 28, 2014) (Cooke, J.) (lack of compulsory process for the attendance of unwilling foreign witnesses "strongly" favors dismissal); *Tazoe*, 631 F.3d at 1332 (same); *Rosen v. Execujet Servs. LLC*, 241 F. Supp. 3d 1303, 1309-12 (S.D. Fla. 2017) (same). A request for testimony through the Evidence Convention will still be dependent on the witness's willingness to cooperate with such a request (as Ukrainian authorities do not, in practice, seriously enforce foreign requests for judicial assistance), and even such voluntary testimony will take at least eight to nine months per witness, the minimum time it takes to schedule a hearing in a Ukrainian court to obtain witness testimony. Marchukov Aff. ¶¶ 57-62, 65. Once a hearing is set, however, success in obtaining testimony still depends on the witnesses' willingness to cooperate because, if witnesses fail to do so, Ukrainian courts will not compel them, and the letter of request for testimony likely will be returned unexecuted. *Id.* ¶ 61. Claimants' expert, Marchukov, was unable to identify a single

13

instance in which a Ukrainian court compelled an unwilling witness to cooperate with a foreign request for pre-trial testimony.  *Id.* ¶ 62.  Thus, if a Ukrainian witness refuses to cooperate, Claimants – as well as Plaintiff – will have no recourse.  *Id.* ¶ 71.

Even assuming Claimants (or Plaintiff) find a cooperative witness, any hearing may consist of a Ukrainian judicial officer reading written questions from the letter of request.  Marchukov Aff. ¶ 60.  Claimants' counsel cannot be assured they will be provided the opportunity to question the witness directly, or explore, clarify, challenge, or impeach the responses of an adverse witness through cross-examination.  *Id.*  The end result of this laborious, expensive, and time-consuming process, which "may take well over a year" (*id.* ¶ 65), would be of little probative value and possibly inadmissible.  Claimants' lack of access to pre-trial documents and limited testimony render proceeding with this action highly impractical.  In the face of such extraordinary evidence-gathering obstacles, Claimants would suffer overwhelming and prejudicial hardship in formulating and presenting a defense.

Beyond the glaring problems Claimants will confront in obtaining pre-trial discovery, Claimants also will endure overwhelming hardship presenting key witnesses at trial.  Trials turn on witnesses.  But a trial in this District will leave Claimants unable to ensure the testimony of, *inter alia*: (i) persons involved in the applications for the purportedly fraudulent loans submitted in Ukraine, (ii) Ukrainian employees of Plaintiff, including members of the "electronic" credit committee involved in issuing those loans, (iii) employees of PrivatBank Cyprus involved in the purportedly fraudulent transfer of loan proceeds, (iv) employees of non-party foreign entities who allegedly participated in disbursing funds, or (v) persons involved in the lawful acquisition of U.S. assets outside of the United States.  These witnesses are outside the Court's subpoena power, and Claimants have no means of compelling the appearance of any who decline voluntarily to travel

14

to this District (or the United States at large) from around the world. *See Ericson*, 2014 WL 11822749, at *5 (dismissing, where "Defendants have identified important witnesses that are outside this Court's compulsory process"); *Tazoe*, 631 F.3d at 1332 (dismissing because the Southern District of Florida lacks the authority to compel certain witnesses to attend proceedings); *Rosen v. Execujet Servs. LLC*, 241 F. Supp. 3d 1303, 1309-12 (S.D. Fla. 2017) (dismissal "heavily" favored where "majority of the material witnesses in this action . . . would not be subject to compulsory process").

Moreover, the United States would suffer no discernible prejudice from a dismissal based on abstention. As discussed above, the United States has an acute interest in avoiding infringement on Ukrainian sovereignty and preserving amicable foreign relations with Ukraine. *Supra*, at 10-11. And the United States cannot come close to establishing that the Ukrainian proceedings are incapable of producing a "fair and just result." *Rivera de Chavon Dev. Grp. SRL v. Diaz*, 2011 WL 5825770, at *3 (S.D. Fla. Nov. 17, 2011); *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 2669841, at *15 (N.D. Cal. Sept. 7, 2007) (rejecting any notion that "Ukrainian courts are so lacking in impartiality, due process, or procedural fairness" that their decisions should be disregarded by a U.S. court), *aff'd sub nom. Universal Trading & Inv. Co. v. Kiritchenko*, 346 F. App'x 232 (9th Cir. 2009).

### iii.   Abstention Furthers the Efficient Use of Scarce Judicial Resources

Lastly, the efficient use of scarce judicial resources militates in favor of deferring to the Ukrainian proceedings. Criteria relevant to efficiency include (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) whether the actions have parties

and issues in common; and (4) whether the alternative forum is likely to render a prompt disposition. *See Turner*, 25 F.3d at 1522.

As shown above, Ukraine is the appropriate forum to determine the validity and legality of the loans identified in the Verified Complaint, and the Related Actions pending in Ukraine involve substantially the same parties and issues. *Supra*, at 5-7. Dismissal of this case would avoid unnecessary problems with piecemeal litigation, in light of the Related Actions that are currently being litigated. "If both proceedings continued, the courts' calendars would have to be synchronized and the litigation would have to move back and forth across the Atlantic." *Turner*, 25 F.3d at 1522. "The Southern District of Florida is a very busy district," and the issues to be resolved are simply too similar for the Court to "justify expending its resources to manage a case clearly suited for the [Ukrainian] courts." *ITL Int'l, Inc.*, 741 F. Supp. 2d at 1317.

### B. Prescriptive Comity Requires Abstention

Dismissal is further required by the doctrine of prescriptive comity, which obligates courts to "construe statutes to avoid unreasonable interference with other nations' sovereign authority where possible." *See RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2107 n.9 (2016); *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1047 (2d Cir. 1996) ("[I]nternational comity . . . as a canon of construction . . . might shorten the reach of a statute."); *Mujica*, 771 F.3d at 599 (same). "[C]ourts have frequently recognized that . . . statutes should not be interpreted to regulate foreign persons or conduct if that regulation would conflict with principles of international law." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 815 (1993).

This action runs afoul of prescriptive comity. As shown above, under the Ukrainian Constitution, a conviction by a Ukrainian court is the sole mechanism for establishing that a crime occurred. *Supra*, at 11; Marchukov Aff. ¶¶ 11-12, 16, 23, 24, 29, 31 n.19, 34. The Ukrainian

government, however, has not initiated a single investigation or brought a single charge against any person or corporate entity related to the Ukrainian loan scheme alleged by the United States. *Id.* To the extent the United States contends it is not stepping into the shoes of the Ukrainian government to interpret and enforce Ukrainian criminal law (and, as the Verified Complaint expressly states, it is), the United States is attempting to apply its own statutes to conduct carried out in Ukraine, by Ukrainian individuals and entities, that allegedly harmed a Ukrainian state-owned bank. Such an effort, particularly where the Ukrainian constitution provides that only a Ukrainian court may determine that a crime under Ukrainian law has occurred, and Ukrainian prosecutors have not brought any criminal charges against anyone in Ukraine, let alone obtained criminal convictions, necessitates abstention. *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164-69 (2004) (vacating denial of motion to dismiss to avoid statutory interpretation that would interfere with foreign nation's ability independently to regulate its own commercial affairs).

## II.    THE FORFEITURE CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Under 18 U.S.C. § 984(c), "[n]o action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense." This one-year limitations period is mandatory and applies to "any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution . . . , or other fungible property." *Id.* § 984(b)(1).

The Verified Complaint alleges that certain Ukrainian bank loans, and the transmission of their proceeds into the United States, took place in July 2008, over *twelve years prior* to the filing

of this lawsuit in December 2020. Compl. ¶¶ 99-113. The United States' claims are therefore time-barred.

## CONCLUSION

Based on the foregoing, the Court should abstain from exercising jurisdiction over this action and dismiss all claims with prejudice.

Dated: February 19, 2021

                              Respectfully submitted,

                              Black, Srebnick, Kornspan & Stumpf, P.A.
                              201 South Biscayne Blvd., Suite 1300
                              Miami, FL 33131
                              Tel: (305) 371-6421
                              Fax: (305) 371-6322

By:    /s/ *Howard M. Srebnick*
        Howard M. Srebnick
        Florida Bar No. 919063
        Robert T. Dunlap
        Florida Bar No. 11950
        HSrebnick@RoyBlack.com
        RDunlap@RoyBlack.com

        *Attorneys for Claimants Korf and the Corporate Entities*

        Kasowitz Benson Torres LLP
        1633 Broadway
        New York, New York 10019
        (212) 506-1700
        Marc E. Kasowitz
        Mark P. Ressler
        Sarmad M. Khojasteh
        Joshua Paul
        *Pro Hac Vice Anticipated*
        MKasowitz@kasowitz.com
        MRessler@kasowitz.com
        SKhojasteh@kasowitz.com
        JPaul@kasowitz.com

*Attorneys for Claimants Korf, Laber, and the Corporate Entities*

<u>/s/ *Scott A. Srebnick*</u>
Scott A. Srebnick, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile: (305) 377-9937
Scott@srebnicklaw.com

*Attorney for Claimant Laber*