# EXHIBIT 1




## ГОСПОДАРСЬКИЙ СУД міста КИЄВА

01054, м.Київ, вул.Б.Хмельницького,44-В, тел. (044) 284-18-98, E-mail: inbox@ki.arbitr.gov.ua

### РІШЕННЯ
### ІМЕНЕМ УКРАЇНИ
м. Київ

22.01.2021                                                     Справа № 910/14224/20

**Господарський суд міста Києва** у складі судді **Баранова Д.О.,** за участю секретаря судового засідання Зарудньої     О.О.,   розглянувши матеріали господарської справи

**за позовом** Акціонерного товариства "Нікопольський завод феросплавів" (53200, Дніпропетровська обл., м. Нікополь, вул. Електрометалугргів, буд. 310; ідентифікаційний код 00186520)

**до** Акціонерного товариства Комерційний банк "Приватбанк" (01001, м. Київ, вул. Грушевського, буд. 1Д; ідентифікаційний код 14360570)

**про** визнання зобов'язань припиненими

**Представники сторін:**
**від позивача:** Кобеляцький Д.М., Сімонова Є.О.
**від відповідача:** Кулинич В.П., Монастирський Д.О.

### ОБСТАВИНИ СПРАВИ:

До Господарського суду міста Києва звернулось Акціонерне товариство "Нікопольський завод феросплавів" з позовом до Акціонерного товариства Комерційний банк "Приватбанк", в якому позивач просить суд визнати припиненими усі зобов'язання Акціонерного товариства "Нікопольський завод феросплавів" перед Акціонерним товариством Комерційний банк "Приватбанк" за кредитним договором № 4Н09129Д від 02.02.2009, укладеним між Акціонерним товариством "Нікопольський завод феросплавів" та Акціонерним товариством Комерційний банк "Приватбанк", у зв'язку з їх повним виконанням, проведеним належним чином.

Ухвалою Господарського суду міста Києва від 28.09.2020 позовну заяву Акціонерного товариства "Нікопольський завод феросплавів" залишено без руху, позивачу встановлено п'ятиденний строк з дня вручення ухвали для усунення недоліків шляхом подання до суду доказів надсилання (опис вкладення в цінний лист та фіскальний чек) копії позовної заяви № 3-7578/406 від 19.09.2020 з доданими до неї додатками на адресу Акціонерного товариства Комерційний банк "Приватбанк".

08.10.2020 до Господарського суду міста Києва надійшла заява позивача про усунення недоліків позовної заяви, до якої додано докази надсилання копії позовної заяви № 3-7578/406 від 19.09.2020 з доданими до неї додатками на адресу Акціонерного товариства Комерційний банк "Приватбанк".

Ухвалою Господарського суду міста Києва від 29.10.2020 прийнято позовну заяву до розгляду, відкрито провадження у справі, підготовче засідання призначено 25.11.2020.

20.11.2020 до Господарського суду міста Києва надійшов відзив на позовну заяву, в якому відповідач просить суд відмовити у задоволенні позову.

23.11.2020 до Господарського суду міста Києва надійшло клопотання відповідача про залишення позову без розгляду.

Ухвалою Господарського суду міста Києва від 25.11.2020 оголошено про відкладення

Секретар с/з _____ О.О. Зарудня
Виготовлено з автоматизованої системи
документообігу суду
25.01.2021



підготовчого засідання на 13.01.2021.

07.12.2020 до Господарського суду міста Києва надійшла заява позивача про залишення позову без розгляду.

29.12.2020 до Господарського суду міста Києва надійшло клопотання позивача про долучення документів до матеріалів справи, в якому позивач просить суд поновити строк для подання додаткових доказів та долучити до матеріалів справи додаткові документи.

04.01.2021 до Господарського суду міста Києва надійшло клопотання позивача про повернення заяви позивача про залишення позову без розгляду.

04.01.2021 до Господарського суду міста Києва надійшло клопотання позивача про долучення документів до матеріалів справи, в якому позивач просить суд поновити строк для подання додаткових доказів та долучити до матеріалів справи додаткові документи.

12.01.2021 до Господарського суду міста Києва надійшло клопотання позивача про прискорення розгляду справи та недопущення порушення строків розгляду справи.

У підготовчому засіданні 13.01.2021 суд, розглянувши клопотання позивача про повернення заяви позивача про залишення позову без розгляду та заслухавши пояснення представників сторін, дійшов висновку не розглядати заяву позивача про залишення позову без розгляду. Дана інформація занесена до протоколу судового засідання від 13.01.2021.

У підготовчому засіданні 13.01.2021 суд, розглянувши клопотання відповідача про залишення позову без розгляду та заслухавши пояснення представників сторін, дійшов висновку відмовити у його задоволенні. Дана інформація занесена до протоколу судового засідання від 13.01.2021.

Також у підготовчому засіданні 13.01.2021 суд, розглянувши клопотання позивача про долучення додаткових доказів дійшов висновку поновити процесуальний строк на їх подання та долучити останні до матеріалів справи. Дана інформація занесена до протоколу судового засідання від 13.01.2021.

У підготовчому засіданні 13.01.2021 судом було оголошено перерву до 20.01.2021.

20.01.2021 до Господарського суду міста Києва надійшли письмові пояснення відповідача щодо долучених до матеріалів справи додаткових доказів позивача.

Ухвалою Господарського суду міста Києва від 20.01.2021 закрито підготовче провадження та призначено справу до судового розгляду по суті на 22.01.2021.

У судовому засіданні 22.01.2021 судом оголошено перерву до 15:00 год.

Після оголошеної перерви, судом продовжено судове засідання.

У даному судовому засіданні представники позивача підтримали позовні вимоги, та просили суд про їх задоволення.

Представники відповідача заперечили щодо заявлених позовних вимог, просили суд відмовити в задоволенні позову.

Таким чином, приймаючи до уваги, що матеріали справи містять достатньо документів для розгляду справи, у судовому засіданні 22.01.2021 відповідно до   ст. 240 Господарського процесуального кодексу України    судом проголошено вступну та резолютивну частини рішення.

Дослідивши матеріали справи, заслухавши пояснення представників позивача та відповідача, Господарський суд міста Києва

## ВСТАНОВИВ:

02.02.2009 між Публічним акціонерним товариством Комерційний банк "Приватбанк" (далі – Банк) та Відкритим акціонерним товариством "Нікопольський завод феросплавів" (далі – позичальник) був укладений кредитний договір № 4Н09129Д, за умовами якого позичальнику було надано кредит у формі відновлювальної кредитної лінії.

Відновлювальна кредитна лінія - кредит, який надається позичальнику частинами або повністю до дати, вказаної у кредитному договорі, в межах ліміту вказаного договору, у тому числі після частково чи повного погашення за кредитом, таким чином, щоб фактична заборгованість за кредитом не перевищувала встановлений ліміт кредитного договору.

Ліміт кредитного договору було встановлено у розмірі 14 000 000 (чотирнадцять)

Секретар с/з                       О.О. Зарудня
Виготовлено в автоматизованій системі
документообігу суду
25.01.2021


*1*9417835*1*0*

3

мільйонів доларів США, за цільовим призначенням: "фінансування поточної діяльності".

Строк повернення кредиту: 01 лютого 2010 року.

Кредитним договором були визначені обов'язки позичальника, серед таких обов'язків передбачено, зокрема, і обов'язок щодо необхідності повернення кредиту у встановлений договором строк, а також обов'язки зі сплати процентів за користування кредитом та винагороди Банку.

Як про це вказує позивач, на виконання умов кредитного договору, з урахуванням всіх змін та доповнень, які були внесені за взаємною згодою і є невід'ємною частиною кредитного договору, Банком було надано кредитні кошти, а саме:

- 10.07.2009 – 10    000    000, 00 (десять мільйонів) доларів США
- 28.09.2009 – 4    000    000, 00 (чотири мільйони) доларів США
- 28.09.2009 – 10    000    000, 00 (десять мільйонів) доларів США
- 15.10.2009 – 726    000, 00 (сімсот двадцять шість тисяч) доларів США
- 16.10.2009 – 578    000, 00 (п'ятсот сімдесят вісім тисяч) доларів США
- 22.10.2009 – 540    000, 00 (п'ятсот сорок тисяч) доларів США
- 27.10.2009 – 10    300    000, 00 (десять мільйонів триста тисяч) доларів США.

Всього було отримано за кредитним договором № 4Н09129Д – 36    144    000, 00 (тридцять шість мільйонів сто сорок чотири тисячі) доларів США.

Позивач відзначає, що після отримання кредитних коштів АТ "Нікопольський завод феросплавів" на виконання положень кредитного договору та з метою належного виконання договірних зобов'язань здійснювало їх повернення (погашення кредиту) з наступною черговістю:

- 13.07.2009 – 10    000    000, 00 (десять мільйонів) доларів США
- 06.10.2009 – 1    450    000, 00 (один мільйон чотириста п'ятдесят тисяч) доларів США
- 08.10.2009 – 740    000, 00 (сімсот сорок тисяч) доларів США
- 09.10.2009 – 7    809    253, 12 (сім мільйонів вісімсот дев'ять тисяч двісті п'ятдесят три) долари США 12 центів
- 13.10.2009 – 599    405, 25 (п'ятсот дев'яносто дев'ять тисяч чотириста п'ять) доларів США 25 центів
- 15.10.2009 – 726    000, 00 (сімсот двадцять шість тисяч) доларів США
- 16.10.22009 – 578 000, 00 (п'ятсот сімдесят вісім тисяч) доларів США
- 21.10.2009 – 114    916, 00 (сто чотирнадцять тисяч дев'ятсот шістнадцять) доларів США
- 22.10.2009 – 539    299, 09 (п'ятсот тридцять дев'ять тисяч двісті дев'яносто дев'ять) доларів США
- 23.10.2009 – 2    310    217, 89 (два мільйони триста десять тисяч двісті сімнадцять) доларів США 89 центів
- 04.11.2009 – 11    276    908, 65 (одинадцять мільйонів двісті сімдесят шість тисяч дев'ятсот вісім) доларів США 65 центів.

Позивач вказує, що АТ "Нікопольський завод феросплавів" 04.11.2009 в повному обсязі та своєчасно було погашено заборгованість за кредитним договором № 4Н09129Д від 02.02.2009. Крім того, позивач стверджує, що ним було в повному обсязі та належним чином сплачено АТ КБ "Приватбанк" усі проценти, винагороди та інші оплати, що передбачалися умовами означеного кредитного договору.

Втім, як стало відомо позивачу з оприлюднених у засобах масової інформації відомостей, АТ КБ "Приватбанк" подано позовну заяву (VERIFIED COMPLAINT) (далі за текстом "позов, поданий до Суду Штату Делавер", "позов Банку", "позов, який розглядається за законодавством США") до Суду Штату Делавер (THE DELAWARE COURT OF CHANCERY) (далі за текстом "Суд Штату Делавер").

В якості підстави для звернення до Суду Штату Делавер Банком було, зокрема, вказано, що судова справа виникла (case arises out) з нібито серії грубих (нахабних) шахрайських схем (series of brazen fraudulent schemes), які начебто були організовані українськими олігархами Ігорем Валерійовичем Коломойським та Геннадієм Борисовичем Боголюбовим та

Секретар с/з _____ О.О. Загудня
Виготовлено з автоматизованої системи
документообігу суду
25.01.2021



4

їхніми агентами у Сполучених Штатах Америки та закордоном для придбання активів у Сполучених Штатах Америки, вартість яких складає сотні мільйонів доларів США через відмивання та незаконне присвоєння коштів, які видавались Приватбанком у якості корпоративних позик (to acquire hundreds of millions of dollars-worth of U.S. assets through the laundering and misappropriation of corporate loan proceeds issued by PrivatBank).

Зокрема, у пунктах 140-141 поданого до Суду Штату Делавер позову Приватбанк вказує на те, що НЗФ ВАТ (АТ "Нікопольський завод феросплавів"), правонаступником якого є позивач, 28.09.2009 отримало від Приватбанку у якості кредиту 30 мільйонів доларів США, які в подальшому, як вбачається зі змісту поданого до Суду Штату Делавер позову, не були повернуті назад до Приватбанку.

Фактично, у поданому до Суду Штату Делавер позові Приватбанк, здійснюючи виклад фактичних обставин справи та описуючи підстави позову, вказує на те, що Відкрите акціонерне товариство "Нікопольський завод феросплавів", правонаступником якого є Акціонерне товариство "Нікопольський завод феросплавів", не виконало свої договірні зобов'язання за кредитним договором № 4Н09129Д від 02.02.2009 (надалі за текстом також - "кредитний договір"), оскільки не погасило заборгованість за вказаним кредитним договором перед Приватбанком та використовувало кредитні кошти, які отримувалися АТ "Нікопольський завод феросплавів" в рамках означеного кредитного договору, на цілі, що суперечили умовам кредитного договору, тобто не використовувало їх для фінансування поточної діяльності підприємства, а також те, що АТ "Нікопольський завод феросплавів" причетне до відмивання коштів та протиправної рециркуляції кредитів, що передбачало, зокрема, погашення заборгованості за кредитним договором №4Н09129Д від 02.02.2009 за рахунок інших кредитних коштів, які отримувалися АТ "Нікопольський завод феросплавів" за іншими кредитними договорами.

Відтак, позивач, звертаючись до суду з позовом до АТ КБ "Приватбанк" про визнання припиненими усіх зобов'язань АТ "Нікопольський завод феросплавів" перед АТ КБ "Приватбанк" за кредитним договором № 4Н09129Д від 02.02.2009, укладеним між АТ КБ "Приватбанк" та АТ "Нікопольський завод феросплавів", у зв'язку з їх повним виконанням, проведеним належним чином, в обґрунтування позовних вимог вказує, що, оскільки будь-які зобов'язання між ним та відповідачем, виникнення та існування яких було обумовлено кредитним договором № 4Н09129Д від 02.02.2009, були припинені шляхом виконання, проведеним належним чином та яке, у свою чергу, було прийняте АТ КБ "Приватбанк", що є управленою стороною у розумінні положень ч. 1 ст. 203 Господарського кодексу України, то за таких обставин у відповідача відсутні будь-які підстави для невизнання права позивача на припинення зобов'язання.

У поданому відповідачем відзиві останній заперечує щодо задоволення позовних вимог, вказуючи:

- про відсутність невизнаного права, що підлягало б захисту у судовому порядку;

- що звернення АТ КБ "Приватбанк" до Суду Штату Делавер (США) із Американським позовом не призвело до жодного невизнання (а тим більше до порушення або оспорювання) жодних прав АТ "Нікопольський завод феросплавів" та відповідно, в останнього відсутні будь-які передумови та підстави звертатися із позовною заявою до АТ КБ "Приватбанк" про визнання припиненими зобов'язань за кредитним договором № 4Н09129Д від 02.02.2009;

- про відсутність у позивача суб'єктивного права на припинення зобов'язання, яке підлягає захисту у судовому порядку,  і як наслідок між сторонами відсутній спір про право.

- що подання АТ КБ "Приватбанк" Американського позову жодним чином не несе негативного впливу (порушення, невизнання або оспорення) на будь-які права та обов'язки АТ "Нікопольський завод феросплавів" за кредитним договором та не свідчить про те, що АТ КБ "Приватбанк" не визнає будь-якого права АТ "Нікопольський завод феросплавів"  за кредитним договором № 4Н09129Д від 02.02.2009;

- що АТ КБ "Приватбанк" не заперечує факту перерахування АТ "Нікопольський завод феросплавів" сум заборгованості за кредиту відповідно до кредитного договору, на які вказує позивач у своїй позовній заяві. Разом з тим, відповідач посилається на те, що у Американському позові зазначається про те, що АТ "Нікопольський завод феросплавів" мало б

Секретар с/з _____ О.О. Заряба
Виготовлено з автоматизованої системи
документообігу суду
25.01.2021

*1*9417835*1*0*

5

"використати кредитні кошти на "фінансування поточної підприємницької діяльності юридичної особи". Кредитним договором встановлено обов'язок АТ "Нікопольський завод феросплавів" використовувати кредит на цілі, передбачені п. 1.1 цього договору (п. А.2., 1.1., 2.2.1. кредитного договору). Однак, виходячи з вищезазначеного, питання фактичного цільового використання коштів за конкретним кредитним договором не підлягають встановленню при ухваленні рішення у цій справі, оскільки, не належать до предмета доказування. Крім того, не є предметом доказування у цій справі обставини використання ПриватБанк певної інформації, що захищається банківською таємницею, під час звернення із Американським позовом до Суду Штату Делавер, оскільки, ці обставини не підтверджують позовні вимоги позивача про визнання припиненими зобов'язань за кредитним договором, та не можуть мати значення для вирішення цієї справи (навіть сам позивач не надає пояснень з цього питання, тільки стверджує про начебто існування порушень з боку ПриватБанку, без прив'язки до предмета та підстав позову). Використання ПриватБанк певної інформації, що захищається банківською таємницею, під час подання Американського позову відбувалося із дотриманням вимог законодавства та з метою реалізації гарантованого Конституцією України права на звернення до суду для захисту прав, свобод та законних інтересів.

Так, статтею 86 Господарського процесуального кодексу України вказано, суд оцінює докази за своїм внутрішнім переконанням, що ґрунтується на всебічному, повному, об'єктивному та безпосередньому дослідженні наявних у справі доказів. Жодні докази не мають для суду заздалегідь встановленої сили. Суд оцінює належність, допустимість, достовірність кожного доказу окремо, а також вірогідність і взаємний зв'язок доказів у їх сукупності.

Оцінюючи подані докази та наведені обґрунтування за своїм внутрішнім переконанням, що ґрунтується на всебічному, повному і об'єктивному розгляді всіх обставин справи в їх сукупності, та врах0вуючи, що кожна сторона повинна довести ті обставини, на які вона посилається як на підставу своїх вимог і заперечень, суд вважає, що позовні вимоги підлягають задоволенню, виходячи з наступного.

Статтею 20 Господарського кодексу України передбачено, що кожний суб'єкт господарювання та споживач має право на захист своїх прав і законних інтересів.

Згідно ст. 15 Цивільного кодексу України кожна особа має право на захист свого цивільного права у разі його порушення, невизнання або оспорювання.

Частиною 1 ст. 16 Цивільного кодексу України визначено, що кожна особа має право звернутися до суду за захистом свого особистого немайнового або майнового права та інтересу. Способи захисту цивільних прав та інтересів визначені у ч. 2 ст. 16 ЦК України.

Відповідно до п. 1 ч. 2 ст. 16 Цивільного кодексу України способом захисту цивільного права або інтересу може бути визнання права.

Суд відзначає, що позов про визнання права подається у випадках, коли належне певній особі право не визнається іншою особою. Тобто, метою звернення до суду з позовом про визнання права є усунення невизначеності у взаємовідносинах суб'єктів, створення необхідних умов для реалізації права і запобігання дій з боку третіх осіб, які можуть перешкоджати його здійсненню. До прав, які підлягають судовому захисту, відносяться всі майнові та особисті немайнові права, які належать суб'єктам цивільного права.

Положеннями ч. 1-2 ст. 509 Цивільного кодексу України унормовано, що зобов'язанням є правовідношення, в якому одна сторона (боржник) зобов'язана вчинити на користь другої сторони (кредитора) певну дію (передати майно, виконати роботу, надати послугу, сплатити гроші тощо) або утриматися від вчинення певної дії (негативне зобов'язання), а кредитор має право вимагати від боржника виконання його обов'язку. Зобов'язання виникають з підстав, встановлених статтею 11 цього Кодексу.

Нормами ч. 1, п. 1 ч. 2 ст. 11 Цивільного кодексу України цивільні права та обов'язки виникають із дій осіб, що передбачені актами цивільного законодавства, а також із дій осіб, що не передбачені цими актами, але за аналогією породжують цивільні права та обов'язки. Підставами виникнення цивільних прав та обов'язків, зокрема, є договори та інші правочини.

Згідно ч. 1-2 ст. 1054 Цивільного кодексу України за кредитним договором банк або інша фінансова установа (кредитодавець) зобов'язується надати грошові кошти (кредит)

еп:ар с/з          О.О. Заруднá
товлено з автоматизованої системи
ментообігу суду
,2021

6

позичальникові у розмірі та на умовах, встановлених договором, а позичальник зобов'язується повернути кредит та сплатити проценти. До відносин за кредитним договором застосовуються положення параграфа 1 цієї глави, якщо інше не встановлено цим параграфом і не випливає із суті кредитного договору.

Відповідно до ч. 1 ст. 1046 Цивільного кодексу України за договором позики одна сторона (позикодавець) передає у власність другій стороні (позичальникові) грошові кошти або інші речі, визначені родовими ознаками, а позичальник зобов'язується повернути позикодавцеві таку ж суму грошових коштів (суму позики) або таку ж кількість речей того ж роду та такої ж якості. Договір позики є укладеним з моменту передання грошей або інших речей, визначених родовими ознаками.

При тому, ч. 1 ст. 526 Цивільного кодексу України встановлено, що зобов'язання має виконуватися належним чином відповідно до умов договору та вимог цього Кодексу, інших актів цивільного законодавства, а за відсутності таких умов та вимог - відповідно до звичаїв ділового обороту або інших вимог, що звичайно ставляться.

Зобов'язання припиняється частково або у повному обсязі на підставах, встановлених договором або законом (ч. 1 ст. 598 Цивільного кодексу України).

Судом встановлено, що 02.02.2009 між позивачем та відповідачем був укладений кредитний договір № 4Н09129Д, за умовами якого позичальнику було надано кредит у формі відновлювальної кредитної лінії в загальному розмірі 36     144     000, 00 (тридцять шість мільйонів сто сорок чотири тисячі) доларів США із строком повернення кредиту: 01 лютого 2010 року.

Означеного факту сторонами не заперечується та не оспорюється.

Із наданої позивачем до суду первинної документації, судом встановлено, що погашення кредиту у загальній сумі 36     144     000,00 доларів США, АТ "Нікопольський завод феросплавів" в рамках кредитного договору № 4Н09129Д від 02.02.2009, здійснювалось як позивачем, так і в інтересах позивача та рахунок наступних грошових коштів:

- сума у розмірі 10     000     000,00 доларів США, яка була сформована у результаті конвертації гривні у загальній сумі 76     200     000,00 гривень, отримана 27.08.2009 АТ "Нікопольський завод феросплавів" від поручителя у якості виконання обов'язків поручителя за договором поруки № Г.21.1.2.0/5-3676 від 03.08.2009;

- сума у розмірі 1 250 599,41 доларів США отримана 06.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" у якості оплати за феросплави в рамках виконання договору № 0912/900244;

- сума у розмірі 34 645,59 доларів США отримана 06.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" а якості оплати за феросплави в рамках виконання договору № 0912/900244;

- сума у розмірі 163 002,81 доларів США отримана 06.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/900246;

- сума у розмірі 1 752,19 доларів США отримана 06.10.2009 АТ "Нікопольський завод феросплавів" від компанії ПрАТ "Компанія "Приват Інтертрейдінг" в якості виконання обов'язків за договором комісії № К-09/01Ф;

- сума у розмірі 345 000,00 доларів США отримана 08.10.2009 АТ "Нікопольський завод феросплавів" від компанії ТОВ "Ферросплав" в якості попередньої оплати за феросплави в рамках виконання договору № 806346;

- сума у розмірі 395 000,00 доларів США отримана 08.10.2009 АТ "Нікопольський завод феросплавів" від компанії ТОВ "Ферросплав" в якості попередньої оплати за феросплави в рамках виконання договору № 900529;

- сума у розмірі 7 809 253,12 доларів США, яка була сформована у результаті конвертації гривні у загальній сумі 63     528 274,00 гривень, отримана 14.10.2009 АТ "Нікопольський завод феросплавів" від поручителя в якості виконання обов'язків поручителя за договором поруки № Г.21.1.2.0/5-3761 від 15.09.2009;

- сума у розмірі 399 405,25 доларів США, яка була сформована у результаті конвертації

Секретар с/з          О.О. Зарудня
Виготовлено з автоматизованої системи
документообігу суду
25.01.2021



гривні у загальній сумі 4   921 115,00 гривень, отримана 26.10.2009 АТ "Нікопольський завод феросплавів" від поручителя в якості виконання обов'язків поручителя за договором поруки № Г.21.1.2.0/5-3777 від 05.10.2009;

-       сума у розмірі 564 354,00 доларів США отримана 15.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/806296;

-       сума у розмірі 30 908,00 доларів США отримана 15.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/806296;

-       сума у розмірі 127 372,55 доларів США отримана 15.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/901129;

-       сума у розмірі 3 365,45 доларів США отримана 15.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/901129;

-       сума у розмірі 563 326,68 доларів США отримана 16.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/900862;

-       сума у розмірі 14 673,32 доларів США отримана 16.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/900862;

-       сума у розмірі 40 240,00 доларів США отримана 21.10.2009 АТ "Нікопольський завод феросплавів" від компанії ПрАТ "Компанія "Приват Інтертрейдінг" в якості виконання обов'язків за договором комісії № К-09/01Ф від 21.05.2009;

-       сума у розмірі 47 809,19 доларів США отримана 21.10.2009 АТ "Нікопольський завод феросплавів" від компанії ПрАТ "Компанія "Приват Інтертрейдінг" в якості виконання обов'язків за договором комісії № К-09/01Ф від 21.05.2009;

-       сума у розмірі 26 866,81 доларів США отримана 21.10.2009 АТ "Нікопольський завод феросплавів" від компанії ПрАТ "Компанія "Приват Інтертрейдінг" в якості виконання обов'язків за договором комісії № К-09/01Ф від 21.05.2009;

-       сума у розмірі 31 600,13 доларів США отримана 22.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/900214;

-       сума у розмірі 74 314,75 доларів США отримана 22.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/900215;

-       сума у розмірі 3 297,71 доларів США отримана 22.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/900215;

-       сума у розмірі 418 633,64 доларів США отримана 22.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/901069;

-       сума у розмірі 11 452,86 доларів США отримана 22.10.2009 АТ "Нікопольський завод феросплавів" від компанії "FERROST LLC" в якості оплати за феросплави в рамках виконання договору № 0912/901069;

-       сума у розмірі 2   310 217,89 доларів США, яка була сформована у результаті конвертації гривні у загальній сумі 18   851 379,00 гривень, отримана 26.10.2009 АТ "Нікопольський завод феросплавів" від поручителя в якості виконання обов'язків поручителя за договором поруки № Г.21.1.2.0/5-3778 від 05.10.2009;

-       сума у розмірі 11   276   908,65 доларів США, яка була 04.11.2009 сплачена поручителем.

При тому, суд звертає увагу, що в умовах кредитного договору № 4Н09129Д від 02.02.2009 АТ КБ "Приватбанк" та АТ "Нікопольський завод феросплавів" не визначали види джерел походження грошових коштів, за рахунок яких позивачем проводитиметься

секретар с/з _____   О.О. Зарудня
изготовлено з автоматизованої системи
окументообігуобу
.01.2021

8

погашення кредиту або сплата на користь Банку усіх процентів, винагород та інших виплат, які встановлювалися умовами кредитного договору.

Означеного факту відповідачем не спростовано, доказів протилежного суду не надано.

Натомість, дослідивши усі позивачем докази, суд приходить до висновку, що погашення кредиту та сплата усіх процентів, винагород та інших виплат, які встановлювались умовами кредитного договору № 4H09129Д від 02.02.2009, відбулося за рахунок коштів, отриманих АТ "Нікопольський завод феросплавів" від господарської діяльності, за рахунок поручителя та не за рахунок інших кредитних коштів, які отримувалися АТ "Нікопольський завод феросплавів" за іншими кредитними договорами.

Разом з тим, суд вказує, що факту погашення АТ "Нікопольський завод феросплавів" кредиту у загальній сумі 36    144    000,00 доларів США, в рамках кредитного договору № 4H09129Д від 02.02.2009 відповідачем не заперечується.

Крім того, із наявної в матеріалах справи довідки про стан позикової заборгованості, виданої позивачу АТ КБ "Приватбанк", вбачається, що станом на 30.07.2020 в АТ "Нікопольський завод феросплавів" відсутня заборгованість по кредитах та процентах перед АТ КБ "Приватбанк".

Так, із наданих позивачем доказів, зокрема, банківських виписок та інших офіційних документів, які підтверджують факти надходження і списання грошових коштів на та з банківських рахунків позивача у відповідні календарні дати, судом встановлено, що грошові кошти, які отримувалися позивачем за кредитним договором, були своєчасно та в повному обсязі повернуті у строки та в порядку, передбаченим кредитним договором, на користь Банку з урахуванням сплати всіх передбачених кредитним договором процентів, винагород та інших виплат, які встановлювались умовами кредитного договору № 4H09129Д від 02.02.2009.

Суд акцентує увагу на тому, що як на стадії підготовчого, так і судового засідання, з метою встановлення об'єктивної істини у справі, суд з'ясовував у представника відповідача обставини щодо виконання позивачем всіх зобов'язань за кредитним договором № 4H09129Д від 02.02.2009, зокрема, наявності/відсутності заборгованості за тілом кредиту, заборгованості по процентах та інших винагород, виплат Банку.

Втім, представник відповідача вказав, що встановлення таких обставин не входить до предмету доказування у даній справі.

У свою чергу, судом було роз'яснено представнику відповідача, що встановлення саме цих обставин входять до предмету доказування у даній справі.

Однак, представник відповідача відповіді на поставлені судом питання не надав.

При тому, відповідних доказів щодо наявності/відсутності заборгованості за тілом кредиту, заборгованості по процентах та інших винагород, виплат Банку, відповідачем суду також надано не було.

Згідно ч. 1-3 ст. 13 Господарського процесуального кодексу України судочинство у господарських судах здійснюється на засадах змагальності сторін. Учасники справи мають рівні права щодо здійснення всіх процесуальних прав та обов'язків, передбачених цим Кодексом. Кожна сторона повинна довести обставини, які мають значення для справи і на які вона посилається як на підставу своїх вимог або заперечень, крім випадків, встановлених законом.

Частиною 1 ст. 14 Господарського процесуального кодексу України визначено, що суд розглядає справи не інакше як за зверненням особи, поданим відповідно до цього Кодексу, в межах заявлених нею вимог і на підставі доказів, поданих учасниками справи або витребуваних судом у передбачених цим Кодексом випадках. Збирання доказів у господарських справах не є обов'язком суду, крім випадків, встановлених цим Кодексом.

Відповідно до ч. 1 ст. 526 ЦК України зобов'язання має виконуватися належним чином відповідно до умов договору та вимог цього Кодексу, інших актів цивільного законодавства, а за відсутності таких умов та вимог - відповідно до звичаїв ділового обороту або інших вимог, що звичайно ставляться.

Згідно ч. 1 ст. 599 ЦК України зобов'язання припиняється виконанням, проведеним належним чином.

Секретар с/з _____ О.О. Заруцня
Виготовлено з автоматизованої системи
документообігу суду
25.01.2021



9

Тотожні за змістом положення містяться і у Господарському кодексі України. Відповідно до ч. 1 ст. 173 ГК України господарським визнається зобов'язання, що виникає між суб'єктом господарювання та іншим учасником (учасниками) відносин у сфері господарювання з підстав, передбачених цим Кодексом, в силу якого один суб'єкт (зобов'язана сторона, у тому числі боржник) зобов'язаний вчинити певну дію господарського чи управлінсько-господарського характеру на користь іншого суб'єкта (виконати роботу, передати майно, сплатити гроші, надати інформацію тощо), або утриматися від певних дій, а інший суб'єкт (управнена сторона, у тому числі кредитор) має право вимагати від зобов'язаної сторони виконання її обов'язку.

Згідно ч. 1-2 ст. 193 ГК України суб'єкти господарювання та інші учасники господарських відносин повинні виконувати господарські зобов'язання належним чином відповідно до закону, інших правових актів, договору, а за відсутності конкретних вимог щодо виконання зобов'язання - відповідно до вимог, що у певних умовах звичайно ставляться. До виконання господарських договорів застосовуються відповідні положення Цивільного кодексу України з урахуванням особливостей, передбачених цим Кодексом. Кожна сторона повинна вжити усіх заходів, необхідних для належного виконання нею зобов'язання, враховуючи інтереси другої сторони та забезпечення загальногосподарського інтересу.

Відповідно до ч. 1 ст. 202 ГК України господарське зобов'язання припиняється: виконанням, проведеним належним чином.

Частиною 1 ст. 203 ГК України встановлено, що господарське зобов'язання, всі умови якого виконано належним чином, припиняється, якщо виконання прийнято управненою стороною.

Відтак, оскільки наявними в матеріалах справи доказами підтверджується погашення позивачем заборгованості за тілом кредиту, заборгованості по процентах та інших винагород та виплат Банку, які проводилися АТ "Нікопольський завод феросплавів" за рахунок коштів, отриманих АТ "Нікопольський завод феросплавів" від господарської діяльності, за рахунок поручителя та не за рахунок інших кредитних коштів, які отримувалися АТ "Нікопольський завод феросплавів" за іншими кредитними договорами, при тому, зважаючи на відсутність будь-яких доказів, що вказували на протилежне, то за таких підстав суд приходить до висновку про те, що зобов'язання за кредитним договором № 4Н09129Д від 02.02.2009 є виконаними.

Водночас, як про це вказує позивач та що, у свою чергу, встановлено судом та не заперечувалось відповідачем, АТ КБ "Приватбанк" звернулось з позовною заявою до Суду Штату Делавер (Сполучені Штати Америки).

До позовної заяви АТ "Нікопольський завод феросплавів" було додано переклади поданих АТ КБ "Приватбанк" до Суду Штату Делавер позовних заяв, вірність яких з англійської мови на українську мову посвідчено нотаріально.

Як встановлено із наданих позивачем нотаріально засвідчених перекладів, АТ КБ "Приватбанк" в якості відповідачів у вказаному позові вказало ряд фізичних та юридичних осіб, зокрема, Ігор Валерійович Коломойський (IGOR VALERYEVICH KOLOMOISKY), Геннадій Борисович Боголюбов (GENNADIY BORISOVICH BOGOLYUBOV), Мордехай Корф (MORDECHAI KORF), Хаїм Схочет (CHAIM SCHOCHET), Уріел Цві Лейбер (URIEL TZVI LABER), Чемстар Продакте ЛЛСі (CHEMSTAR PRODUCTS LLC), Джорджіан Амерікан Алойс Інк. (GEORGIAN AMERICAN ALLOYS INC.), Оптіма Асквізішинз ЛЛСі (OPTIMA ACQUISITIONS, LLC), Стіл Роллінг Холдінгз Інк. (STEEL ROLLING HOLDINGS, INC.), Оптіма Груп ЛЛСі (OPTIMA GROUP LLC), Оптіма Венчурез ЛЛСі (OPTIMA VENTURES LLC), Оптіма 55 Паблік Сквеар ЛЛСі (OPTIMA 55 PUBLIC SQUARE, LLC), Оптіма Ван Клівленд Центр ЛЛСі (OPTIMA ONE CLEVELAND CENTER, LLC), Оптіма 1375 ЛЛСі (OPTIMA 1375, LLC), Оптіма 1375 ІІ ЛЛСі (OPTIMA 1375 II, LLC), Опітма 1300 ЛЛСі (OPTIMA 1300, LLC), Оптіма 777 ЛЛСі (OPTIMA 777, LLC), Оптіма Стеммонз ЛЛСі (OPTIMA STEMMONS, LLC), Оптіма 7171 ЛЛСі (OPTIMA 7171, LLC), Оптіма 500 ЛЛСі (OPTIMA 500, LLC), Оптіма 925 ЛЛС (OPTIMA 925, LLC), Варрен Стіл Холдінгз ЛЛСі (WARREN STEEL HOLDINGS, LLC), Оптіма Інтернешнл оф Маямі Інк. (OPTIMA

екрет.ар с/з                                   О.О Зарудня
чготовлено автоматизованої системи
жументообігу суду
5.01.2021



INTERNATIONAL OF MIAMI, INC.), Фелман Трейдінг Інк. (FELMAN TRADING, INC.) та Вероні Алойс ЛЛСі (VERONI ALLOYS, LLC), Деметер Діверсіфайд ЛЛСі (DEMETER DIVERSIFIED LLC), Емпаєр Кемікал ЛЛСі (EMPIRE CHEMICAL, LLC), Телбон Альянс ЛЛСі (ALLIANCE, LLC).

Підставами звернення до Суду Штату Делавер Банком було вказано, що судова справа виникла з шахрайських схем  для придбання активів у Сполучених Штатах Америки, вартість яких складає сотні мільйонів доларів США, через відмивання та незаконне присвоєння коштів, які видавались АТ КБ "Приватбанк".

У примітках вказаного позову, який був поданий АТ КБ "Приватбанк" до Суду Штату Делавер, міститься посилання на те, що у разі використання у тексті позову скорочення «NZF VAT» мається на увазі АТ «Нікопольський завод феросплавів» («Joint Stock Company Nikopol Ferroalloy Plant»).

Позивачем в якості підстави для звернення до суду з позовом було визначено окремі пункти поданого відповідачем до Суду Штату Делавер позову, зокрема, пункти 140-141 позову, в яких зазначається  наступне:

"28 вересня 2009 року НЗФ ВАТ, українська компанія, що належить або контрольована КБВ і/або пов'язана з ними, залучила 30  мільйонів доларів кредитних надходжень від ПриватБанку Україна. Згідно з кредитною документацією, виручені кошти повинні були піти на       «фінансування поточної діяльності позичальника». Однак, позикові кошти не були використані для фінансування поточної діяльності ВАТ НЗФ.

Швидше за все, протягом трохи більше години виручка була відмита через три рахунки з відмивання грошей, в тому числі через Chemstar Products відповідача Боголюбова і Divot Enterprises відповідача Коломойського. Через 6 хвилин після того, як виручені кошти були переведені на рахунок фірми Ravenscroft Holdings Ltd., КБВ  і їх спільники незаконно привласнили щонайменше 12,5 мільйона доларів США з цих кредитних надходжень, перевівши їх з Ravenscroft Holdings Ltd  на американський банківський рахунок Optima International.

Також, у редакції позову АТ КБ «Приватбанк»  поданому до Суду Штату Делавер 21.07.2020 в пункті 3 зазначено:

«За допомогою схем Optima КБВ скористалось своєю владою і довірою в Приватбанку, щоб змусити Приватбанк видати незаконні, недостатньо забезпечені кредити на сотні мільйонів доларів корпоративним організаціям, які також належать і/або контролються КБВ і/або їх афілійованими особами ( кредити за схемами Optima) без будь якого наміру коли-небудь повернути ці кредити…»

У результаті дослідження наданих позивачем доказів, зокрема, завірених копій банківських виписок з рахунків АТ "Нікопольський завод феросплавів", судом встановлено, що в позові АТ КБ «Приватбанк», поданому до Суду Штату Делавер, зокрема, в пунктах 148-149 (сторінка 80) позову, зміст яких наведений вище, з-поміж інших кредитних договорів міститься  посилання в тому числі на кредитний договір № 4H09129Д від 02.02.2009, оскільки в  рамках означеного кредитного договору 28.09.2009 АТ "Нікопольський завод феросплавів" було отримано від АТ КБ «Приватбанк» кредитні кошти, які наведені у зазначених вище пунктах позову АТ КБ «Приватбанк», поданого до Суду Штату Делавер.

Відтак, АТ КБ «Приватбанк» у поданому до Суду Штату Делавер позові вказує на те, що позивач використовував кредитні кошти на цілі, що суперечили умовам Кредитного договору, та не використовував їх для фінансування поточної діяльності підприємства, а також не мав намір їх повернути.

Як було зазначено у позовній заяві Акціонерним товариством "Нікопольський завод феросплавів", використання отриманих ним кредитних коштів здійснювалось у відповідності до мети та цілей діяльності, положень установчих документів та рішень органів управління юридичної особи. На підтвердження належного виконання всіх зобов'язань за Кредитним договором №4H09129Д від 02.02.2009 року та для підтвердження відсутності у відповідача підстав не визнавати право на припинення зобов'язань за кредитним договором позивачем було подано до суду детальну первинну документацію щодо того, на які саме цілі

11

здійснювалось використання отриманих кредитних коштів.

Як вбачається зі змісту первинної документації, наданої Позивачем до суду, кредитні кошти у загальній сумі 36   144   000,00 доларів США, які були отримані Акціонерним товариством "Нікопольський завод феросплавів" в рамках кредитного договору №4Н09129Д від 02.02.2009 року, були використані Акціонерним товариством "Нікопольський завод феросплавів" наступним чином:

- сума у розмірі 10   000   000,00 доларів США була сплачена 10.07.2009 року на користь компанії «CHEMSTAR PRODUCTS LLC» у якості оплати за руду в рамках виконання договору №100709N/1;

-   сума у розмірі 4   000   000,00 доларів США була сплачена 28.09.2009 року на користь компанії «CHEMSTAR PRODUCTS LLC» у якості оплати за руду в рамках виконання договору №250909N;

-   сума у розмірі 10   000   000,00 доларів США була сплачена 28.09.2009 року на користь компанії «CHEMSTAR PRODUCTS LLC» у якості оплати за руду в рамках виконання договору №230909N;

-   сума у розмірі 726 000,00 доларів США була сплачена 15.10.2009 року на користь компанії «CHEMSTAR PRODUCTS LLC» у якості оплати за руду в рамках виконання договору №220709N;

-   сума у розмірі 578   000,00 доларів США була сплачена 16.10.2009 року на користь компанії «CHEMSTAR PRODUCTS LLC» у якості оплати за руду в рамках виконання договору №280909N;

-   сума у розмірі 540   000,00 доларів США була сплачена 22.10.2009 року на користь компанії «CHEMSTAR PRODUCTS LLC» у якості оплати за руду в рамках виконання договору №280909N;

-   сума у розмірі 8 000   000,00 доларів США була сплачена 27.10.2009 року на користь компанії «CHEMSTAR PRODUCTS LLC» у якості оплати за руду в рамках виконання договору №261009N;

-   сума у розмірі 2 300   000,00 доларів США була сплачена 27.10.2009 року на користь компанії «CHEMSTAR PRODUCTS LLC» у якості оплати за руду в рамках виконання договору №191009N.

Дослідивши зміст документів, наданих позивачем до суду, вбачається, що проведення зазначених вище платежів, які здійснювалися Акціонерним товариством "Нікопольський завод феросплавів" внаслідок використання кредитних коштів в рамках виконання кредитного договору № 4Н09129Д від 02.02.2009 року, підтверджується відповідною первинною документацією, яка міститься в матеріалах справи.

Отже, з огляду на викладене, оцінивши усі докази, надані сторонами у даній справі, суд приходить до висновку, що кредитні кошти, які отримувались позивачем в рамках кредитного договору, використовувалися АТ «Нікопольський завод феросплавів» в порядку та умовах, передбачених кредитним договором, і на ціль, передбачену умовами кредитного договору, якою є фінансування поточної діяльності АТ «Нікопольський завод феросплавів», а також АТ «Нікопольський завод феросплавів» повернуто на користь АТ КБ «Приватбанк» кредитні кошти та сплачено на користь АТ КБ «Приватбанк» усі проценти, винагороди та інші виплати, які встановлювались умовами кредитного договору, у строки та в порядку, передбачені кредитним договором, та за рахунок коштів, отриманих АТ "Нікопольський завод феросплавів" від господарської діяльності, за рахунок поручителя та не за рахунок інших кредитних коштів, які отримувалися АТ "Нікопольський завод феросплавів" за іншими кредитними договорами.

Згідно ч. 1 ст. 627 Цивільного кодексу України відповідно до статті 6 цього Кодексу сторони є вільними в укладенні договору, виборі контрагента та визначенні умов договору з урахуванням вимог цього Кодексу, інших актів цивільного законодавства, звичаїв ділового обороту, вимог розумності та справедливості.

Так, у відзиві на позовну заяву відповідач, заперечуючи щодо задоволення позовних вимог, вказував на те, що у позивача відсутнє невизнане право, що підлягало б захисту у судовому порядку.

кретар с/з _____ О.О. Зарудня
готовлено з автоматизованої системи
кументообігу суду
.01.2021

Також, відповідач вказував на те, що звернення АТ КБ «Приватбанк» до Суду Штату Делавер (США) із Американським позовом не призвело до невизнання (а тим більше до порушення чи оспорювання) жодних прав позивача і, відповідно, в останнього відсутні будь-які передумови та підстави звертатись із позовною заявою до Банку про визнання припиненими зобов'язань за кредитним договором.

Зокрема, відповідач стверджує про те, що АТ "Нікопольський завод феросплавів" помилково вважає, що на підставі ст. 599 ЦК України у нього наявне суб'єктивне право на припинення зобов'язань, які виникли з кредитного договору, та стверджує про помилковість тверджень позивача про те, що таке його право не визнається/заперечується АТ КБ "Приватбанк" шляхом звернення з Американським позовом до Суду Штату Делавер. Зазначає про те, що ані самим кредитним договором, ані законами України не встановлюється окреме/самостійне право на припинення зобов'язань, які виникають з кредитного договору.

Відповідач вказує на те, що ст. 599 ЦК України та ст. 203 ГК України передбачають, що припинення виконаного зобов'язання відбувається автоматично в силу закону України і для того, щоб виконане зобов'язання припинилось, не потребується жодної вольової дії з боку зобов'язаної сторони.

Також відповідач відзначає, що АТ "Нікопольський завод феросплавів" не є відповідачем у Американському позові і АТ КБ "Приватбанк" не заявив до нього жодних позовних вимог будь-якого характеру.

Втім, відповідач не заперечує факту, що АТ "Нікопольський завод феросплавів" перерахувало АТ КБ "Приватбанк" грошові кошти за кредитним договором і позивач викривлює зміст перекладу цитат та окремих пунктів Американського позову, оскільки в жодному з них АТ КБ "Приватбанк" не стверджує про те, що Акціонерне товариство "Нікопольський завод феросплавів" не було здійснено перерахування кредитних коштів за кредитним договором. Відповідач вказує на те, що внаслідок подання ним Американського позову права Акціонерного товариства "Нікопольський завод феросплавів" не зазнають будь-якого негативного впливу і просить відмовити у задоволенні позову Акціонерного товариства "Нікопольський завод феросплавів" за кредитним договором №4Н09129Д від 02 лютого 2009 року, укладеним між Акціонерним товариством Комерційний банк "Приватбанк" та Акціонерним товариством "Нікопольський завод феросплавів", у зв'язку з їх повним виконанням, проведеним належним чином.

Отже, суд зазначає, що з поданої позивачем позовної заяви та наявних у матеріалах справи доказів, вбачається, що підставою для звернення до суду став не сам по собі факт виконання АТ "Нікопольський завод феросплавів" своїх зобов'язань за кредитним договором шляхом повного погашення кредитів та сплати всіх передбачених кредитним договором процентів, винагород та інших платежів, а факт невизнання АТ КБ "Приватбанк" належного припинення таких зобов'язань.

Тобто, виникнення свого права на припинення зобов'язань за кредитним договором позивач обґрунтовує не самим фактом укладення такого кредитного договору чи фактом належного виконання своїх обов'язків за таким кредитним договором, а саме фактом невизнання припинення таких договірних зобов'язань зі сторони відповідача, який мав місце при зверненні останнім з позовом до Суду Штату Делавер.

Невизнання цивільного права полягає у пасивному запереченні наявності в особи суб'єктивного цивільного права, яке безпосередньо не завдає шкоди суб'єктивному праву, але створює невпевненість у правовому статусі носія суб'єктивного права. Право на звернення до суду (право на захист у процесуальному розумінні) гарантується Конституцією України та законами України, у тому числі статтями 15, 16 ЦК України та статтями 1, 3, 15 ГПК України, і може бути реалізоване, зокрема, коли особа вважає, що її право не визнається.

Відтак, суд погоджується з викладеними у позовній заяві обґрунтуваннях та доводах позивача, щодо того, що Акціонерне товариство Комерційний банк "Приватбанк" при обґрунтуванні фактичних обставин поданого до Суду Штату Делавер позову фактично не визнає факту припинення зобов'язань, які існували між Акціонерним товариством

секретар с/з
відповідно з автоматизованою системою
документообігу суду
01.2021

О.О. Зарудня



13

"Нікопольський завод феросплавів" та Акціонерним товариством Комерційний банк "Приватбанк" за кредитним договором №4Н09129Д від 02 лютого 2009 року.

Суд не погоджується з доводами відповідача про те, що законодавство України не передбачає існування права на припинення зобов'язання. До прав, які підлягають судовому захисту, відносяться всі майнові та особисті немайнові права, які належать суб'єктам цивільного права. Загальні засади цивільного законодавства і засади здійснення судочинства закріплюють право особи на захист у суді будь-яких порушених або невизнаних прав.

Суд погоджується з доводами позивача про те, що у разі невизнання кредитором права боржника, передбаченого статтею 599 Цивільного кодексу України, на припинення зобов'язання, таке право підлягає захисту судом за позовом боржника на підставі пункту 1 частини другої статті 16 Цивільного кодексу України.

Припинення договірного зобов'язання шляхом його виконання, проведеного належним чином, є юридичним фактом, наслідком якого є втрата сторонами такого зобов'язання статусу кредитора і боржника у зобов'язанні і, відповідно, права будь-яких взаємних вимог один щодо одного.

Позивачем доведено суду належними та допустимими доказами наявність обставин та ознак того, що Акціонерним товариством Комерційний банк "Приватбанк" не визнається право Акціонерного товариства "Нікопольський завод феросплавів" на припинення зобов'язань за Кредитним договором №4Н09129Д від 02.02.2009 року, що свідчать про обґрунтованість та правомірність заявленої позивачем позовної вимоги.

Щодо посилання відповідача на висновки, викладені в пункті 32,41 постанови Великої Палати Верховного Суду від 21.08.2018 у справі № 910/14144/17 та в пункті 62 постанови від 23.01.2019 у справі № 522/14890/16-ц, як на такі, що зроблені в подібних правовідносинах за кредитними та позиковими зобов'язаннями та які повинні бути враховані при розгляді даної справи, суд зазначає наступне.

В постанові Великої Палати Верховного Суду у справі № 910/14144/17 зроблено висновки, що вимоги про визнання відсутнім права в одного відповідача (кредитора) вимагати від другого відповідача (боржника) сплати боргу за кредитними договорами, які погашено позивачем (поручителем), та про визнання права поручителя вимагати від боржника сплати ним грошових коштів за кредитними договорами, сплачених поручителем, не можуть бути самостійним предметом розгляду в господарському суді. Такі вимоги не призводять до поновлення порушених прав, не можуть самостійно розглядатися в окремій справі, а відповідні доводи підлягають розгляду лише під час вирішення спору про стягнення грошових коштів за такими договорами.

Отже, вимоги позивача та обраний спосіб захисту по даній справі не є тотожнім до вимог та способу у справі № 910/14144/17.

Також, в пунктах 61-63 постанови Великої Палати Верховного Суду від 23.01.2019 у справі № 522/14890/16-ц встановлено:

« 61. Як зазначено вище, у цій справі позивач вважає порушеним своє право власності на частку у статутному капіталі, якою, на його думку, відповідач заволодів на забезпечення вимог за договором позики і яку має повернути у зв'язку з виконанням зобов'язання за цим договором. Тому належним способом захисту позивача є позов про повернення з володіння відповідача частки у статутному капіталі товариства (підпункт «е» пункту 3 частини п'ятої статті 17 Закону України «Про державну реєстрацію юридичних осіб, фізичних осіб - підприємців та громадських формувань»). Таким чином, питання існування основного зобов'язання, за яким, за твердженням позивача, було передбачене забезпечувальне зобов'язання, може бути вирішене з використанням належних засобів доказування у межах відповідного спору за правилами господарського судочинства.

62. Тому позов у частині вимоги про визнання припиненим договору позики у зв'язку з виконанням зобов'язань за цим договором у повному обсязі не підлягає задоволенню, оскільки позовна вимога не відповідає належному способу захисту прав позивача.

63. Задоволення такої вимоги, з одного боку, саме по собі не призведе до захисту прав позивача, оскільки не вирішить питання про повернення частки у статутному капіталі позивачу, з іншого боку - спричинить штучне передрішення спору про застосування

14

належного способу захисту, який має розглядатися за правилами іншого судочинства. Отже, у позові в цій частині слід відмовити.»

Суд констатує, що правовідносини та обставини даної господарської справи та справи № 522/14890/16-ц не є подібними, оскільки, у справі № 522/14890/16-ц позивач вважав порушеним своє право власності на частку у статутному капіталі, якою, на його думку, відповідач заволодів на забезпечення вимог за договором позики і яку має повернути у зв'язку з виконанням зобов'язання за цим договором шляхом визнання припиненим договору позики.

А в даному випадку, АТ "Нікопольський завод Феросплавів" посилається на невизнання АТ КБ «Приватбанк» виконання позивачем зобов'язань по договору № 4Н09129Д від 02.02.2009, та просить визнати такі зобов'язання припиненими виконанням, проведеним належним чином.

Таким чином, виходячи із загальних засад цивільного законодавства й судочинства, права особи на захист у суді порушених або невизнаних прав, рівності процесуальних прав та обов'язків сторін, слід дійти висновку про те, що у разі невизнання кредитором права боржника, передбаченого        статтею 599 Цивільного кодексу України, на припинення зобов'язання, таке право підлягає захисту судом за позовом боржника на підставі пункту першого частини другої  статті 16 Цивільного кодексу України.

Висновок суду про можливість захисту прав особи у такий спосіб як визнання права боржника на припинення зобов'язання за договором підтверджується висновками суду, викладеними у постановах Касаційного господарського суду у складі Верховного Суду від 13.06.2018 р. у справі 911/169/16, від 19.06.2018 у справі №916/993/17, від 03.04.2019 р. у справі 913/317/18.

Суд зазначає, що у викладі підстав для прийняття рішення суду необхідно дати відповідь на доречні аргументи та доводи сторін, здатні вплинути на вирішення спору; виклад підстав для прийняття рішення не повинен неодмінно бути довгим, оскільки необхідно знайти належний баланс між стислістю та правильним розумінням ухваленого рішення; обов'язок суддів наводити підстави для своїх рішень не означає необхідності відповідати на кожен аргумент заявника на підтримку кожної підстави; обсяг цього обов'язку суду може змінюватися залежно від характеру рішення.

Згідно з практикою Європейського суду з прав людини очікуваний обсяг обгрунтування залежить від різних доводів, що їх може наводити кожна зі сторін, а також від різних правових положень, звичаїв та доктринальних принципів, а крім того, ще й від різних практик підготовки та представлення рішень у різних країнах. Аналогічна правова позиція викладена в постанові Верховного Суду від 28.05.2020 у справі № 909/636/16.

Аналізуючи питання обсягу дослідження доводів учасників справи та їх відображення у судовому рішенні, суд першої інстанції спирається на висновки, що зробив Європейський суд з прав людини від18.07.2006р. у справі «Проніна проти України», в якому Європейський суд з прав людини зазначив, що п.1 ст.6 Конвенції зобов'язує суди давати обгрунтування своїх рішень, але це не може сприйматись як вимога надавати детальну відповідь на кожен аргумент. Межі цього обов'язку можуть бути різними в залежності від характеру рішення. Крім того, необхідно брати до уваги різноманітність аргументів, які сторона може представити в суд, та відмінності, які існують у державах-учасницях, з огляду на положення законодавства, традиції, юридичні висновки, викладення та формулювання рішень. Таким чином, питання, чи виконав суд свій обов'язок щодо подання обгрунтування, що випливає зі ст.6 Конвенції, може бути визначено тільки у світлі конкретних обставин справи.

У рішенні Європейського суду з прав людини «Серявін та інші проти України» (SERYAVINOTHERS v.) вказано, що усталеною практикою Європейського суду з прав людини, яка відображає принцип, пов'язаний з належним здійсненням правосуддя, у рішеннях судів та інших органів з вирішення спорів мають бути належним чином зазначені підстави, на яких вони грунтуються. Хоча пункт 1 статті 6Конвенції зобов'язує суди обгрунтовувати свої рішення, його не можна тлумачити як такий, що вимагає детальної відповіді на кожен аргумент. Міра, до якої суд має виконати обов'язок щодо обгрунтування рішення може бути різною в залежності від характеру рішення (див. рішення у справі «Руїс

верн.ар с/з
...опи: єлено з автоматизованої системи
...рсум-атообігу суду
5.01.2021

*1*9417835*1*0*

15

Торіхапроти Іспанії" (Ruiz Torija v. Spain) від 9 грудня 1994 року, серія А, N 303-А, п. 29). Хоча національний суд має певну свободу розсуду щодо вибору аргументів у тій чи іншій справі та прийняття доказів на підтвердження позицій сторін, орган влади зобов'язаний виправдати свої дії, навівши обґрунтування своїх рішень (див. рішення у справі «Суомінен проти Фінляндії» (Suominen v. Finland), N 37801/97, п. 36,від 1 липня 2003 року).

Ще одне призначення обґрунтованого рішення полягає в тому, щоб продемонструвати сторонам, що вони були почуті. Крім того, вмотивоване рішення дає стороні можливість оскаржити його та отримати його перегляд вищестоящою інстанцією. Лише за умови винесення обґрунтованого рішення може забезпечуватись публічний контроль здійснення правосуддя(див. рішення у справі «Гірвісаарі проти Фінляндії» (Hirvisaari v. Finland), №49684/99, п. 30, від 27вересня 2001 року). Аналогічна правова позиція викладена у постанові від 13.03.2018 Верховного Суду по справі№910/13407/17.

Отже, оцінивши усі докази, надані сторонами у даній справі, суд приходить до висновку, що кредитні кошти, які отримувались позивачем в рамках кредитного договору, використовувалися АТ «Нікопольський завод феросплавів» в порядку та умовах, передбачених кредитним договором, і на ціль, передбачену умовами кредитного договору, якою є фінансування поточної діяльності АТ «Нікопольський завод феросплавів», а також АТ «Нікопольський завод феросплавів» повернуто на користь АТ КБ «Приватбанк» кредитні кошти та сплачено на користь АТ КБ «Приватбанк» усі проценти, винагороди та інші виплати, які встановлювались умовами кредитного договору, у строки та в порядку, передбачені кредитним договором, та за рахунок коштів, отриманих АТ "Нікопольський завод феросплавів" від господарської діяльності, за рахунок поручителя та за рахунок інших кредитних коштів, які отримувалися АТ "Нікопольський завод феросплавів" за іншими кредитними договорами.

За таких обставин, враховуючи, що кредитний договір № 4Н09129Д від 02.02.2009 є припиненим виконанням та відповідно усі зобов'язання АТ «Нікопольський завод феросплавів» перед АТ КБ «Приватбанк», які були передбачені, обумовлені та пов'язані з кредитним договором, припинились виконанням, проведеним належним чином, яке було прийняте АТ КБ «Приватбанк» як управленою стороною таких зобов'язань, суд дійшов висновку, що в АТ КБ «Приватбанк» відсутні правові підстави стверджувати про наявність зобов'язань АТ «Нікопольський завод феросплавів» перед Банком за кредитним договором № 4Н09129Д від 02.02.2009 або про їх неналежне виконання зі сторони АТ «Нікопольський завод феросплавів», а права АТ «Нікопольський завод феросплавів» підлягають захисту шляхом визнання припиненими усіх зобов'язань позивача перед АТ КБ «Приватбанк» за кредитним договором виконанням, проведеним належним чином.

З огляду на вищевикладене, всі інші доводи та міркування учасників судового процесу не досліджуються судом, так як з огляду на встановлені фактичні обставини справи, суд дав вичерпну відповідь на всі питання, що входять до предмету доказування у даній справі та виникають при кваліфікації спірних відносин як в матеріально-правовому, так і у процесуальному сенсах.

Витрати по сплаті судового збору відповідно до ч. 1 ст. 129 Господарського процесуального кодексу України, покладаються на відповідача.

Керуючись статтями 74, 76-80, 129, 236-242 Господарського процесуального кодексу України, Господарський суд міста Києва

## ВИРІШИВ:

1. Позов Акціонерного товариства "Нікопольський завод феросплавів"– задовольнити.

2. Визнати припиненими усі зобов'язання Акціонерного товариства "Нікопольський завод феросплавів" (53200, Дніпропетровська обл., м. Нікополь, вул. Електрометалугргів, буд. 310; ідентифікаційний код 00186520) перед Акціонерним товариством Комерційний банк "Приватбанк" (01001, м. Київ, вул. Грушевського, буд. 1Д; ідентифікаційний код 14360570) за кредитним договором №4Н09129Д від 02.02.2009, укладеним між Акціонерним товариством Комерційний банк "Приватбанк" 01001, м. Київ, вул. Грушевського, буд. 1Д;

О.О. Забуня

ідентифікаційний код 14360570) та Акціонерним товариством "Нікопольський завод феросплавів" (53200, Дніпропетровська обл., м. Нікополь, вул. Електрометалургрів, буд. 310; ідентифікаційний код 00186520), у зв'язку з їх повним виконанням, проведеним належним чином.

3. Стягнути з Акціонерного товариства Комерційний банк "Приватбанк" (01001, м. Київ, вул. Грушевського, буд. 1Д; ідентифікаційний код 14360570) на користь Акціонерного товариства "Нікопольський завод феросплавів" (53200, Дніпропетровська обл., м. Нікополь, вул. Електрометалутргів, буд. 310; ідентифікаційний код 00186520) витрати по сплаті судового збору в розмірі 2    102 (дві тисячі  сто дві) грн 00 коп.

Рішення господарського суду набирає законної сили після закінчення строку подання апеляційної скарги, якщо апеляційну скаргу не було подано. У разі подання апеляційної скарги рішення, якщо його не скасовано, набирає законної сили після повернення апеляційної скарги, відмови у відкритті чи закриття апеляційного провадження або прийняття постанови суду апеляційної інстанції за наслідками апеляційного перегляду.

Апеляційна скарга на рішення суду подається протягом двадцяти днів з дня його проголошення безпосередньо до суду апеляційної інстанції. Якщо в судовому засіданні було оголошено лише вступну та резолютивну частини рішення суду, або у разі розгляду справи (вирішення питання) без повідомлення (виклику) учасників справи, зазначений строк обчислюється з дня складення повного судового рішення.

Повний текст рішення складено: 22.01.2021

Суддя                                                                                                          Д.О. Баранов





Всього в копії 16 аркушів

Секретар с/з ... О. Зарудня

Seal: /True copy/

/state emblem of Ukraine/

**Economic Court of Kyiv**
44-V B. Khmelnytskyi str., Kyiv, 01030, Tel. (044) 284-18-98, E-mail inbox@ki.arbitr.gov.ua
**DECISION**
**IN THE NAME OF UKRAINE**
(introductory and operative parts)
Kyiv city

22.01.2021

Case No. 910/14224/20

**Economic Court of Kyiv consisting of Judge D.O. Baranov,** with the participation of the Secretary of the court session O.O. Zarudna, having considered the materials of the commercial case **on the claim** of the Joint-Stock Company "Nikopol Ferroalloy Plant" (310 Electrometalurgiv str., Nikopol city, Dnipropetrovsk region, 53200, Ukraine; legal entity identification code 00186520)

**against** Joint-Stock Company Commercial Bank "PrivatBank" **(10** Hrushevskogo str., Kyiv city, 01001; legal entity identification code 14360570) **on** the recognition of the obligations to be terminated

**Representatives of the Litigants:**
**on behalf of the Plaintiff:** D.M. Kobeliatsky, E.O. Simonova **on behalf of the Defendant:** V.P. Kulinich, D.O. Monastyrsky

**FACTS OF THE CASE:**

Joint-Stock Company "Nikopol Ferroalloy Plant" filed a claim to the Economic Court of Kyiv against Joint-Stock Company Commercial Bank "PrivatBank" in which the Plaintiff requests the Court to recognize all the obligations of Joint-Stock Company "Nikopol Ferroalloy Plant" to Joint-Stock Company Commercial Bank "PrivatBank" under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, concluded between Joint-Stock Company Commercial Bank "PrivatBank" and Joint-Stock Company "Nikopol Ferroalloy Plant" to be terminated due to proper performance.

By the ruling dated September 28, 2020, the Economic Court of Kyiv left the statement of claim of Joint-Stock Company "Nikopol Ferroalloy Plant" without action and set the Plaintiff a five-day term from the date of delivery of the ruling on removal of the defects by submitting to the court the evidence of sending (description of the attachment to a valuable letter and fiscal receipt) a copy of the statement of claim No. 3-7578/406 dated September 19, 2020, with annexes attached to it to Joint-Stock Company Commercial Bank "PrivatBank".

08.10.2020        On October 08, 2020, the Economic Court of Kyiv received the Plaintiff's motion on the removal of the defects of the statement of claim, accompanied by the evidence of sending a copy of the statement of claim No. 3-7578/406 dated September 19, 2020, with annexes attached to it to Joint-Stock Company Commercial Bank "PrivatBank".

By the ruling dated October 29, 2020, the Economic Court of Kyiv accepted the statement of claim for consideration, started the proceedings, and scheduled the preliminary court hearing for November 25, 2020.

20.11.2020        On November 20, 2020, the Economic Court of Kyiv received a statement of defence, in which the Defendant requests the Court to dismiss the claim.

23.11.2020        On November 23, 2020, the Economic Court of Kyiv received a motion from the Defendant to leave the claim without consideration.

By the ruling dated November 25, 2020, the Economic Court of Kyiv adjourned the preliminary court hearing to January 13, 2021.

07.12.2020        On December 7, 2020, the Economic Court of Kyiv received the Plaintiff's motion to leave the claim without consideration.

*Round seal: Economic Court of Kyiv*Ukraine*Office No. 2*
*Legal entity identification code 05379487*

*Secretary of the court session ____ /signature / ____ O.O. Zarudna*
*Made up from the Court*
*Automated Case*
*Management System*
*22.01.2021*

*bar code*
*\*1\*9417835\*1\*0\**

29.12.2020  On December 29, 2020, the Economic Court of Kyiv received a Plaintiff's motion to attach the documents to the case file, in which the Plaintiff requests the Court to extend the term for filing additional evidence and to attach additional documents to the case file.

04.01.2021  On January 04, 2021, the Economic Court of Kyiv received the Plaintiff's motion to return the Plaintiff's motion to leave the claim without consideration.

04.01.2021  On January 04, 2021, the Economic Court of Kyiv received a Plaintiff's motion to attach the documents to the case file, in which the Plaintiff requests the court to extend the term for filing additional evidence and to attach additional documents to the case file.

12.01.2021  On January 12, 2021, the Economic Court of Kyiv received a Plaintiff's motion to accelerate the proceedings in the case and to prevent violations of the terms of consideration of the case.

Having considered the Plaintiff's request to withdraw the request to leave the claim without consideration and having heard the statements of the Representatives of the Litigants during the preliminary court hearing on January 13, 2021, the Court decided not to consider the Plaintiff's motion to leave the claim without consideration. This information is recorded in the court transcript dated January 13, 2021.

Having considered the Defendant's motion to leave the claim without consideration and having heard the statements of the representatives of the Litigants during the preliminary court hearing on January 13, 2021, the Court decided to dismiss the motion. This information is recorded in the court transcript dated January 13, 2021.

Having considered the Plaintiff's motion to attach additional evidence to the case file during the preliminary court hearing on January 13, 2021, the Court also decided to renew the time limit to file the additional evidence and to attach such evidence into the case file. This information is recorded in the court transcript dated January 13, 2021.

The Court adjourned the hearing up to January 20, 2021, during the preliminary court hearing on January 13, 2021.

20.01.2021  On January 20, 2021, the Economic Court of Kyiv received the Defendant's written explanations concerning the additional evidence presented by the Plaintiff to the case file.

By the ruling dated January 20, 2021, the Economic Court of Kyiv closed the preliminary court hearing and scheduled the hearing on the merits to be held on January 22, 2021.

The Court adjourned the hearing on January 22, 2021, until 3.00 p.m.

After the adjournment, the Court continued the hearing.

During the hearing, the Plaintiff's representatives upheld the claims and requested the Court to grant them.

The Defendant's representatives objected to the claims and requested the Court to dismiss the claim.

Thus, taking into account that the case file contains sufficient documents for consideration of the case, the Court announced the introductory and operative parts of the court decision during the hearing on January 22, 2021, in accordance with Article 240 of the Commercial and Procedural Code of Ukraine.

Having examined the case file and heard the statements made by the representatives of the Plaintiff and the Defendant, the Economic Court Of Kyiv

### FOUND:

On February 2, 2009, Joint-Stock Company Commercial Bank "PrivatBank" (hereinafter referred to as the "Bank") and Joint-Stock Company "Nikopol Ferroalloy Plant" (hereinafter referred to as the "Borrower") concluded the Loan Agreement No. 4N09129D/4Н09129Д, pursuant to which the Borrower was provided a loan in the form of a revolving credit line.

The revolving credit line is a loan provided to the Borrower in part or in full before the date specified in the Loan Agreement, within the limit of the specified agreement, including after partial or full repayment of the loan, so that the actual loan debt does not exceed the credit limit set out under the agreement.

The limit of the Loan Agreement was set at USD 14,000,000.00 (fourteen million) for the purpose to "finance the current activities."

The loan repayment period was set for February 01, 2010.

The Loan Agreement defined the obligations of the Borrower. Such obligations include, among others, the

*Round seal: Economic Court of Kyiv*Ukraine*Office No. 2*
*Legal entity identification code 05379487*

Secretary of the court session _____ / signature /_____ O.O. Zarudna         *bar code*
Made up from the Court                     *1*9417835*1*0*
Automated Case
Management System
22.01.2021

obligation to repay the loan within the period specified in the Agreement, as well as the obligation to pay interest on the loan and the Bank's remuneration.

According to the Plaintiff, subject to all amendments and supplements mutually agreed upon and forming an integral part of the Loan Agreement, to fulfil the terms and conditions of the Loan Agreement. The Bank granted the loan proceeds, as follows:

- USD 10,000,000.00 (ten million) on July 10, 2009
- USD 4,000,000.00 (four million) on September 28, 2009
- USD 10,000,000.00 (ten million) on September 28, 2009
- USD 726,000.00 (seven hundred and twenty-six thousand) on October 15, 2009
- USD 578,000.00 (five hundred seventy-eight thousand) on October 16, 2009
- USD 540,000.00 (five hundred and forty thousand) on October 22, 2009
- USD 10,300,000.00 (ten million three hundred thousand) on October 27, 2009

The total amount received under the Loan Agreement No. 4N09129D/4H09129Д was USD 36,144,000.00 (thirty-six million one hundred forty-four thousand).

According to the Plaintiff, after receiving the loan proceeds, JSC "Nikopol Ferroalloy Plant", in compliance with the Loan Agreement and to properly fulfil the contractual obligations, repaid them (loan repayment), in the following order:

- USD 10,000,000.00 (ten million) on July 13, 2009
- USD 1,450,000.00 (one million four hundred and fifty thousand) on October, 06, 2009
- USD 740,000.00 (seven hundred and forty thousand) on October 08, 2009
- USD 7,809,253.12 (seven million eight hundred nine thousand two hundred and fifty-three, 12 cents)
- USD 599,405.25 (five hundred ninety-nine thousand four hundred and five, 25 cents)
- USD 726,000.00 (seven hundred and twenty-six thousand) on October 15, 2009
- USD 578,000.00 (five hundred seventy-eight thousand) on October 16, 2009
- USD 114,916.00 (one hundred and fourteen thousand nine hundred and sixteen) on October 21, 2009
- USD 539,299.09 (five hundred and thirty-nine thousand two hundred and ninety-nine) on October 22, 2009
- USD 2,310,217.89 (two million three hundred and ten thousand two hundred and seventeen, 89 cents) on October 23, 2009
- USD 11,276,908.65 (eleven million two hundred seventy-six thousand nine hundred and eight, 65 cents) on November 04, 2009

According to the Plaintiff, JSC "Nikopol Ferroalloy Plant" paid the debt under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009 in full and on time on November 04, 2009. Furthermore, the Plaintiff states to have paid all the interest, fees and other charges due and payable under the terms of the said Loan Agreement in full and properly.

However, as the Plaintiff became aware from the information published in the media, JSC CB "PrivatBank" filed a statement of claim (VERIFIED COMPLAINT) (hereinafter referred to as the "claim filed to the Court of State of Delaware", "claim of the Bank", "claim considered under US law") to the Court of State of Delaware (THE DELAWARE COURT OF CHANCERY) (hereinafter referred to as the "Court of State of Delaware").

As a basis for filing a Claim to the Court of State of Delaware the Bank stated, in particular, that the case arose out of series of brazen fraudulent schemes

allegedly organized by Ukrainian oligarchs Igor Valeryevich Kolomoisky and Gennadiy Borisovich Bogolyubov and their agents in the United States and abroad in order to acquire hundreds of millions of dollars-worth of U.S. assets through the laundering and misappropriation of corporate loan proceeds issued by PrivatBank.

In particular, in paragraphs 140-141 of the claim filed to the Court of State of Delaware Privatbank points out that JSC NFP (Joint-Stock Company "Nikopol Ferroalloy Plant"), whose successor is the Plaintiff, on September 28, 2009, obtained a loan from Privatbank in the amount of USD 30 million, that, as may be seen from the contents of the claim filed to the Court of State of Delaware, was not repaid to Privatbank.

In fact, in the claim filed to the Court of State of Delaware, Privatbank, stating the facts of the case and describing the legal grounds of filing the claim, pointed out that the Open Joint Stock Company "Nikopol Ferroalloy Plant" that is succeeded by the Joint Stock Company "Nikopol Ferroalloy Plant", did not fulfil its obligations under the Loan Agreement No. 4N10258D/4H10258Д dated October 10, 2010 (hereinafter also referred to as the "Loan Agreement"), as it did not repay the debt under the above Loan Agreement to Privatbank, and used loan proceeds

Secretary of the court session ____ / signature /____ O.O. Zarudna
Made up from the Court
Automated Case
Management System
22.01.2021

bar code
*1*9417835*1*0*

obtained by JSC "Nikopol Ferroalloy Plant" under the above Loan Agreement for the purposes that contradicted the terms and conditions of the Loan Agreement, i.e. did not use them to finance the current activities of the enterprise, and that JSC "Nikopol Ferroalloy Plant" is involved in money laundering and illegal loan recycling, which implied, in particular, repayment of the debt under the Loan Agreement No. 4N09129D/4H09129Д dated February 02,2009, with other loan proceeds obtained by JSC "Nikopol Ferroalloy Plant" under other loan agreements.

Thus, the Plaintiff, filing the claim against JSC CB "PrivatBank" on the recognition of the obligations of JSC "Nikopol Ferroalloy Plant" to JSC CB "PrivatBank" under the Loan Agreement No.4N09129D/4H09129Д dated February 02,2009, concluded between JSC CB "PrivatBank" and JSC "Nikopol Ferroalloy Plant", to be terminated, due to proper performance, in support of its claims indicates that, since all the obligations between it and the Defendant, emergence and existence of which was due to the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, were terminated by their execution, properly conducted, which, in turn, was taken by JSC CB "PrivatBank", a controlling party in the interpretation of Part 1 of Art. 203 of the Commercial Code of Ukraine, in such circumstances, the Defendant has no grounds for non-recognition of the Plaintiff's right to terminate the obligations.

In the statement of defence filed by the Defendant, the latter objects to the satisfaction of the claim, stating:

- that there is no unrecognised right that is justiciable;
- that the filing of the US claim by JSC CB "PrivatBank" to the Court of State of Delaware (USA) did not result in non-recognition (as well as violation or contestation) of any rights of JSC "Nikopol Ferroalloy Plant" and, respectively, the latter has no grounds and reasons to file a statement of claim against JSC CB "PrivatBank" on the recognition of the obligations under the Loan Agreement No. 4N09129D/ dated February 02, 2009 to be terminated;
- that the Plaintiff has no subjective right to terminate the obligation which is justiciable and, as a result, there is no dispute between the Litigants as to the right;
- that the filing of the US claim by JSC CB "PrivatBank" has no adverse effect (violation (breach), non-recognition or contestation) on any rights and obligations of JSC "Nikopol Ferroalloy Plant" under the Loan Agreement and is not evidence that JSC CB "PrivatBank" does not recognize any right of JSC "Nikopol Ferroalloy Plant" under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009;

that JSC CB "PrivatBank" does not deny the fact that JSC "Nikopol Ferroalloy Plant" has transferred the amounts of debt owed under the loan in accordance with the Loan Agreement the Plaintiff refers to in the statement of claim. Along with that, the Defendant refers to the fact that the US claim mentions that the JSC "Nikopol Ferroalloy Plant" would have to "use the loan proceeds to "finance the current business activities of the legal entity." The Loan Agreement establishes the obligation of JSC "Nikopol Ferroalloy Plant" to use the loan for the purposes provided for in clause 1.1 of this Agreement (clauses A.2., 1.1., 2.2.1. of the Loan Agreement). However, based on the above, the issue of the actual use of the proceeds under the specific Loan Agreement is not subject to the decision of the case, since it is not relevant to the fact to be proven. Moreover, the circumstances of the use of certain information protected by bank secrecy by PrivatBank when filing the US claim to the Court of State of Delaware are not facts to be proved within this case, since these facts do not confirm the Plaintiff's claims on the recognition of the obligations under the Loan Agreement to be terminated and can have no significance for the resolution of this case (the Plaintiff itself provides no explanation on this matter, only states the alleged existence of violations by PrivatBank, without reference to the subject matter and grounds of the claim). The use by PrivatBank of certain information, which is protected by the bank secrecy, when filing the US claim, was in compliance with the legal requirements and in order to exercise the right, guaranteed by the Constitution of Ukraine, to apply to the court for protection of rights, freedoms and legitimate interests.

According to Article 86 of the Commercial and Procedural Code of Ukraine, the court evaluates the evidence according to its discretion and internal beliefs grounded on comprehensive, complete, and impartial examination of all the evidence available in the case. No evidence shall have any predetermined probative value. The court evaluates all the evidence from the point of view of adequacy, admissibility, and in respect of the aggregate of collected evidence, sufficiency and correlation.

Evaluating the provided evidence and the given justifications based on its own moral certainty grounded in comprehensive, complete, and impartial examination of all circumstances available in the case and in respect of the aggregate of collected evidence, and taking into account that each litigator shall prove the circumstances on which it

refers as a basis for its claims and objections, the court believes that the claims are subject to satisfaction, based on the following.

According to Article 20 of the Commercial Code of Ukraine, every business entity and consumer have the right to protect their rights and legitimate interests.

According to Article 15 of the Civil Code of Ukraine, every person has the right to protect his/her civil rights in case of its violation, non-recognition or contestation.

According to Part 1 of Article 16 of the Civil Code of Ukraine, every person has the right to take a legal action for protection of the personal non-property or property right and interest. The ways to protect civil rights and interests are stipulated in Part 2 of Article 16 of the Civil Code of Ukraine.

According to paragraph 1 of Part 2 of Article 16 of the Civil Code of Ukraine recognition of the right can be a way to protect a civil right or interest.

The Court states that the claim on the recognition of the right is to be filed in the events when a right that belongs to a certain person is not recognized by another person. Thus, the purpose of filing a lawsuit for recognition of the right is to eliminate uncertainty in the relationship of the entities, to create the necessary conditions for the exercise of the right and to prevent actions by third parties that may impede its performance. The rights under judicial protection include *all* the property and personal non-property rights vested in the civil law subjects.

In accordance with Parts 1 and 2 of Article 509 of the Civil Code of Ukraine, an obligation is a legal relationship with one party (debtor) to be obliged to perform in favour of the other party (creditor) a certain action (transfer property, perform work, provide service, pay money, etc.) or refrain from committing a certain action (negative obligation), and the creditor has the right to demand from the debtor to perform the obligation. Obligations arise on the grounds provided for in Article 11 of this Code.

According to Part 1, Para. 1 of Part 2 of Article 11 of the Civil Code of Ukraine, civil rights and obligations arise of the actions of persons provided by acts of civil law, as well as of the actions of persons not provided by these acts, but by analogy give rise to civil rights and obligations. The grounds for arising civil rights and obligations, in particular, are contracts and other deeds.

In accordance with Parts 1 and 2 of Article 1054 of the Civil Code of Ukraine, under a loan agreement, a bank or other financial institution (lender) undertakes to provide funds (loan) to a borrower in the amount and on the terms established by the agreement, and the borrower undertakes to repay the loan and pay interest. The provisions of Paragraph 1 of this Chapter shall apply to the relationship under the Loan Agreement, unless otherwise provided by this Paragraph and does not arise from the subject matter of the Loan Agreement.

According to Part 1 of Article 1046 of the Civil Code of Ukraine, under the Loan Agreement one party (lender) transfers to the other party (borrower) money funds or other things determined by generic characteristics, and the borrower undertakes to return to the lender the same amount of money (loan amount) or the same number of things of the same kind and of the same quality. The Loan Agreement is deemed concluded upon the moment of transfer of money or other things determined by generic features.

In accordance with Part 1 of Article 526 of the Civil Code of Ukraine, the obligation should be performed properly pursuant to the terms of the agreement and the requirements of this Code, other acts of civil law, and in the absence of such conditions and requirements, in accordance with business practices or other usual requirements.

The obligation is terminated in part or in full on the grounds established by an agreement or by law (Part 1 of Article 598 of the Civil Code of Ukraine).

The court has found that on February 02, 2009, the Plaintiff and the Defendant entered into the Loan Agreement No. 4N09129D/4H09129Д, under the terms of which the Borrower was granted a loan in the form of revolving credit line in the total amount of USD 36,144,000.00 (thirty-six million one hundred forty-four thousand) with a maturity date of February 01, 2010.

This fact is neither denied nor disputed by the Litigants.

Based on the accounting source documents provided by the Plaintiff, the Court has found that the loan repayment in the total amount of USD 36,144,000.00 by JSC "Nikopol Ferroalloy Plant" under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, was performed both by the Plaintiff and on behalf of the Plaintiff by means of the following funds:

- the amount of USD 10,000,000.00 formed as a result of conversion of UAH 76,200,000.00 received on August 27, 2009 by JSC "Nikopol Ferroalloy Plant" from the Guarantor under the Contract Of Guarantee No. G.21.1.2.0/5-3676/T.21.1.2.0/5-3676 dated August 03, 2009;

- the amount of USD 1,250,599.41 was received on October 06, 2009 by JSC "Nikopol Ferroalloy Plant" from

*Secretary of the court session* _____ / *signature* / _____ *O.O. Zarudna*
*Made up from the Court*
*Automated Case*
*Management System*
*22.01.2021*

bar code
*1*9417835*1*0*

the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/900244;

- the amount of USD 34,645.59 was received on Ocber 06, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/900244;

- the amount of USD 163,002.81 was received on October 06, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/900246;

- the amount of USD 1,752.19 was received on October 06, 2009 by JSC "Nikopol Ferroalloy Plant" from JSC "Private Intertrading" as the performance of its obligations under the Commission Agreement No.K-09/01F/K-09/01Ф;

- the amount of USD 345,000.00 was received on October 08, 2009 by JSC "Nikopol Ferroalloy Plant" from "Ferroalloy LLC" as the advance payment for ferroalloys under the Contract No. 806346;

- the amount of USD 395,000.00 was received on October 08, 2009 by JSC "Nikopol Ferroalloy Plant" from "Ferroalloy LLC" as the advance payment for ferroalloys under the Contract No. 900529;

- the amount of USD 7,809,253.12 formed as a result of conversion of UAH 63,528,274.00 received on October 14, 2009 by JSC "Nikopol Ferroalloy Plant" from the Guarantor under the Contract Of Guarantee No. G.21.1.2.0/5-3761/Т.21.1.2.0/5-3761 dated September 15, 2009;

- the amount of USD 599,405.25 formed as a result of conversion of UAH 4,921,115.00 received on October 26, 2009 by JSC "Nikopol Ferroalloy Plant" from the Guarantor under the Contract Of Guarantee No. G.21.1.2.0/5-3777/Т.21.1.2.0/5-3777 dated October 05, 2009;

- the amount of USD 564,354.00 was received on October 15, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/806296;

- the amount of USD 30,908.00 was received on October 15, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/806296;

- the amount of USD 127,372.55 was received on October 15, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/901129;

- the amount of USD 3,365.45 was received on October 15, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/901129;

- the amount of USD 563,326.68 was received on October 16, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/900862;

- the amount of USD 14,673.32 was received on October 16, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/900862;

- the amount of USD 40,240.00 was received on October 21, 2009 by JSC "Nikopol Ferroalloy Plant" from JSC "Private Intertrading" as the performance of its obligations under the Commission Agreement No.K-09/01F/K-09/01Ф dated May 21, 2009;

- the amount of USD 47,809.19 was received on October 21, 2009 by JSC "Nikopol Ferroalloy Plant" from JSC "Private Intertrading" as the performance of its obligations under the Commission Ageement No.K-09/01F/K-09/01Ф dated May 21, 2009;

- the amount of USD 26,866.81 was received on October 21, 2009 by JSC "Nikopol Ferroalloy Plant" from JSC "Private Intertrading" as the performance of its obligations under the Commission Agreement No.K-09/01F/K-09/01Ф dated May 21, 2009;

- the amount of USD 31,600.13 was received on October 22, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/900214;

- the amount of USD 74,314.75 was received on October 22, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/900215;

- the amount of USD 3,297.71 was received on October 22, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/900215;

- the amount of USD 418,633.64 was received on October 22, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/901069;

- the amount of USD 11,452.86 was received on October 22, 2009 by JSC "Nikopol Ferroalloy Plant" from the "FERROST LLC" Company as the payment for ferroalloys under the Contract No. 0912/901069;

- the amount of USD 2,310,217.89 formed as a result of conversion of UAH 18,851,379.00 received on October 26, 2009 by JSC "Nikopol Ferroalloy Plant" from the Guarantor under the Contract Of Guarantee No. G.21.1.2.0/5-3778/Т.21.1.2.0/5-3778 dated October 05, 2009;

- the amount of USD 11,276,908.65 paid by the Guarantor on November 4, 2009.

Herewith, the Court notes that under the terms of the Loan Agreement No. 4N09129D/4Н09129Д dated February 02, 2009 between JSC CB "PrivatBank" and JSC "Nikopol Ferroalloy Plant", the Litigants did

Secretary of the court session _____ / signature /_____  O.O. Zarudna
Made up from the Court
Automated Case
Management System
22.01.2021

bar code
*1*9417835*1*0*

not determine the sources of funds to be used by the Plaintiff for loan repayment or payment of all interest, fees and other payments, which were set forth within the terms of the Loan Agreement.

The Defendant did not refute this fact, no evidence on the contrary was provided to the Court.

Based on the examination of all evidence provided by the Plaintiff, the Court finally concludes that the loan repayment and payment of all interest, fees and other payments, which were set forth in the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, were made at the expense of funds received by JSC "Nikopol Ferroalloy Plant" from its business activities, at the expense of the Guarantor and not at the expense of other loan funds, which were received by JSC "Nikopol Ferroalloy Plant" under other loan agreements.

The Court also states that the fact of loan repayment in the total amount of USD 36,144,000.00 USD by JSC "Nikopol Ferroalloy Plant" under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009 has not been denied by the Defendant.

The Certificate of Loan Indebtedness issued by JSC CB "PrivatBank", that was attached to the case file, is also to prove that as of July 30, 2020, JSC "Nikopol Ferroalloy Plant" has no debts on loans and interest to JSC CB "PrivatBank".

Thus, based on the evidence provided by the Plaintiff, in particular bank statements and other official documents that confirm the facts of the receipt and debiting of funds to and from the Plaintiff's bank accounts on the relevant calendar dates, the Court has found that the funds obtained by the Plaintiff under the Loan Agreement were timely and fully repaid to the Bank at the time and in the manner prescribed by the Loan Agreement, including the payment of all interest, fees and other payments under the Loan Agreement No. 4N09129D/4H09129Д *dated* February 02,2009.

The Court emphasizes that both at the preliminary court hearing and during the hearing on the merits, in order to establish the objective truth on the case, the Court ascertained the facts regarding the fulfillment of all the obligations by the Plaintiff under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, in particular the existence/absence of debt on the loan, interest and other fees payable to the Bank.

However, the representative of the Defendant pointed out that the establishment of such facts is not relevant to the subject matter to be proven under this case.

The Court, on the contrary, explained to the representative of the Defendant that the establishment of these very facts are relevant to the subject matter that are to be proven under this case.

However, the representative of the Defendant did not provide any answers on the issue raised by the court.

The Defendant also did not provide the Court with relevant evidence of the existence/absence of debts on the loan, interest and other payments to the Bank.

According to Parts 1-3 of Art. 13 of the Commercial and Procedural Code of Ukraine, legal proceedings in commercial courts are based on the adversarial principle. The Ligitants in the case shall have equal rights regarding the exercise of all procedural rights and obligations stipulated by this Code. Each Litigant shall prove the facts/circumstances relevant to the case and which are referred to as a basis for the claims or objections, except in cases prescribed by law.

According to Part 1 of Art. 14 of the Commercial and Procedural Code of Ukraine, the court shall consider cases only at the request of a person filed in accordance with this Code, within the limits of the claims and based on the evidence provided by the litigants or demanded by the court in cases stipulated by this Code. It shall not be the duty of the Court to collect evidence for commercial cases, except in cases prescribed by this Code.

In accordance with part 1 of Article 526 of the Civil Code of Ukraine, the obligation should be performed properly pursuant to the terms of the agreement and the requirements of this Code, other acts of civil law, and in the absence of such conditions and requirements - in accordance with business practices or other usual requirements.

According to Part 1 of Article 599 of the Civil Code of Ukraine, the obligation is terminated by proper performance.

The Commercial Code of Ukraine contains  similar provisions. In accordance with part 1 of Article 173 of the Commercial Code of Ukraine, an economic obligation is an obligation arising between a business entity and another participant (participants) of relations on the grounds provided by this Code, by virtue of which one entity (obligated party, including the debtor) is obliged to take a certain action of economic or managerial-economic nature in favor of another entity (perform work, transfer property, pay money, provide information, etc.), or refrain from certain actions, and another entity (the entitled party, in including the creditor) has the right to demand from the obligated party to perform its obligation.

*Secretary of the court session _____ / signature /_____   O.O. Zarudna*
*Made up from the Court*
*Automated Case*
*Management System*
*22.01.2021*

*bar code*
*•1•9417835•1•0•*

According to Parts 1 and 2 of Article 193 of the Commercial Code of Ukraine, business entities and other participants in economic relations must perform economic obligations properly in accordance with the law, other legal acts, the agreement, and in the event of the absence of specific requirements for the fulfilment of obligations, in accordance with usual requirements. Relevant provisions of the Commercial Code of Ukraine shall be applied to the performance of economic agreements, taking into account the peculiarities provided by this Code. Each party shall take all the measures required for the proper performance of its obligations,

taking into account the interests of the other party and ensuring the general economic interest.

According to Part 1 of Article 202 of the Commercial Code of Ukraine, the economic obligation is terminated by proper performance.

In accordance with Part 1 of Article 203 of the Commercial Code of Ukraine, an economic obligation, all the conditions of which are properly fulfilled, is to be terminated if the performance is accepted by the entitled party.

Thus, since the evidence available in the case file confirms that the Plaintiff paid the debt on the loan, the debt on interest and other fees and payments to the Bank, which were performed by JSC "Nikopol Ferroalloy Plant" at the expense of the funds received by JSC "Nikopol Ferroalloy Plant" from its business activities, at the expense of the Guarantor and not at the expense of other loan proceeds, which were received by JSC "Nikopol Ferroalloy Plant" under other loan agreements, provided that there is no evidence to the contrary, then based on such grounds the Court concludes the obligations under the Loan Agreement No. 4N09129D/4Н09129Д dated February 02, 2009 are performed.

However, pointed out by the Plaintiff, found by the Court and not denied by the Defendant, JSC CB "PrivatBank" filed a statement of claim to the Court of State of Delaware (United States of America).

Translations of statements of claim filed by JSC CB "PrivatBank" to the Court of State of Delaware, the accuracy of which from English to Ukrainian was certified by a notary, were attached to the statements of claim of JSC "Nikopol Ferroalloy Plant".

As it is stated from the notarized translations provided by the Plaintiff, JSC CB "PrivatBank" indicated a number of individuals and legal entities as Defendants in the claim hereinabove, in particular, IGOR VALERYEVICH KOLOMOISKY, GENNADIY BORISOVICH BOGOLYUBOV, MORDECHAI KORF, CHAIM SCHOCHET, URIEL TZVI LABER, CHEMSTAR PRODUCTS LLC, GEORGIAN AMERICAN ALLOYS INC., OPTIMA ACQUISITIONS, LLC, STEEL ROLLING HOLDINGS, INC., OPTIMA GROUP LLC, OPTIMA VENTURES LLC, OPTIMA 55 PUBLIC SQUARE, LLC, OPTIMA ONE CLEVELAND CENTER, LLC, OPTIMA 1375, LLC, OPTIMA 1375 II, LLC, OPTIMA 1300, LLC, OPTIMA 777, LLC, OPTIMA STEMMONS, LLC, OPTIMA 7171, LLC, OPTIMA 500, LLC, OPTIMA 925, LLC, WARREN STEEL HOLDINGS, LLC, OPTIMA INTERNATIONAL OF MIAMI, INC., FELMAN TRADING, INC., VERONI ALLOYS, LLC, DEMETER DIVERSIFIED, LLC, EMPIRE CHEMICAL, LLC, TELBON ALLIANCE, LLC.

As a basis for filing a Claim to the Court of State of Delaware the Bank stated, in particular, that the case arose out of series of brazen fraudulent schemes in the United States and abroad in order to acquire hundreds of millions of dollars-worth of U.S. assets through the laundering and misappropriation of corporate loan proceeds issued by JSC CB "PrivatBank".

In the notes of the said claim, that was filed by JSC CB "PrivatBank" to the Court of State of Delaware, there is a reference to the fact that if the abbreviation"JSC NFP/NZF VAT" is used in the text of the claim, it refers to the Joint Stock Company "Nikopol Ferroalloy Plant".

As a basis for the claim, the Plaintiff defined *certain* paragraphs of the claim submitted by the Defendant to the Court of State of Delaware, in particular paragraphs 140-141 of the claim, which read as follows:

"On September 28, 2009, JSC "NFP", a Ukrainian company owned or controlled by and/or associated with KBV, borrowed USD 30 million of loan proceeds from PrivatBank Ukraine. According to the loan documentation, the proceeds were to be used to "finance the Borrower's current activities". However, the loan proceeds were not used for the purpose of "financing current activities of JSC "NFP".

The proceeds were likely laundered through three money-laundering accounts, including through the Chemstar Products company owned by Defendant Bogolyubov and Divot Enterprises owned by Defendant Kolomoisky in little more than an hour. Six minutes after the proceeds were transferred to the account of Ravenscroft Holdings Ltd., the IPM and their co-conspirators misappropriated at least USD 12.5 million of these loan proceeds by transferring them from Ravenscroft Holdings Ltd. to the US bank account of Optima International.

It is also stated in Clause 3 in the claim of JSC CB "PrivatBank" filed to the Court of State of Delaware on July

*Secretary of the court session _____ / signature / _____ O.O. Zarudna*
*Made up from the Court*
*Automated Case*
*Management System*
*22.01.2021*

*bar code*
*\*1\*9417835\*1\*0\**

21, 2020:

"By means of Optima schemes, the KBV used their power and trust with PrivatBank to force PrivatBank to issue illegal, insufficiently secured loans worth hundreds of millions of dollars to corporate entities that are also owned and/or controlled by the KBV and/or their affiliates (loans under Optima schemes) with no intention of ever repaying those loans...".

As a result of an examination of the evidence provided by the Plaintiff, in particular, the certified copies of bank statements from the accounts of JSC "Nikopol Ferroalloy Plant", The Court found that the claim filed by JSC CB "PrivatBank" to the Court of State of Delaware, in particular, in paragraphs 148-149 (page 80) of the claim cited above, among other loan agreements, references are made to the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, as under the said Loan Agreement JSC "Nikopol Ferroalloy Plant" received the loan proceeds from JSC CB "PrivatBank" on September 28, 2009, which are mentioned in the above paragraphs of the claim filed by JSC CB "PrivatBank" to the Court of State of Delaware.

Thus, JSC CB "PrivatBank", in its claim filed to the Court of State of Delaware, states that the Plaintiff used the loan proceeds for purposes that contradicted the terms of the Loan Agreement and did not use them to finance the current activities of the company, nor intended to repay them.

As stated in the statement of claim filed by Joint Stock Company "Nikopol Ferroalloy Plant", the loan proceeds were used in accordance with the aims and purposes of its business activities, the provisions of its statutory documents and decisions of its governing bodies. To confirm that all obligations under Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, were duly performed and to confirm that the Defendant had no grounds to recognize the right to terminate the obligations under the Loan Agreement, the Plaintiff provided the Court with detailed accounting source documents regarding the exact purposes for which the loan proceeds were used.

According to the accounting source documents provided to the Court by the Plaintiff, the loan proceeds in the total amount of USD 36,144,000.00 received by Joint Stock Company "Nikopol Ferroalloy Plant" under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009 were used by Joint Stock Company "Nikopol Ferroalloy Plant" as follows:

-   the amount of USD 10,000,000.00 was paid on July 10, 2009 to CHEMSTAR  PRODUCTS LLC as the payment for ore under the Contract No. 100709N/1;

-   the amount of USD 4,000,000.00 was paid on September 28, 2009 to CHEMSTAR PRODUCTS LLC as the payment for ore under the Contract No. 250909N;

-   the amount of USD 10,000,000.00 was paid on September 28, 2009 to CHEMSTAR PRODUCTS LLC as the payment for ore under the Contract No. 230909N;

   the amount of USD 726,000.00 was paid on October 15, 2009 to CHEMSTAR PRODUCTS LLC as the payment for ore under the Contract No. 220709N;

   the amount of USD 578,000.00 was paid on October 16, 2009 to CHEMSTAR PRODUCTS LLC as the payment for ore under the Contract No. 280909N;

   the amount of USD 540,000.00 was paid on October 22, 2009 to CHEMSTAR PRODUCTS LLC as the payment for ore under the Contract No. 280909N;

-   the amount of USD 8,000,000.00 was paid on October 27, 2009 to CHEMSTAR PRODUCTS LLC as the payment for ore under the Contract No. 261009N;

   the amount of USD 2,300,000.00 was paid on October 27, 2009 to CHEMSTAR PRODUCTS LLC as the payment for ore under the Contract No. 191009N;

Having examined the documents provided to the Court by the Plaintiff, the payments hereinabove made by Joint Stock Company "Nikopol Ferroalloy Plant" as a result of the use of loan proceeds under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, are confirmed by the appropriate accounting source documents contained in the case file.

Thus, considering the above, having assessed all the evidence provided by the Litigants under this case, the Court concludes that the loan proceeds acquired by the Plaintiff under the Loan Agreement were used by JSC "Nikopol Ferroalloy Plant" under the terms and conditions of the Loan Agreement and for the purpose provided for in the Loan Agreement, which is the financing of the current activities of JSC "Nikopol Ferroalloy Plant", as well as JSC "Nikopol Ferroalloy Plant" repaid to JSC CB "PrivatBank" the loan proceeds and paid to JSC CB "PrivatBank" all interest, fees and other payments, which were set by the terms of the Loan Agreement, within the terms and according to the procedure provided by the Loan Agreement, at the expense of funds received by JSC "Nikopol

Secretary of the court session ____ / signature /_____   O.O. Zarudna
Made up from the Court
Automated Case
Management System
22.01.2021

bar code
*1*9417835*1*0*

Ferroalloy Plant" from business activities, at the expense of the Guarantor and not at the expense of other loan proceeds, which were received by JSC "Nikopol Ferroalloy Plant" under other loan agreements.

According to Article 6 of the Civil Code of Ukraine, part 1 of Article 627, the parties are free to conclude an agreement, choose a counterparty and determine the terms of the agreement, taking into account the requirements of this Code, other acts of civil legislation, the business practices, the requirements of reasonableness and fairness.

Thus, within the statement of defence, the Defendant stated that the Plaintiff had no unrecognised right that is subject to protection in court.

The Defendant also claimed that the US claim filed by JSC CB "PrivatBank" to the Court of State of Delaware (USA) did not result in the non-recognition (or in the violation or contestation) of any rights of the Plaintiff and, therefore, the latter did not have any grounds and reasons to file a claim against the Bank to recognize the obligations to be terminated under the Loan Agreement.

The Defendant particularly claims that JSC "Nikopol Ferroalloy Plant" wrongly believes that on the basis of Article 599 of the Civil Code of Ukraine it has a subjective right to terminate the obligations arising from the Loan Agreement and argues that the Plaintiff's statements that its right is not recognized/denied by JSC CB "PrivatBank" by filing a US claim in the Court of State of Delaware are erroneous. The Defendant also states that neither the Loan Agreement nor the Ukrainian legislation establishes a separate/autonomous right to terminate the obligations arising under the Loan Agreement.

The Defendant points out that Articles 599 and 203 of the Civil Code of Ukraine stipulate that the termination of a fulfilled obligation is conducted automatically by virtue of the law and no voluntary action of the obliged party is required in order for the obligation to be terminated.

The Defendant also notes that JSC "Nikopol Ferroalloy Plant" is not a Defendant under the US claim and that JSC CB "PrivatBank" has not asserted any claims of any nature against it.

However, the Defendant does not deny the fact that JSC "Nikopol Ferroalloy Plant" transferred the funds under the Loan Agreement and the Plaintiff misinterprets the meaning of the translation of quotations and certain paragraphs of the US claim since JSC CB "PrivatBank" does not state within any of them that Joint Stock Company "Nikopol Ferroalloy Plant" has not transferred the loan proceeds under the Loan Agreement. The Defendant states that the rights of Joint Stock Company "Nikopol Ferroalloy Plant" do not suffer any adverse effects following the filing of the US Claim and asks to dismiss the claim of Joint Stock Company "Nikopol Ferroalloy Plant" regarding the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, concluded between Joint Stock Company Commercial Bank "PrivatBank" and Joint Stock Company "Nikopol Ferroalloy Plant" due to proper performance.

Thus, the Court notes that the Plaintiff's statement of claim and the evidence available in the case file demonstrate that the basis of the claim was not the fact that JSC "Nikopol Ferroalloy Plant" performed its obligations under the Loan Agreement by repaying loans in full and paying all interest, fees and other payments provided by the Loan Agreement, but that JSC CB "PrivatBank" did not recognize the proper termination of such obligations.

That is, the Plaintiff does not base its right to terminate its obligations under the Loan Agreement on the fact that it entered into such Loan Agreement or that it properly performed its obligations under such Loan Agreement, but on the fact that the Defendant failed to recognize such obligations when it filed the claim to the Court of State of Delaware.

The non-recognition of a civil right is a passive denial of the existence of a subjective civil right, which does not directly prejudice the subjective right but creates uncertainty about the legal status of the holder of the subjective right. The right to take legal recourse (the right to judicial protection) is guaranteed by the Constitution of Ukraine and the laws of Ukraine, including Articles 15, 16 of the Civil Code of Ukraine and Articles 1,3, 15 of the Civil Procedural Code of Ukraine, can be exercised, in particular, when a person believes that his/her right is not recognised.

Therefore, the Court agrees with the arguments of the Plaintiff stated in the statement of claim that Joint Stock Company Commercial Bank "PrivatBank" while substantiating the factual circumstances of the claim filed to the Court of State of Delaware failed to recognize the fact of termination of the obligations that existed between Joint Stock Company "Nikopol Ferroalloy Plant" and Joint Stock Company Commercial Bank "PrivatBank" under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009.

The Court does not accept the Defendant's argument that Ukrainian law does not provide for the existence of a right to terminate an obligation. The rights under judicial protection include all property and personal non-property rights vested in the civil law subjects. The general principles of civil law and the fundamentals of legal procedure set out a person's right to protect any violated or unrecognised rights in court.

*Secretary of the court session _____ / signature /_____ O.O. Zarudna*
*Made up from the Court*
*Automated Case*
*Management System*
*22.01.2021*

*bar code*
*\*1\*9417835\*1\*0\**

The Court agrees with the Plaintiff's arguments that if a creditor fails to recognise a debtor's right under Article 599 of the Civil Code of Ukraine to terminate an obligation, such right shall be protected by a court upon a claim by the debtor under Paragraph 1 of Part 2 of Article 16 of the Civil Code of Ukraine.

The termination of an obligation under an agreement by its duly performance is a legal fact, the consequence of which is that the parties to that obligation lose the status of creditor and debtor in the obligation and, accordingly, the right to any mutual claims against each other.

The existence of circumstances and evidence that Joint Stock Company Commercial Bank "PrivatBank" does not recognize the right of the Joint Stock Company "Nikopol Ferroalloy Plant" to terminate the obligations under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, was proved by the Plaintiff to the Court in a proper and admissible way that confirms the validity and legality of the Plaintiff's statement of claim.

Regarding the reference made by the Defendant to the findings set out in paragraph 32, 41 of the Ruling of the Grand Chamber of the Supreme Court dated August 21, 2018, on the Case No. 910/14144/17 and in paragraph 62 of the Ruling dated January 23, 2019, on the Case No. 522/14890/16-ts/522/14890/16-ц as such made in similar legal relations under loan and borrowing obligations and to be taken into consideration in the present case, the Court notes as follows:

According to the Ruling of the Grand Chamber of the Supreme Court on Case No. 910/14144/17, the claims to recognise that there is no right of one defendant (creditor) to demand from the other defendant (debtor) the payment of a debt under the loan agreements, which was paid by the plaintiff (guarantor), and the claims to recognise the guarantor's right to demand from the debtor the payment of money under the loan agreements paid by the guarantor cannot be considered as a triable issue in the commercial court. Such claims do not result in the renewal of the violated rights, cannot be considered in a separate case on their own, and the relevant arguments are only to be considered when resolving a dispute over the recovery of money under such agreements.

Thus, the Plaintiff's claims and defence chosen in this case are not identical to the claims and defence in Case No. 910/14144/17.

Paragraphs 61-63 of the Ruling of the Grand Chamber of the Supreme Court dated January 23, 2019 on Case No. 522/14890/16-ts/522/14890/16-ц also establish the following:

"61. As stated above, in this case, the Plaintiff considers that its interest in the share capital, which he believes the Defendant got to secure claims under the Loan Agreement and was due to return under the performance of its obligation under that Agreement, has been violated. Therefore, the appropriate way to protect the Plaintiff is a claim that the Defendant shall return its shares in the authorized capital of the company (subparagraph "e" of Paragraph 3 of Part 5 of Article 17 of the Law of Ukraine "On State Registration of Legal Entities, Individual Entrepreneurs and Public Organizations". Thus, the existence of the primary obligation under which, according to the Plaintiff, there was collateral, can be resolved with the appropriate means of proof in the relevant dispute under the rules of commercial litigation.

62. Therefore, the claim to declare the Loan Agreement to be terminated in full due to performance of the obligations under this Agreement cannot be satisfied, as the claim does not correspond to an appropriate way of protection of the Plaintiff's rights.

63. On the one hand, the satisfaction of the claim cannot protect the Plaintiff's rights as it will not resolve the issue of the return of the share capital to the Plaintiff and, on the other hand, will lead to an artificial prejudgment of the dispute regarding an appropriate way of protection, which is subject to consideration under the rules of other legal proceedings. Therefore, the claim in this part should be dismissed."

The Court finds that the legal relations and circumstances of the present commercial case and Case No. 522/14890/16-ts/22/14890/16-ц are not similar, because in Case No. 522/14890/16-ts/22/14890/16-ц the Plaintiff considered his ownership right to the share in the authorised capital, which, in his opinion, the Defendant had got to secure claims under the Loan Agreement and had to return performing the obligations under the present Agreement by recognising the Loan Agreement terminated, to be violated.

And in this case JSC "Nikopol Ferroalloy Plant" refers to the non-recognition by JSC CB "PrivatBank" of the Plaintiff's obligations under the Agreement No. 4N09129D/4H09129Д dated February 02, 2009, and requests to recognize the obligations as terminated by the proper execution.

Therefore, based on the general principles of the civil law and the general principles of judicial proceedings concerning the right of a person to protect the violated or unrecognized rights in court, to the equality of procedural

Secretary of the court session _____ / signature /_____   O.O. Zarudna
Made up from the Court
Automated Case
Management System
22.01.2021

bar code
*1*9417835*1*0*

rights and legal obligations of the litigants, it should be concluded that in case of non-recognition by the creditor of the debtor's right to terminate the obligation, provided for by Article 599 of the Civil Code of Ukraine, such right shall be protected by court in the claim of the debtor pursuant to the paragraph 1 of Part 2 of Article 16 of the Civil Code of Ukraine.

The conclusion of the court regarding the possibility of protection of individual rights can be protected in such a way as recognition of the debtor's right to terminate the obligation under the Agreement is supported by the Court's findings set out in the Resolution of the Economic Cassation Court of the Supreme Court on the Case No. 911/169/16 dated June 13, 2018, on the Case No. 916/993/17 dated June 19, 2018, and on the Case No. 916/993/18 dated April 03, 2019.

The Court notes that in setting out the reasoning for the decision, the Court is to respond to the relevant arguments of the Litigants, which may affect the resolution of the dispute; the statement of reasons for the decision shall not be long, as an appropriate balance between conciseness and proper understanding of the decision taken shall be found; the obligation of judges to give reasons for their decisions does not mean that they are required to respond to every argument made by the litigant on every ground; the scope of this obligation of the Court can vary depending on the nature of the decision

According to the case law of the European Court of Human Rights, the expected scope of justification depends on the different arguments that each litigant may raise and on the different legal provisions, customs, and doctrinal principles, as well as on the different practices in different countries in preparing and submitting decisions. The same legal position is set out in the Resolution of the Supreme Court dated May 28, 2020 on the Case No. 909/636/16.

Analysing the scope of the examination of the Litigants' arguments and their interpretation in the decision, the trial court relies on the findings of the European Court of Human Rights dated July 08, 2006, on the case of "Pronin versus Ukraine", in which the European Court of Human Rights noted that Paragraph 1 of Article 6 of the Convention obliges courts to give reasons for their decisions, but this cannot be understood as requiring a detailed answer for every argument. The limits of this obligation may vary depending on the nature of the decision. It is also necessary to consider the variety of arguments that a litigant may bring before the Court and the differences existing in the Member States, taking into account legal provisions, traditions, legal findings, statements and the wording of decisions. Thus, whether the Court has complied with its obligation to provide reasons under Article 6 of the Convention can only be determined on the basis of the particular circumstances of the case.

According to the Judgement of the European Court of Human Rights on the case of "Seryanin and Others versus Ukraine" (SERYAVIN AND OTHERS V.), the established practice of the European Court of Human Rights, which reflects the principle of due process, is that decisions of courts and other dispute-settlement bodies *shall* properly state the grounds they are based on. Though Paragraph 1 of Article 6 of the Convention obliges courts to give reasons for their decisions, but cannot be understood as requiring a detailed answer to every argument. The extent to which this duty to give reasons applies may vary according to the nature of the decision (see the decision on the Case "Ruiz Torija Versus Spain" dated December 09, 1994, Series A, No. 303-A, Para. 29). Although a domestic court has a certain margin of appreciation when choosing arguments and admitting evidence, it is obliged to justify its activities by giving reasons for its decisions (see the decision on the case of Suominen versus Finland, No. 37801/97, Para. 36 dated July 01, 2003).

Another purpose of a reasoned decision is to show the parties that their case has truly been heard. Furthermore, The reasons given must be such as to enable the parties to make effective use of any existing right of appeal. The public scrutiny of the dispensation of justice can only be ensured if a reasoned decision is made (see the decision on the case of "Hirvisaari versus Finland", No. 49684/99, Para. 30, dated September 27, 2001). The same legal position is set out in the Resolution of the Supreme Court dated March 13, 2018, on the Case No. 910/13407/17.

Thus, having assessed all the evidence provided by the Litigants under this case, the Court concludes that the loan proceeds acquired by the Plaintiff under the Loan Agreement were used by JSC "Nikopol Ferroalloy Plant" under the terms and conditions of the Loan Agreement and for the purpose provided for in the Loan Agreement, which is the financing of the current business activities of JSC "Nikopol Ferroalloy Plant", as well as JSC "Nikopol Ferroalloy Plant" repaid to JSC CB "PrivatBank" the loan proceeds and paid to JSC CB "PrivatBank" all interest, fees and other payments, which were set by the terms of the Loan Agreement, within the terms and according to the procedure provided by the Loan Agreement, at the expense of funds received by JSC "Nikopol Ferroalloy Plant"

*Secretary of the court session* _____ */ signature /*_____ *O.O. Zarudna*
*Made up from the Court*
*Automated Case*
*Management System*
*22.01.2021*

bar code
*1*9417835*1*0*

from business activities, at the expense of the Guarantor and not at the expense of other loan proceeds, which were received by JSC "Nikopol Ferroalloy Plant" under other loan agreements.

Under such circumstances, considering that the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, and all the obligations of JSC "Nikopol Ferroalloy Plant" to JSC CB "Privatbank", which were stipulated, determined and related to the Loan Agreement, have been terminated due to proper performance, which was accepted by JSC CB "PrivatBank" as the entitled party of such obligations, the Court found that JSC CB "PrivatBank" has no legal grounds to assert that the obligations of JSC "Nikopol Ferroalloy Plant" to the Bank under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, or their improper performance by JSC "Nikopol Ferroalloy Plant", and the rights of JSC "Nikopol Ferroalloy Plant" are subject to protection by recognizing all the obligations of the Plaintiff to JSC CB "PrivatBank" under the Loan Agreement to be terminated due to proper performance.

Considering the above, all other arguments and speculations of the litigants are not examined by the Court, as given the established factual circumstances of the case, the Court gave a comprehensive answer to all the arguments belonging to the facts to be proven in this case and arising in qualifying the disputed relations both in the substantive and procedural sense.

The Defendant shall pay the court fee in accordance with Part 1 of Article 129 of the Commercial and Procedural Code of Ukraine.

Guided by the Articles 74, 76-80, 129, 236-242 of the Commercial and Procedural Code of Ukraine, the Economic Court of Kyiv, consisting of Judge D.O. Baranov,

### DECIDED:

1.  To satisfy the claim of Joint-Stock Company "Nikopol Ferroalloy Plant".
2.  To recognize all the obligations of Joint Stock Company "Nikopol Ferroalloy Plant" (310, Electrometalurgiv str., Nikopol, Dnipropetrovsk region, 53200, legal entity identification code 00186520) to Joint Stock Company Commercial Bank "PrivatBank" (1-D, Hrushevskogo str., Kyiv, 01001; Hrushevskoho str., Kyiv, 01001; legal entity identification code 14360570) under the Loan Agreement No. 4N09129D/4H09129Д dated February 02, 2009, concluded between Joint-Stock Company Commercial Bank "PrivatBank"  Hrushevskoho str., Kyiv, 01001; legal entity identification code 14360570) and Joint-Stock Company "Nikopol Ferroalloy Plant" (310 Electrometalurgiv street,  Nikopol, Dnipropetrovsk region, 53200, legal entity identification code 00186520), to be terminated due to proper performance.
3.  Joint-Stock Company Commercial Bank "PrivatBank" (1D Hrushevskoho str., Kyiv, 01001; legal entity identification code 14360570) shall be charged with the court fee of UAH 2,102 (two thousand one hundred and two) 00 kopecks to Joint-Stock Company "Nikopol Ferroalloy Plant" (310 Electrometalurgiv street, Nikopol, Dnipropetrovsk region, 53200, legal entity identification code 00186520) .

The Ruling of the Economic Court shall enter into force upon the expiry of the deadline for lodging an appeal if no appeal has been lodged. If an appeal is lodged, the ruling, unless reversed, enters into force when the appeal is returned, the appeal proceedings are dismissed or closed, or the appeal court rules following an appellate review.

An appeal against a ruling shall be lodged within twenty days from the date of its reading directly to the appeal court. If the Court announced only the introductory and operative parts of the court decision, or if the case is heard (decided) without notifying (summoning) the litigants, this period shall be calculated from the day the full ruling is issued.

The full text of the court decision issued on January 22, 2021.

Judge                                                                                          D.O. Baranov

*Round seal: Economic Court of Kyiv*Ukraine*Office No. 2*
*Legal entity identification code 05379487*

*Secretary of the court session _____ / signature / _____ O.O. Zarudna*
*Made up from the Court*
*Automated Case*
*Management System*
*22.01.2021*

bar code
*1*9417835*1*0*

*Total in copy 16 sheets*
*Secretary of the court session _____ / signature /_____ O.O. Zarudna*
*Round seal: Economic Court of Kyiv\*Ukraine\*Office No. 2*
*Legal entity identification code 05379487*

*Цей переклад з української мови на англійську мову виконаний мною, перекладачем*
*Дубенко-Лінп Ірина Олександрівна_____*

*This translation from Ukrainian into English was done by the translator Dubenko-Lipp I.O.*

*Secretary of the court session _____ / signature /_____ O.O. Zarudna*
*Made up from the Court*
*Autonated Case*
*Management System*
*22.01.2021*

*bar code*
*\*1\*9417835\*1\*0\**

Місто Київ, Україна, двадцять п'ятого січня дві тисячі двадцять першого року.

Я, Онищенко М.О., приватний нотаріус Київського міського нотаріального округу, засвідчую справжність підпису перекладача Дубенко-Ліпп Ірини Олександрівни, який зроблено у моїй присутності.

Особу перекладача встановлено, його дієздатність та кваліфікацію перевірено.

Зареєстровано в реєстрі за №

Стягнуто плати у розмірі згідно ст. 31 Закону України «Про нотаріат» у гривнях

Приватний нотаріус

**Kyiv, Ukraine, 25.01.2021**

I,     Onyschenko M.O.,  private notary of Kiev city notary district, certify the authenticity of signatures of translator Dubenko-Lipp I.O.  signed in my presence.

The person of translator is established, his (her) capacity and qualification are checked.

Registered in the Register by No. *1196*
Charged under Art.31 of the Law of Ukraine "On notary"

**PRIVATE NOTARY**

Round seal: /Kyiv city notary district* private notary

*Secretary of the court session _____ / signature /_____ O.O. Zarudna*
*Made up from the Court*
*Automated Case*
*Management System*
*22.01.2021*

*bar code*
*\*1\*9417835\*1\*0\**